TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

BEN BARNOW*
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL*
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312.621.2000

*Attorneys for Plaintiffs and the Proposed
Class* (*Admitted *pro hac vice*)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.,<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>Hon. Edward J. Davila<br><br>**DECLARATION OF BEN BARNOW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:    September 16, 2021<br>TIME:    9:00 A.M.<br>JUDGE:  Hon. Edward J. Davila<br>CTRM:   4, 5th Floor<br><br>Judge: Hon. Edward J. Davila |

1

## DECLARATION OF BEN BARNOW

I, Ben Barnow, declare as follows:

1.     I am President and sole shareholder of Barnow and Associates, P.C. ("B&A"), and a member in good standing of the bar of the State of Illinois and State of New York. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement in this action, as memorialized in the Class Action Settlement Agreement and Release ("Settlement Agreement") filed concurrently herewith.[1] I make the following declaration based on my own personal knowledge and, where indicated as based on information and belief, that the following statements are true. If called upon as a witness, I could and would competently testify as follows.

### INTRODUCTION

2.     The proposed Settlement is the product of hard-fought, arms-length negotiations between experienced counsel after necessary confirmatory discovery by Plaintiffs' counsel, settlement negotiations that included mediation before the Hon. Judge Jay C. Gandhi (Ret.) of JAMS, and extensive ongoing negotiation efforts between counsel for Plaintiffs and Defendant The Kroger Co. ("Kroger"). The Settlement secures a significant recovery for the putative Class Members, eliminates the risks of continued litigation, and is an excellent data breach class action settlement result.

3.     The Settlement, if approved, would resolve all class claims against Kroger (not Accellion), on behalf of approximately 3,825,200 million settlement class members relating to Accellion's File Transfer Appliance ("FTA") Data Breach (the "FTA Data Breach").

4.     The Settlement would establish a non-reversionary cash fund of $5 million to pay, *inter alia*, for valid claims. Under the terms of the Settlement, Class Members may submit Claim Forms and elect to receive one of the following benefits: 1) a cash payment, calculated in accordance with the terms of the Settlement Agreement (with double the amount to California residents in light of the statutory claims available to them) ("Cash Fund Payment"); or (2) two years of Credit Monitoring and Insurance Services ("CMIS"); or 3) a payment for reimbursement

---

[1]     Unless otherwise noted, all capitalized terms not separately defined herein have the meaning ascribed to them in the Settlement Agreement.

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

of Documented Losses of up to $5,000, with Reasonable Documentation and other supporting documents ("Documented Loss Payment"). The Settlement also provides for robust injunctive relief which includes, *inter alia*, confirmation that Class Members' sensitive PII is secured, dark web monitoring for five years for fraudulent activity relating to Class Members' PII, and various enhancements to Kroger's third-party vendor risk management program and other data privacy enhancements.

5.      I am informed and believe that if approved, the Settlement would resolve all claims against Kroger in the following pending class actions: *Jones v. The Kroger Co.*, No. 1:21-cv-00146 (S.D. Ohio) ("*Jones*"), *Govaert et al. v. The Kroger Co.*, No. 1:21-cv-00174 (S.D. Ohio), *Doty et al. v. The Kroger Co.*, No. 1:21-cv-00198 (S.D. Ohio), *Strohm v. The Kroger Co.*, No. 1:21-cv-00226 (S.D. Ohio), *Abrams et al. v. The Kroger Co.*, No. 1:21-cv-00240 (S.D. Ohio), *Buck v. The Kroger Co.*, 1:21-cv-00279 (S.D. Ohio), and *Baer v. The Kroger Co.*, No. 1:21-cv-00323 (S.D. Ohio) (collectively, the "Ohio Actions").

6.      I am also informed and believe that the Settlement also would resolve the individual, *pro se* claims in *Martin v. Kroger Co.*, No. 1:21-cv-00717-JRS-DML (S.D. Ind.) ("*Martin*").

7.      For all the reasons explained herein, I believe the proposed Settlement to be fair, reasonable, and adequate, and in the best interests of the proposed Settlement Class.

### THE COMMENCEMENT OF THE LITIGATION

8.      Plaintiffs' First Amended Class Action Complaint ("FAC") alleges that on or about February 19, 2021, Kroger publicly confirmed that the PII of certain Kroger pharmacy customers and former and current employees was compromised in the FTA Data Breach. The affected PII included names, email addresses, dates of birth, home addresses, phone numbers, Social Security numbers ("SSN"), salary information, and certain health and prescription information. During the FTA Data Breach, unauthorized persons were able to exploit multiple vulnerabilities in Accellion's FTA and gain access to the sensitive PII of Kroger pharmacy customers and current and former employees.

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

9.      On March 17, 2021, this action was filed on behalf of Plaintiffs Ricky Cochran and Alain Berrebi, naming Accellion and Kroger as co-defendants. ECF No. 1. Plaintiffs filed the FAC on June 25, 2021, adding a new Plaintiff, Jaramey Stobbe, to the action. ECF No. 27. I am informed and believe that each of the Plaintiffs received notification from Kroger indicating that their PII was accessed during the FTA Data Breach.

10.     The FAC alleges that, *inter alia*, Kroger and Accellion: (a) failed to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' PII; (b) failed to prevent the FTA Data Breach; (c) failed to detect security vulnerabilities leading to the FTA Data Breach; and (d) failed to disclose that their data security practices were inadequate to safeguard Class Members' PII. ECF No. 27 ¶¶ 48, 54, 64-70, 113. With respect to Kroger, Plaintiffs alleged that it had a duty to, and impliedly promised Plaintiffs and Class Members that it would, protect their sensitive PII from unauthorized disclosure and handle this data securely, and that it failed to do so by entrusting the PII to a third-party file transfer vendor whose products and services were prone to security vulnerabilities that left Class Members' PII exposed. *Id.* ¶¶ 54, 89.

11.     Prior to filing the instant action, Plaintiffs' counsel drafted and served Kroger with a detailed notice letter pursuant to the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(b), demanding that Kroger provide a class-wide remedy for alleged violations of the CCPA. ¶ 120.

12.     Kroger has denied the allegations set forth in the CCPA demand letter and the FAC. Kroger's written response to the CCPA demand included an assertion that it had cured any violation of the CCPA, and that it had (i) sent notice to all impacted individuals and offered two years of credit monitoring and ID theft insurance, (ii) reported the incident and worked closely with the FBI, (iii) recovered the impacted data and received evidence that any remaining copies of the data were deleted, and (iv) confirmed that none of the impacted data was published or offered for sale on the dark web.

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

**PLAINTIFFS' LITIGATION EFFORTS AND WORK ON BEHALF OF THE CLASS**

13.    The attorneys at B&A who worked on this matter have stayed abreast of all material developments involving the FTA Data Breach, including those impacting Kroger. We have gathered the press releases and statements concerning the FTA Data Breach, reviewed the information Kroger has provided on its website about the breach (*see* https://www.kroger.com/i/accellion-incident (last visited June 23, 2021)), reviewed Kroger's data breach notification letters, reviewed Accellion's Mandiant forensic report, and kept informed of updates and new information relating to the FTA Data Breach.

14.    Following commencement of this action, Plaintiffs and Kroger opened a dialogue about case management issues and engaged in multiple meet-and-confer discussions. Attorneys at Ahdoot & Wolfson, PC and B&A (collectively "Plaintiffs' Counsel") already had been leading efforts to coordinate all of the related cases filed in this Court relating to the Accellion FTA Data Breach. These efforts included drafting a stipulation to consolidate all of those cases and set deadlines for submitting leadership applications. After this action was filed, Plaintiffs' Counsel coordinated with Kroger's counsel to facilitate Kroger's inclusion in a consolidation stipulation. When efforts to stipulate to consolidate all of the Accellion FTA Data Breach cases filed in this Court failed, AW filed a motion to consolidate the cases. *See Brown v. Accellion, Inc.*, No. 5:21-01155-EJD (N.D. Cal.), ECF No. 37. This motion was contested by some of the plaintiffs' counsel in other FTA Data Breach cases, including some of the lawyers in the Ohio Actions. *See id.*, ECF Nos. 40-41. The motion to consolidate the Northern District of California cases remains pending as of the execution date of this Declaration.

15.    On April 9, 2021, Plaintiffs and Kroger submitted a stipulation in this action extending Kroger's time to respond to the Complaint to the earlier of 45 days following a decision on the JPML Motion or 45 days after Kroger answers or otherwise responds to a complaint in any of the other FTA Data Breach actions. ECF No. 14. On June 7, 2021, the Panel issued an order denying transfer. MDL No. 3002, ECF No. 88.

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

16.     As stated above, I am informed and believe that this Settlement would resolve all claims in the Ohio Actions and in *Martin.*

### MEDIATION AND SETTLEMENT NEGOTIATIONS

17.     As a result of the Parties' continued meet-and-confer efforts, they were able to reach an agreement to participate in mediation to attempt to resolve this matter. The mediation took place on May 13, 2021, before the Hon. Judge Jay C. Gandhi (Ret.) of JAMS. Judge Gandhi is a highly respected and experienced class action mediator who previously was a magistrate judge for the United States District Court for the Central District of California. He has overseen the mediation of numerous data privacy class actions that reached a successful outcome and settled.

18.     Prior to the mediation session, the Parties exchanged information to prepare for and facilitate a productive mediation session. The Parties communicated their respective positions on the litigation and the Parties' claims and defenses with each other and the mediator. Plaintiffs received and analyzed data from Kroger relating to the impact of the FTA Data Breach on Kroger, including specific information concerning the categories of individuals who received breach notification letters from Kroger (e.g., customers, employees), the nature of the PII impacted, and the number of Class Members impacted.

19.     On May 13, 2021, the Parties participated in a full-day video-conferencing mediation session with Judge Gandhi. With Judge Gandhi's guidance, the Parties had a productive mediation session characterized by zealous advocacy by counsel for both sides. Late in the day, the Parties reached an agreement in principle to settle the litigation.

20.     The Parties engaged in confirmatory discovery to verify not only the details about the impact of the FTA Data Breach and information about the Class Members, but also the fairness of the Settlement.

21.     The Parties expended significant efforts in negotiating and ironing out the numerous details of the Settlement in addition to formal mediation. Following the mediation, the Parties continued to work together to finalize the Settlement's terms. During this time, the Parties exchanged drafts of the Settlement Agreement and its exhibits, and Class Counsel negotiated

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

numerous details to maximize the benefits to the Class Members.

22.     Plaintiffs' Counsel solicited competing bids from four separate third-party administrators for settlement notice and administration. With each of the potential settlement administrators, proposed Class Counsel discussed the notice and distribution plans agreed to in the Settlement. Counsel ultimately negotiated an agreement with Epiq Class Action and Mass Tort Solutions, LLC ("Epiq"). Proposed Class Counsel have both previously worked with Epiq on different matters. Epiq estimates that the total administration and notice charges in this matter will be approximately $740,948 to $827,299. In my experience, this estimate is reasonable in the context of this proposed Settlement, and includes all costs associated with providing direct notice, class member data management, CAFA notification, telephone support, claims administration, creation and management of the Settlement Website, disbursements and tax reporting, and includes postage (which is estimated to be approximately $320,000 to $350,000).

23.     The Notice Plan and each document comprising the Class Notice were negotiated and exhaustively refined, with input from Cameron Azari, an expert at Epiq, to ensure that these materials will be clear, straightforward, and understandable by Class Members, and that they fully comply with due process, CAFA, and all requirements of Rule 23.

24.     Following consultation with Epiq and based upon Class Counsel's previous experience in and knowledge of similar cases, Class Counsel expect the claims rate in this Settlement to be between 1-3%. In my opinion, the claims rates in previous data breach settlements (detailed in the concurrently filed Motion for Preliminary Approval of Class Action Settlement) support this conclusion.

25.     The Settlement's proposed distribution plan is similar to past distributions of settlements negotiated and recommended by proposed Class Counsel.

26.     Any amount remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of the Settlement, will be paid to the proposed Non-Profit Residual Recipient: Rose Foundation's Consumer Privacy Rights Fund ("Rose Foundation"), a 26 U.S.C. 501(c)(3) non-profit organization. The Rose Foundation's

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

efforts are directly related to the subject matter of this action and the organization has been approved as the recipient of residual settlement funds in other data breach class action settlements. Proposed Class Counsel have no relationship with the Rose Foundation.

27.     As part of the Settlement, certain Class Members may elect two years of Credit Monitoring and Insurance Services ("CMIS"). Plaintiffs' Counsel solicited competing bids from alternative providers of CMIS. Ultimately, counsel negotiated for Experian to provide the CMIS.

28.     I am informed, and believe, that Experian's IdentityWorks (3 Bureau Plan) includes (i) up to $1 million dollars of identity theft insurance coverage; (ii) three-bureau credit monitoring providing notice of changes to the participant's credit profile; (iii) alerts for activity including new inquiries, new accounts created, change of address requests, changes to public records, postings of potentially negative information, and other leading indicators of identity theft; (iv) customer care and dedicated fraud resolution agent; (v) comprehensive educational resources; and (vi) extended fraud resolution. *See* Barnow Decl., Exhibit 1. This plan was selected after soliciting competing bids from multiple providers.

**SUMMARY OF CONFIRMATORY INFORMATION RECEIVED FROM KROGER**

29.     Through the confirmatory discovery process, Plaintiffs have confirmed the following information:

a.     Kroger discontinued its use of Accellion and FTA, reported the incident to law enforcement, and initiated its own investigation.

b.     Accellion did not inform Kroger that the FTA product was insecure or ill-suited for its purpose of providing securing file transfers, but, rather, represented that the opposite as true.

c.     Prior to the disclosure of the FTA Data Breach, Kroger already had purchased from Accellion the next generation file transfer product, known as Kiteworks, and was on target to complete migration to this product, from the breached FTA product, by March 2021.

d.     Accellion supported the FTA product platform utilized by Kroger up to the announcement of the FTA Data Breach.

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

e.      Accellion represented that the FTA product would remain licensed and supported during the transition to Kiteworks.

f.      Following announcement of the FTA Data Breach, Kroger worked with Accellion regarding the investigation.

g.      Kroger also reported the incident to the FBI and activated Verizon's Incident Response support team to analyze relevant information, review impacted data, and prepare notification to affected individuals.

h.      Approximately 3,825,200 Kroger employees and customers were impacted by the FTA Data Breach. Of the total individuals impacted, approximately 2,458,800 were Kroger employees; 1,324,600 were Kroger customers; and 23,800 were both employees and customers of Kroger. In California, approximately 150,000 individuals were impacted.

i.      Kroger learned of the FTA Data Breach on or about January 23, 2021, and on February 2, 2021, it received a ransom demand in exchange for a commitment not to disseminate Kroger's data. Kroger informed the FBI of the demand. On February 18, 2021, Kroger paid a ransom to recover the data. The extortion entity returned the data the next day, along with a video purporting to show the deletion of Kroger's files.

j.      Kroger reports that it continually has monitored the dark web to make certain that the data was not retained or disseminated.

## THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

30.     I believe the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of Plaintiffs and putative Class Members. Despite my strong belief in the merits of this litigation and likelihood of success as trial, I nonetheless believe that the benefits to Plaintiffs and the putative Class pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before Plaintiffs and putative Class Members receive any benefits should the action proceed to trial; the possibility of a negative outcome at trial; and the possibility of a negative outcome post-trial should Defendant appeal a judgment in favor of the putative Class. This Settlement provides significant benefits now and is

9

in the best interests of all putative Class Members.

31.    In my opinion, the Settlement presents a robust relief package and valuable outcome for the Settlement Class compared to other recent data breach class action settlements. The chart below demonstrates the quality of this Settlement as compared to other data breach settlements (on a per capita basis per class member). Based on review of the record at the cases cited below by, as well as B&A participation in some of these cases, I believe the information in chart below is true and accurate.

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member | Credit Monitoring |
|---|---|---|---|---|
| *Cochran et al. v. The Kroger Co.* | **3.82M** | **$5M** | **$1.31** | **2 years** |
| *In re Target Corp. Customer Data Breach Security Litigation* | 97.5M | $10M | $0.10 | Documented Cost Reimbursement |
| *In re LinkedIn User Privacy Litig.* | 6.4M | $1.25M | $0.20 | N/A |
| *In re The Home Depot Inc. Customer Data Security Breach Litig.* | 40M | $13M | $0.33 | 18 months |
| *In re Yahoo! Inc. Customer Data Breach Litigation* | 194M | $117.5M | $0.61 | 2 years |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | 4.5M | $2M | $0.44 | 2 years |
| *Atkinson, et al. v. Minted, Inc.* | 4.1M | $5M | $1.22 | 2 years |
| *In re Experian Data Breach Litigation* | 16M | $22M | $1.37 | 2 years |
| *In re Anthem, Inc. Data Breach Litigation* | 79.2M | $115M | $1.45 | 2 years |
| *In re Equifax Inc. Data Security Breach Litigation* | > 147M | $380.5M | $2.59 | 4 years |
| *In re Premera Blue Cross Customer Data Security Breach Litigation* | 8.86M | $32M | $3.61 | 2 years |
| *Winstead v. ComplyRight, Inc.* | 665,689 | $3.025M | $4.54 | 2 years |

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

32.     The proposed Settlement was entered into by Plaintiffs with the benefit of the substantial experience of Plaintiffs' Counsel. In my opinion and based on my decades of experience in privacy litigations, Plaintiffs' Counsel had all of the information necessary to properly evaluate the case and determine the terms and conditions of the proposed Settlement.

33.     Negotiations regarding the Settlement were conducted at arm's length, in good faith, free of any collusion, and under the supervision of Judge Gandhi.

34.     Plaintiffs' Counsels' knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to go to mediation with Kroger, and the decision to recommend that the Court grant preliminary approval to the Settlement.

35.     The proposed Class Representatives have shown that they are well-suited to represent the Settlement Class, have actively participated in the litigation, and will continue to do so. They do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members.

36.     Since the litigation was commenced, the Plaintiffs have been dedicated and active participants. They investigated the matter prior to and after retaining counsel, participated in the client and case vetting process, reviewed and approved the initial complaints and the operative FAC, kept in close contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement. In my opinion, each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts.

37.     During the Settlement negotiations process, the Parties deferred any discussion concerning the Service Awards to be sought by the proposed Class Representatives until after reaching an agreement on all material terms of the Settlement.

**BARNOW AND ASSOCIATES, P.C. FIRM EXPERIENCE**

38.     At all times, B&A had the experience, expertise, and resources to effectively litigate any and all issues related to this litigation.

11

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

39.     I am nationally recognized for my experience in leading some of the nation's largest consumer class actions and has been recognized as a *Titan of the Plaintiffs Bar*.[2] As a court-appointed lead counsel or equivalent designation, I have successfully led over forty major class actions (including MDLs) where class-wide recoveries were achieved, resulting in benefits valued in excess of five billion dollars being made available to class members. This includes leading eight noteworthy privacy class actions where class settlements were achieved. Below is a brief description of some of the cases in which I served as a lead or co-lead counsel.

40.     *In Re: Sony Gaming Networks and Customer Data Security Breach Litigation,* MDL 2258. I was appointed to the Plaintiffs' Steering Committee—a committee of seven firms established to lead the litigation—in this MDL proceeding involving over 60 cases relating to a data security breach that affected approximately 50 million consumers. A settlement agreement was entered into and was granted final approval. At the final fairness hearing, the Honorable Judge Anthony J. Battaglia remarked: "Just in the final analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled. It's been a real pleasure dealing with you."

41.     *In Re: TJX Retail Security Breach Litigation,* MDL No. 1838. I served as one of Co-Lead Settlement Class Counsel for the Consumer Track in this MDL proceeding relating to the theft of approximately 45 million credit and debit card numbers used at TJX stores and the personal information of over 454,000 TJX customers. I took the lead in negotiating a settlement with TJX's attorneys that made available benefits valued at over $200 million to the Class. The Honorable Judge Young granted final approval to the settlement, which he referred to as "excellent," and as containing "innovative" and "groundbreaking" elements.

42.     *In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation,* MDL No. 1998. I served as one of Co-Lead Settlement Class Counsel in this forty-case MDL proceeding relating to a former Countrywide employee's theft and sale of millions of

---

[2] *See* Sindhu Sundar, Law360, *Titan of the Plaintiffs Bar: Ben Barnow* (Oct. 8, 2014), https://www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow (last visited Dec. 12, 2019).

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

Countrywide customers' private and confidential information. I negotiated a settlement that was granted final approval, making benefits valued at over $650 million available to approximately 17 million Settlement Class Members. In the opinion granting final approval to the settlement, the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process."

43.    *Lockwood v. Certegy Check Services*, *Inc*. I served as one of Co-Lead Settlement Class Counsel in this consolidated proceeding relating to the theft of approximately 37 million individuals' private and confidential information from Certegy Check Services, Inc.'s computer databases. I negotiated a settlement that was granted final approval, making benefits valued at over $500 million available to Settlement Class Members. At the final fairness hearing, the Honorable Judge Merryday described the settlement as a "good deal," providing "a real benefit to a large class of persons" as "the result of the focused attention of skilled counsel for a protracted time."

44.    *Rowe v. Unicare Life and Health Insurance Co.* I was Lead Counsel in this proceeding relating to the defendants' alleged failure to secure the private health information of approximately 220,000 individuals enrolled in the defendants' health insurance plans, resulting in such information being accessible to the public via the Internet. I negotiated a settlement that was granted final approval, making benefits valued at over $20 million available to Settlement Class Members. At the preliminary approval hearing, the Honorable Judge Hibbler described the efforts of the parties as "exemplary."

45.    *Orr v. InterContinental Hotels Group, PLC*. I was appointed as one of Lead Class Counsel in this payment card data breach litigation. He successfully negotiated a class settlement providing a claim process for Class Members to seek reimbursement for certain expenses or

DECLARATION OF BEN BARNOW ISO PRELIMINARY APPROVAL

fraudulent and unauthorized charges resulting from the data breach, subject to an aggregate cap of $1.55 million. The settlement was granted final approval.

46.     *In re: Zappos.com Inc. Customer Data Security Breach Litigation*. I was one of Co-Lead Class Counsel and settlement class counsel in this litigation, which resulted in a landmark Ninth Circuit ruling recognizing the Article III standing of consumers harmed by data breaches. I also successfully opposed Zappos' petition for writ of certiorari to the Supreme Court of the United States, where he served as counsel of record for plaintiffs. After many years of litigation, he negotiated a settlement that was granted final approval. The Settlement provided Class Members with CAFA-compliant coupons that were redeemed for over $7 million.

47.     *Warner v. Toyota Motor Sales, U.S.A., Inc.* I served as one of Co-Lead Counsel in this litigation regarding claims of excessive frame rust to certain Toyota vehicles, yielding a recent landmark settlement providing relief valued at an estimated at $3.4 billion.

48.     A copy of my firm's resume is submitted herewith. Barnow Decl., Exhibit 2.

49.     B&A has decades of experience in the prosecution of class actions, including data breach and privacy lawsuits such as this action. B&A can more than adequately represent the Settlement Class.

50.     Based on my experience and my knowledge regarding the factual and legal issues in this matter, and given the substantial benefits provided by the Settlement, it is my opinion that the proposed Settlement in this matter is fair, reasonable, and adequate, and is in the best interests of the Settlement Class Members.

51.     As of June 24, 2021, my firm's lodestar in this matter is approximately $168,559, and expenses are $7,849.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of June 2021, at Chicago, Illinois

s/   *Ben Barnow*
Ben Barnow

14

**EXHIBIT 1**



| Features | IdentityWorks ®<br>Credit 3-Bureau |
|---|---|
| Designed to Monitor | Adults |
| Daily Credit Monitoring | 3 Bureau |
| **Daily Monitoring** – 50 leading indicators of identity theft including: | |
| New inquiries | X |
| New accounts created | X |
| Change of address request associated with credit account | X |
| Changes to public records | X |
| Postings of potentially negative information | X |
| Report Upon Enrollment | Experian Bureau |
| Reports During Membership | Experian Bureau |
| Product Delivery method | Online (email) / Offline (US Mail) |
| Email / US Mail Alerts | X |
| No Hit Alerts (monthly for online members; quarterly for offline) | X |
| Customer and Fraud Resolution Support | |
| U.S. based customer care 7 days/week | X |
| Dedicated Fraud Resolution Agent | X |
| Identity Theft Insurance | $1 Million |
| Enrollment (Phone and Online) | X |
| Comprehensive Educational Resources | X |
| ExtendCARE™ – fraud resolution extends beyond the life of initial membership | X |

**EXHIBIT 2**

# BEN BARNOW

## BARNOW AND ASSOCIATES

*a professional corporation*
ATTORNEYS AT LAW

Ben Barnow is nationally recognized for his experience in leading some of the nation's largest class actions. In that capacity, he has successfully led the prosecution of a number of large-scale class actions relating to consumer data security breaches, consumer protection issues, and antitrust violations. He has been appointed to and served in leadership positions in cases throughout the nation, in both state and federal courts, including MDL proceedings. His efforts have delivered resolutions in numerous significant cases, including cases against America Online, DaimlerChrysler, McDonald's, Microsoft, Nissan, Shell Oil, Sony, TJX, and Toyota.

Ben Barnow graduated from the University of Wisconsin in 1966 with a Bachelor's degree in Business Administration. He received his Juris Doctor from the University of Michigan Law School in 1969. He is licensed to practice in the State of Illinois and the State of New York. Mr. Barnow is also admitted to practice before the Supreme Court of the United States, the United States Court of Appeals for the First, Third, Sixth, Seventh, Eighth, and Ninth Circuits, the United States District Court for the Northern District of Illinois, the Central District of Illinois, the District of Colorado, the Eastern District of Wisconsin, and the Western District of Wisconsin. He is a member of the American Bar Association, the American Association for Justice, the Illinois State Bar Association, and the Chicago Bar Association. He has also served as a member of the Panel of Arbitrators of the American Arbitration Association. He is listed in Martindale-Hubbell with an AV rating.

During his over forty-year legal career, Ben Barnow has represented both plaintiffs and defendants in many types of litigation and has engaged in significant transactional work. He was General Counsel to one of the world's largest public relations agencies and presided as chairman of certain of its retirement trusts. Ben Barnow was an Associate Professor at Northern Michigan University from 1969-1971, where he taught business law and unfair competition. Mr. Barnow joined the law firm of Herrick, McNeill, McElroy & Peregrine in July 1971, where he became a partner in 1977.

As part of a series of articles by Law360 featuring notable plaintiff attorneys, Ben Barnow was recognized as a Titan of the Plaintiffs Bar, and Barnow and Associates, P.C. "a plaintiffs' class action outfit known for winning big-time antitrust and data breach settlements." Sindhu Sundar, Titan of the Plaintiffs Bar:

Ben Barnow, Law360 (Oct. 8, 2014), https://www.law360.com/articles/titan-of-the-plaintiffs-bar-ben-barnow (last visited June 3, 2019).

**Selected Cases**

<u>Data Security Breach Cases</u>

*Orr v. InterContinental Hotels Group, PLC.* Ben Barnow was appointed as one of Lead Class Counsel in this payment card data breach litigation. He successfully negotiated a class settlement providing a claim process for Class Members to seek reimbursement for certain expenses or fraudulent and unauthorized charges resulting from the data breach, subject to an aggregate cap of $1.55 million. The settlement was granted final approval.

*In re: Zappos.com Inc. Customer Data Security Breach Litigation.* Ben Barnow was one of Co-Lead Class Counsel and settlement class counsel in this litigation, which resulted in a landmark Ninth Circuit ruling recognizing the Article III standing of consumers harmed by data breaches. He also successfully opposed Zappos' petition for writ of certiorari to the Supreme Court of the United States, where he served as counsel of record for plaintiffs. After many years of litigation, he negotiated a settlement that was granted final approval. The Settlement provided Class Members with CAFA-compliant coupons that were redeemed for over $7 million.

*In Re: Sony Gaming Networks and Customer Data Security Breach Litigation,* **MDL 2258.** The Honorable Anthony J. Battaglia appointed Ben Barnow to the Plaintiffs' Steering Committee—a committee of seven firms established to lead the litigation—in this MDL proceeding involving over 60 cases relating to a data security breach that affected approximately 50 million consumers in the United States and Canada. A settlement agreement was entered into and was granted final approval. At the final fairness hearing, Judge Battaglia remarked: "Just in the final analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled. It's been a real pleasure dealing with you."

*In Re: TJX Retail Security Breach Litigation,* **MDL No. 1838.** Ben Barnow served as one of Co-Lead Settlement Class Counsel for the Consumer Track in this MDL proceeding relating to the theft of approximately 45 million credit and debit card numbers used at TJX stores and the personal information of over 454,000 TJX customers. Mr. Barnow took the lead in negotiating a settlement with TJX's attorneys that made available benefits valued at over $200 million to the Class. The Honorable Judge Young granted final approval to the settlement, which he referred to as "excellent," and as containing "innovative" and "groundbreaking" elements.

*In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation,* MDL No. **1998.** Ben Barnow served as one of Co-Lead Settlement Class Counsel in this forty-case MDL proceeding relating to a former Countrywide employee's theft and sale of millions of Countrywide customers' private and confidential information. Mr. Barnow negotiated a settlement that was granted final approval, making benefits valued at over $650 million available to approximately 17 million Settlement Class Members. In the opinion granting final approval to the settlement, the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process."

*In Re: Heartland Payment Systems Inc., Data Security Breach Litigation,* MDL No. **2046.** Ben Barnow served as one of Co-Lead Counsel for the Consumer Track in this MDL proceeding relating to what, at the time, was reported as one of the largest data security breaches in history. Mr. Barnow negotiated a settlement on behalf of a Settlement Class that is estimated to include more than 120 million members. Notice of the settlement was completed and only one objection was received. Final approval of the settlement was granted.

*Winstead v. ComplyRight, Inc.,* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this proceeding relating to the theft of approximately 665,000 individuals' private and confidential information (including Social Security numbers) from ComplyRight, Inc.'s web portal. Mr. Barnow and his Co-Lead Settlement Class Counsel negotiated a settlement that included the creation of a $3,025,000 settlement fund and which allowed Settlement Class members to claim, at their selection, a cash payment, a protection plan option, or reimbursement of up $200 in documented and unreimbursed out-of-pocket expenses incurred as a result of the Data Breach. Final approval of the settlement was granted.

*Lockwood v. Certegy Check Services, Inc.* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this consolidated proceeding relating to the theft of approximately 37 million individuals' private and confidential information from Certegy Check Services, Inc.'s computer databases. Mr. Barnow organized all plaintiffs' counsel and pending cases without the benefit of an MDL and negotiated a settlement that was granted final approval, making benefits valued at over $500 million available to Settlement Class Members. At the final fairness hearing, the Honorable Judge Merryday described the settlement as a "good deal," providing "a real benefit to a large class of persons" as "the result of the focused attention of skilled counsel for a protracted time."

*McGann v. Schnuck Markets, Inc.,* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this proceeding relating to the theft of the credit and

debit card information of an estimated 777,000 individuals from point-of-sale terminals at affected Schnucks stores. Mr. Barnow negotiated a settlement that has been granted final approval, making significant benefits available to the Settlement Class.

***Rowe v. Unicare Life and Health Insurance Co.*** Ben Barnow was Lead Counsel in this proceeding relating to the defendants' alleged failure to secure the private health information of approximately 220,000 individuals enrolled in the defendants' health insurance plans, resulting in such information being accessible to the public via the Internet. Mr. Barnow negotiated a settlement that was granted final approval, making benefits valued at over $20 million available to Settlement Class Members. At the preliminary approval hearing, the Honorable Judge Hibbler described the efforts of the parties as "exemplary."

## Deceptive Trade Practices and Other Consumer Protection Cases

***Gann v. Nissan North America, Inc.*** Ben Barnow served as one of Class Counsel in this case regarding defective continuously variable transmissions on 1.4 million 2013–2016 Nissan Altima vehicles. After successfully defeating Nissan's motions to dismiss the litigation in two separate courts, he negotiated a settlement providing reimbursement for out-of-pocket costs for prior transmission replacements and a warranty extension, collectively valued at over $444 million.

***Warner v. Toyota Motor Sales, U.S.A., Inc.*** Ben Barnow served as one of Co-Lead Counsel in this litigation regarding claims of excessive frame rust to certain Toyota vehicles, yielding a recent landmark settlement estimated at $3.4 billion. Under the settlement, owners of 2005–2010 Toyota Tacoma, 2007–2008 Toyota Tundra, and 2005–2008 Toyota Sequoia vehicles are eligible for free frame inspections for a period of twelve years from the date the vehicle was originally sold or leased, or one year from the date of the Final Order and Judgment, whichever is longer. Vehicles that exhibit excessive frame rust are eligible for a free frame replacement.

***Rafofsky v. Nissan North America, Inc.*** Ben Barnow served as Class Counsel in this litigation regarding the failure to timely deliver certain advertised infotainment apps on 2014 Infiniti Q50s. Class Counsel achieved a settlement in which class members could file claims for cash worth up to $85 or for vouchers to purchase of a new Infiniti vehicle worth up to $1,250.

***Palace v. DaimlerChrysler Corp.*** Ben Barnow was one of Co-Lead Class Counsel in this litigation relating to the defendant's sale of Neons containing allegedly defective head gaskets. After several years of litigation, a settlement was granted final approval, making up to $8.25 million available to Class members for reimbursement of repair costs and other expenses.

*Schulte v. Fifth Third Bank.* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this action relating to allegations that the defendant unlawfully re-sequenced debit card transactions in order to maximize overdraft fees. In this capacity, he negotiated a settlement with Defendant's counsel providing for the establishment of a $9.5 million settlement fund and including substantial injunctive relief, the present value of which Plaintiffs' expert estimated to be approximately $58.8 million over five years and $108.3 million over ten years. The settlement has been granted final approval.

*Schwab v. America Online, Inc.* (America Online Access Litigation). Ben Barnow served as Class Counsel and Co-Chair in this highly publicized litigation relating to AOL's representation that users would have unlimited access to AOL for $19.95/month and the connectivity problems that ensued in conjunction therewith. In the face of what was ultimately over one hundred class actions filed nationwide, Mr. Barnow organized over 50 law firms and set up the co-chairmanship and the Executive Committee, which brought order and resolution to this litigation. A settlement was reached and was granted final approval, resulting in a multi-million-dollar benefit to a Class estimated to include over 8 million people.

*Miner v. Philip Morris USA, Inc.,* Ben Barnow served as one of Class Counsel in this litigation concerning Philip Morris USA, Inc.'s practice of marketing and selling its Marlboro Lights and Marlboro Ultra-Lights cigarettes as less harmful to smoke than regular cigarettes when, in fact, they were not. A settlement was reached and granted final approval, providing for Philip Morris's payment of $45 million into an escrow account for the benefit of Class members.

*Boland v. McDonald's Corp.* (McDonald's Sweepstakes Litigation). As Co-Lead Class Counsel in this litigation, Ben Barnow coordinated the efforts of approximately 25 plaintiffs' firms. The litigation concerned certain McDonald's promotional games and arose from the fraudulent removal of winning game pieces from random public distribution. Mr. Barnow developed and accomplished the settlement concept; to wit, for a chance lost, a chance would be given. The settlement, valued at approximately $20 million, included fifteen $1 million prizes given away by random selection. The settlement included the United States and nine other countries.

*Campos v. Calumet Transload R.R., LLC,* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this litigation relating to the defendants' alleged negligent storage and handling of petroleum coke and coal at certain industrial storage facilities in Chicago, Illinois. Two settlements were reached which collectively provided for the payment of $1,455,000 for the benefit of Settlement Class members. The settlements were granted final approval.

*Fernandez v. Vitamin Shoppe Industries, Inc.* Ben Barnow served as Co-Lead Counsel in this national class action that settled, resulting in injunctive relief

regarding labeling practices, and additional relief by way of discount coupons and *cy pres* relief to appropriate charities.

***Gianopolous v. Interstate Brand Corp. and Interstate Bakeries Corp.*** Ben Barnow was appointed one of Class Counsel in this litigation concerning allegedly adulterated bakery goods. A settlement was reached and granted final approval, making valuable relief available to consumers.

***Glenz v. RCI, LLC.*** Ben Barnow served as one of three Class Counsel in this litigation involving the RCI Points program and allegations of improper use of points by RCI. The settlement made available cash benefits of approximately $19 million to members of the Settlement Class and included substantial injunctive relief. Final approval of the settlement has been granted.

***Heilman v. Perfection Corp.*** Ben Barnow served as Co-Lead Class Counsel in this national class action concerning allegedly defective dip tubes in over 14.2 million hot water tanks sold throughout the United States. In this capacity, Mr. Barnow organized twenty-three law firms and oversaw numerous filings in bringing about a national unified settlement that provided for a 100% recovery of out-of-pocket expenses and requisite repairs, including preventive replacement of all concerned dip tubes, whether or not the dip tubes had actually failed.

***In Re: Chicago Flood Litigation.*** As Co-Lead Class Counsel and a member of the Executive Committee, Ben Barnow was responsible for several major aspects of this class action, which included years of litigation, appellate practice, trial, and a multi-million-dollar settlement. Mr. Barnow argued a related portion of the matter before the Supreme Court of the United States, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), and was responsible for preparing the petition for a writ of certiorari and all related filings. At the Supreme Court level, opposing counsel was John Roberts, who now sits as Chief Justice of the Supreme Court of the United States.

***In Re: High Sulfur Content Gasoline Products Liability Litigation,*** MDL No. 1632 (**"Shell Oil"**). Ben Barnow served as Co-Lead Settlement Class Counsel in this 26-case MDL proceeding relating to the defendant's alleged sale of defective gasoline. A settlement was reached and was granted final approval, resulting in approximately $100 million being made available towards the satisfaction of consumers' claims.

***In Re: Mercury Class Action Litigation.*** Ben Barnow served as Co-Lead Class Counsel in this case relating to the location of mercury-containing gas regulators in and on real estate. A settlement was reached and granted final approval that provided for medical monitoring, removal of the regulators, and cash compensation to certain class members.

***In Re: M3Power Marketing Practices Litigation*, MDL No. 1704.** Ben Barnow was appointed Co-Lead Class Counsel in this MDL proceeding relating to the defendant's allegedly deceptive marketing and sale of M3Power shaving razors. A settlement was reached and granted final approval, making available benefits of more than $7 million to Class members.

***In Re: Pilot Flying J Fuel Rebate Contract Litigation.*** Ben Barnow served as one of Settlement Class Counsel in this litigation involving allegations that the defendants withheld portions of fuel discounts and rebates that Class members were contractually entitled to receive in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), and various state laws. The $84.9 million settlement was granted final approval.

***In Re: Starlink Corn Products Liability Litigation*, MDL No. 1403.** Ben Barnow served as Co-Lead Class Counsel in this MDL proceeding relating to the alleged inclusion of genetically engineered corn in the defendants' food products. A settlement was reached, valued at $9 million, including the return of up to $6 million to consumers on a fluid recovery/*cy pres* basis through price reduction on future purchases coupled with a cash payment to approved charities based on shortfall in the redemption.

***In Re: United Parcel Service, Inc., Shipper Excess Value Insurance Coverage Litigation.*** Ben Barnow was one of Settlement Class Counsel in this litigation. A settlement was reached and granted final approval, providing relief to UPS shippers who had paid premiums for excess value insurance coverage.

***Ori v. Fifth Third Bank.*** Ben Barnow served as one of Co-Lead Settlement Class Counsel in this action relating to inactive mortgage loans that were erroneously reported as active to Consumer Credit Reporting Agencies. The Settlement Class included approximately 55,000 individuals, and the settlement made available cash benefits of approximately $3,000,000 to members of the Settlement Class. Final approval of the settlement has been granted.

***Orrick v. Sonic Communications.*** Ben Barnow was one of Lead Class Counsel in this matter relating to the practice known as "slamming." The private actions and actions filed on behalf of various Attorneys General were consolidated. A settlement covering all of the pending cases and providing benefits of approximately $8.3 million was achieved and granted final approval. This litigation is believed to be the first class certification and settlement relating to the practice known as "slamming."

***Rosen v. Ingersoll-Rand Co., Kryptonite Corp.*** Ben Barnow was Co-Lead Class Counsel in this matter relating to allegedly defective bicycle locks. Mr. Barnow organized 18 U.S. and Canadian law firms and negotiated a settlement on behalf of Class members in the U.S. and Canada. The settlement was granted final approval,

providing valuable relief to purchasers of the allegedly defective U-shaped tubular cylinder bicycle locks in the U. S. and Canada.

***Schneider v. Dominick's Finer Foods, Inc.*** Ben Barnow was Co-Class Counsel in this matter relating to the defendant's alleged failure to deliver on representations of 100% ground beef. A settlement was reached and granted final approval, which included significant remedial relief in the form of shop signage regarding cleanliness and meat grinding practices, and fluid recovery mechanisms to compensate the class members by way of in-store sales and published coupons.

***Schwab v. Binney & Smith.*** Ben Barnow served as Co-Lead Class Counsel in this case relating to crayons that were produced for decades with talc, which allegedly contained, or was subject to containing, asbestos. Mr. Barnow negotiated a national class settlement that contributed to the reformulation of most crayons produced in this country, so as to eliminate the inclusion of talc and, thus, the alleged asbestos inclusion, and the settlement was granted final approval. This represented one of the largest classes ever certified, if not the largest.

***Siegel v. Syncronys.*** Ben Barnow was Co-Class Counsel in this nationwide class action concerning an allegedly defective computer product. The matter was settled, resulting in a remedy for the Class that provided for a 100% reimbursement on moneys spent for the product; the value of the settlement was estimated at $22 million.

***Smith v. J.M. Smucker Co.*** Ben Barnow was Class Counsel in this litigation relating to allegedly deceptive advertising practices. Mr. Barnow negotiated a national settlement and organized a group of plaintiffs' counsel from over 25 firms throughout the country who supported the settlement. The settlement was granted final approval, making available valuable relief to consumers of spreadable fruit products labeled "Simply 100% Fruit," including a change of labeling practices by the defendant, which added and maintained the following language, in prominent fashion, on the front label of its Simply 100% Fruit products: "Sweetened with fruit syrup from apple, pineapple or pear juice concentrate," thus fairly and fully advising consumers of the product they were purchasing.

***Stelk v. BeMusic, Inc.*** Ben Barnow served as Co-Lead Class Counsel in this litigation relating to charges for shipping and handling in the context of a "free" offer. The Class included an estimated 16 million members. A settlement was reached and granted final approval providing substantial relief to Class members, including a guaranteed minimum of $8 million.

## Antitrust Cases

***Wisconsin Civil Microsoft Antitrust Litigation.*** Ben Barnow served as one of Co-Lead Class Counsel in this indirect purchaser antitrust lawsuit. Mr. Barnow and his co-counsel successfully petitioned the Wisconsin Supreme Court to recognize the rights of indirect purchasers to recover under Wisconsin's antitrust laws. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis. 2005). Subsequently thereto, Mr. Barnow negotiated a settlement valued at approximately $224 million that was granted final approval.

***Arkansas, Kansas, South Dakota Civil Microsoft Antitrust Litigations.*** Ben Barnow served as a Co-Lead Class Counsel in the Arkansas, Kansas, and South Dakota Microsoft civil antitrust cases. Each of these cases settled, and the settlements were granted final approval.

***Microsoft Civil Antitrust Litigation,*** **MDL No. 1332.** Ben Barnow served as a member of the nine-member Plaintiffs' Lead Counsel Committee in this MDL antitrust proceeding before Judge Motz in the United States District Court for the District of Maryland.

***Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.,*** Ben Barnow served as a Co-Lead Counsel for third-party payor plaintiffs in this antitrust action where settlements were reached and finally approved collectively providing for the payment of $9,850,000 for the benefit of the Settlement Class.

***Loeb Industries, Inc. v. Sumitomo Corp.*** Ben Barnow served as Co-Lead Counsel in this nationwide antitrust class action, which sought recovery on behalf of scrap copper purchasers who were allegedly harmed by activities designed to manipulate the copper market. A $20 million cash settlement with one of the defendants (Merrill Lynch) was reached.

***Vichreva v. Cabot Corp.*** Ben Barnow served as Co-Lead Counsel in this Florida antitrust litigation. An $825,500 common fund, which is believed to be the largest per-consumer Carbon Black state court antitrust class action settlement in the country at that time, was obtained.

## Public Speaking Engagements

1. HarrisMartin's Equifax Data Breach Litigation Conference (Atlanta, GA, Nov. 10, 2017), topic: "Settlements" (Program Co-Chair)

2. Bridgeport Continuing Education's 2016 Class Action Litigation & Management Conference (Los Angeles, CA, Apr. 15, 2016) (Program Co-Chair)

3. HarrisMartin's Data Breach Litigation Conference: The Coming of Age (San Diego, CA, Mar. 25, 2015), topic: "Creative Approaches to Settling Data Breach Cases."

4. Bridgeport Continuing Education's 2014 National Consumer Class Action Conference (Chicago, IL, Jun. 12-13, 2014); topic: "Privacy/TCPA Class Actions: State of the Law, Claims and Defenses, What Does the Future Hold?"

5. HarrisMartin's MDL Conference: Target Data Security Breach Litigation (San Diego, CA, Mar. 26, 2014); topic: "Settlement of a Data Breach Case."

6. NetDiligence Cyber Risk & Privacy Liability Forum (Marina del Rey, CA, Oct. 11–12, 2012).

7. 25th Annual Producer Conference (Stowe, VT, Sept. 10–12, 2012); topic: "Cyber 2.0—The Evolution of Cyber in the Boardroom."

8. NetDiligence 2012 Cyber Risk & Privacy Liability Forum (Philadelphia, PA, June 4–5, 2012); topic: "State of the Cyber Nation—Cases, Theories, and Damages."

9. Tulane University Law School's symposium on *The Problem of Multidistrict Litigation* (February 15–16, 2008); topic: "The Practicalities of Multidistrict Litigation."

# ANTHONY L. PARKHILL

## BARNOW AND ASSOCIATES
*a professional corporation*
ATTORNEYS AT LAW

Anthony L. Parkhill has more than five years of litigation experience and has spent the last four years prosecuting some of the nation's largest complex consumer fraud, automotive defect, and privacy class action matters.

Mr. Parkhill graduated from DePaul University with a Bachelor's degree in Political Science in 2010. He received his Juris Doctor from the University of Chicago Law School in 2014. He is licensed to practice in the State of Illinois. He is also admitted to practice before the United States Courts of Appeals for the Seventh Circuit, the United States District Court for the Northern District of Illinois, the United States District Court for the Central District of Illinois, and the United States District Court for the District of Colorado. He is a member of the American Bar Association, the Illinois State Bar Association, and the Chicago Bar Association.

Mr. Parkhill has played an active role in litigating the following class action matters that successfully settled: *Gann v. Nissan North America, Inc.* (M.D. Tenn.) (settlement reached in case regarding defective transmissions providing reimbursement for out-of-pocket costs for prior transmission replacements and a warranty extension, collectively valued at over $444 million); *Warner v. Toyota Motor Sales, U.S.A., Inc.* (C.D. Cal.) (settlement reached regarding allegations of excessive frame rust to certain vehicles providing benefits valued at in excess of $3.4 billion to Settlement Class members); *Orr v. InterContinental Hotels Group, PLC* (N.D. Ga.) (settlement reached in payment card breach case providing reimbursement for certain expenses subject to an aggregate cap of $1.55 million); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.*, (E.D. Wis.) (settlements reached with four of six defendants in this ongoing international antitrust action providing for the payment of $9,850,000); *Campos v. Calumet Transload R.R., LLC* (N.D. Ill.) (settlements reached providing for payment of $1,455,000 for the benefit of the Settlement Class in action relating to the alleged negligent storage and handling of petroleum coke and coal at certain industrial storage facilities); *Rafofsky v. Nissan North America, Inc.*, (settlement providing class members with up to $85 cash or vouchers worth up to $1,250); and *In re Zappos Security Breach Litigation*, (D. Nev.) (settlement providing class with benefits in excess of $7 million); and *Cullan and Cullan LLC v. m-Qube, Inc.*, (D. Neb.), (making over $1 million available to victims of cell phone cramming).

Mr. Parkhill was appointed as one of Class Counsel in *Rafofsky v. Nissan North America, Inc.*, where a class settlement was granted final approval.