TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
THEODORE MAYA (SBN 223242)
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

BEN BARNOW*
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL*
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312.621.2000

*Attorneys for Plaintiffs and the Proposed
Class* (*Admitted *pro hac vice*)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.,<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>Hon. Edward J. Davila<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:      September 16, 2021<br>TIME:      9:00 A.M.<br>JUDGE:   Hon. Edward J. Davila<br>CTRM:     4, 5th Floor |

1

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

1

**DECLARATION OF TINA WOLFSON**

2

I, Tina Wolfson, declare as follows:

3

1.　　I am a partner and founding member of Ahdoot & Wolfson, PC ("AW"), and a

4

member in good standing of the bar of the State of California, the State of New York, and the

5

District of Columbia. I submit this declaration in support of Plaintiffs' Motion for Preliminary

6

Approval of Class Action Settlement in this action, as memorialized in the Class Action Settlement

7

Agreement and Release ("Settlement Agreement") filed concurrently herewith.[1] I make the

8

following declaration based on my own personal knowledge and, where indicated as based on

9

information and belief, that the following statements are true. If called upon as a witness, I could

10

and would competently testify as follows.

11

**INTRODUCTION**

12

2.　　The proposed Settlement is the product of hard-fought, arms-length negotiations

13

between experienced counsel after necessary confirmatory discovery by Plaintiffs' counsel,

14

settlement negotiations that included mediation before the Hon. Judge Jay C. Gandhi (Ret.) of

15

JAMS, and extensive ongoing negotiation efforts between counsel for Plaintiffs and Defendant

16

The Kroger Co. ("Kroger"). The Settlement secures a significant recovery for the putative Class

17

Members, eliminates the risks of continued litigation, and is an excellent data breach class action

18

settlement result.

19

3.　　The Settlement, if approved, would resolve all class claims against Kroger only, on

20

behalf of approximately 3,825,200 million settlement class members relating to Accellion's File

21

Transfer Appliance ("FTA") Data Breach (the "FTA Data Breach").

22

4.　　The Settlement would establish a non-reversionary cash fund of $5 million to pay

23

for valid claims. Under the terms of the Settlement, Class Members may submit Claim Forms and

24

elect to receive one of the following benefits: 1) a cash payment, calculated in accordance with the

25

terms of the Settlement Agreement (with double the amount to California residents in light of the

26

statutory claims available to them) ("Cash Fund Payment"); or (2) two years of Credit Monitoring

27

28

---

[1]　　Unless otherwise noted, all capitalized terms not separately defined herein have the meaning ascribed to them in the Settlement Agreement.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

and Insurance Services ("CMIS"); or 3) a payment for reimbursement of Documented Losses of up to $5,000, with Reasonable Documentation and other supporting documents ("Documented Loss Payment"). The Settlement also provides for robust injunctive relief which includes, *inter alia*, confirmation that Class Members' sensitive PII is secured, dark web monitoring for five years for fraudulent activity relating to Class Members' PII, and various enhancements to Kroger's third-party vendor risk management program and other data privacy enhancements.

5.     I am informed and believe that if approved, the Settlement would resolve all claims against Kroger in the following pending class actions: *Jones v. The Kroger Co.*, No. 1:21-cv-00146 (S.D. Ohio) ("*Jones*"), *Govaert et al. v. The Kroger Co.*, No. 1:21-cv-00174 (S.D. Ohio), *Doty et al. v. The Kroger Co.*, No. 1:21-cv-00198 (S.D. Ohio), *Strohm v. The Kroger Co.*, No. 1:21-cv-00226 (S.D. Ohio), *Abrams et al. v. The Kroger Co.*, No. 1:21-cv-00240 (S.D. Ohio), *Buck v. The Kroger Co.*, No. 1:21-cv-00279 (S.D. Ohio), and *Baer v. The Kroger Co.*, No. 1:21-cv-00323 (S.D. Ohio) (collectively, the "Ohio Actions").

6.     I am also informed and believe that the Settlement also would resolve the individual, *pro se* claims in *Martin v. Kroger Co.*, No. 1:21-cv-00717-JRS-DML (S.D. Ind.) ("*Martin*").

7.     For all the reasons explained herein, I believe the proposed Settlement to be fair, reasonable, and adequate, and in the best interests of the proposed Settlement Class.

### THE COMMENCEMENT OF THE LITIGATION

8.     Plaintiffs' First Amended Class Action Complaint ("FAC") alleges that on or about February 19, 2021, Kroger publicly confirmed that the PII of certain Kroger pharmacy customers and former and current employees was compromised in the FTA Data Breach. The FAC alleges affected PII included names, email addresses, dates of birth, home addresses, phone numbers, social security numbers, salary information, and certain health and prescription information. During the FTA Data Breach, unauthorized persons were able to exploit multiple vulnerabilities in Accellion's FTA and gain access to the sensitive PII of Kroger pharmacy customers and current and former employees.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

9.      On March 17, 2021, this action was filed on behalf of Plaintiffs Ricky Cochran and Alain Berrebi, naming Accellion and Kroger as co-defendants. ECF No. 1. Plaintiffs filed the FAC on June 25, 2021, adding a new Plaintiff, Jaramey Stobbe, to the action. ECF No. 27. I am informed and believe that each of the Plaintiffs received notification from Kroger indicating that their PII was accessed during the FTA Data Breach.

10.     The FAC alleges that, *inter alia*, Kroger and Accellion: (a) failed to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' PII; (b) failed to prevent the FTA Data Breach; (c) failed to detect security vulnerabilities leading to the FTA Data Breach; and (d) failed to disclose that their data security practices were inadequate to safeguard Class Members' PII. ECF No. 27 ¶¶ 48, 54, 64-70, 113. With respect to Kroger, Plaintiffs alleged that it had a duty to, and impliedly promised Plaintiffs and Class Members that it would, protect their sensitive PII from unauthorized disclosure and handle this data securely, and that it failed to do so by entrusting the PII to a third-party file transfer vendor whose products and services were prone to security vulnerabilities that left Class Members' PII exposed. *Id.* ¶¶ 54, 89.

11.     Prior to filing the instant action, Plaintiffs' counsel drafted and served Kroger with a detailed notice letter pursuant to the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(b), demanding that Kroger provide a class-wide remedy for alleged violations of the CCPA. ¶ 120.

12.     Kroger has denied the allegations set forth in the CCPA demand letter and the FAC. Kroger's written response to the CCPA demand included an assertion that it had cured any violation of the CCPA, and that it had (i) sent notice to all impacted individuals and offered two years of credit monitoring and ID theft insurance, (ii) reported the incident and worked closely with the FBI, (iii) recovered the impacted data and received evidence that any remaining copies of the data were deleted, and (iv) confirmed that none of the impacted data was published or offered for sale on the dark web.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

**PLAINTIFFS' LITIGATION EFFORTS AND WORK ON BEHALF OF THE CLASS**

13.     The attorneys at AW who worked on this matter have stayed abreast of all material developments involving the FTA Data Breach, including those impacting Kroger. We have gathered the press releases and statements concerning the FTA Data Breach, reviewed the information Kroger has provided on its website about the breach (*see* https://www.kroger.com/i/accellion-incident (last visited June 23, 2021)), reviewed Kroger's data breach notification letters, reviewed Accellion's Mandiant forensic report, and kept informed of updates and new information relating to the FTA Data Breach.

14.     Following commencement of this action, Plaintiffs and Kroger opened a dialogue about case management issues and engaged in multiple meet-and-confer discussions. Attorneys at Barnow & Associates, P.C. and those from AW (collectively, "Plaintiffs' Counsel") already had been engaging in efforts to coordinate all of the related cases filed in this Court relating to the Accellion FTA Data Breach. These efforts included drafting a stipulation to consolidate all of those cases and set deadlines for submitting leadership applications. After this action was filed, Plaintiffs' Counsel coordinated with Kroger's counsel to facilitate Kroger's inclusion in a consolidation stipulation. When efforts to stipulate to consolidate all of the Accellion FTA Data Breach cases filed in this Court failed, AW filed a motion to consolidate the cases. *See Brown v. Accellion, Inc.*, No. 5:21-01155-EJD (N.D. Cal.), ECF No. 37. This motion was contested by some of the plaintiffs' counsel in other FTA Data Breach cases, including some of the lawyers behind the Ohio Actions. *See id.*, ECF Nos. 40-41. The motion to consolidate the Northern District of California cases remains pending as of the execution date of this Declaration.

15.     Some of the plaintiffs' counsel in the Ohio Actions who had cases against Accellion pending before this Court did not join the consolidation stipulation.

16.     I am informed and believe that the *pro se* plaintiff in *Martin* has filed a number of amended complaints in response to the Court's *sua sponte* orders regarding defective jurisdictional allegations.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

## MEDIATION AND SETTLEMENT NEGOTIATIONS

17.     As a result of the Parties' continued meet-and-confer efforts, they were able to reach an agreement to participate in mediation to attempt to resolve this matter. The mediation took place on May 13, 2021 before the Hon. Judge Jay C. Gandhi (Ret.) of JAMS. Judge Gandhi is a highly respected and experienced class action mediator who previously was a judge for the United States District Court for the Central District of California. He has overseen the mediation of numerous data privacy class actions that reached a successful outcome and settled.

18.     Prior to the mediation session, the Parties exchanged information to prepare for and facilitate a productive mediation session. The Parties communicated their respective positions on the litigation and the Parties' claims and defenses with each other and the mediator. Plaintiffs received and analyzed data from Kroger relating to the impact of the FTA Data Breach on Kroger, including specific information concerning the categories of individuals who received breach notification letters from Kroger (e.g. customers, employees), the nature of the PII impacted, and the number of Class Members impacted.

19.     On May 13, 2021 the Parties participated in a full-day video-conferencing mediation session with Judge Gandhi. With Judge Gandhi's guidance, the Parties had a productive mediation session characterized by zealous advocacy by counsel for both sides. Late in the day, the Parties reached an agreement in principle to settle the litigation.

20.     The Parties engaged in confirmatory discovery to verify not only the details about the impact of the FTA Data Breach and information about the Class Members, but also the fairness of the Settlement.

21.     The Parties expended significant efforts in negotiating and ironing out the numerous details of the Settlement in addition to formal mediation. Following the mediation, the Parties continued to work together to finalize the Settlement's terms. During this time, the Parties exchanged drafts of the Settlement Agreement and its exhibits, and Class Counsel negotiated numerous details to maximize the benefits to the Class Members.

22.     During the Settlement negotiations process, the Parties deferred any discussion concerning the maximum Service Awards to be sought by the proposed Class Representatives until after reaching an agreement on all material terms of the Settlement.

23.     Plaintiffs' Counsel solicited competing bids from four separate third-party administrators for settlement notice and administration. With each of the potential settlement administrators, proposed Class Counsel discussed the notice and distribution plans agreed to in the Settlement. Counsel ultimately negotiated an agreement with Epiq Class Action and Mass Tort Solutions, LLC ("Epiq"). Proposed Class Counsel have both previously worked with Epiq on different matters. Epiq estimates that the total administration and notice charges in this matter will be approximately $740,948 to $827,299. In my experience, this estimate is reasonable in the context of this proposed Settlement, and includes all costs associated with providing direct notice, class member data management, CAFA notification, telephone support, claims administration, creation and management of the Settlement Website, disbursements and tax reporting, and includes postage (which is estimated to be approximately $320,000 to $350,000).

24.     The Notice Plan and each document comprising the Class Notice were negotiated and exhaustively refined, with input from Cameron Azari, the expert at Epiq, to ensure that these materials will be clear, straightforward, and understandable by Class Members, and that they fully comply with due process, CAFA, and all requirements of Rule 23.

25.     Following consultation with Epiq and based upon Class Counsel's previous experience in and knowledge of similar cases, Class Counsel expect the claims rate in this Settlement to be between 1-3%. In my opinion, the claims rates in previous data breach settlements (detailed in the concurrently filed Motion for Preliminary Approval of Class Action Settlement) support this conclusion. The Settlement's proposed distribution plan is similar to past distributions of settlements negotiated and recommended by proposed Class Counsel.

26.     Based on my experience, I estimate that California Claimants will receive approximately $182 at 1%, $74 at 2%, and $36 at 3%, and non-California Claimants will receive approximately $91 at 1%, $37 at 2%, and $18 at 3%. This estimate is based on a number of

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

assumptions regarding the number of claims for CMIS and the Cash Fund Payment, the amount of Documented Loss claims, the amount awarded by the Court for Service Awards and attorneys' fees and expenses, and anticipated administration and notice fees at different claims rates.

27.     Any amount remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of the Settlement, will be paid to the proposed Non-Profit Residual Recipient: Rose Foundation's Consumer Privacy Rights Fund ("Rose Foundation"), a 26 U.S.C. 501(c)(3) non-profit organization. The Rose Foundation's efforts are directly related to the subject matter of this action and the organization has been approved as the recipient of residual settlement funds in other data breach class action settlements. Proposed Class Counsel have no relationship with the Rose Foundation.

**SUMMARY OF CONFIRMATORY INFORMATION RECEIVED FROM KROGER**

28.     Through the confirmatory discovery process, Plaintiffs have confirmed the following information set forth in paragraphs 29 to 38:

29.     Kroger discontinued its use of Accellion and FTA, reported the incident to law enforcement, and initiated its own investigation.

30.     Kroger contends that during certain meetings regarding the replacement for the FTA product, Accellion never informed Kroger that the FTA product was insecure or ill-suited for its purpose of providing securing file transfers, but, rather, represented that the opposite is true.

31.     Prior to the disclosure of the FTA Data Breach, Kroger already had purchased from Accellion the next generation file transfer product, known as Kiteworks, and was on target to complete migration to this product, from the breached FTA product, by March 2021.

32.     Accellion supported the FTA product platform utilized by Kroger up to the announcement of the FTA Data Breach.

33.     Accellion represented that the FTA product would remain licensed and supported during the transition to Kiteworks.

34.     Following announcement of the FTA Data Breach, Kroger worked with Accellion regarding the investigation.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

35.    Kroger also reported the incident to the FBI and activated Verizon's Incident Response support team to analyze relevant information, review impacted data, and prepare notification to affected individuals.

36.    Approximately 3,825,200 Kroger employees and customers were impacted by the FTA Data Breach. Of the total individuals impacted, approximately 2,458,800 were Kroger employees; 1,324,600 were Kroger customers; and 23,800 were both employees and customers of Kroger. In California approximately 150,000 individuals were impacted.

37.    Kroger learned of the FTA Data Breach on or about January 23, 2021, and on February 2, 2021, it received a ransom demand in exchange for a commitment not to disseminate Kroger's data. Kroger informed the FBI of the demand. On February 18, 2021, Kroger paid a ransom to recover the data. The extortion entity returned the data the next day, along with a video purporting to show the deletion of Kroger's files.

38.    Kroger reports that it continually has monitored the dark web to make certain that the data was not retained or disseminated.

## THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

39.    I believe the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of Plaintiffs and putative Class Members. Despite my strong belief in the merits of this litigation and likelihood of success as trial, I nonetheless believe that the benefits to Plaintiffs and the putative Class pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before Plaintiffs and putative Class Members receive any benefits should the action proceed to trial; the possibility of a negative outcome at trial; and the possibility of a negative outcome post-trial should Defendant appeal a judgment in favor of the putative Class. This Settlement provides significant benefits now and is in the best interests of all putative Class Members.

40.    In my opinion, the Settlement presents a robust relief package and valuable outcome for the Settlement Class compared to other recent data breach class action settlements. The chart below demonstrates the quality of this Settlement as compared to other data breach

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

settlements (on a per capita basis per class member). Based on review of the record at the cases

cited below by AW attorneys, as well as AW participation in some of these cases, I believe the

information in chart below is true and accurate.

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member | Credit Monitoring |
|---|---|---|---|---|
| *Cochran et al. v. The Kroger Co.* | 3.82M | $5M | $1.31 | 2 years |
| *In re Target Corp. Customer Data Breach Security Litigation* | 97.5M | $10M | $0.10 | Documented Cost Reimbursement |
| *In re LinkedIn User Privacy Litig.* | 6.4M | $1.25M | $0.20 | N/A |
| *In re The Home Depot Inc. Customer Data Security Breach Litig.* | 40M | $13M | $0.33 | 18 Months |
| *In re Yahoo! Inc. Customer Data Breach Litigation* | 194M | $117.5M | $0.61 | 2 years |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | 4.5M | $2M | $0.44 | 2 years |
| *Atkinson, et al. v. Minted, Inc.* | 4.1M | $5M | $1.22 | 2 years |
| *In re Experian Data Breach Litigation* | 16M | $22M | $1.37 | 2 years |
| *In re Anthem, Inc. Data Breach Litigation* | 79.2M | $115M | $1.45 | 2 years |
| *In re Equifax Inc. Data Security Breach Litigation* | > 147M | $380.5M | $2.59 | 4 years |
| *In re Premera Blue Cross Customer Data Security Breach Litigation* | 8.86M | $32M | $3.61 | 2 years |
| *Winstead v. ComplyRight, Inc.* | 665,689 | $3.025M | $4.54 | 2   years |

41.     The proposed Settlement was entered into by Plaintiffs with the benefit of the

substantial experience of Plaintiffs' Counsel. In my opinion and based on my decades of

experience in privacy litigations, Plaintiffs' Counsel had all of the information necessary to

properly evaluate the case and determine the terms and conditions of the proposed Settlement.

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

42.    Negotiations regarding the Settlement were conducted at arm's length, in good faith, free of any collusion, and under the supervision of Judge Gandhi.

43.    Plaintiffs' Counsel knowledge of facts of this case and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to go to mediation with Kroger, and the decision to recommend that the Court grant preliminary approval to the Settlement.

44.    The proposed Class Representatives have shown that they are well-suited to represent the Settlement Class, have actively participated in the litigation, and will continue to do so. They do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members.

45.    Since the litigation was commenced, the Plaintiffs have been dedicated and active participants. They investigated the matter prior to and after retaining counsel, participated in the client and case vetting process, reviewed and approved the initial complaints and the operative FAC, kept in close contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement. In my opinion, each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts.

46.    During the Settlement negotiations process, the Parties deferred any discussion concerning the Service Awards to be sought by the proposed Class Representatives until after reaching an agreement on all material terms of the Settlement.

47.    As of June 15, 2021, AW expended $332,204 in total lodestar and incurred $15,039.10 in expenses, which it will detail in a Motion for Award of Attorneys' Fees and Expenses to be filed prior to the Objection Deadline, provided that the Court preliminarily approves the proposed Settlement.

## AHDOOT & WOLFSON, PC FIRM EXPERIENCE

48.     At all times, AW had the experience, expertise, and resources to effectively litigate any all issues related to this litigation.

49.     In March 1998, Robert Ahdoot and I founded Ahdoot & Wolfson, PC ("AW"), now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-competitive business practices, employee rights, defective products, civil rights, and taxpayer rights. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its successful existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring hundreds of millions of dollars to the victims, and affecting real change in corporate behavior. A copy of the firm's resume is attached hereto as **Exhibit 1.**

50.     AW has been on the cutting-edge of privacy litigation since the late 1990s, when its attorneys successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, they were novel and hidden from public scrutiny at the time AW was prosecuting them. Our work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation. AW has been at the forefront of privacy-related litigation since then.

51.     AW has been appointed lead counsel in numerous complex consumer class actions. The following are some examples of recent class actions that AW has litigated to conclusion or are currently litigating on behalf of clients - either as Class Counsel, proposed Class Counsel or members of a Court appointed Plaintiff Steering Committee. *See* **Exhibit 1**.

52.     As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, AW achieved a settlement conservatively valued at over $150 million. Under that settlement, each

class member was entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian also provided robust injunctive relief. Judge Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

53.     As a member of a five-firm Plaintiffs' Steering Committee ("PSC") in the *Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.) (Hon. Michael H. Simon), arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members, AW was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million.

54.     In *The Home Depot, Inc., Customer Data Sec. Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (Hon. Thomas W. Thrash Jr.), AW served on the consumer PSC and was instrumental in achieving a $29 million settlement fund and robust injunctive relief for the consumer class.

55.     As co-lead counsel in *Gordon v. Chipotle Mexican Grill, Inc*., No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello), AW secured a settlement for the nationwide class that provided for up to $250 in claimed damages or $10,000 in extraordinary damages.

56.     In *Adlouni v. UCLA Health Sys. Auxiliary*, No. BC589243 (Cal. Super. Ct. Los Angeles Cnty.) (Hon. Daniel J. Buckley), AW, as a member of the PSC for patients impacted by a university medical data breach, achieved a settlement providing two years of credit monitoring, a $5,275,000 fund, and robust injunctive relief.

57.     AW's efforts have also shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), AW successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited routinely in briefing on Article III and data breach standing, was the first appellate decision to consider the issue of Article

III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). The Seventh Circuit concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

58.     Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), I was chosen by Judge Jackson to serve as a member of the Plaintiffs' Steering Committee. AW briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

59.     AW's other ongoing privacy class actions include *In re Ring LLC Privacy Litigation*, No. 2:19-cv-10899-MWF-RAO (C.D. Cal.) (Hon. Michael W. Fitzgerald) (serving as co-lead counsel), *In re Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.) (Hon. Lucy H. Koh) (same), *In re Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila) (same), and *In re Ambry Genetics Data Breach Litigation*, No. 8:20-cv-791-CJC-KES (C.D. Cal.) (Hon. Cormac J. Carney) (same).

60.     AW attorneys also have served or are serving as plaintiffs' counsel in consumer privacy rights cases involving the right to control the collection and use of biometric information. *See, e.g., Rivera v. Google LLC*, No. 2019-CH-00990 (Ill Cir. Ct.) (Hon. Anna M. Loftus); *Azzano v. Google LLC*, No. 2019-CH-11153 (Ill. Cir. Ct.) (Hon. Anna M. Loftus); *Molander v. Google LLC*, No. 5:20-cv-00918-SVK (N.D. Cal.) (Hon. Susan van Keulen); and *Acaley v. Vimeo, Inc.*, No. 1:19-cv-7164 (N.D. Ill.) (Hon. Matthew F. Kennelly).

61.     In addition, AW has served or is serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*,

No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

62.     AW has decades of experience in the prosecution of class actions, including data breach and privacy lawsuits such as this action. AW can more than adequately represent the Settlement Class.

63.     Based on my experience and my knowledge regarding the factual and legal issues in this matter, and given the substantial benefits provided by the Settlement, it is my opinion that the proposed Settlement in this matter is fair, reasonable, and adequate, and is in the best interests of the Settlement Class Members.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of June 2021, at Burbank, California.

Tina Wolfson

DECLARATION OF TINA WOLFSON ISO PRELIMINARY APPROVAL

**EXHIBIT 1**



Ahdoot & Wolfson, PC ("AW") is a nationally recognized law firm founded in 1998 that specializes in complex and class action litigation, with a focus on privacy rights, unfair and anti-competitive business practices, consumer fraud, employee rights, defective products, civil rights, and taxpayer rights and unfair practices by municipalities. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its successful existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring billions of dollars to the victims, and affecting real change in corporate behavior.

<u>Results</u>

AW has achieved excellent results as lead counsel in numerous complex class actions.

In *Alvarez v. Sirius XM Radio Inc.*, No. 2:18-cv-08605-JVS-SS (C.D. Cal.) (Hon. James V. Selna), a breach of contract class action alleging that defendant did not honor its lifetime subscriptions, AW reached a nationwide class action settlement conservatively valued at approximately $420 million. The settlement extends the promised lifetime subscription for the lifetime of class members who have active accounts, and provides the opportunity for class members with closed accounts to reactivate their accounts and enjoy a true lifetime subscription or recover $100. The district court had granted the motion to compel arbitration on an individual basis, and AW appealed. AW reached the final deal points of the nationwide class action settlement literally minutes prior to oral argument in the Ninth Circuit.

As a member of the Plaintiffs' Executive Committee in the *Apple Inc. Device Performance Litigation*, No. 5:18-md-2827-EJD (N.D. Cal.) (Hon. Edward J. Davila), AW helped achieve a nationwide settlement of $310 million minimum and $500 million maximum. The case arose from Apple's alleged practice of deploying software updates to iPhones that deliberately degraded the devices' performance and battery life.

In *Eck v. City of Los Angeles*, No. BC577028 (LASC) (Hon. Ann I. Jones), AW achieved a $295 million class settlement in a case alleging that an 8% surcharge on Los Angeles electricity rates was an illegal tax. Final settlement approval was affirmed on appeal in October 2019.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, AW achieved a settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

In *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon. Edward J. Davila), a case arising from McAfee's auto renewal and discount practices, AW and co-counsel achieved a settlement that made $80 million available to the class and required McAfee to notify customers regarding auto-renewals at an undiscounted subscription price and change its policy regarding the past pricing it lists as a reference to any current discount.

In *Lavinsky v. City of Los Angeles*, No. BC542245 (LASC) (Hon. Ann I. Jones), a class action alleging the city unlawfully overcharged residents for utility taxes, AW certified the plaintiff class in litigation and then achieved a $51 million class settlement.

As co-lead counsel in *Berman v. Gen. Motors, LLC*, No. 2:18-cv-14371-RLR (S.D. Fla.) (Hon. Robin L. Rosenberg) (vehicle oil consumption defect class action), AW achieved a $40 million settlement.

*Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing & Sales Practices Litigation*, No. 1:16-md-02743-AJT-TRJ (E.D. Va.) (Hon. Anthony J. Trenga) arose from alleged misrepresentations of laminate flooring durability, which was coordinated with MDL proceedings regarding formaldehyde emissions. As co-lead class counsel for the durability class, AW was instrumental in achieving a $36 million settlement.

In *McKnight v. Uber Technologies, Inc.*, No. 4:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar), AW achieved a $32.5 million settlement for the passenger plaintiff class alleging that Uber falsely advertised and illegally charged a "safe rides fee."

In *Pantelyat v. Bank of America, N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan), a class action arising from allegedly improper overdraft fees, AW, serving as sole class counsel for plaintiffs, achieved a $22 million class settlement, representing approximately 80% of total revenues gleaned by the bank's alleged conduct.

### Current Noteworthy Leadership Roles

Most recently, AW was selected to serve as interim co-lead class counsel in the *StubHub Refund Litigation*, No. 4:20-md-02951-HSG (N.D. Cal.) (Hon. Haywood S. Gilliam, Jr.). This consolidated multidistrict litigation alleges that StubHub retroactively changed its policies for refunds for cancelled or rescheduled events as a result of the Covid-19 pandemic and refused to offer

refunds despite promising consumers 100% of their money back if events are cancelled. In appointing Ms. Wolfson as Interim Co-Lead Counsel, Judge Gilliam noted that while competing counsel were qualified, her team "proposed a cogent legal strategy," "a process for ensuring that counsel work and bill efficiently" and "demonstrated careful attention to creating a diverse team."

Ms. Wolfson was appointed, after competing applications, to serve as interim co-lead class counsel in the *Ring LLC Privacy Litigation*, No. 2:19-cv-10899-MWF-RAO (C.D. Cal.) (Hon. Michael W. Fitzgerald), a consolidated class action arising from Ring's failure to implement necessary measures to secure the privacy of Ring user accounts and home-security devices, and failure to protect its customers from hackers despite being on notice of the inadequacies of its cybersecurity.

Judge Koh selected Ms. Wolfson and AW to serve as interim co-lead class counsel in the *ZOOM Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.) (Hon. Lucy H. Koh), a class action alleging Zoom's failure to implement adequate security protocols for its video-conferencing platform that breached millions of consumers' privacy, fell well short of its promises, and diminished the value of the products and services it provided.

In *Clark v. American Honda Motor Co., Inc.*, No. 2:20-cv-03147-AB-MRW (C.D. Cal.) (Hon. André Birotte Jr.), Ms. Wolfson was appointed co-lead counsel in a class action arising from unintended and uncontrolled deceleration in certain Acura vehicles. In selecting Ms. Wolfson from competing applications, Judge Birotte noted: "The Court believes that Ms. Wolfson brings particular attention to the virtues of collaboration, efficiency, and cost-containment which strike the Court as especially necessary in a case such as this. Ms. Wolfson's appointment as Co-Lead also brings diversity to the ranks of attorneys appointed to such positions: such diversity is not simply a "plus factor" but the Court firmly believes that diverse perspectives improve decision-making and leadership."

AW was appointed to serve as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), a consumer class action arising out of Google's allegedly unlawful collection and use of mobile device location information on all Android and iPhone devices.

AW also serves on the Plaintiffs' Executive Committees in *Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-2921-BRM-JAD (D.N.J.) (Hon. Brian R. Martinotti), a class action alleging textured breast implants caused a rare type of lymphoma and in *ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-2905-JAK-FFM (C.D. Cal.) (Hon. John A. Kronstadt), a class action alleging a dangerous defect in car airbag component units.

AW also was recently selected to serve on the PEC in the *Robinhood Outage Litigation*, No. 3:20-cv-1626-JD (N.D. Cal.) (Hon. James Donato), a consolidated case arising from a March 2020 outage of the online stock trading platform.

In the *Kind LLC "All Natural" Litigation*, No. 1:15-md-02645-WHP (S.D.N.Y.) (Hon. William H. Pauley III), AW was selected as interim co-lead class counsel after competing applications. AW certified three separate classes of New York, California, and Florida consumers who purchased Kind LLC's products in a false labeling food MDL.

As part of the leadership team in *Novoa v. The Geo Group, Inc.*, No. 5:17-cv-2514-JGB-SHK (C.D. Cal.) (Hon. Jesus G. Bernal), AW certified a class of immigration detainees challenging private prison's alleged forced labor practices.

In the *Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.) (Hon. Brian M. Cogan), a class action alleging an anticompetitive conspiracy among three dominant dental supply companies in the United States, AW served on the plaintiffs' counsel team that brought in an $80 million cash settlement for the benefit of a class of approximately 200,000 dental practitioners, clinics, and laboratories.

In *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-09066-SDW-ESK (D.N.J.) (Hon. Susan D. Wigenton), a class action alleging that a standardized "no-poach" agreement among Jackson Hewitt and its franchisees limited mobility and compensation prospects for the tax preparer employees, AW is asserting claims on behalf of consumers under both federal antitrust and California employment laws.

In *Powell Prescription Center v. Surescripts, LLC*, No. 1:19-cv-00627 (N.D. Ill.) (Hon. John J. Tharp. Jr.), AW represents pharmacies in a class action arising from Surescripts' alleged monopolies in both the routing and eligibility markets of the e-prescription industry.

### Privacy Class Actions

AW has been prosecuting cutting edge privacy cases on behalf of consumers since the late 1990s.  AW was among the first group of attorneys who successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without the consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, at the time AW was prosecuting these cases before the Hon. Richard R. Kramer, (Ret.) in the complex department of San Francisco Superior Court, such practices were novel and hidden from public scrutiny. AW's work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation.  AW has been at the forefront of privacy-related litigation since then.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, AW achieved a settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge

Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

As an invaluable member of a five-firm Plaintiffs' Steering Committee ("PSC") in the *Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.) (Hon. Michael H. Simon), arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members, AW was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million.

In *The Home Depot, Inc., Customer Data Sec. Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (Hon. Thomas W. Thrash Jr.), AW served on the consumer PSC and was instrumental in achieving a $29 million settlement fund and robust injunctive relief for the consumer class.  As co-lead counsel in *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello), AW secured a settlement for the nationwide class that provides for up to $250 in claimed damages or $10,000 in extraordinary damages.

AW was appointed to serve as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), a consumer class action arising out of Google's allegedly unlawful collection and use of mobile device location information on all Android and iPhone devices.

AW also currently serves on the PSC in *Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litigation*, No. 2:19-md-2904-MCA-MAH (D.N.J.) (Hon. Madeline Cox Arleo), a class action arising out of a medical data breach that disclosed the personal and financial information of over 20 million patients, as well as many other data breach class actions.

AW's efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), AW's attorneys successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), AW, as a member of the PSC, briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

AW is also serving as plaintiffs' counsel in consumer privacy rights cases involving the right to control the collection and use of biometric information, successfully opposing motions to dismiss

based on lack of standing. *See, e.g.*, *Rivera v. Google LLC*, No. 19-1182 (7th Cir.) (order granting summary judgment currently on appeal to the Seventh Circuit); *Azzano v. Google LLC*, No. 2019-CH-11153 (Ill. Cir. Ct.) (Hon. Anna M. Loftus); *Molander v. Google LLC*, No. 5:20-cv-00918-EJD (N.D. Cal.) (Hon. Edward J. Davila); *Acaley v. Vimeo, Inc.*, No. 1:19-cv-7164 (N.D. Ill.) (Hon. Matthew F. Kennelly).

In *Miracle-Pond v. Shutterfly, Inc.*, No. 2019CH07050 (Cir. Ct. Cook County) (Hon. Raymond W. Mitchell), a class action arising from Shutterfly's alleged illegal collection, storage, and use of the biometrics of individuals (including those without Shutterfly accounts) who appear in photographs uploaded to Shutterfly in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* AW achieved preliminary approval of a settlement that establishes a $6.75 million non-reversionary cash Settlement Fund and provides meaningful prospective relief for the benefit of class members.

In addition, AW has served and is serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

### Attorney Profiles

**Tina Wolfson** graduated Harvard Law School *cum laude* in 1994. Ms. Wolfson began her civil litigation career at the Los Angeles office of Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration and deportation trials as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm, focusing on representing plaintiffs on a contingency basis in civil rights and employee rights cases. Since co-founding AW in 1998, Ms. Wolfson had lead numerous class actions to successful results. Ms. Wolfson is a member of the California, New York and District of Columbia Bars.

Recognized for her deep class action experience, Ms. Wolfson frequently lectures on numerous class action topics across the country. She is a guest lecturer on class actions at the University of California at Irvine Law School. Her notable speaking engagements include:

- Class Action Mastery Forum at the University Of San Diego School of Law (Consumer Class Actions Roundtable) March 2020, featuring Hon. Lucy H. Koh, Hon. Edward M. Chen, and Hon. Fernando M. Olguin.
- Class Action Mastery Forum at the University Of San Diego School of Law (Data Breach/Privacy Class Action Panel) January 16, 2019.
- Association of Business Trial Lawyers: "Navigating Class Action Settlement Negotiations and Court Approval: A Discussion with the Experts," Los Angeles May 2017, featuring Hon. Philip S. Gutierrez and Hon. Jay C. Gandhi.

- CalBar Privacy Panel: "Privacy Law Symposium: Insider Views on Emerging Trends in Privacy Law Litigation and Enforcement Actions in California," Los Angeles Mar. 2017 (Moderator), featuring Hon. Kim Dunning.
- American Conference Institute: "2nd Cross-Industry and Interdisciplinary Summit on Defending and Managing Complex Class Actions," April 2016, New York: Class Action Mock Settlement Exercise featuring the Hon. Anthony J. Mohr.
- Federal Bar Association: N.D. Cal. Chapter "2016 Class Action Symposium," San Francisco Dec. 2016 (Co-Chair), featuring Hon. Joseph F. Anderson, Jr. and Hon. Susan Y. Illston.
- Federal Bar Association: "The Future of Class Actions: Cutting Edge Topics in Class Action Litigation," San Francisco Nov. 2015 (Co-Chair &Faculty), featuring Hon. Jon S. Tigar and Hon. Laurel Beeler.
- American Association for Justice: AAJ 2015 Annual Convention – "The Mechanics of Class Action Certification," July 2015, Montreal, Canada.
- HarrisMartin: Data Breach Litigation Conference: The Coming of Age – "The First Hurdles: Standing and Other Motion to Dismiss Arguments," March 2015, San Diego.
- Bridgeport: 2015 Annual Consumer Class Action Conference, February 2015, Miami (Co-Chair).
- Venable, LLP: Invited by former opposing counsel to present mock oral argument on a motion to certify the class in a food labeling case, Hon. Marilyn Hall Patel (Ret.) presiding, October 2014, San Francisco.
- Bridgeport: 15th Annual Class Action Litigation Conference – "Food Labeling and Nutritional Claim Specific Class Actions," September 2014, San Francisco (Co-Chair and Panelist).
- Bridgeport: 2014 Consumer Class Action Conference – "Hot Topics in Food Class Action Litigation," June 2014, Chicago.
- Perrin Conferences: Challenges Facing the Food and Beverage Industries in Complex Consumer Litigations, invited to discuss cutting edge developments in settlement negotiations, notice, and other topics, April 2014, Chicago.
- Bridgeport: Class Action Litigation & Management Conference – "Getting Your Settlement Approved," April 2014, Los Angeles.
- HarrisMartin: Target Data Security Breach Litigation Conference – "Neiman Marcus and Michael's Data Breach Cases and the Future of Data Breach Cases," March 2014, San Diego.
- Bridgeport: Advertising, Marketing & Media Law: Litigation and Best Management Practices – "Class Waivers and Arbitration Provisions Post-*Concepcion / Oxford Health Care*," March 2014, Los Angeles.

Ms. Wolfson currently serves as a Ninth Circuit Lawyer Representative for the Central District of California, as Vice President of the Federal Litigation Section of the Federal Bar Association, as a member of the American Business Trial Lawyer Association, as a participant at the Duke Law School Conferences and the Institute for the Advancement of the American Legal System, and on the Board of Public Justice.

**Robert Ahdoot** graduated from Pepperdine Law School *cum laude* in 1994, where he served as Literary Editor of the Pepperdine Law Review. Mr. Ahdoot clerked for the Honorable Paul Flynn at the California Court of Appeals, and then began his career as a civil litigator at the Los Angeles office of Mendes & Mount, LLP, where he defended large corporations and syndicates such as Lloyds of London in complex environmental and construction-related litigation as well as a variety of other matters. Since co-founding AW in 1998, Mr. Ahdoot had led numerous class actions to successful results. Recognized for his deep class action experience, Mr. Ahdoot frequently lectures on numerous class action topics across the country. His notable speaking engagements include:

- MassTorts Made Perfect: Speaker Conference, April 2019, Las Vegas: "Llegal Fees: How Companies and Governments Charge The Public, and How You Can Fight Back."
- HarrisMartin: Lumber Liquidators Flooring Litigation Conference, May 2015, Minneapolis: "Best Legal Claims and Defenses."
- Bridgeport: 15th Annual Class Action Litigation Conference, September 2014, San Francisco: "The Scourge of the System: Serial Objectors."
- Strafford Webinars: Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates and More, February 2014: "Minimizing Court Scrutiny and Overcoming Objector Challenges."
- Pincus: Wage & Hour and Consumer Class Actions for Newer Attorneys: The Do's and Don'ts, January 2014, Los Angeles: "Current Uses for the 17200, the CLRA an PAGA."
- Bridgeport: 2013 Class Action Litigation & Management Conference, August 2013, San Francisco: "Settlement Mechanics and Strategy."

**Theodore W. Maya** graduated from UCLA Law School in 2002 after serving as Editor-in-Chief of the UCLA Law Review. From July 2003 to August 2004, Mr. Maya served as Law Clerk to the Honorable Gary Allen Feess in the United States District Court for the Central District of California. Mr. Maya was also a litigation associate in the Los Angeles offices of Kaye Scholer LLP for approximately eight years where he worked on a large variety of complex commercial litigation from inception through trial. Mr. Maya was named "Advocate of the Year" for 2007 by the Consumer Law Project of Public Counsel for successful pro bono representation of a victim of a large-scale equity fraud ring.

**Bradley K. King** is a member of the State Bars of California, New Jersey, New York, and the

District of Columbia. He graduated from Pepperdine University School of Law in 2010, where he served as Associate Editor of the Pepperdine Law Review. He worked as a law clerk for the California Office of the Attorney General, Correctional Law Section in Los Angeles and was a certified law clerk for the Ventura County District Attorney's Office. Mr. King began his legal career at a boutique civil rights law firm, gaining litigation experience in a wide variety of practice areas, including employment law, police misconduct, municipal contracts, criminal defense, and premises liability cases. During his nine-year career at AW, Mr. King has focused on consumer class actions, and data breach class actions in particular. He has extensive experience litigating consolidated and MDL class actions with AW serving in leadership roles, including numerous large data breach cases that have resulted in nationwide class settlements.

**Henry Kelston** graduated from New York University School of Law in 1978 and is a member of the New York and Connecticut Bars. Mr. Kelston has litigated a broad array of class actions for more than two decades, including actions challenging improperly charged bank fees, unauthorized collection of biometric data, and unlawful no-poach agreements among employers. He has been on the front lines in major data breach cases against companies such as Yahoo! and Facebook, and has represented consumers in class actions challenging food labeling practices, including the use of "natural" claims on products containing GMOs. His work in *In re Conagra Foods, Inc.*, contributed to a groundbreaking decision by the Ninth Circuit Court of Appeals, significantly strengthening the rights of consumers to bring class actions. Mr. Kelston is also a frequent speaker and CLE presenter on electronic discovery, and a member of The Sedona Conference® Working Group 1 on Electronic Document Retention and Production.

**Christopher E. Stiner** graduated from Duke University School of Law *cum laude* in 2007 and is a member of the California and New York Bars. Mr. Stiner began his legal career at the New York office of Milbank Tweed working on finance matters for some of the world's largest financial institutions. Several years later Mr. Stiner transitioned to a litigation practice at the Los Angeles office of Katten Muchin, again representing large financial institutions and other corporate clients. Chris also worked as a clerk for the Honorable Thomas B. Donavan in the Central District of California Bankruptcy Court. In 2020 Mr. Stiner joined AW to pursue his desired focus on consumer class actions with a particular interest in consumer finance and banking matters.

**Andrew W. Ferich** is admitted to the bars of Pennsylvania, New Jersey, and the District of Columbia. Mr. Ferich received his law degree from Villanova University's Charles Widger School of Law in 2012, where he served as Executive Editor of the *Journal of Catholic Social Thought*. Mr. Ferich has significant experience in consumer protection, data privacy, ERISA/retirement plan, and whistleblower/*qui tam* litigation. Prior to joining the firm, Mr. Ferich was a senior associate at a well-known Philadelphia-area class action law firm. Before joining the plaintiffs' bar, Mr. Ferich was an associate at an AmLaw 200 national litigation firm in Philadelphia where he focused his practice on commercial litigation and financial services litigation. Mr. Ferich has represented a wide array of

clients and has received numerous court-appointed leadership positions in large class actions. Mr. Ferich possesses major jury trial experience and has assisted in litigating cases that have collectively resulted in over $100 million in settlement value in damages and injunctive relief for various classes and groups of people.

**Rachel Johnson** graduated from Santa Clara University School of Law in 2019 as an Emery Merit Scholar with a certificate in High Tech Law and is a member of the State Bar of California. Ms. Johnson holds a Master's Degree from Stanford University School of Engineering and had a technical career as a scientist and engineer prior to and during attending law school. After graduate school, Ms. Johnson served as a senior data scientist and technical advisor for the US Department of Interior where she validated 3D hydrodynamic models using Bayesian statistics, developed predictive algorithms, and analyzed big data sets and time series using multivariate statistics tools. At AW, Ms. Johnson focuses on consumer protection and class actions.