Courtland L. Reichman (CA Bar No. 268873)
Jennifer Estremera (CA Bar No. 251076)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Phone: (650) 623-1401
Fax: (650) 623-1449
creichman@reichmanjorgensen.com
jestremera@reichmanjorgensen.com

Jeffrey S. Goldenberg *(Pro Hac Vice to be filed)*
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Terence R. Coates *(Pro Hac Vice to be filed)*
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

*Counsel for Proposed Intervenors*

[Additional Counsel Appear on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:     October 28, 2021<br>TIME:      9:00 a.m.<br>CTROOM:  4, 5th Floor<br>JUDGE:    Hon. Edward J. Davila |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 28, 2021, 2021 at 9:00 a.m. or as soon thereafter as them matter may be heard, proposed Intervenors James Jones, Tina Govaert, Lenora Doty, Tracy Simpson, Elizabeth Shaw, Ann Marie Strohm, Kevin Corbett, Eula Douglas, Delilah Parker, Alexander Buck, Caren-Butler Alexander, Karen Godovchik, and Michael Godovchik ("Intervenors") move this Court, under Federal Rule of Civil Procedure 24, to intervene in this action. Intervenors also respectfully ask this Court to deny preliminary approval of the class settlement proposed by plaintiffs Ricky Cochran, Alain Berrebi, and Jaramey Stobbbe ("Plaintiffs") and their counsel on June 30, 2021.

The proposed class action settlement is not fair, reasonable, or adequate. The settlement offers paltry monetary relief that is only intended to reach 1–3% of the proposed class, offers insufficient injunctive relief, and offers disproportionate rewards for Plaintiffs' counsel. For these reasons and other procedural deficiencies described herein, Intervenors seek to speak up for the interests of the class before preliminary approval is granted.

Accordingly, because Plaintiffs' motion for preliminary settlement approval would, if granted, immediately impair Intervenors' substantive rights and because the proposed settlement is not fair, reasonable, or adequate, Intervenors request that this Court issue an order:

1.  Allowing them to intervene in this action under Federal Rule of Civil Procedure 24;

2.  Denying the motion for preliminary approval of the proposed settlement agreement, Dkt. 31; and

3.  Granting such other relief as the Court deems just and proper.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl."), all records on file with this Court, and such further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

DATED: July 30, 2021          By:     */s/ Courtland Reichman*
                                        Courtland L. Reichman

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

1

Courtland L. Reichman (CA Bar No. 268873)
Jennifer Estremera (CA Bar No. 251076)
**REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Phone: (650) 623-1401
Fax: (650) 623-1449
creichman@reichmanjorgensen.com
jestremera@reichmanjorgensen.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis*
Ryan D. Maxey*
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates*
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner*
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Rachele R. Byrd
750 B Street, Suite 1820
San Diego, CA 92101
Phone: 619/239-4599
Fax: 619/234-4599

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

byrd@whafh.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason*
5301 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
gklinger@masonllp.com

**LEVIN, SEDRAN & BERMAN, LLP**
Charles E. Schaffer *
David C. Magagna Jr*.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (212) 592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

**STRAUSS TROY CO., LPA**
Robert R. Sparks*
Richard S. Wayne*
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 241-8259
rrsparks@strausstroy.com
rswayne@strausstroy.com

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP**.
M. Anderson Berry
865 Howe Avenue
Sacramento, CA 95825
Phone: (916) 777-7777
aberry@justice4you.com

**DANNLAW**
Brian D. Flick*
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

**FEDERMAN & SHERWOOD**
William B. Federman*

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Counsel for Proposed Intervenors*

*\*Pro Hac Vice* Application to be filed

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**PAGES**

I.    STATEMENT OF THE ISSUES TO BE DECIDED .........................................................1

II.   INTRODUCTION ...........................................................................................................1

III.  STATEMENT OF FACTS...............................................................................................1

      A.     Intervenors File Suit in Ohio, Where Kroger Is Headquartered. ...........................2

      B.     Cochran Plaintiffs Attempt to Force Intervenors to Litigate in California.............2

      C.     Kroger and Cochran Plaintiffs Withhold Details of the Settlement Agreement
             from Intervenors. ...................................................................................................3

      D.     The Preliminary Approval Motion Reveals the Inadequacy of Both
             the Settlement and the Cochran Plaintiffs' Representation. ...................................3

IV.  LEGAL ARGUMENT .....................................................................................................5

      A.     Intervention is Proper ...........................................................................................5

           1.     Legal Standards ........................................................................................5

           2.     The Motion to Intervene is Timely ...........................................................6

           3.     Intervenors Have a Significant Protectable Interest .................................7

           4.     Settlement Would Impair Intervenors' Ability to Protect Their Interests...7

           5.     Intervenors' Interests are not Adequately Protected
                 by the Existing Parties...............................................................................9

           6.     Alternatively, Permissive Intervention Should be
                 Granted Under Rule 24(b)..........................................................................9

      B.     The Proposed Settlement is Not Fair, Reasonable, or Adequate .........................10

           1.     Legal Standard ........................................................................................10

            2.     The Settlement Consideration is Unreasonable and Inadequate ..............11

            3.     The Settlement is Procedurally Deficient................................................12

V.   CONCLUSION.............................................................................................................15

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrams v. The Kroger Co.*,
   No. 1:21-CV-001240 (Apr. 7, 2021) ..................................................................................... 2

*In re Accellion, Inc, Customer Data Security Breach Litig.*,
   MDL. No. 3002, 2021 WL 2370722 (JPML June 7, 2021) ............................................. 3, 12

*Baer v. The Kroger Co.*,
   No. 1:21-CV-001323 (May 13, 2021) ................................................................................... 2

*Buck v. The Kroger Co.*,
   No. 1:21-CV-00279 (Apr. 19, 2021) ..................................................................................... 2

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) (Sotomayor, J., concurring) ...................................................... 10, 11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................................................. 7

*In re Community Bank of N. Virginia*,
   418 F.3d 277 (3d Cir. 2005) .............................................................................................. 6, 8

*In re: Data Breach Security Litigation Against the Kroger Company*,
   No. 1:21-cv-00146 (S.D. Ohio Jul. 22, 2021) ......................................................... 1, 2, 4, 12

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ................................................................................................. 5

*Doty v. The Kroger Co.*,
   No. 1:21-CV-00198 ............................................................................................................... 2

*Gomes v. Eventbrite, Inc.*,
   No. 5:19-CV-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ....................... 7, 8, 9

*Govaert v. The Kroger Co.*,
   No 1:21-CV-00174 ............................................................................................................ 2, 4

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................................... 10

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

ii

*Smith v. SEECO, Inc.*,
    865 F.3d 1021 (8th Cir. 2017) ........................................................................................ 8

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ........................................................................................................ 6

*Strohm v. The Kroger Co.*,
    No. 1:21-CV-00226 (Apr. 2, 2021) ................................................................................. 2

*Swinton v. SquareTrade, Inc*,
    960 F.3d 1001 (8th Cir. 2020) ........................................................................................ 7

*In re TD Ameritrade Accountholder Litig.*,
    266 F.R.D. 418 (N.D. Cal. 2009) .................................................................................. 11

*Tech. Training Assocs. v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) ........................................................................................ 8

*Trobovich v. United Mine Workers*,
    404 U.S. 528 (1972) ........................................................................................................ 9

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .......................................................................................... 5

*In Re: Volkswagen Litig.*,
    2018 WL 6198311 .......................................................................................................... 11

**Other Authorities**

5 A. Conte & H. Newberg, *Newberg on Class Actions* § 16:7 (4th ed. 2002) ............................ 6

3 Will B. Rubenstein, *Newberg on Class Actions* § 9:34 (5th ed. 2013) .................................... 8

**Rules**

Federal ule of Civil Procedure 23 .................................................................................... 8, 10, 11

Federal Rule of Civil Procedure 24 ........................................................................... 1, 5, 6, 8, 10

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether the Court should allow Intervenors to intervene in this action under Federal Rule of Civil Procedure 24; and

2.      Whether the Court should deny the motion for preliminary approval of the proposed settlement agreement.

### II.   INTRODUCTION

The Kroger Company's ("Kroger") decision to use an antiquated file transfer system opened the door for nefarious actors to steal sensitive medical and financial information from millions of Kroger customers and employees.  Intervenors filed the first suit against Kroger, in Kroger's home district, to make Kroger pay and change so that this most sensitive of information does not wind up on the dark web again.  But now their efforts have been undermined by an attempt to undercut any real change or relief for the millions of customers and employees whose data was compromised so plaintiffs' counsel can make a quick turnaround on attorney's fees.  Federal Rule of Civil Procedure 24 was designed for cases like this.  Intervenors respectfully ask this Court to grant their motion because the interests of the proposed class are not adequately represented in this suit and this settlement is neither fair, reasonable, nor adequate.  Before this Court grants preliminary approval of this settlement, Intervenors ask for a chance to explain why doing so will cause far more harm than good.

### III.   STATEMENT OF FACTS

Millions of people trust Kroger to dispense life-saving medications prescribed by their doctors and handle their personal and financial information.  *See* Consolidated Class Action Compl. ¶¶ 1–2, *In re: Data Breach Security Litigation Against the Kroger Company*, No. 1:21-cv-00146 (S.D. Ohio Jul. 22, 2021) (Dkt. 27) ("Consolidated Compl.").  To fulfill this duty, Kroger collects and stores its customers' and employees' most sensitive medical and financial information. *See id.*  ¶¶ 1–2, 70–73.   This includes Social Security numbers, prescription information, prescribing doctor information, medical histories, medical diagnoses, medical treatment

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

1

information, and clinical history.  *See id.* ¶ 1.  Unfortunately, Kroger stored some of this information on an antiquated system that its own security vendor—Accellion, Inc. ("Accellion")—discouraged it from using.  *See id.* ¶¶ 3–4.  Unsurprisingly, hackers compromised Kroger's data security platform and pilfered sensitive medical and financial information of millions.  *See id.*

### A.    Intervenors File Suit in Ohio, Where Kroger Is Headquartered.

On March 3, 2021, just days after Kroger announced the hack that exposed their medical and financial data, James Jones—a former employee and longtime pharmacy customer—sued Kroger in its home state of Ohio on behalf of Kroger's millions of customers and employees.  Compl., *Jones v. The Kroger Co.*, No. 1:21-cv-00146.  Six more complaints followed, all in Ohio: *Govaert v. The Kroger Co.*, No 1:21-CV-00174 (Mar. 11, 2021); *Doty v. The Kroger Co.*, No. 1:21-CV-00198 (March 23, 2021); *Strohm v. The Kroger Co.*, No. 1:21-CV-00226 (Apr. 2, 2021); *Abrams v. The Kroger Co.*, No. 1:21-CV-001240 (Apr. 7, 2021); *Buck v. The Kroger Co.*, No. 1:21-CV-00279 (Apr. 19, 2021); and *Baer v. The Kroger Co.*, No. 1:21-CV-001323 (May 13, 2021).  Counsel for the plaintiffs in these cases have worked cooperatively, and on June 22, 2021, the Ohio cases were consolidated before Judge Timothy S. Black as *In re Data Breach Security Litigation Against the Kroger Company*, No. 1:21-cv-146.  The Consolidated Ohio Plaintiffs ("Intervenors") seek extensive injunctive relief in addition to significant monetary damages to compensate for the exposure of the most sensitive information that exists about a person.  Consolidated Compl. at ¶¶ 72–76.

### B.    Cochran Plaintiffs Attempt to Force Intervenors to Litigate in California.

On March 17, 2021, after both the *Jones* and *Govaert* lawsuits had already been filed, Plaintiffs Ricky Cochran and Alain Berrebi (the "Cochran Plaintiffs") sued Kroger and Accellion in this Court.  On March 31, 2021, counsel for the Cochran Plaintiffs demanded that plaintiffs in the Kroger-only cases consent to transfer their cases to the Northern District of California by the end of the day.  Goldenberg Decl. ¶ 4.  That same day, counsel for the Cochran Plaintiffs filed a

request with the Judicial Panel on Multidistrict Litigation ("JPML") to have the Kroger-only cases pending in Ohio transferred to California.  *Id.* ¶ 4.  Intervenors opposed the Cochran Plaintiffs' request to transfer the Ohio cases, as did Kroger.  On June 7, 2021, the JPML denied the Cochran Plaintiffs' request to transfer the cases, thereby permitting the seven Kroger-only cases to continue in Ohio.  *In re Accellion, Inc., Customer Data Security Breach Litig.*, MDL. No. 3002, 2021 WL 2370722 (JPML June 7, 2021).

      **C.**    **Kroger and Cochran Plaintiffs Withhold Details of the Settlement Agreement from Intervenors.**

On June 21, 2021, Kroger's counsel sent an email at 3:06pm ET indicating that Kroger "reached a nationwide settlement in Cochran over the weekend."  Goldenberg Decl. ¶ 10.  In the same email, Kroger asked if the Ohio plaintiffs would oppose a request to stay the Ohio proceedings.  Before Intervenors could respond, at 4:13pm ET, Kroger filed motions to stay in the respective Ohio cases.  *Id.* ¶ 11.  Intervenors repeatedly requested from Kroger and the Cochran Plaintiffs any information that was relied upon in reaching the proposed Cochran settlement.  *Id.* ¶ 14.  Kroger and the Cochran Plaintiffs dodged the Intervenors' requests and merely indicated that Intervenors would need to wait to review the Cochran preliminary approval filings to potentially receive answers to any questions about the terms of the settlement and/or information relied upon in reaching those terms.  *Id.* ¶ 15.

      **D.**    **The Preliminary Approval Motion Reveals the Inadequacy of Both the Settlement and the Cochran Plaintiffs' Representation.**

On June 30, 2021, the Cochran Plaintiffs moved for preliminary approval of a nationwide class action settlement (the "Motion").  Dkt. 31.  Intervenors were never consulted.  That deliberate lack of consultation is evident from the settlement's terms.

First, the settlement fund is woefully inadequate for the harm suffered by Intervenors and the millions of customers and employees they seek to represent.  Under the proposed settlement, the more than 3,820,000 class members must choose between a cash payment, two years of credit monitoring, or reimbursement of documented losses up to $5,000 (and only to the extent funding

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

3

is available).  *See id.* at 8.  All this relief comes from a paltry pool of $5,000,000, 25% of which ($1,250,000) the Cochran Plaintiffs' counsel seek for fees.  *See id.* at 14.  Perhaps recognizing the inherent inadequacy of this relief (achieved during the infancy of this litigation), the Cochran Plaintiffs seek to console this Court with a projection that only 1–3% of the class will file claims to receive payment.  *See id.* at 27.  But their Motion provides no information as to why a class largely composed of *employees* for whom Kroger undoubtedly has significant contact information would not participate.  Nor does the Motion explain why such individuals would need to affirmatively opt-in in the first place, as opposed to simply receive an automatic disbursement of settlement funds. Instead of addressing these issues, the Cochran Plaintiffs urge this Court to accept a settlement that does not make sense for 99% of its intended beneficiaries.  If all class members accepted a cash payment, then they would receive a mere ***76 cents*** for their trouble after if the Cochran Plaintiffs' counsel receive the fee requested.  And if even **0.015%** of class members (~570 class members) receive a $5,000 payment, there will be no more money to pay anyone else.

Second, the settlement offers little injunctive relief.  The only injunctive relief afforded is a vague promise by Kroger to "confirm" class members' information is "secure," monitoring the dark web for fraudulent activity concerning the class members' data, and Kroger's weak promises to do better in the future.  Dkt. 31 at 10. When compared to the extensive relief sought by Intervenors, the inadequacies of the Cochran Plaintiffs' rushed settlement are apparent.  *See* Consolidated Compl. ¶¶ 72–76.

And third, the settlement proposes paying California residents twice as much as the other class members but, without explanation, suggests that the California-specific claims are too weak to be pursued.

These are but some of the concerns that Intervenors seek to bring to this Court's attention *before* any preliminary approval is granted.  This settlement is not fair, reasonable, or adequate and the Cochran Plaintiffs do not represent the interests of the class. For all of the reasons described here and below, Intervenors ask the Court to allow them to stand in for the class the Cochran Plaintiffs have not adequately represented.

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

4

1

## IV.     LEGAL ARGUMENT

2

### A.       Intervention is Proper

3

4       Intervenors seek to intervene because the Cochran Plaintiffs are attempting to give away

5   Intervenors' significant rights for inadequate settlement consideration. This is exactly the situation

6   for which Rule 24 intervention was designed. The Cochran Plaintiffs are not adequately

7   representing the interests of the class they purport to represent, so Intervenors have acted promptly

8   to ensure that their rights are not impaired.

9           **1.      Legal Standards**

10      Under Federal Rule of Civil Procedure 24(a)(2), "the court must permit anyone to intervene

11  who . . . claims an interest relating to the property or transaction that is the subject of the action,

12  and is so situated that disposing of the action may as a practical matter impair or impede the

13  movant's ability to protect its interest, unless existing parties adequately represent that interest. "

14  Fed. R. Civ. P. 24(a)(2).  That is, intervention must be granted whenever: (1) the application for

15  intervention is timely; (2) the applicant has a "significant protectable interest" relating to the

16  subject of the action; (3) the applicant must be so situated that disposition of the action may impair

17  or impede the applicant's ability to protect its interest; and (4) the "existing parties may not

18  adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.

19  1998). "In evaluating whether these requirements are met, courts 'are guided primarily by practical

20  and equitable considerations.'" *United States v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002)

21  (quoting *Donnelly*, 159 F.3d at 409).  And Rule 24 is generally construed "broadly" in favor of

22  intervention.  *Id.*  "Courts are to take all well-pleaded, nonconclusory allegations in the motion to

23  intervene . . . and declarations supporting the motion as true absent sham, frivolity or other

24  objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).  In a

25  putative class action, "members of a class have a right to intervene if their interests are not

26  adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594

27  (2013) (quoting 5 A. Conte & H. Newberg, *Newberg on Class Actions* § 16:7 (4th ed. 2002)); *see*

28  *also* Fed. R. Civ. P. 24, Advisory Committee Notes (1966) ("[A] member of a class should have

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

5

1   the right to intervene in a class action if he can show the inadequacy of the representation of his

2   interest by the representative parties before the court.").

3       Similarly, Rule 24(b) provides for permissive intervention: "On timely motion, the court

4   may permit anyone to intervene who . . . has a claim or defense that shares with the main action a

5   common question of law or fact . . . .  In exercising its discretion, the court must consider whether

6   the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

7   Fed. R. Civ. P. 24(b).

8               **2.    The Motion to Intervene is Timely**

9       "Timeliness is determined by the totality of the circumstances facing would-be intervenors,

10  with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks

11  to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."

12  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) [hereinafter *LAUSD*].  "The

13  crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors

14  should have been aware that their interests would not be adequately protected by the existing

15  parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).  As relevant here, the Ninth Circuit

16  has approved of intervention after intervenors learn of an unfavorable settlement.  *See United

17  States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002).  Finally, in the class context, intervention

18  is "presumptively timely" when filed before the opt-out deadline. *In re Cmty. Bank of N. Va.*, 418

19  F.3d 277, 314 (3d Cir. 2005).

20      Here, Intervenors seek to intervene very early in the case—the complaint was only filed on

21  March 17, 2021 and the proposed settlement was filed with the Court less than a month ago.

22  Intervenors filed their motion as soon as practical.  Upon learning of the proposed nationwide class

23  action settlement, Intervenors moved quickly to confer with their counsel, review the terms of the

24  proposed settlement, analyze the most efficient means for coming before this Court to challenge

25  the settlement, and then located and retained sophisticated local counsel to assist in appearing

26  before this Court.  There was no undue delay.  *See, e.g.*, *LAUSD*, 830 F.3d at 854–62 (finding a

27  motion to intervene 20 years after an action was filed was timely where circumstances changed

28

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

6

post-filing such that intervenors' interests were no longer adequately represented).  The only prejudice to the Cochran Plaintiffs would be to subject their rushed and deficient settlement to scrutiny.  But "the only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'"  *LAUSD*, 830 F.3d at 857.

Because Intervenors are moving as soon as practical after learning of the impairment of their interests in this action, there is no cognizable prejudice to the Cochran Plaintiffs.

### 3.      Intervenors Have a Significant Protectable Interest

As members of the putative class whose rights Plaintiffs seek to release, Intervenors, by definition, have a significant protectable interest.  *See Standard*, 568 U.S. at 594; *see also Swinton v. SquareTrade, Inc*, 960 F.3d 1001, 1004 (8th Cir. 2020) ("[A] movant's class membership satisfies the impairment prong."); *Cmty. Bank of N. Va.*, 418 F.3d at 314 (the significant protectable interest prong is "satisfied by the very nature of Rule 23 representative litigation").  An interest is significantly protectable if it is protectable under "some law" and has a relationship with the claims at issue.  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The Cochran Plaintiffs seek approval of a settlement that could release the underlying rights of Intervenors.  Intervenors therefore "possess a significantly protectable interest by virtue of being members of the class . . . ."  *Gomes v. Eventbrite, Inc.*, No. 5:19-CV-02019-EJD, 2020 WL 6381343, at *3 (N.D. Cal. Oct. 30, 2020) (Davila, J.).

### 4.      Settlement Would Impair Intervenors' Ability to Protect Their Interests

Similarly, by releasing Intervenors' claims and enjoining Intervenors from pursuing them, the proposed settlement would impair and impede Intervenors' ability to protect their interests. Many courts have recognized that the impairment prong is "satisfied by the very nature of Rule 23 representative litigation."  *Cmty. Bank of N. Va.*, 418 F.3d at 314; *see also Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696-97 (11th Cir. 2017) ("[T]he risk that the movants

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

7

1    will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong.").

2    To be sure, some courts have denied motions to intervene by putative class members on the theory

3    that they can adequately protect their interest via the Rule 23 opt-out. *See Gomes*, 2020 WL

4    6381343, at *3 (collecting cases).   But by this logic, "class members could never intervene in a

5    class action because they would always have recourse to Rule 23 procedural protections and would

6    therefore always fail to satisfy" this prong.   *Tech. Training Assocs.*, 874 F.3d at 697.   As the

7    Eleventh Circuit explained:

8                    Such a conclusion cannot be squared with the Supreme Court's
                     recognition that "[m]embers of a class have a right to intervene if
9                    their interests are not adequately represented by existing parties."
                     *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594, 133 S.Ct.
10                   1345, 1349, 185 L.Ed.2d 439 (2013) (quoting 5 Alba Conte &
                     Herbert Newberg, Newberg on Class Actions § 16:7, at 154 (4th ed.
11                   2002)).   And the district court's conclusion conflicts with the
                     advisory committee note to the 1966 amendment to Rule 24 (the last
12                   substantive amendment to Rule 24(a)(2)), which explained that a
                     class member "should, as a general rule, be entitled to intervene in
13                   the action," unless the current parties adequately represent him. Fed.
                     R. Civ. P. 24 advisory committee's note to the 1966 amend. As a
14                   result, we do not agree that Rule 23's procedural protections mean
                     the movants fail to satisfy Rule 24(a)(2)'s third prong.
15

16   *Id.* at 696; *see also Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024-25 (8th Cir. 2017) (This "proposed

17   reading of Rule 24 'is surely wrong: it would mean a class member could never intervene in a

18   (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24

19   explicitly envision intervention as a means of securing adequacy of representation.'" (quoting 3

20   William B. Rubenstein, *Newberg on Class Actions* § 9:34 (5th ed. 2013 & Supp. 2017))).

21           In any event, even if the courts that have denied intervention because of the opt-out

22   mechanism are correct, here Intervenors are unable to adequately protect their interest by opting

23   out.   Once the Cochran Plaintiffs have settled this case on the cheap, Kroger will have little to no

24   incentive to give higher compensation to those individuals sophisticated enough to opt out of a bad

25   settlement.   But without the ability to pursue class-wide relief, it will be uneconomical for class

26   members who opt-out to pursue their claims on an individual basis.

27

28

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

8

1

2

     **5.    Intervenors' Interests are not Adequately Protected by the Existing Parties**

3

     "The burden to show inadequacy of representation is minimal."  *Gomes*, 2020 WL

4

6381343, at *4.  "The requirement of the Rule is satisfied if the applicant shows that representation

5

of his interest 'may be' inadequate; and the burden of making that showing should be treated as

minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

6

     The Cochran Plaintiffs are seeking to release Intervenors claims for a dramatically

7

inadequate amount of money—perhaps as low as 76 cents per class member.  *See* Dkt. 31 at 7, 13,

8

14.  This alone shows the inadequacy of the Cochran Plaintiffs representation.  *See Gomes*, 2020

9

WL 6381343, at *4.  Moreover, the Cochran Plaintiffs negotiated this settlement with no notice to

10

Intervenors, despite the fact that the Cochran Plaintiffs had previously sought unsuccessfully to

11

transfer Intervenors' claims.  The Cochran Plaintiffs' proposed settlement is rife with procedural

12

issues (explored more fully below).  And to top it off, the Cochran Plaintiffs' attorneys are seeking

13

disproportionate fees.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)

14

(noting that, in a "reverse auction" class settlement, "ineffectual lawyers are happy to sell out a

15

class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants

16

are happy to pay generous attorneys' fees since all they care about is the bottom line—the sum of

17

the settlement and the attorneys' fees—and not the allocation of money between the two categories

18

of expense").  It is apparent that the Cochran Plaintiffs are not representing Intervenors' rights (or

19

the class's rights) adequately.

20

     **6.    Alternatively, Permissive Intervention Should be Granted Under Rule 24(b)**

21

22

     In the alternative, Intervenors should be allowed permissive intervention into this action.

23

Intervenors' claims are based on the same underlying facts and are brought under the same law.

24

For all of the reasons discussed above, permissive intervention would be equitable and cause no

25

cognizable prejudice to the Cochran Plaintiffs.

26

27

28

---

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     The Proposed Settlement is Not Fair, Reasonable, or Adequate**

The proposed settlement is both substantively and procedurally deficient in ways that go beyond the sorts of errors that can be dealt with at the objections stage.  In the normal case, the objection period provides an adequate opportunity to address problems around the edges of a settlement.  But this is not a normal case.  Here, the settlement and the circumstances surrounding it, are so deficient as to warrant rejection of the proposed settlement.

**1.     Legal Standard**

Courts demand a higher standard of fairness when, as here, settlement takes place prior to formal class certification.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Accordingly, such agreements must withstand an elevated level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.  *See Hanlon*, 150 F.3d at 1026.  The district court's approval order must show not only that "it has explored . . . factors comprehensively," but also that the settlement is "not[ ] the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Courts should be cognizant that the "existence of multiple putative class actions covering the same harm to the same class may lead to a race toward judgment or settlement."  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1814–15 (2018) (Sotomayor, J., concurring) (internal quotes omitted).  "Each class lawyer knows that only the lawyers in the first-resolved case will get paid, because the other suits will then be dismissed on claim-preclusion grounds."  *Id*.  "Defense lawyers know this, too, so they are able to engage in a 'reverse auction,' pitting the various class counsel against one another and agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class."  *Id*. (internal quotes omitted).  "This gamesmanship is not in class members' interest, nor in the interest of justice."  *Id*.

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

10

1

2.      **The Settlement Consideration is Unreasonable and Inadequate**

2

3          The proposed consideration here is neither adequate nor equitable.  "Basic" to the process

4    of deciding whether a proposed settlement is fair, reasonable, and adequate "is the need to compare

5    the terms of the compromise with the likely rewards of litigation."  *In re TD Ameritrade*

6    *Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for*

7    *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968));

8    *see also In re: Volkswagen "Clean Diesel"Mktg., Sales Practices, & Prods. Liability Litig.*, MDL

9    No. 2672, 2018 WL 6198311, at *7 (N.D. Cal. Nov. 28, 2018).  This analysis includes "whether

10   the apportionment of relief among class members takes appropriate account of differences among

11   their claims, and whether the scope of the release may affect class members in different ways that

12   bear on the apportionment of relief."  Fed R. Civ. P. 23(e)(2)(D) (Advisory Committee's note to

2018 amendment).

13         The Parties' proposed settlement purports to release the claims of 3.82 million class

14   members for $5 million, or $1.31 per class member (if counsel and other fees are excluded).  Dkt.

15   31 at 26.  After expenses of up to $827,299 in administration costs, $1,250,000 in attorney fees

16   (representing the application of a 2.5 multiplier on an unexamined lodestar), $22,888.10 in attorney

17   expenses, and $4,500 in service awards, the amount available to pay claims will be about

18   $2,895,312.90, or *76 cents per class member*.  Dkt. 31 at 7, 13, 14.  Yet Plaintiffs estimate the

19   value of the case they are attempting to settle at between roughly $169 million and $417 million,

20   *id.* at 21, which would translate to **$44.24 to $109.16** per class member.  Under any reasonable

21   analysis, the settlement amount — reached at the outset of this case over Father's Day weekend

22   far away from Kroger's home city where seven of the eight actions against Kroger are pending —

23   certainly appears to be the result of a hurried reverse auction.

24         Nor does the injunctive relief compensate for the inadequate monetary relief. Kroger offers

25   a promise to, in some unexplained way, monitor the dark web to ensure that the class members'

26   information is "secure" and to take basic steps to not expose sensitive information again.  Dkt. 31

27   at 10.  Actual, meaningful injunctive relief would look more like that sought by Intervenors. *See*

28   Consolidated Compl. ¶¶ at 72-76.

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

11

### 3.     The Settlement is Procedurally Deficient

The proposed settlement is the result of an unusual procedure that does not seem designed to reach the best possible result for the class.  As explained above, the Cochran Plaintiffs filed their complaint naming Kroger after two complaints had already been filed in Ohio.  Counsel in what has now become seven Ohio actions have coordinated and had their cases consolidated as *In re Data Breach Security Litigation Against the Kroger Company*, No. 1:21-CV-00146 (S.D. Ohio).  Rather than coordinate in the same fashion and unite all plaintiffs, counsel for the Cochran Plaintiffs sought to transfer the Ohio cases to this district.  After the Ohio plaintiffs and Kroger both opposed transfer, the JPML denied the request because there was "no reason to disrupt the parties' efforts at informal coordination when most agree that Section 1407 centralization would provide little or no benefit."  *In re Accellion, Inc., Customer Data Security Breach Litig.*, ___ F. Supp. 3d ___ MDL. No. 3002, 2021 WL 2370722, at *2 (JPML June 7, 2021).

Undaunted, the Cochran Plaintiffs proceeded to enter a settlement with Kroger, less than two months after filing their complaint and without any formal discovery. Dkt. 31 at 28-29.  Moreover, the settlement purports—with no advance notice to Intervenors—to release the Intervenors' claims and enjoin them from pursuing their cases.

Such procedural irregularities crop up repeatedly throughout the Cochran Plaintiffs' motion for preliminary approval. For example:

- *Changes to proposed class*: Northern District guidance requires that a motion for preliminary approval explain "any differences between the settlement class and the class proposed in the operative complaint."   Northern District of California, Procedural Guidance for Class Action Settlements (Dec. 5, 2018) ("Proc. Guidance for Class Settlements").[1]  Plaintiffs here hide the ball by stating that the "proposed Settlement Class is identical to the Nationwide Class defined in the [First Amended Complaint]." Dkt. 31 at 8.  Of course, when the settlement was reached with Kroger on May 13, 2021, Dkt. 31

---

[1] Online at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

12

at 7, the original complaint was still operative. *Six weeks after the case was settled*, Plaintiffs filed the First Amended Complaint ("FAC"), which dramatically changed the nature and scope of the case. For example, the FAC abandons medical information claims that the motion for preliminary approval values as being worth $150 million — thirty times the value of the settlement.[2] Dkt. 31 at 21.

- *Released claims against non-settling party*: The Settlement Agreement "is subject to and conditioned upon" Plaintiffs dismissing the entire action with prejudice.   Dkt. 32 at 31. While the Cochran Plaintiffs represent that "[t]his Settlement resolves claims against Kroger only," Dkt. 31 at 2, a dismissal of this action necessarily includes a dismissal against Accellion, who remains a named defendant.  Because this dismissal will occur after a class has been certified, the dismissal of Accellion with prejudice will operate to bar any class member from prosecuting or participating in any other case in which they were damaged by Accellion's data breaches.  The FAC lists 21 entities other than Kroger "who used Accellion's unsecure FTA product and were impacted by the Data Breach . . . ."  Dkt. 27 at 9-10.  That Plaintiffs and their counsel apparently do not understand the implication of their decision to condition the effectiveness of the settlement on their dismissal of this entire case with prejudice casts serious doubt on their adequacy.

- *Unreasonable and Unexplained Claim Projections*: The Cochran Plaintiffs estimate that 1–3% of class members will file a claim and that "California Claimants will receive

---

[2] The Cochran Plaintiffs apparently paid little attention to editing the FAC, as the FAC's class definition exempted Kroger's employees even though employees constitute approximately two-thirds of the class.  The Cochran Plaintiffs filed an errata to amend the definition, blaming a "scrivener's error."  Dkt. 35 at 1.  But this was only one of many careless errors throughout the afterthought FAC.  *See, e.g.,* Dkt. 27 at 25 (still referencing "California Medical Information Class Members" even though the California Medical Information Class definition was removed from the FAC); *Id.* at 27 (referencing the "Georgia Class").

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

13

approximately $182 at 1%, $74 at 2%, and $36 at 3%, and non-California Claimants will receive approximately $91 at 1%, $37 at 2%, and $18 at 3%." Dkt. 31 at 9.  How these numbers were calculated is unexplained. More troubling, it is unexplained why there would be such a low claim rate when Kroger employees make up nearly 2/3 of the class. Kroger surely has their addresses.  Why would so few Kroger employees accept compensation for harm caused by their employer?  And why is it even necessary to require class members to make claims in the first place?  These questions are not addressed.

- *Deficient Notice*: The Cochran Plaintiffs' proposed notice completely fails to inform class members that claims for documented losses and cash will only be funded if money remains after satisfying all claims for credit monitoring, and that cash payments are contingent on funds remaining after satisfying all credit-monitoring and documented-loss claims. Instead, the Notices simply state that "[a]ll payments may be increased or reduced pro rata depending on the number of Class Members that participate in the Settlement."  Dkt. 32-5 at 2, 5.  But this is false — payments may be made at 100% for credit-monitoring claimants but eliminated entirely for documented-loss or cash claimants.    After all, if even **.015%** of class members receive a $5,000 payment, and assuming no one claims credit monitoring, that would require the entire estimated $2.9 million that would be available to pay claims.

- *California Paradox*: The Cochran Plaintiffs propose to pay California residents twice as much as residents from any other state "[i]n view of the heightened protections afforded to California Class Members under the California statutory claims asserted in this lawsuit." Dkt. 31 at 9.  According to the Cochran Plaintiffs' moving papers, the California statutory claims "face significant risk of dismissal on the pleadings or an unfavorable disposition on summary judgment," such that a total settlement of $5 million for all class members is reasonable even though "the statutory damages available to California residents" — who make up less than 4% of the Settlement Class — alone total "$150 million."  *Id*. at 21, 23-25.  If the California statutory claims are sufficiently weak to justify essentially ignoring their value for purposes of settlement, why would those same claims justify doubling the

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

14

cash payments to California class members?   Plaintiffs fail to explain this apparent contradiction.

To cap it all off, Proposed Class Counsel claims to have incurred $500,763 in lodestar fees in a case that they filed in March and settled two months later. *See* Dkt. 31 at 21. It is impossible to know at this point how the Cochran Plaintiffs' attorneys could have billed so much since they do not, in contravention of Northern District guidance, "include the total number of hours billed to date," Proc. Guidance for Class Settlements.   They also do not, again contrary to Northern District guidance, include "the requested multiplier," Proc. Guidance for Class Settlements.   They do strongly hint that they may seek 25% of the settlement fund.   Dkt. 31 at 21.   That is, they may seek over $1 million dollars for filing a case and then immediately settling it.   If a class member wants to object to the fees sought, they will not have the 35 days required by the Northern District guidance, *see* Proc. Guidance for Class Settlements, because the settlement agreement provides for only 21 days between the fee petition and the objection deadline, Dkt. 32 at 30.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval (Dkt. 31) should be denied and the Court should grant the motion to intervene and direct the Settlement Parties and Intervenors to continue to negotiate to correct the identified deficiencies.

DATED: July 30, 2021                    By:      */s/ Courtland Reichman*
                                                 Courtland Reichman

                                                 Courtland L. Reichman (CA Bar No. 268873)
                                                 Jennifer Estremera (CA Bar No. 251076)
                                                 **REICHMAN JORGENSEN LEHMAN &
                                                 FELDBERG LLP**
                                                 100 Marine Parkway, Suite 300
                                                 Redwood Shores, California 94065
                                                 Phone: (650) 623-1401
                                                 Fax: (650) 623-1449
                                                 creichman@reichmanjorgensen.com
                                                 jestremera@reichmanjorgensen.com

                                                 **MORGAN & MORGAN COMPLEX
                                                 LITIGATION GROUP**
                                                 John A. Yanchunis*
                                                 Ryan D. Maxey*

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

15

201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates*
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner*
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
Rachele R. Byrd
750 B Street, Suite 1820
San Diego, CA 92101
Phone: 619/239-4599
Fax: 619/234-4599
byrd@whafh.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason*
5301 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
gklinger@masonllp.com

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

16

**LEVIN, SEDRAN & BERMAN, LLP**
Charles E. Schaffer *
David C. Magagna Jr.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (212) 592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

**STRAUSS TROY CO., LPA**
Robert R. Sparks*
Richard S. Wayne*
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 241-8259
rrsparks@strausstroy.com
rswayne@strausstroy.com

**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP**.
M. Anderson Berry
865 Howe Avenue
Sacramento, CA 95825
Phone: (916) 777-7777
aberry@justice4you.com

**DANNLAW**
Brian D. Flick*
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

**FEDERMAN & SHERWOOD**
William B. Federman*
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com

*Counsel for Proposed Intervenors*

*\*Pro Hac Vice* Application to be filed

NOTICE OF MOTION AND MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

17