1   Amy P. Lally, SBN 198555
    alally@sidley.com
2   SIDLEY AUSTIN LLP
    1999 Avenue of the Stars 17th Floor
3   Los Angeles CA 90067
    Telephone: (310) 595-9500
4   Facisimile: (310) 595-9501

5   Eamon P. Joyce (*pro hac vice*)
    ejoyce@sidley.com
6   SIDLEY AUSTIN LLP
    787 Seventh Avenue
7   New York, NY 10019
    Telephone: (212) 839-5300
8   Facsimile: (212) 839-5599

9   Colleen T. Brown (*pro hac vice*)
    ctbrown@sidley.com
10  SIDLEY AUSTIN LLP
    1501 K Street NW
11  Washington DC, 20005
    Telephone: (202) 736-8000
12  Facsimile: (202) 736-8511

13

14  *Attorneys for Defendant*
    *The Kroger Co.*

15

16

17

18                  **UNITED STATES DISTRICT COURT**

19                  **NORTHERN DISTRICT OF CALIFORNIA**

20  RICKY COCHRAN, ALAIN BERREBI, and        Case No. 5:21-cv-01887-EJD
21  JARAMEY STOBBE, individually and on behalf
    of all others similarly situated,         **BRIEF OF THE KROGER CO. IN**
22                                            **OPPOSITION TO MOTION TO**
                    Plaintiff,                **INTERVENE AND IN OPPOSITION TO**
23                                            **PRELIMINARY APPROVAL OF CLASS**
              v.                              **SETTLEMENT**
24
    THE KROGER CO. and ACCELLION, INC,
25
                    Defendants.               Hon. Edward J. Davila
26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION..............................................................................................................1

BACKGROUND...............................................................................................................1

    A.    Litigation Arising Out of the Accellion Incident.............................................1

    B.    Class Plaintiffs and Kroger Reach a Nationwide Class Action Settlement Through Intensive Mediation as Proposed Intervenors Experience Self-Inflicted Delays........................................................................................................2

    C.    Proposed Intervenors Oppose a Stay in Ohio Based on the Time Until Final Settlement Approval, and Then Seek A Lengthy Delay of Proceedings in This Court.........................................................................................................3

    D.    This Court Holds a Preliminary Approval Hearing at Which the Proposed Intervenors Were Heard.........................................................................4

LEGAL STANDARD.......................................................................................................4

ARGUMENT ...................................................................................................................5

    I.    Proposed Intervenors Do Not Satisfy The Requirements For Intervention As of Right ...............................................................................................................5

    A.    The Motion to Intervene is Untimely ............................................................5

    B.    Proposed Intervenors Need Not Intervene to Protect Their Interest in a Fair Settlement.........................................................................................................7

    C.    Existing Parties Adequately Protect Proposed Intervenors' Interests ...........9

    II.    Proposed Intervenors Should Not Be Granted Permissive Intervention Pursuant to Rule 24(b).............................................................................................12

CONCLUSION ...............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015)........................................................................5, 6, 7

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003)...................................................................5, 7, 9, 10

*Bergman v. Thelen LLP*,
   No. C-08-05322 EDL, 2009 WL 1308019 (N.D. Cal. May 11, 2009)............................8, 10

*Buck v. The Kroger Co.*,
   No. 1:21-cv-00279-TSB (S.D. Ohio) ...................................................................6, 7

*Chavez v. PVH Corp.*,
   No. 13-cv-01797-LHK, 2015 WL 12915109 (N.D. Cal. Aug. 6, 2015)............................7, 8

*Chi v. Univ. of S. Cal.*,
   No. 2:18-cv-04258-SVW-GJS, 2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) .....................8

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
   863 F.3d 474 (6th Cir. 2017) .........................................................................11

*In re Cloudera, Inc. Secs. Litig.*,
   No. 5:19-CV-03221-LHK, 2021 WL 1238301 (N.D. Cal. Apr. 2, 2021)............................10

*Cody v. SoulCycle, Inc.*,
   No. CV 15-06457-MWF, 2017 WL 8811114 (C.D. Cal. Sept. 20, 2017)............................12

*Cohorst v. BRE Properties, Inc.*,
   No. 10-cv-2666 JM (BGS), 2011 WL 3475274 (S.D. Cal. Aug. 5, 2011).............................8

*In Re Data Breach Sec. Litig. Against The Kroger Co.*,
   No. 1:21-cv-00146-TSB (S.D. Ohio) ................................................................1, 3, 4, 10

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011).................................................................7

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ..........................................................................5

*Gomes v. Eventbrite, Inc.*,
   No. 5:19-cv-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020)............................8, 9

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ................................6, 7

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997)......................................................................5, 12

*Orange Cnty. v. Air Cal.,*
  799 F.2d 535 (9th Cir. 1986) ..................................................................5

*Perry v. Proposition 8 Official Proponents,*
  587 F.3d 947, 954 (9th Cir. 2009)......................................................10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414, 424-25 (1968)..............................................................10

*Raquedan v. Centerplate of Del. Inc.,*
  376 F. Supp. 3d 1038 (N.D. Cal. 2019)...............................................8

*Smith v. L.A. Unified School District,*
  830 F.3d 843 (9th Cir. 2016).................................................................6

*Smith v. Marsh,*
  194 F.3d 1045 (9th Cir. 1999)..............................................................5

*Smith v. SEECO, Inc.,*
  865 F.3d 1021 (8th Cir. 2017)..............................................................9

*In re TD Ameritrade Accountholder Litig.,*
  266 F.R.D. 418 (N.D. Cal. 2009).......................................................10

*Technology Training Associates, Inc. v. Buccaneers Limited Partnership,*
  874 F.3d 692 (11th Cir. 2017)..............................................................9

*United States v. Alisal Water Corp.,*
  370 F.3d 915 (9th Cir. 2004)................................................................4

*United States v. Carpenter,*
  298 F.3d 1122 (9th Cir. 2002)..............................................................6

*Zepeda v. PayPal, Inc.,*
  No. 10-cv-02500-SBA (JCS), 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014).............5, 6, 7, 8

**Other Authorities**

Civil L.R. 7-3 ........................................................................................6

Civil L.R. 7-11 ......................................................................................6

Ohio Rev. Code § 1354.02 ..................................................................11

Fed. R. Civ. P. 23 ..................................................................................1

Fed. R. Civ. P. 24 ............................................................................4, 5, 12

**INTRODUCTION**

A full month after the Class Plaintiffs[1] publicly filed and sought preliminary approval of a nationwide class action settlement ("Settlement"), thirteen Proposed Intervenors seek to appear to derail it. *See* Mot. to Intervene, ECF No. 57. Proposed Intervenors fail to satisfy the requirements for intervention as of right, and permissive intervention should be denied. At the threshold, their eleventh-hour request is untimely. Moreover, even if Proposed Intervenors had diligently pursued it, their motion would still fail to satisfy any of the remaining three requirements for intervention as of right. They have no protectable interest in participating in *preliminary* approval proceedings that will not determine their rights. To the extent they have such an interest in the terms of a *final* settlement, they will be able to protect it through the ordinary process of objections and opt-outs for which Rule 23 provides. And they have failed to show that either the course of settlement negotiations or the terms of the Settlement itself demonstrate that the Class Plaintiffs are inadequate representatives. Proposed Intervenors cannot appear belatedly, to interrupt ongoing settlement proceedings, with objections which they will be entitled to raise in the ordinary course. The Court should reject Proposed Intervenors' untimely and unnecessary motion to intervene.

**BACKGROUND**

**A.    Litigation Arising Out of the Accellion Incident**

This is one of several cases arising out of a data security incident caused by vulnerabilities in Accellion's File Transfer Appliance ("FTA"), a purportedly secure mechanism on which The Kroger Co. ("Kroger") relied to transfer certain information concerning certain of its customers and employees. Proposed Intervenors are plaintiffs in six of those cases, all of which were filed in the Southern District of Ohio and are currently consolidated for pre-trial proceedings before Judge Timothy S. Black. *See generally In Re Data Breach Sec. Litig. Against The Kroger Co.*, No. 1:21-cv-00146-TSB (S.D. Ohio) ("Ohio Consolidated Action").[2] The Class Plaintiffs filed suit in this Court

---

[1] The Class Plaintiffs are Alain Berrebi, Ricky Cochran, and Jaramey Stobbe.

[2] More specifically, the Proposed Intervenors are James Jones, Tina Govert, Lenora Doty, Tracy Simpson, Elizabeth Shaw, Ann Marie Strohm, Kevin Corbett, Eula Douglas, Delilah Parker, Alexander Buck, Caren Butler-Alexander, Karen Godovchik, and Michael Godovchik, and are

on March 17, 2021, ECF No. 1—before four of Proposed Intervenors' six cases were filed in Ohio, *see* Proposed Intervenors' Admin. Mot. to Change Time at 1 & n.1, ECF No. 58 (collecting filing dates in the Ohio Matters).

**B.      Class Plaintiffs and Kroger Reach a Nationwide Class Action Settlement Through Intensive Mediation as Proposed Intervenors Experience Self-Inflicted Delays**

Proposed Intervenors' effort to paint the Settlement as the inadequate result of a rushed process omits some critical facts and distorts others. Crucially, Kroger and Proposed Intervenors have never engaged in "settlement negotiations," and the suggestion that they have engaged in "informal discovery" is overwrought insofar as Kroger provided them *one* document—a publicly available report commissioned by Accellion about the FTA incident. *Cf.* Decl. of Jeffrey S. Goldenberg in Supp. of Proposed Intervenors' Mot. to Intervene ("Goldenberg Decl."), ECF No. 57-1 ¶¶ 7-8. Rather, Kroger's counsel first reached out to Proposed Intervenors' counsel regarding the Proposed Intervenors' interest in exploring settlement on April 26, 2021, prompted by an earlier comment by Proposed Intervenors' counsel about the potential for early resolution. Decl. of Eamon P. Joyce in Supp. of Kroger's Opp'n to Proposed Intervenors' Admin. Mot. ("Joyce Decl."), ECF No. 72-1 ¶ 2. On April 29, after close of business, Proposed Intervenors responded with requests for certain information. *Id.* ¶ 3. After Kroger reviewed those requests, finding them largely not to relate to the Accellion Incident or information in existence, it responded accordingly on May 4 and also requested that Proposed Intervenors propose a confidentiality agreement to allow an appropriate exchange of relevant information moving forward. *Id.* ¶ 4. Proposed Intervenors, however, did not propose such an agreement until May 26—*more than three weeks later*. *Id.* ¶ 5.

---

plaintiffs in six of the seven cases consolidated before Judge Timothy S. Black in Ohio. *See Jones v. The Kroger Co.*, No. 1:21-cv-00146-TSB (S.D. Ohio); *Govaert v. The Kroger Co.*, No. 1:21-cv-174-TSB (S.D. Ohio); *Doty v. The Kroger Co.*, No. 1:21-cv-00198-TSB (S.D. Ohio); *Strohm v. The Kroger Co.*, No. 1:21-cv-00226-TSB (S.D. Ohio); *Abrams v. The Kroger Co.*, No. 1:21-cv-00240-TSB (S.D. Ohio); *Buck v. The Kroger Co.*, No. 1:21-cv-00279-TSB (S.D. Ohio). Plaintiffs in the seventh consolidated case, *Baer v. The Kroger Co.*, No. 1:21-cv-00323-TSB (S.D. Ohio) have not sought to intervene in this Court.

In the interim, on May 13, Kroger and counsel for Class Plaintiffs participated in an all-day mediation session before the Hon. Jay C. Gandhi (Ret., N.D. Cal.), which resulted in a settlement agreement. *Id.* ¶ 6. Even after reaching that agreement, however, Kroger and counsel for Class Plaintiffs continued to negotiate for more than a month before concluding a final settlement. *Id.* ¶ 7.

At no point during that process, or to date, did Kroger and Proposed Intervenors exchange any settlement offers or demands. *Id.* ¶ 8. And with respect to "informal discovery," *see* Goldenberg Decl. ¶ 8, Kroger has provided Proposed Intervenors with exactly one document since the parties began to explore settlement preliminaries in April of 2021—an incident report, prepared for Accellion, that Intervenors appeared unaware had been publicly available since March 1. Joyce Decl. ¶ 9. Proposed Intervenors were not undercut at the bargaining table by unscrupulous "copycat" counsel. Self-inflicted preliminary delays, combined with their apparent lack of preparedness to engage in serious discussions and the success of an intensive mediation before Judge Gandhi, simply kept Proposed Intervenors from negotiating at all.

### C.   Proposed Intervenors Oppose a Stay in Ohio Based on the Time Until Final Settlement Approval, and Then Seek A Lengthy Delay of Proceedings in This Court

Kroger notified Proposed Intervenors of the Settlement on June 21, 2021, and on the same day filed a motion to stay the Ohio Matters pending the completion of nationwide settlement approval proceedings in this Court. *See* Kroger's Mot. for Stay Pending Disposition of Nationwide Class Settlement Proceedings, ECF No. 21 in Ohio Consolidated Action. After efforts to obtain a hearing date on a preliminary approval motion in this Court, the Settlement was filed for this Court's approval several days later, and a hearing was set for September 16, 2021. *See* Mot. for Prelim. Approval of Class Action Settlement, ECF No. 31.

Once it became clear that Proposed Intervenors would oppose staying the Ohio Matters—in part by sowing doubt about the pace of settlement approval proceedings in this Court—Kroger moved to advance the preliminary approval hearing under this Court's rules. *See* Unopposed Admin. Mot. to Advance Hearing, ECF No. 33. Kroger's motion noted that another group of Ohio plaintiffs (who have not sought to intervene here) had already filed an opposition to stay the Ohio Matters pending settlement, claiming that delay in approval would cause prejudice. *See id.* Kroger asked for an earlier

hearing date because "[a] timely resolution of [the motion for preliminary settlement approval] will conserve party and judicial resources in the Ohio Matters"—which will be resolved in full if this Court approves the Settlement—"and avoid the type of delays about which the plaintiffs opposing Kroger's stay motion preemptively complain." *Id.* at 3.

Proposed Intervenors filed their opposition to staying the Ohio Matters on July 12, 2021, arguing in part that a stay was inappropriate "[b]ecause the [S]ettlement has not yet been preliminarily approved and is many months away from a fairness hearing." *See* Opp'n for Mot. for Stay Pending Nationwide Class Settlement Proceedings, ECF No. 25 at 3 in Ohio Consolidated Action. The next day, this Court granted Kroger's motion to advance the preliminary approval hearing to August 5, 2021. ECF No. 39.

Ten days later, on July 23, counsel for Proposed Intervenors contacted counsel for Kroger and counsel for Class Plaintiffs via email, stating that they would move to intervene in this Court on July 26. Joyce Decl. ¶ 10. Proposed Intervenors did not file their motion on Monday, July 26. Instead, they did so late in the afternoon on Friday, July 30. ECF No. 57.

### D. This Court Holds a Preliminary Approval Hearing at Which the Proposed Intervenors Were Heard

This Court held a hearing on the motion for preliminary approval on August 5, 2021. The Court continued the hearing pending the Class Plaintiffs and Kroger's agreement on changes to the proposed notice of class action settlement. *See* Minute Order, ECF 75. Proposed Intervenors represented that their motion to intervene was not mooted by this Court's continuance of the preliminary approval hearing. The Court encouraged Proposed Intervenors to meet and confer with Plaintiffs and Kroger to attempt to resolve their issues with the motion for preliminary approval before that date.

### LEGAL STANDARD

Intervention by members of a putative class is subject to the ordinary requirements of Federal Rule of Civil Procedure 24. *See* Fed. R. Civ. P. 24(a)(2). The party seeking intervention bears the burden of demonstrating that Rule 24 is satisfied. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Unless a would-be party satisfies Rule 24(a)'s requirements for intervention as of

right, the decision to allow intervention under Rule 24(b) is almost purely discretionary. *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

The Ninth Circuit has adopted a four-part test for intervention as of right under Rule 24(a)(2). Proposed Intervenors have a right to do so only if they (1) file a timely motion, (2) have a significantly protectable interest in the subject of the action; (3) may be impaired or impeded in protecting that interest without intervention, and (4) are not adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Each element is mandatory, and failure to establish any one is grounds to deny intervention. *See Smith v. Marsh*, 194 F.3d 1045, 1049-50 (9th Cir. 1999).

Permissive intervention under Rule 24(b) likewise requires a timely motion. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). More fundamentally, however, decisions on permissive intervention are always discretionary. *Orange Cnty.*, 799 F.2d at 539. In exercising that discretion, the Court must consider whether intervention will cause undue delay for the original parties. Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

### I.   Proposed Intervenors Do Not Satisfy The Requirements For Intervention As of Right

#### A.   The Motion to Intervene is Untimely

Timeliness is a threshold requirement. If the Court finds the motion untimely, it "need not reach any of the remaining elements of Rule 24." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *see Smith*, 194 F. 3d at 1050. Timeliness is assessed based on (1) the stage of the proceeding, (2) the reason for the delay, and (3) the prejudice to other parties from the delay in seeking to intervene. *Wilson*, 131 F.3d at 1302. All three factors cut against allowing intervention at this stage.

First, the cusp (and now the midst) of preliminary approval proceedings is too late for intervention, which courts routinely refuse at this advanced stage. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1222 & n.3 (9th Cir. 2015) (intervention was untimely because the motion—which sought opportunity to object at the preliminary approval hearing—was filed "on the eve of settlement"); *Zepeda v. PayPal, Inc.*, No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, at *8 (N.D. Cal. Apr. 23, 2014) (denying motion to intervene while existing parties were preparing an amended motion for

preliminary approval); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *3 (N.D. Cal. Oct. 23, 2009) (finding motion to intervene filed two weeks after preliminary approval motion to be untimely).

Proposed Intervenors' reliance on *Smith v. L.A. Unified School District*, 830 F.3d 843 (9th Cir. 2016), and *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002), is unavailing. *See* Mot. at 6-7. The Ninth Circuit has limited *Carpenter* to intervention in suits brought by the United States, and rejected its application to private class actions. *Allen*, 787 F.3d at 1222. And *Smith* does not stand for a general right to intervene decades after a case begins. Rather, *Smith* held that intervention was timely because it came "as soon as reasonably practicable" following a new and significant "change in circumstances" (an agreement by existing plaintiffs to modify a consent decree). 830 F.3d at 854-57. By contrast, Proposed Intervenors have identified no change in the Settlement's terms (and there was none) between the date of its announcement and their belated appearance a full month later. Rather, intervention at this point would merely "delay the potential resolution of this case" after Kroger and Class Plaintiffs have already invested in "extensive mediated settlement negotiations," and this Court has already held a hearing at which it considered (and requested changes to) the Settlement. *See Zepeda*, 2014 WL 1653246, at *8.

Second, Proposed Intervenors do not—and could not—offer any reason for their significant delay. At the time they moved to intervene on July 30, Proposed Intervenors had been on notice of the Settlement since June 21, and had also received notice of the motion for preliminary approval (along with the actual Settlement terms) on June 30, and had received notice of Kroger's unopposed request to advance the preliminary approval hearing on July 1. Under this Court's rules, oppositions to preliminary approval were due by July 14, *see* Civil L.R. 7-3(a), and oppositions to advancing the hearing date by July 5, Civil L.R. 7-11(b). Proposed Intervenors failed to file their motion until *July 30*—a month after they learned the Settlement's terms, two weeks after the deadline to oppose preliminary approval, and only six days before the hearing. This timing cannot be "as soon as practical" as Proposed Intervenors claim. Mot. at 6:22. They have offered no justification for that delay, and the Court should not accommodate their dilatory filing.

BRIEF OF DEFENDANT THE KROGER CO. IN OPPOSITION TO INTERVENTION,
Case No. 5:21-cv-1887-EJD

Third, intervention in this matter would prejudice the interests of class members—including both Class Plaintiffs and Proposed Intervenors—by delaying the distribution of settlement proceeds and potentially decreasing an eventual class recovery by increasing the expense of the settlement approval process. *See Zepeda*, 2014 WL 1653246, at *8 (finding that prejudice would occur where intervention "after extensive mediated settlement negotiations and when an amended motion for preliminary approval is to be filed soon—would delay the potential resolution of this case[]"); *cf. Allen*, 787 F.3d at 1222 (intervention at preliminary approval stage "threatened to prejudice settling parties by potentially derailing settlement talks").

**B.      Proposed Intervenors Need Not Intervene to Protect Their Interest in a Fair Settlement**

Even if they had filed it in a timely fashion (they did not), Proposed Intervenors' motion would still fail because they have not identified any protectable interest that would be impaired if they cannot participate at the preliminary approval stage. In order to intervene as of right, Proposed Intervenors must identify *both* a "significantly protectable interest," *and* articulate why intervention is necessary to protect it. *See Arakaki*, 324 F.3d at 1083. Here, Proposed Intervenors appear to assert an interest in the *ultimate outcome* of this litigation, but fail entirely to show that protecting it requires an opportunity to separately oppose *preliminary approval*. That disconnect is an independent basis to deny intervention as of right.

At the threshold, Proposed Intervenors identify no protectable interest in blocking preliminary approval as such. Nor could they. As another judge of this district has explained, there is no "significantly protectable interest incumbent in an opportunity to object to preliminary approval," because "the Court will make its determination as to whether *final* approval should be granted based on the facts and law before it at that point in time . . . and [will] not be influenced by previously granted *preliminary* approval." *Lane*, 2009 WL 3458198, at *5 (emphasis added); *see also Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (noting that preliminary approval, "in contrast to final approval, 'is at most a determination that there is what might be termed 'probable cause'" to give class members' notice and hold a "full-scale" fairness hearing). It is no coincidence that there is "no Civil Local Rule, Federal Rule of Civil Procedure, or other authority that permits a

7

1    putative class member to file objections to a motion for preliminary approval." *Chavez v. PVH Corp.*,

2    No. 13-cv-01797-LHK, 2015 WL 12915109, at *3 (N.D. Cal. Aug. 6, 2015).

3            Rather, Proposed Intervenors appear to claim a protectable interest in preventing final approval

4    of an unfair settlement that covers their claims. *See* Mot. at 7-8. But even assuming *arguendo* that

5    Proposed Intervenors' interest in the terms of a *final* settlement is "significant[ly] protectable," *see*

6    *supra* at __, that interest cannot support intervention here because Proposed Intervenors ability to

7    protect it does not depend on participation in *preliminary* approval.

8            Courts in this circuit have consistently held that "intervention of right is unavailable" to class

9    members who may effectively protect their own interests by objecting prior to final approval of a

10   settlement, and/or by opting out and litigating individually. *Chi v. Univ. of S. Cal.*, No. 2:18-cv-04258-

11   SVW-GJS, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019); *see, e.g.*, *Zepeda*, 2014 WL 1653246,

12   at *4 ("[C]ourts have frequently denied intervention in the class action settlement context, citing

13   concerns about prejudice, as well as putative interveners' ability to protect their interests by less

14   disruptive means, such as opting out of the settlement class or participating in the fairness hearing

15   process."); *Raquedan v. Centerplate of Del. Inc.*, 376 F. Supp. 3d 1038, 1041-42 (N.D. Cal. 2019).

16   Here, the Settlement provides the Proposed Intervenors with opt-out rights, and the Proposed

17   Intervenors also have the ability to object to the Settlement. Accordingly, Proposed Intervenors'

18   alleged interests are sufficiently protected. *See, e.g.*, *Bergman v. Thelen LLP*, No. C-08-05322 EDL,

19   2009 WL 1308019, at *2 (N.D. Cal. May 11, 2009) ("The disposition of the action will not, as a

20   practical matter, impede or impair applicants' ability to protect their interest[,]" and they "may opt of

21   the class action and assert any claims they wish to pursue against Defendants."); *Cohorst v. BRE*

22   *Properties, Inc.*, No. 10-cv-2666 JM (BGS), 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011)

23   (denying intervention motion where proposed intervenor "may raise any objections to the settlement

24   at the time of the Final Hearing[]").

25           The *only* in-circuit authority cited by Proposed Intervenors, *see* Mot. at 8, is this Court's

26   decision in *Gomes v. Eventbrite, Inc.*, No. 5:19-cv-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30,

27   2020), but that case is distinguishable. In *Gomes*, plaintiffs in an overlapping state-court suit sought

28   to intervene in federal court for the limited purpose of delaying preliminary approval proceedings until

the state judge ruled on the merits of their parallel claims. *Gomes*, 2020 WL 6381343, at *3-4. This Court allowed intervention because, unlike here, the state-court plaintiffs were "not intervening for the purpose of objecting to the settlement." *Id.* at *4. Thus, Intervention was appropriate in *Gomes* because it strengthened rather than supplanted the process of objections and opt-outs—it allowed the state-court plaintiffs to participate in the final approval process with better understanding of the strength of their claims. *Id.* Here, by contrast, Proposed Intervenors have clearly represented that they intend to object to the Settlement and seek to intervene only for that purpose. Mot. at 1 (seeking intervention to explain why granting preliminary approval "will cause far more harm than good), at 15 (asking that preliminary approval be denied).[3]

### C.    Existing Parties Adequately Protect Proposed Intervenors' Interests

Proposed Intervenors fail to show that their protectable interest is not adequately represented by the existing parties. A "presumption of adequacy of representation arises" when the "applicant for intervention and an existing party have the same ultimate objective." *Arakaki*, 324 F.3d at 1086. Proposed Intervenors and named Plaintiffs have the same objective: obtaining relief for the harms they allegedly experienced as a result of vulnerabilities in Accellion FTA. *Compare* Am. Compl., ECF No. 27 at ¶ 88 ("Kroger owes a duty to Plaintiffs and the Class Members to maintain adequate security and protect the confidentiality of their personal data.") and ¶ 317 ("Kroger breached its duties by…failing to protect the personal, health, and financial information in its possession; failing to maintain adequate

---

[3] Proposed Intervenors out-of-circuit citations are contradicted by the overwhelming weight of authority in this district, and in all events are otherwise unpersuasive. The Eighth Circuit's decision in *Smith v. SEECO, Inc.*, 865 F.3d 1021 (8th Cir. 2017), held only that the district court in that case erred by treating the right to opt out as a *per se* bar to intervention, and remanded for reconsideration under the correct legal standard. *Smith*, 865 F.3d at 1024-25. But Proposed Intervenors need not fall under a categorical bar for intervention to fail here—it is enough that there are no unusual circumstances in this case, *cf. Gomes, supra*, that would render the objection and opt-out mechanisms inadequate to protect their interests. Similarly, the Eleventh Circuit's decision in *Technology Training Associates, Inc. v. Buccaneers Limited Partnership*, 874 F.3d 692 (11th Cir. 2017), reversed the district court for applying a rule that suggested that "class members could never intervene in a class action," notwithstanding the inadequacy of the settling class plaintiffs' representation, *see id.* at 696 ("Members of a class have a right to intervene if their interests are not adequately represented by existing parties.") (cleaned up, citations omitted); *id.* at 697 (citing a Supreme Court decision "indicating that an absent class member's right to intervene turns on whether it can satisfy the adequate representation prong"). This Court should follow the cases in this district.

BRIEF OF DEFENDANT THE KROGER CO. IN OPPOSITION TO INTERVENTION,
Case No. 5:21-cv-1887-EJD

computer systems and data security practices to safeguard the personal, health, and financial information in its possession") *with* ECF No. 27 in Ohio Consolidated Action ("Consol. Compl.") at ¶ 321 ("Kroger owed a duty to Plaintiffs and the Class to adequately safeguard the PII and PHI that it required its employees and customers to provide,") and ¶ 333 ("Kroger breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class Members' [personal information]").

Federal courts have held that there is a presumption of adequate representation when "the persons attempting to intervene are members of a class already involved in the litigation or are intervening only to protect the interests of class members." *Bergman,* 2009 WL 1308019, at *2 (internal quotation omitted). This presumption can only be rebutted with a "compelling showing" to the contrary. *Arakaki*, 324 F.3d at 1086. Proposed Intervenors have made no such showing, because they offer no "evidence of collusion, nonfeasance, adversity of interest, incompetence, or lack of financial resources." *In re Cloudera, Inc. Secs. Litig.*, No. 5:19-CV-03221-LHK, 2021 WL 1238301, at *2-3 (N.D. Cal. Apr. 2, 2021) (internal quotation omitted). At most, Proposed Intervenors have identified settlement provisions with which they disagree, but "[a]dequacy of representation does not turn on whether an existing party will litigate the case 'in the exact manner' that a putative intervenor would if they controlled the litigation." *Id.* at *3 (citing *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009)).

Moreover, Proposed Intervenors' attempt to challenge adequacy by pointing to unsatisfactory settlement terms also fails because the Settlement is fair and reasonable on its face. Proposed Intervenors are certainly correct that the "'[b]asic'" process of assessing a proposed settlement "'compare[s] the terms of the compromise with the likely rewards of litigation.'" *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *see* Mot. at 11. Class Plaintiffs have done so in detail in their Memorandum In Support of Preliminary Approval, *see* ECF No. 31, and again in their opposition to Proposed Intervenors' motion, *see* ECF No. 70. Proposed Intervenors largely ignore that analysis, which Kroger will not recapitulate in full. Rather, Kroger writes here to emphasize three crucial points.

First, as Class Plaintiffs correctly explain in their opposition brief to Proposed Intervenors motion, the Settlement's terms are comparatively more favorable in the aggregate than many data breach settlements that have received final approval, including those negotiated by some of Proposed Intervenors' counsel. *See* ECF 70 at 2-3 (collecting cases involving various counsel to Proposed Intervenors).

Second, the Settlement's terms are particularly fair to the Proposed Intervenors in light of the strength of Kroger's defenses to *their* claims. In Kroger's view, the Class Plaintiffs understated the risks plaintiffs within the proposed nationwide class generally would face in pursuing their claims on the merits, *see* Mot. for Prelim. Approval of Class Action Settlement, ECF No. 31 at 22-25, and the risks specific to Proposed Intervenors are, if anything, even greater than those the Class Plaintiffs detailed under California law, *see id*. To begin, like any plaintiff seeking relief against Kroger, Proposed Intervenors face a significant vulnerability in their ability to maintain a claim given Kroger's rapid recovery of all data stolen in the Accellion Incident, and without any indication that any of the temporarily exfiltrated data had been disseminated by the threat actors. *See id.* at 3-4; *see also* ECF 32 at 2-3. Moreover, Proposed Intervenors' claims—which do not allege any physical injury or property damage—also face a formidable economic loss doctrine hurdle, including under Ohio law as applied by the Sixth Circuit. *See City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477-78 (6th Cir. 2017). Furthermore, Proposed Intervenors claims are uniquely vulnerable because Kroger is entitled to a statutory safe harbor against "any cause of action sounding in tort that is brought under the laws of [Ohio] or in the courts of [Ohio] and that alleges that the failure to implement reasonable information security controls resulted in a data breach concerning personal information or restricted information." Ohio Rev. Code § 1354.02(D)(2); *see id.* § 1354.02(A) (safe harbor applies to entities that, like Kroger, "creat[ed], maintain[ed], and compl[ied] with a written cybersecurity program"). Here, the Proposed Intervenors *all* brought suit in the courts of Ohio—namely, the Southern District of Ohio—and many brought their tort claims under Ohio law. For all these reasons, Proposed Intervenors (and the class they wish to represent) would face steep hurdles over and above the numerous weaknesses that Class Plaintiffs have already identified. *See* Mot. for Prelim. Approval of

1    Class Action Settlement, ECF No. 31 at 22-25. The Settlement therefore reflects both fairness and the

2    Class Plaintiffs' adequacy of representation.

3           Third, Proposed Intervenors offer no basis to believe that the Settlement will undercompensate

4    them. Without evidence (or even citation to a pleading—no Proposed Intervenor plausibly pleads such

5    a thing in this Court), they assert that "[s]ome class members" have "reported monetary losses" caused

6    by the Accellion Incident greater than the $5,000 reimbursement limit proposed in the Settlement.

7    Goldenberg Decl. ¶ 17. A single Proposed Intervenor, Caren Butler-Alexander, has alleged in Ohio

8    that an "account…hack," which she attributes to the Accellion Incident, has affected her receipt of

9    $10,000 in unemployment compensation. Consol. Compl. ¶ 251. At the outset, it is extremely doubtful

10   that Ms. Butler-Alexander's experience is related to the Accellion Incident—as Class Plaintiffs have

11   explained, Kroger has "recovered the impacted data . . . , received evidence that any remaining copies

12   of the data were deleted, and confirmed that none [of it has been] published or offered for sale on the

13   dark web." Mot. for Prelim. Approval of Class Action Settlement, ECF No. 31 at 3-4. But even if it

14   were related, Ms. Butler-Alexander still does not allege that the Accellion Incident caused a loss of

15   eligibility for unemployment payments, which she maintains are "duly owed" and which is

16   "continuously fighting for." Consol. Compl. ¶ 251. Ms. Butler-Alexander, in other words, has alleged

17   an administrative delay, not a monetary loss, which should have no bearing on the Settlement.

18   **II.     Proposed Intervenors Should Not Be Granted Permissive Intervention Pursuant to Rule
             24(b).**

19

20          This Court should also deny permissive intervention for similar reasons. Timeliness is also a

21   threshold requirement under Rule 24(b), and the Ninth Circuit has explained that it is analyzed "more

22   strictly" in that context than under Rule 24(a). *Wilson*, 131 F.3d at 1308. Because Proposed Intervenors

23   motion is untimely, *see supra* Part __, the Court need not go further in order to deny it. But in any

24   case, permissive intervention is further inappropriate here because it would "'unduly delay or

25   prejudice adjudication of the original parties' rights'" for the reasons explained in Part __, *supra. See*

26   *Cody v. SoulCycle, Inc.*, No. CV 15-06457-MWF (JEMx), 2017 WL 8811114, at *5 (C.D. Cal. Sept.

27   20, 2017) (denying permissive intervention where the request is "*not* timely and risks compromising

28   or postponing final settlement").

# CONCLUSION

While there are manifold reasons supporting the adequacy, fairness, and equitability of the Settlement terms, that question will be subject to review by this Court at and following a final fairness hearing. Proposed Intervenors' objections should be heard at that stage in the ordinary course, not by way of a belated and disruptive attempt at intervention. The Court should deny Proposed Intervenors' motion to intervene.

Date: August 23, 2021

**SIDLEY AUSTIN LLP**

By: /s/ *Amy P. Lally*

Amy P. Lally, SBN 198555
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars 17th Floor
Los Angeles CA 90067
Telephone: (310) 595-9500
Fax: (310) 595-9501

Eamon P. Joyce (*pro hac vice*)
ejoyce@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Colleen T. Brown (*pro hac vice*)
ctbrown@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8465
Facsimile: (202) 736-8711