Courtland L. Reichman
Jennifer Estremera
Ariel C. Green
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
(650) 623-1401
creichman@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
agreen@reichmanjorgensen.com

David A. King Jr. (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1710 Rhode Island Avenue, NW
12th Floor
Washington, DC 20036
(202) 894-7310
dking@reichmanjorgensen.com

Jeffrey S. Goldenberg (*Pro Hac Vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Terence R. Coates (*Pro Hac Vice*)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

*Counsel for Proposed Intervenors*

[Additional Counsel Appear on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>    v.<br><br>THE KROGER CO. and ACCELLION, INC.<br><br>                              Defendants. | Case No. 5:21-cv-01887-EJD<br><br>**REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:     October 28, 2021<br>TIME:     9:00 a.m.<br>CTROOM:  4, 5th Floor<br>JUDGE:   Hon. Edward J. Davila |

# TABLE OF CONTENTS

**PAGES**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ....................................................................................................... 3

        A.     Intervention is Proper.............................................................................. 3

               1.     The Motion to Intervene is Timely ............................................. 3

               2.     Intervenors Have a Significant Protectable Interest and Settlement Would Impair Intervenors' Ability to Protect their Interests................................... 4

               3.     Intervenors' Interests are not Adequately Protected by the Existing Parties ................................................................................................ 5

               4.     Alternatively, Permissive Intervention Should be Granted Under Rule 24 (b)....................................................................................................... 5

        B.     The Proposed Settlement is Not Fair, Reasonable, or Adequate ............................ 6

               1.     The Settlement is Substantively Unreasonable and Inadequate ................. 7

                      a.     Inadequate Consideration and Unreasonable Claims Rate Projection ............................................................................. 7

                      b.     Relief is in the Alternative ............................................... 9

                      c.     No Plan for Reminder Notices.......................................... 10

                      d.     Confusing Release ........................................................ 10

               2.     The Settlement is Procedurally Deficient ................................. 11

                      a.     Reverse Auction.......................................................... 11

                      b.     Changes to the Proposed Class .................................... 13

                      c.     California Paradox ...................................................... 14

                      d.     Attorneys Fees .......................................................... 14

III.    CONCLUSION..................................................................................................... 15

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adkins v. Facebook, Inc.*,
No. 3:18-cv-05982 (N.D. Cal. May 6, 2021)................................................................9

*Angus v. Flagstar Bank,* FSB, E.D. Mich. No. 21-cv-10657................................................12

*Beyer v. Flagstar Bancorp, Inc.*,
N.D. Cal. No. 5:21-cv-02239..........................................................................12

*Chacon v. Nebraska Medicine*,
No. 8:21-cv-00070 (D. Neb. May 25, 2021)..........................................................8

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) (Sotomayor, J., concurring)........................................2, 11

*In re Data Breach Security Litigation Against the Kroger Company*,
S. D. Ohio No. 1:21-cv-146............................................................................1

*Gomes v. Eventbrite, Inc.*,
No. 5:19-CV-02019-EJD, 2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ................................4

*In re Hanna Andersson and Salesforce.com Data Breach Litigation*,
No. 3:20-cv-00812 (N.D. Cal. Nov. 19, 2020) ..........................................................8

*Koenig v. Lime Crime, Inc.*,
No. 16-cv-503, ECF No. 55-2 (C.D. Cal. Feb. 8, 2018)..........................................9

*Negrete v. Allianz Life Ins. Co.*,
523 F.3d 1091 (9th Cir. 2008) ........................................................................12

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ........................................................................12

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)....................................................................................5

*In re Target Corp. Customer Data Security Breach Litigation*,
MDL No. 14-2522 (D. Minn.) ........................................................................8

**State Cases**

*In re The Home Depot Inc. Customer Data Security Breach Litigation*,
No. 1:14-md-02583 (N.D. Ga.)........................................................................8

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-ii-

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
  No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019)..................................................................8

**Rules**

Rule 24(b) ...................................................................................................................................5

**Other Authorities**

*In re Accellion, Inc., Customer Data Security Breach Litigation*,
  MDL No. 3002, 2021 WL 2370722 (JPML June 7, 2021)......................................................2

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

James Jones—a former Kroger Company ("Kroger") employee and longtime pharmacy customer—filed a putative class action against Kroger in its home state of Ohio on March 3, 2021, just days after Kroger announced the hack that exposed his, and similarly situated individuals', medical and financial data. Six additional cases were subsequently filed by separate groups of plaintiffs, all asserting similar claims arising from the data breach.  Those cases have been consolidated before Judge Timothy S. Black as *In re Data Breach Security Litigation Against the Kroger Company*, S. D. Ohio No. 1:21-cv-146.

Kroger acknowledges that it initially approached the Consolidated Ohio Plaintiffs ("Intervenors") regarding the possibility of settlement on April 26, 2021.  Joyce Decl. 2:2, ECF No. 72-1.  But because responsible settlement of a class action requires sufficient data about the size of the class and the scope of the class members' damages, Intervenors asked Kroger to provide some basic information about the breach through informal discovery.  *Id*. at ¶ 3.  According to Kroger, it reviewed Intervenors' requests for additional information but found them "largely not to relate to" the data breach or "information in existence." *Id*. at ¶ 4. Unable to entice Intervenors' counsel to quickly settle without having to produce the requested information, Kroger turned to Plan B.

Weeks after Plaintiff Jones filed the original action in Kroger's home District, Plaintiffs Ricky Cochran and Alain Berrebi (the "Cochran Plaintiffs") filed this putative class action. According to the declaration submitted by Kroger, it agreed to mediation with the Cochran Plaintiffs on April 30, 2021 — the *day after* Intervenors' counsel requested additional information about the class as a prerequisite to settlement.  *Id*. at ¶¶3, 6.

Meanwhile, the Cochran Plaintiffs sought to create a sprawling multi-district litigation in the Northern District of California covering the Kroger breach and other incidents.  Kroger joined Intervenors in opposing this petition.  After holding a hearing on May 26, 2021, the Judicial Panel

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-1-

on Multidistrict Litigation denied the petition on June 7, 2021. *In re Accellion, Inc., Customer Data Security Breach Litig.*, MDL No. 3002, 2021 WL 2370722 (JPML June 7, 2021).

The Cochran Plaintiffs and Kroger mediated the case while the multi-district litigation dispute pended before the JPML and reached a settlement in principle. *See* Mot. for Prelimn. Approval, ECF No. 31 at 9. On June 30, 2021, the Cochran Plaintiffs moved for preliminary approval. *See id.* Concerned that the Cochran Plaintiffs lacked sufficient information about the class members to responsibly resolve their claims, Intervenors asked Kroger for a copy of the settlement agreement. *Cf. China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1814–15 (2018) (Sotomayor, J., concurring) ("the existence of multiple putative class actions covering the same harm to the same class may lead to a race toward judgment or settlement" and "[t]his gamesmanship is not in class members' interest, nor in the interest of justice"). Kroger refused to produce the settlement agreement or answer any of Intervenors' questions about the settlement. Only after the Cochran Plaintiffs publicly filed their motion for preliminary approval did Kroger finally forward a copy of the preliminary approval filings without addressing any of Intervenors' other inquiries. Upon review of the settlement agreement, Intervenors' suspicions and concerns were confirmed, as the settlement is plainly inadequate.

Intervenors have moved to intervene because the interests of the proposed class are not adequately represented in this suit and the proposed settlement is neither fair, reasonable, nor adequate.[1] Kroger has filed a brief opposing intervention, but tellingly makes no effort to defend the settlement itself. *See* Kroger Opp'n. Br. ECF No. 85. And while the Cochran Plaintiffs raise

---

[1] Notably, the Cochran Plaintiffs have not filed any updates to the proposed settlement or notice in light of this Court's concerns, which were expressed during the August 5, 2021 preliminary approval hearing. *See* ECF No. 75. Accordingly, this brief outlines Intervenors' concerns with the settlement agreement and notice that exists today. Intervenors reserve the right to respond to any new, proposed settlement or notice.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-2-

several arguments against intervention and in support of the settlement, none is persuasive. Intervenor's motion should be granted.

**II.      ARGUMENT**

    **A.      <u>Intervention is Proper</u>**

The Cochran Plaintiffs are attempting to give away Intervenors' significant rights in exchange for an inadequate settlement.  Intervenors mobilized quickly after learning about the terms of the proposed settlement and retained appropriate local counsel to assist in the intervention request.  The arguments advanced by Kroger and the Cochran Plaintiffs do nothing to undermine the propriety of intervention.

    **1.      The Motion to Intervene is Timely**

Intervenors moved for intervention as soon as practicable and very early in this case.  Two weeks after the Judicial Panel on Multidistrict Litigation agreed with Intervenors and Kroger and denied the Cochran Plaintiffs' petition to create an MDL in the Northern District of California, Kroger's counsel emailed Intervenors on June 21, 2021 informing them that Kroger had agreed to a nationwide settlement with the Cochran Plaintiffs over the Father's Day weekend.  Kroger waited another 10 days to send a copy of the proposed settlement to Intervenors.  Upon reviewing and analyzing the proposed settlement, Intervenors determined that the proposed settlement was inadequate and retained local counsel for the purpose of seeking intervention in this case to challenge the hasty settlement.

Intervenors chose to seek intervention in this case rather than merely wait until final approval to voice their objections to the settlement to maximize the efficient use of the Class's and Court's resources.  It makes no sense to expend valuable funds to send class notice for an inadequate settlement only to re-notice the same class members when the deficiencies of the proposed settlement are ultimately rectified.

The Court originally scheduled the preliminary approval hearing for September 2, 2021. But Kroger, without opposition from the Cochran Plaintiffs, successfully requested that the preliminary approval hearing be advanced to August 5, 2021.

Intervenors moved to intervene on July 30, 2021 after following the N.D. California Local

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-3-

Rules and this Court's standing orders, which require securing a hearing date before filing. In short, Intervenors moved as quickly as they could to review and analyze the proposed settlement in detail, retain local counsel, and move to intervene in accordance with applicable rules and orders. Accordingly, their Motion to Intervene was timely.

Kroger's argument that Intervenor's request to intervene must be denied because parties should not be permitted to intervene on the "eve of preliminary" approval is facile. Id. at 5, ECF No. 85. When measured against the timing of the Cochran Plaintiffs' motion for preliminary approval — rather than against the expedited hearing scheduled — Intervenors' motion was filed quickly.[2] In any event, given the Court's denial of preliminary approval, there is no prejudice caused by intervention. See ECF No. 75. Indeed, neither the Cochran Plaintiffs nor Kroger appear to have agreed on changes to the settlement and/or notice precipitated by the Court's concerns expressed on August 5, 2021. Accordingly, viewed in any light, the intervention is timely.

**2.    Intervenors Have a Significant Protectable Interest and Settlement Would Impair Intervenors' Ability to Protect their Interests**

This Court has explained that class members "possess a significantly protectable interest by virtue of being members of the class . . . ." *Gomes v. Eventbrite, Inc*., No. 5:19-CV-02019-EJD, 2020 WL 6381343, at *3 (N.D. Cal. Oct. 30, 2020). Intervenors, as class members, are no different.

Neither Kroger nor the Cochran Plaintiffs contest that Intervenors have a significant protectable interest for the purpose of intervention. Kroger Opp'n. Br. 7-9, ECF No. 85; Plf's. Opp'n 4-5, ECF No. 87. Instead, Kroger and the Cochran Plaintiffs generally argue that intervention is unnecessary because Intervenors may opt-out or object to the proposed settlement at final approval. Kroger Opp'n. Br. 7-9, ECF No. 85; Pl's. Opp'n. Br. 4-5, ECF No. 87. But they also do not really dispute the reasoning of the cases that Intervenors cite for the proposition

---

[2] It is also unclear what Kroger means when it claims that Intervenors "had received notice of Kroger's unopposed request to advance the preliminary approval hearing on July 1," ECF No. 85 at 6, since Kroger did not notify Intervenors of its request.

that preliminary approval would impair Intervenors' ability to protect their interests.  Nor could they since the Supreme Court has recognized that "[m]embers of a class have a right to intervene if their interests are not adequately represented by existing parties."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (quoting 5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 16:7, at 154 (4th ed. 2002)).  Given the deficiencies in the settlement discussed below, it is more efficient for Intervenors to be permitted to intervene and fix the settlement now before valuable resources are expended on class notice than having to send class notice twice — especially since notice costs are being paid from the settlement fund.  In other words, it is more efficient to use the Class's funds to issue notice once instead of waiting until the final approval. Money spent on settlement administration, including in disseminating notice to the Class, cannot be reclaimed.

**3.    Intervenors' Interests are not Adequately Protected by the Existing Parties**

Kroger and the Cochran Plaintiffs claim that Intervenors' interests are protected by the existing parties because the Cochran settlement compares favorably to other data breach class actions.  Opp'n. Br.  10-11, ECF No. 85; Pl's. Opp'n. 8-9, ECF No. 87.  But this is simply not true. Attached as Exhibit A is a chart of data breach settlements demonstrating that the proposed settlement's dollar-to-class-member ratio is much lower than other comparable settlements where sensitive personal information such as Social Security numbers were taken.  Importantly, most of the settlements included in the Cochran Plaintiffs' chart involved credit card breaches — not valuable personally identifiable information such as Social Security numbers.  *Id*.

Given the quick nature of the proposed Kroger settlement and the Kroger settlement's apparent insufficient benefit to the Class, Intervenors have serious doubts about whether their interests and the rest of the Class's interests are being adequately protected.

**4.    Alternatively, Permissive Intervention Should be Granted Under Rule 24 (b)**

In the alternative, Intervenors should be allowed permissive intervention in this action. Intervenors' claims are based on the same underlying facts and are brought under the same law.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-5-

For all of the reasons discussed above, permissive intervention would be equitable and cause no cognizable prejudice to the Cochran Plaintiffs.

### B.   The Proposed Settlement is Not Fair, Reasonable, or Adequate

The Kroger data breach exposed far more sensitive information than a common payment-card breach.  Class members' personally identifiable information was exposed, including: Social Security numbers, dates of birth, names, home addresses, phone numbers, email addresses, salary information, health insurance information, and prescription information.  At the same time, Kroger is a highly profitable company with adequate insurance.  In similar situations, involving sensitive information and a solvent defendant, one normally sees far more robust recovery than is projected here.  *See* Exhibit A.  Accordingly, Intervenors took the unusual step of intervening to oppose preliminary class certification to protect the putative class members.

On August 5, 2021, the Court held a hearing on the Cochran Plaintiffs' Motion for Preliminary Approval before continuing the matter until October 28, 2021.  *See* ECF No. 75. During the hearing, the Court took specific issue with certain deficiencies with the proposed class notice and continued the hearing in order to give the Cochran Plaintiffs an opportunity to address those foundational issues.  Aug. 5, 2021 Hr'g Tr. at 17:25-19:9, ECF No. 75.  As Intervenors pointed out in their principal brief, the proposed notice completely failed to inform class members that claims for documented losses and cash would only be funded if money remains after satisfying all claims for credit monitoring, and that cash payments are contingent on funds remaining after satisfying all credit-monitoring and documented-loss claims.  *See* Mot. to Intervene. 14, ECF No. 57.  If even .015% of class members receive a $5,000 payment, and assuming no one claims credit monitoring, that would require the entire estimated $2.9 million that would be available to pay claims.  *Id*.  The Court appeared to have similar concerns.  *See*  Aug. 5, 2021 Hr'g Tr. at 18:16-25, ECF No. 75. ("I think it's not abnormal to think that consumers might say I'd like to get some money…, but they're not informed that in making that decision they don't know, at least on this notice, that the fund for that is going to be depleted by the first two items and that whatever is left in that fund available to them could be dramatically, significantly less").

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-6-

The Cochran Plaintiffs now oppose Intervenors' motion arguing that the Court was "aware" of Intervenors' other objections to the settlement at the time of the hearing, but only expressed concern about the notice issue.  Pl's. Opp'n. 1, ECF No. 87.  The Cochran Plaintiffs assert that Intervenors' other objections are now "moot" because they were considered and implicitly rejected by the Court at the hearing.  *Id*. (citing  Aug. 5, 2021 Hr'g Tr. at 28:6-15, ECF No. 75).    However, the Court specifically noted at the hearing that it was not "taking up" Intervenors' motion to intervene scheduled for October, but merely permitted Intervenors to be present.  *Id*. at 4:10-16; 5:8-16, ECF No. 75.  And while the Court did ask Intervenors whether they believed their motion was mooted by the Court's declination to grant preliminary approval at the hearing, Intervenors explained that the motion was not moot because Intervenors would like an opportunity to explain at the October 28 hearing why the settlement is not fair, adequate, or reasonable.  *Id*. at 27:10-28:5.

At the August 5 hearing, the Court also suggested to Intervenors that they try to work with the Cochran Plaintiffs to improve the settlement.  *Id*. at 28:16-18; 29:18-30:14.   Intervenors reached out to Kroger and the Cochran Plaintiffs and met with the Cochran Plaintiffs' counsel on September 2 and then again on September 9.  Decl. of Jeffrey S. Goldenberg in Support of Reply in Support of Reply in Support of Motion to Intervene and in Opposition to Preliminary Approval of Class Action Settlement ¶ 5 (attached as Exhibit B).  On the September 2, 2021 call, Counsel for the Intervenors shared some of their substantive concerns about the settlement with Counsel for the Cochran Plaintiffs, and structure this reply around those concerns.  *Id* at ¶ 6. On the September 9, 2021 call, counsel for the Cochran Plaintiffs relayed that Kroger and the Cochran Plaintiffs are unwilling to revise the substantive benefits of the settlement. *Id* at ¶ 6.

## 1.  The Settlement is Substantively Unreasonable and Inadequate

### a.  *Inadequate Consideration and Unreasonable Claims Rate Projection*

The fundamental problem with the proposed settlement is that it provides an inadequate level of compensation for the type of information exposed in this breach.  As laid out in Exhibit A, in comparable settlements that Intervenors are aware of, per class member settlement amounts

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-7-

commonly range from double- to triple-digit dollar figures, compared to only $1.30 per class member provided here.  *See* Exhibit A (listing cases with per class member relief of $30.19, $113, $94, $87, $3.61, $2.59, and $21).

The Cochran Plaintiffs cite settlements in other data breach cases to justify their inadequate settlement with Kroger.  However, those settlements were materially different, generally involving payment cards rather than the far more serious information at issue here.  For example,

- *In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 14-2522 (D. Minn.) was a credit and debit card data breach case.  No Social Security numbers, driver license numbers, health information, or any of the other highly sensitive personal information at issue in this case was stolen in that case.  *See generally id*. at ECF No. 258.

- *In re Hanna Andersson and Salesforce.com Data Breach Litigation*, No. 3:20-cv-00812-EMC (N.D. Cal. Nov. 19, 2020) was a credit card data breach case, and no Social Security numbers, driver license numbers, health information, or any of the other highly sensitive personal information at issue in this case was stolen in that case.  *See id*., ECF No. 30, ¶ 2 (Hackers "scraped" many of Hanna's customers' names, billing and shipping addresses, payment card numbers, CVV codes, and credit card expiration dates.)  Furthermore, Hanna was experiencing financial difficulty, unlike Kroger here.  *See id*., ECF No. 59-1 at 16 ("Hanna's business has been significantly affected by the COVID-19 global health crisis" and Hanna "lack[ed] insurance coverage").  Finally, while plaintiffs alleged a CCPA claim in *Hanna*, the data breach occurred prior to the effective date of the CCPA and defendants had a strong argument that the CCPA was not retroactive.  *Id*., ECF No. 64 at 4 ("the CCPA was not in effect at the time of the security incident at issue (September 16, 2019 through November 11, 2019)," "the CCPA became operative only on January 1, 2020," and "the CCPA [cannot] apply retroactively").  Yet, even the $400,000 settlement fund for the 200,000 class members in *Hanna* provided $2 per class member as compared with Plaintiffs' inadequate settlement with Kroger here that provides only $1.30 per class member.

- *In re Yahoo! Inc. Customer Data Security Breach Litig*., No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) involved the theft of "names, email addresses, telephone numbers, birth dates, passwords, and security (Challenge/Response) questions of Yahoo account holders."  *Id*., ECF No. 366-1, ¶ 7.  It did not involve the highly sensitive and difficult to replace PII at issue in this case such as Social Security numbers and driver's license numbers.

- *In re The Home Depot Inc. Customer Data Security Breach Litigation*, No. 1:14-md-02583 (N.D. Ga.) was also a payment card data breach and did not involve Social Security or driver license numbers or any of the other highly sensitive personal information involved in this data breach.  *See id*., ECF No. 93, ¶ 2.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-8-

- *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb. May 25, 2021) was a hospital data breach concerning 125,902 patient files.  Only a small fraction of these files (about ten percent) contained Social Security numbers and/or driver's license numbers.

- *Adkins v. Facebook, Inc.*, No. 3:18-cv-05982-WHA (N.D. Cal. May 6, 2021) was a data breach case involving access to social media accounts on Facebook.  *Id.*, ECF No. 263, ¶ 6.  That data breach did not involve Social Security or driver license numbers or any of the other highly sensitive personal information involved in this data breach.

The Cochran Plaintiffs also attempt to justify this low dollar amount by assuming an unreasonable claims rate projection of one to three percent (1-3%).  They justify this low rate by pointing to cases settled by Intervenors' counsel that are easily distinguishable from this one.  *See* Exhibit A.  For example, the Cochran Plaintiffs reference *Koenig v. Lime Crime, Inc.*, No. 16-cv-503, (C.D. Cal. Feb. 8, 2018), ECF No. 55-2 as "in[sic] data breach settlement where 2,666 claims were received out of a class of 107,726 members."  Mot. for Settlement 9, ECF No. 31.  What the Cochran Plaintiffs fail mention is that the defendant, Lime Crime, Inc. ("Lime Crime"), was an offshore-based, online-only cosmetics company with no insurance, a very low profit margin, and a youth-based target market.  Even so, a settlement class of parents of "tweens" achieved a final claims rate of three percent (3%), with 3,094 submitted claims out of a class of 104,500 people.

In short, based on Intervenors' counsels' decades of experiences, and the results of comparable cases summarized in Appendix A, class members can and should get more compensation. There is no reason to settle away these claims for pennies on the dollar.

### b.    Relief is in the Alternative

The inadequacy of the settlement amount here is compounded by the fact that class members will have to choose one form of relief: credit monitoring, actual damages, or a cash payout.  As the Court noted, this will be a difficult decision for any class member to make without full information about the likely claims rate and value of different forms of relief.   Aug. 5, 2021 Hr'g Tr. at 17:12-18, ECF No. 75 ("[I]t's one selection, the consumer has to make a selection

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-9-

between each of these.  When they balance their position as to what is going to be most advantageous to them for their selection, they should be fully informed about the parameters of each of these, and that's what I'm suggesting.").  But class member should not even need to make this choice.  It is more common in settlements akin to this one for these different forms of relief to all be offered to each consumer.  *See* Appendix A.  That is, this settlement should be an "and" rather than an "or" settlement.

### c.   No Plan for Reminder Notices

The Court rightly expressed concern about the inadequate notice provisions in this proposed settlement.  *See, e.g.*,  Aug. 5, 2021 Hr'g Tr. at 17:25-18:03, ECF No. 75 ("And when I look at the notice here, it does not fully inform, does it, the consumer that the cash payment might be limited because there are certain aspects, according the settlement, where that fund can be reduced."). Beyond the language of the notice itself, however, there is an even bigger problem. The settlement makes no provision for reminder notices, which in Intervenor counsel's experience are a crucial method of ensuring a high claims rate.  Such notices can be cheaply and easily done when, as is likely for many class members here, the defendant has access to email addresses for class members.

### d.   Confusing Release

As Intervenors pointed out in their motion, the settlement agreement in places purports to only release claims against Kroger but also appears to function as a dismissal with prejudice of claims against Accellion.  *See* Mot. to Intervene. 13, ECF No. 57.  The Cochran plaintiffs dispute this characterization, Pl's Opp'n. 16, ECF No. 87, but even if their argument is right, it makes

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-10-

sense to clarify this matter in the settlement so that class members clearly know what their rights are.[3]

### 2.    The Settlement is Procedurally Deficient

Intervenors continue to be concerned that the substantively inadequate recovery proposed here is the result of a rushed and irregular procedure.

#### a.    *Reverse Auction*

A "reverse auction" occurs when a defendant pits multiple class counsel against each other in a competition to accept the lowest bid on behalf of the class.  *See generally China Agritech, Inc.*, 138 S. Ct. at 1814–15 (2018) (Sotomayor, J., concurring).  "This gamesmanship is not in class members' interest, nor in the interest of justice."  *Id*.  That is precisely what took place here. Kroger initially began settlement discussions with counsel for Intervenors, presumably because Intervenors' case was the first-filed and more procedurally advanced, and because Intervenors represent the majority of plaintiffs that have filed suit.  However, when Intervenors made clear that they were unwilling to negotiate a settlement without basic information about the scope and nature of the data breach and the class members' damages before any settlement could be reached, Kroger turned elsewhere for a quick settlement.  The very next day, Kroger agreed to enter mediation with the Cochran Plaintiffs, who apparently were willing to settle the absent class members' claims without the benefit of meaningful pre-settlement discovery.

The Cochran Plaintiffs assert that there was no "reverse auction" here because Kroger terminated settlement discussions with Intervenors before Kroger offered or received a formal settlement demand.  Pl's. Opp'n. 10, ECF No. 87.  But Kroger only walked away from settlement discussions with Intervenors when Intervenors made clear that they were unwilling to settle

---

[3] It appears that even counsel for the Cochran plaintiffs can be confused by the release language, since the section of their brief intended to establish that the settlement "does not release claims against Accellion" is titled: "The Release is Against Accellion Only."  Pl's. Opp'n. 16, ECF No. 87.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-11-

without adequate discovery.  The Cochran Plaintiffs provide no authority for the proposition that a formal settlement demand is a prerequisite for a "reverse auction."

The Cochran Plaintiffs rely on *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091 (9th Cir. 2008) for the idea that evidence of underhanded activity is needed to show a "reverse auction" because otherwise every settlement involving parallel cases could be accused of improper collusion.  Pl's. Opp'n. 10, ECF No. 87 (citing *Negrete*, 523 F.3d at 1100).  But that case was decided in a very different posture — an injunction issued by one district court under the All Writs Act prohibiting a defendant from negotiating a settlement in parallel litigation.  *Negrete*, 523 F.3d at 1100.  In any event, the very case that the *Negrete* court relied on recognized that even where there is "no proof that the settlement was actually collusive in a reverse-auction sense, the circumstances [may] demand[] close[] scrutiny . . . ." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283 (7th Cir. 2002).

The Cochran Plaintiffs assert that the settlement is the product of "***months*** of hard-fought, arm's length negotiations."  Pl's. Opp'n. 10, ECF No. 87.  But there was not even two "months" between when the Cochran Plaintiffs filed suit (March 17) and the settlement date (May 13). Instead, Kroger agreed to mediate with the Cochran Plaintiffs on April 30 — the day after Intervenors requested class discovery from Kroger — and they reached a settlement two weeks later, after a single day of mediation.  Joyce Decl., ¶¶ 3, 6.  Kroger and the Cochran Plaintiffs may have continued to work together to finalize the settlement in the weeks after May 13, but the essential terms of settlement were agreed to at the mediation session without the Cochran Plaintiffs engaging in meaningful discovery about the breach or scope of the class members' injuries.  Not surprisingly, as previously discussed, the resulting settlement is inadequate.[4]

---

[4] Intervenors note that the Cochran Plaintiffs' counsel appear to have a recent track record of agreeing to relatively quick class action settlements.  In *Angus v. Flagstar Bank*, FSB, E.D. Mich. No. 21-cv-10657, when Ahdoot & Wolfson, counsel for Cochran Plaintiffs, lost its bid to be lead counsel in a consolidated case, it voluntarily dismissed its case and immediately scheduled a mediation in a similar action in this district, *Beyer v. Flagstar Bancorp, Inc.*, N.D. Cal. No. 5:21-

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-12-

### b.   Changes to the Proposed Class

As discussed in Intervenors' principal brief, the Cochran Plaintiffs filed an amended complaint six weeks after the settlement was reached, likely to obfuscate the fact that the case the Cochran Plaintiffs settled was very different than the one they originally initiated.   Northern District guidance requires that a motion for preliminary approval explain "any differences between the settlement class and the class proposed in the *operative* complaint."   Northern District of California, Procedural Guidance for Class Action Settlements (Dec. 5, 2018) ("Proc. Guidance for Class Settlements").   In other words, the Cochran Plaintiffs filed a new "operative" complaint to avoid having to explain to the Court the reasons for the dramatic differences between the settlement class and the class proposed in the Cochran Plaintiffs' original complaint — the complaint that was *operative* when the settlement was reached.

The Cochran Plaintiffs offer no explanation for the amendment, instead simply asserting that they "fully compl[ied] with the guidance."   Pl's. Opp'n. 13, ECF No. 87.   While it is impossible to discern the rationale for the post-settlement amendment, the procedure is troubling and appears at a minimum inconsistent with the spirit and intent of the Northern District Guidance.

The Cochran Plaintiffs also dispute Intervenors' assertion that the amended complaint "abandons" medical information claims, noting that while the amended complaint "does not contain a separate class for California residents whose medical information was released in the Data Breach as the initial complaint did . . ., the FAC includes medical information in its definition personal information, brings a claim for violation of the Confidentiality of Medical Information Act ('CMIA'), and provides settlement benefits that are specifically tailored to the value of these

---

cv-02239-EJD.  The other plaintiffs' counsel were not originally made aware of the mediation, but eventually were notified by Defendant Flagstar and permitted to attend to the mediation. The mediation was unsuccessful. However, Ahdoot & Wolfson scheduled a second mediation with Judge Gandhi ten days later without including the other plaintiffs' counsel, which resulted in a purported nationwide settlement that, like the settlement here, seeks to resolve claims for far less than they are worth.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-13-

statutory claims." Pl's. Opp'n. 13-14, ECF No. 87.  This is misleading for two reasons. First, it is hard to see how the settlement provides benefits "specifically tailored" to class members whose medical information was taken when all class members are entitled to exactly the same benefits. Second, the CMIA claim is brought on behalf of a single plaintiff rather than the class.  Amd. Compl. 24, ECF No. 27.

### c.    *California Paradox*

The Cochran Plaintiffs propose to pay California residents twice as much as residents from any other state "[i]n view of the heightened protections afforded to California Class Members under the California statutory claims asserted in this lawsuit." Mot. for Settlement 9, ECF No. 31. According to the Cochran Plaintiffs' moving papers, the California statutory claims "face significant risk of dismissal on the pleadings or an unfavorable disposition on summary judgment," such that a total settlement of $5 million for all class members is reasonable even though "the statutory damages available to California residents" — who make up less than 4% of the Settlement Class — alone total "$150 million."  *Id.* at 21, 23-25.  If the California statutory claims are sufficiently weak to justify essentially ignoring their value for purposes of settlement, why would those same claims justify doubling the cash payments to California class members?  The Cochran Plaintiffs fail to explain this apparent contradiction.

The Cochran Plaintiffs accuse Intervenors of "confus[ing] the issues" because there are risks of continuing the litigation as to all claims, not just the California claims.  Pl's. Opp'n. 13, ECF No. 87.  But Intervenors respectfully submit that it is the Cochran Plaintiffs who are confused. If California class members' claims are not being discounted more than class members from other state, why is it reasonable to settle their claims — claims which the Cochran Plaintiffs value at up to $150 million — for pennies on the dollar?

### d.    *Attorneys Fees*

Lastly, Proposed Class Counsel claim to have incurred $500,763 in lodestar fees in a case that they filed in March and settled two months later.  *See* Mot. for Settlement 14, ECF No. 31. For comparison purposes, the lodestar for two attorneys working 12 hours per business day, for eight weeks, at $500/hr., would only be $480,000.  Here, it is impossible to discern how the

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-14-

Plaintiffs' attorneys could have billed so much since they do not, in contravention of Northern District guidance, "include the total number of hours billed to date," Proc. Guidance for Class Settlements. They also do not, again contrary to Northern District guidance, include "the requested multiplier." *Id.* But the Cochran Plaintiffs do strongly hint that they may seek 25% of the settlement fund, which is more than $1 million dollars. *Id.* at 14. Further, a class member wishing to object to the fees sought will not have the 35 days required by the Northern District guidance because the settlement agreement provides for only 21 days between the fee petition deadline and the objection deadline, Stipulation with Proposed Order 30, ECF No. 32.[5]

The Cochran Plaintiffs' only response to these numerous deficiencies is to argue that such objections are "premature" and can be addressed at final approval and to assert, without elaboration, that they are "contrary to the basic facts of the case." Pl's. Opp'n. 14, ECF No. 87. Intervenors' motion should be granted.

## III.    CONCLUSION

For the foregoing reasons, the Cochran Plaintiffs' Motion for Preliminary Approval (Mot. for Settlement ECF No. 31.) should be denied and the Court should grant Intervenors' motion to intervene.

DATED: September 9, 2021          By:      */s/ Courtland L. Reichman*
                                              Courtland L. Reichman

                                          Courtland L. Reichman
                                          Jennifer Estremera
                                          Ariel C. Green
                                          REICHMAN JORGENSEN LEHMAN &
                                          FELDBERG LLP
                                          100 Marine Parkway, Suite 300
                                          Redwood Shores, California 94065
                                          (650) 623-1401
                                          creichman@reichmanjorgensen.com
                                          jestremera@reichmanjorgensen.com

---

[5] The Cochran Plaintiffs point to the Proposed Order they provided the Court, which provides the full 35 days, but that Order is inconsistent with the plain terms of the Settlement Agreement. Pl's. Opp'n. 14, ECF No. 87.

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-15-

agreen@reichmanjorgensen.com

David A. King Jr. (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1710 Rhode Island Avenue, NW
12th Floor
Washington, DC 20036
(202) 894-7310
dking@reichmanjorgensen.com

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis*
Ryan D. Maxey*
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates* *(Pro Hac Vice)*
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg** *(Pro Hac Vice)*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner*
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Rachele R. Byrd
750 B Street, Suite 1820
San Diego, CA 92101
Phone: 619/239-4599
Fax: 619/234-4599
byrd@whafh.com

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-16-

**MASON LIETZ & KLINGER LLP**
Gary E. Mason*
5301 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
gklinger@masonllp.com

**LEVIN, SEDRAN & BERMAN, LLP**
Charles E. Schaffer *
David C. Magagna Jr.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (212) 592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

**STRAUSS TROY CO., LPA**
Robert R. Sparks*
Richard S. Wayne*
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Phone: (513) 621-2120
Fax: (513) 241-8259
rrsparks@strausstroy.com
rswayne@strausstroy.com

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP**.
M. Anderson Berry
865 Howe Avenue
Sacramento, CA 95825
Phone: (916) 777-7777
aberry@justice4you.com

**DANNLAW**
Brian D. Flick*
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

**FEDERMAN & SHERWOOD**
William B. Federman (*Pro Hac Vice*)
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-17-

Fax: (405) 239-2112
wbf@federmanlaw.com

*Counsel for Proposed Intervenors*

*\*Pro Hac Vice* Application to be filed

REPLY IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-CV-01887-EJD

-18-