TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Tel: 310.474.911; Fax: 310.474.8585

ANDREW W. FERICH (admitted *pro hac vice*)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: 310.474.9111; Fax: 310.474.8585

BEN BARNOW (admitted *pro hac vice*)
*b.barnow@barnowlaw.com*
ANTHONY PARKHILL (admitted *pro hac vice*)
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000; Fax: 312-641-5504

*Class Counsel for Plaintiffs and the Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.,<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:   March 10, 2022<br>TIME:   9:00 A.M.<br>JUDGE:  Hon. Edward J. Davila<br>CTRM:   4, 5th Floor<br><br>[Filed concurrently with the Declarations of Cameron Azari and Colleen T. Brown] |

1

## NOTICE OF MOTION AND MOTION

2 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3        **PLEASE TAKE NOTICE** that on March 10, 2022, at 9:00 a.m., in Courtroom 4 of the United

4 States District Court for the Northern District of California, Robert F. Peckham Federal Building &

5 United States Courthouse, 280 South 1st Street, San Jose, 95113, the Honorable Edward J. Davila

6 presiding, Plaintiffs Ricky Cochran, Alain Berrebi, and Jaramey Stobbe (collectively, "Plaintiffs"),

7 will and hereby do move for an Order for Final Approval of Class Action Settlement.

8        This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and

9 Authorities; the concurrently filed Declarations of Cameron Azari ("Azari Decl.") and Colleen T.

10 Brown ("Brown Decl."); the Class Action Settlement and Release (the "Settlement") previously filed

11 with the Court (ECF No. 32), and all papers filed in support thereof; the argument of counsel; all papers

12 and records on file in this matter; and such other matters as the Court may consider.

13

14 DATED: January 14, 2022                    Respectfully submitted,

15
                                            */s/ Tina Wolfson*_____
16                                          TINA WOLFSON (SBN 174806)
                                            *twolfson@ahdootwolfson.com*
17                                          ROBERT AHDOOT (SBN 172098)
                                            *rahdoot@ahdootwolfson.com*
18                                          **AHDOOT & WOLFSON, PC**
                                            2600 W. Olive Avenue, Suite 500
19                                          Burbank, CA 91505-4521
                                            Tel:  310.474.9111; Fax:   310.474.8585
20
21                                          ANDREW W. FERICH (admitted *pro hac vice*)
                                            *aferich@ahdootwolfson.com*
22                                          **AHDOOT & WOLFSON, PC**
                                            201 King of Prussia Road, Suite 650
23                                          Radnor, PA 19087
                                            Tel:  310.474.9111; Fax: 310.474.8585
24
25                                          BEN BARNOW (admitted *pro hac vice*)
                                            *b.barnow@barnowlaw.com*
26                                          ANTHONY L. PARKHILL (admitted *pro hac vice*)
                                            *aparkhill@barnowlaw.com*
27                                          **BARNOW AND ASSOCIATES, P.C.**
                                            205 West Randolph Street, Suite 1630
28

- 1 -

1

Chicago, IL 60606
Tel: 312-621-2000; Fax: 312-641-5504

2

3

*Class Counsel for Plaintiffs and the Class*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.    The FTA Data Breach and Subsequent Litigation ...................................1

    B.    Mediation and Settlement Negotiations ...................................................3

    C.    Terms of the Settlement ...........................................................................4

        1.    The Class Definition ....................................................................4

        2.    The Release ..................................................................................4

        3.    The Settlement Benefits ...............................................................4

            a.    Cash Fund Payments .........................................................4

            b.    Credit Monitoring and Insurance Services ........................5

            c.    Documented Loss Payment ...............................................5

            d.    Prospective Relief and Changes in Business Practices Attributable to the Settlement ...................................................................6

            e.    The Settlement's Value to Class Members ........................6

        4.    Preliminary Approval ...................................................................6

        5.    Notice to Class .............................................................................7

        6.    Class Response .............................................................................8

III.   ARGUMENT ........................................................................................................8

    A.    Legal Standards for Final Approval .........................................................8

    B.    The Court Should Certify the Class..........................................................8

    C.    The Court Should Grant Final Approval of the Settlement.....................10

        1.    The Proposed Settlement Provides A Substantial Recovery, Taking Into Account the Costs and Benefits of Continued Litigation ...........................10

        2.    The Extent of Discovery Completed and the Stage of the Proceedings........12

        3.    The Proposed Settlement is the Product of a Arm's-Length Negotiations and is Supported by Experienced Counsel ...................................................13

        4.    The Proposed Method of Distribution Is Highly Effective .........................15

- i -

5.    The Proposed Attorney Fee Award is Reasonable .......................................15

6.    The Presence of a Governmental Participant ................................16

7.    The Reaction of Class Members to the Proposed Settlement.......................16

8.    The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members ................................................16

IV.    CONCLUSION ................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Adoma v. Univ. of Phoenix Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................................. 8

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ......................................................................................... 12

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................................................... 10, 16

*G. F. v. Contra Costa Cty.*,
   No. 13-cv-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................... 13

*In re Banner Health Data Breach Litigation*,
   No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019) .................................................. 13

*In re Bluetooth Headset*,
   654 F.3d 935 (9th Cir. 2011) ..................................................................................... 13, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .................................. 10

*In re Fleet/Norstar Sec. Litig.*, 9
   35 F. Supp. 99 (D.R.I. 1996) ......................................................................................... 16

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ......................................................................................... 10

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   No. 3:15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019) ..................................... 13

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) .................................. 12

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).............................. 11

*Krottner v. Starbucks Corp.*,
   406 F.App'x 129 (9th Cir. 2010) ................................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 16

*Noll v. eBay*,
   309 F.R.D. 593 (N.D. Cal. 2015) ................................................................................ 10

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ............................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................................... 8

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ........................................................................................ 8

**Statutes**

28 U.S.C.
   § 1715 ......................................................................................................................... 16

**Rules**

Fed. R. Civ P.
   23(a) ............................................................................................................................. 8
   23(a)(1) ........................................................................................................................ 9
   23(a)(2) ........................................................................................................................ 9
   23(a)(3) ........................................................................................................................ 9
   23(a)(4) ........................................................................................................................ 9
   23(b)(3) ........................................................................................................................ 9
   23(c)(2)(B) ............................................................................................................ 16, 18
   23(e) ........................................................................................................................... 15
   23(e)(1) ...................................................................................................................... 16
   23(e)(2) ........................................................................................................................ 8
   23(e)(2)(C) ................................................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Ricky Cochran, Alain Berrebi, and Jaramey Stobbe request that the Court grant final approval of a nationwide class action settlement ("Settlement") with Defendant The Kroger Co. ("Kroger"). The Settlement resolves all class claims against only Kroger and the Released Parties on behalf of approximately 3.82 million Settlement Class Members ("Class Members") relating to Accellion's File Transfer Appliance ("FTA") Data Breach. [1]

The Settlement establishes a non-reversionary cash fund of $5 million to pay for valid claims. Claimants may elect to receive: (1) a cash payment, calculated in accordance with the terms of the Settlement Agreement (with double the amount to California residents in light of the statutory claims available to them); (2) two years of Credit Monitoring and Insurance Services ("CMIS"); or (3) a payment for reimbursement of Documented Losses of up to $5,000. The Settlement also provides for robust injunctive relief which includes confirming that Class Members' sensitive personally identifiable information ("PII") is secured; dark web monitoring for five years for fraudulent activity relating to Class Members' PII, and various enhancements to Kroger's third-party vendor risk management program.

The response to the Settlement has been very positive—it delivers tangible and immediate benefits to Class Members that address all the potential harms of the FTA Data Breach, without protracted litigation and the inherent risks of class action litigation. It delivers a fair, adequate, and reasonable resolution for the Class, and merits final approval. Fed. R. Civ. P. 23(e)(2).

## II.    BACKGROUND

### A.    The FTA Data Breach and Subsequent Litigation

In late 2020 and early 2021, Accellion began disclosing to its clients that certain threat actors had breached their data via vulnerabilities in Accellion's File Transfer Appliance ("FTA") software. First Amended Complaint ("FAC"), ECF No. 27 ¶ 2. These threat actors were then able to steal sensitive

---

[1] Unless otherwise noted, all capitalized terms not separately defined herein have the meaning ascribed to them in the Settlement Agreement.

data from many Accellion clients, including corporations, law firms, banks, universities, and other entities. *Id.* ¶ 31. On January 23, 2021, Accellion notified Kroger that it was one such client impacted by the FTA Data Breach. *Id.* ¶ 42. As part of the FTA Data Breach, hacker(s) accessed Kroger's files containing Plaintiffs' and Class Members' PII. *Id.*

On February 19, 2021, Kroger publicly confirmed that the PII of certain Kroger pharmacy customers and former and current employees was compromised in the FTA Data Breach. *Id.* ¶ 5. The affected PII included names, email addresses, dates of birth, home addresses, phone numbers, social security numbers ("SSN"), salary information, health benefits information including prescription ID numbers, and prescription information. *Id.* ¶ 1; Declaration of Tina Wolfson ("Wolfson Decl."), ECF No. 31-005, ¶ 8. As a result of the breach, unauthorized persons accessed sensitive PII of approximately 3.82 million Kroger pharmacy customers and current and former employees. *Id.* ¶ 36.

On March 17, 2021, this action was filed on behalf of Plaintiffs Ricky Cochran and Alain Berrebi, naming Accellion and Kroger as co-defendants. ECF No. 1. At the time, Jaramey Stobbe already had filed a separate class action in this Court against Accellion only, entitled *Stobbe v. Accellion, Inc.*, No. 5:21-cv-01353-EJD (filed February 24, 2021) ("*Stobbe*"). Each of the Plaintiffs received notification from Kroger indicating that their PII was accessed during the FTA Data Breach. Wolfson Decl. ¶ 9.

Plaintiffs allege that, among other things, Kroger and Accellion: (a) failed to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' PII; (b) failed to prevent the FTA Data Breach; (c) failed to detect security vulnerabilities leading to the FTA Data Breach; and (d) failed to disclose that their data security practices were inadequate to safeguard Class Members' PII. ECF No. 27 ¶¶ 48, 54, 64-70, 113. Specifically with respect to Kroger, Plaintiffs alleged that it had a duty to, and impliedly promised Plaintiffs and Class Members that it would, protect their sensitive PII from unauthorized disclosure and handle this data securely, and that it failed to do so by entrusting the PII to a third-party file transfer vendor whose products and services were prone to security vulnerabilities that left Class Members' PII exposed. *Id.* ¶¶ 54, 89.

Plaintiffs' allegations include claims for negligence, breach of implied contract, violations of the California Consumer Privacy Act ("CCPA") and the California Confidentiality of Medical Information Act ("CMIA"). *Id.* ¶¶ 83-169. Plaintiffs seek certification of a nationwide class. ¶ 75.

### B.   Mediation and Settlement Negotiations

As a result of the Parties' continued meet-and-confer efforts throughout the month of April, they were able to reach an agreement to participate in mediation to attempt to resolve this matter. Wolfson Decl. ¶ 17; Declaration of Ben Barnow ("Barnow Decl."), ECF No. 31-003, ¶ 17. The mediation was scheduled for May 13, 2021 before the Hon. Judge Jay C. Gandhi (Ret.) of JAMS. Wolfson Decl. ¶ 17; Barnow Decl. ¶ 17.

Prior to the mediation session, the Parties exchanged information to prepare for and facilitate a productive mediation session. Wolfson Decl. ¶ 18; Barnow Decl. ¶ 18. The Parties communicated their respective positions on the litigation and the Parties' claims and defenses with each other and the mediator. *Id*. Plaintiffs received and analyzed data from Kroger relating to the impact of the FTA Data Breach on Kroger, including specific information concerning the categories of individuals who received breach notification letters from Kroger (e.g., customers, employees), the nature of the PII impacted, and the number of Class Members impacted. *Id*.

On May 13, 2021, the Parties participated in a full-day video-conferencing mediation session with Judge Gandhi. Wolfson Decl. ¶ 19; Barnow Decl. ¶ 19. With Judge Gandhi's guidance, the Parties had a productive mediation session characterized by zealous advocacy by counsel for both sides. Late in the day, the Parties reached an agreement in principle to settle the litigation. *Id*.

Following the mediation, the Parties continued to work together to finalize the Settlement's terms. Wolfson Decl. ¶ 21; Barnow Decl. ¶ 21. During this time, the Parties exchanged numerous drafts of the Settlement Agreement and its exhibits, negotiating numerous details to maximize the benefits to the Class Members. *Id*. These efforts included (among other things) the distribution plan, how to best provide notice to the Class Members and developing a Notice Plan, selection of a settlement administrator, and selection of a vendor for CMIS.  Wolfson Decl. ¶¶ 23–24; Barnow Decl. ¶¶ 22–23.

- 3 -

After comprehensive negotiations and diligent efforts, Plaintiffs and Kroger finalized the terms of the Settlement and obtained preliminary approval. Plaintiffs now seek final approval of the Settlement from the Court.

### C.     Terms of the Settlement

#### 1.     The Class Definition

The proposed Settlement Class is defined as follows:

> [A]ll residents of the United States who were notified by The Kroger Co. that their PII was compromised as a result of the FTA Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendant Kroger, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant Kroger or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

SA ¶ 44. The proposed Class is identical to the Nationwide Class defined in the FAC. ECF No. 27 ¶ 75.

#### 2.     The Release

In exchange for the benefits provided under the Settlement Agreement, Class Members will release any claims against Kroger related to or arising from any of the facts alleged in the FAC filed in this litigation. SA ¶ 57. Class Members do not release any claims they may have against other defendants related to the FTA Data Breach. The claims sought to be released by the Settlement are coextensive with the claims in the FAC.

#### 3.     The Settlement Benefits

The Settlement provides for a $5 million non-reversionary cash Settlement Fund (*id.* ¶ 60) that will be used to provide Participating Class Members, at their choice, with one of the following Settlement Benefits:

##### a.     Cash Fund Payments

Class Members may submit a Claim Form to receive a Cash Fund Payment. The amount of the Cash Fund Payment is calculated in accordance with the terms of the Settlement Agreement. *Id.* ¶ 71(b). In view of the heightened protections afforded to California Class Members under the California statutory claims asserted in this lawsuit (i.e., the CCPA, CMIA), California Class Members who submit

- 4 -

1   valid claims for Cash Fund Payments will receive Settlement Payments that are twice the amount of

2   Settlement Payments made to non-California Class Members. SA ¶ 76(b).

3        In Plaintiffs' Memorandum of Points and Authorities in Support of Preliminary Approval

4   ("Memo ISO Mot. for Prelim. Approval") (ECF No. 31), Class Counsel anticipated that California

5   Claimants will receive approximately $182 at 1%, $74 at 2%, and $36 at 3%, and non-California

6   Claimants will receive approximately $91 at 1%, $37 at 2%, and $18 at 3%. ECF No. 31 at 9. Based on

7   the claims received to date, it is believed that the Cash Fund Payments will fall within these ranges.

8   **b.**    **Credit Monitoring and Insurance Services**

9        Each Settlement Class Member who submits a valid claim may elect to receive CMIS. If a

10   Settlement Class Member chooses the CMIS as her respective Settlement Benefit and already maintains

11   a subscription for a similar product, they have the option to postpone the commencement of the CMIS

12   by 12 months for no additional charge. SA ¶ 71(a).

13        The CMIS protection plan will include the following services: (i) up to $1 million dollars of

14   identity theft insurance coverage; (ii) three-bureau credit monitoring providing notice of changes to the

15   participant's credit profile; (iii) alerts for activity including new inquiries, new accounts created, change

16   of address requests, changes to public records, postings of potentially negative information, and other

17   leading indicators of identity theft; (iv) customer care and dedicated fraud resolution agent; (v)

18   comprehensive educational resources; and (vi) extended fraud resolution. *Id.*; Barnow Decl. ¶ 28. The

19   retail value of this CMIS is $15 per month (a total $360 for the entire two year term) for each subscriber.

20   Declaration of Robert Siciliano, ECF No. 31-4, ¶¶ 7-8.

21   **c.**    **Documented Loss Payment**

22        In the alternative to the CMIS or the Cash Fund Payment, Class Members may seek

23   reimbursement of up to $5,000 of Documented Losses ("Documented Loss Payment"). To receive a

24   Documented Loss Payment, a Settlement Class Member must submit a valid Claim Form with

25   attestation regarding the amount of the loss supported by reasonable documentary proof. SA ¶ 71.c.

26

27

28

#### d. Prospective Relief and Changes in Business Practices Attributable to the Settlement

The Settlement also promises significant remedial measures that Kroger has enacted or will be enacting as a result of this Settlement, all of which will benefit all Class Members, whether or not they submit a claim. Kroger will confirm that it has fully ended its use of the Accellion FTA and migrated to a new secure file transfer solution. SA ¶ 70. It will undertake measures to secure, or securely destroy, the PII that was subject to and subsequently recovered in the FTA Data Breach, and confirm that this has been completed. *Id*. Kroger also will:

> enhance its existing third-party vendor risk management program … by taking at least the following measures: (i) [c]onduct periodic reviews of all file transfer programs or software currently being utilized for individual-to-individual transfers by … Kroger, including any third-party products, and evaluate whether any software used for such purpose is known by Kroger to be outdated, unsupported, or insecure; (ii) [t]o the extent Kroger changes its third-party file transfer vendor in the next five years, implement an RFP or bid solicitation program for third-party file transfer vendors; (iii) [f]or a period of five (5) years following the date the Court approves of the Settlement Agreement, continue to maintain positions within Kroger that are specifically responsible for overseeing third-party data transfer vendors and operations; and (iv) [c]ontinue to provide for the next five (5) years annual security awareness training for Kroger employees involved with customer and employee data sharing and data transfer activities, to cover industry best practices for data security and privacy.

*Id.* Finally, for five years after final approval of the Settlement, Kroger will continue to monitor the dark web for indications of fraudulent activity with respect to data of Kroger customers and current and former employees in connection with the FTA Data Breach. *Id.*

#### e. The Settlement's Value to Class Members

The value of the Settlement is significant. The cash fund value of the Settlement is $5,000,000. This does not include the value of the Settlement's robust prospective relief or the retail value of the CMIS claimed by Participating Class Members.

### 4. Preliminary Approval

Plaintiffs submitted their Motion for Preliminary Approval of Class Action Settlement on June 30, 2021. ECF No. 31. On July 30, 2021, a Motion to Intervene and in Opposition to Preliminary Approval of Class Action Settlement ("Motion to Intervene") was filed as well as an administrative motion to change the date of the preliminary approval hearing. ECF Nos. 57 and 58. The first

preliminary approval hearing was held on August 5, 2021, where the Court suggested certain changes to the notices, heard from the proposed interveners, and continued the preliminary approval hearing until October 28, 2021. ECF No. 75. Both Plaintiffs and Kroger filed responses to the proposed intervenors' Motion to Intervene on August 23, 2021, noting the exceptional benefits that the Settlement provides to the Settlement Class and the fairness of the Settlement. ECF Nos. 85 and 87. The proposed intervenors filed a reply to Plaintiffs' and Kroger's responses on September 9, 2021. ECF No. 89. On September 15, 2021, Plaintiffs submitted amended notice documents which addressed the Court's comments from the August 5 hearing. ECF No. 91. The Court held a hearing on October 28, 2021 to further consider Plaintiffs' Motion for Preliminary Approval and proposed intervenors' Motion to Intervene and in Opposition to Preliminary Approval of Class Action Settlement. ECF No. 93.

On November 5, 2021, the Court granted Plaintiffs Motion for Preliminary Approval and denied proposed intervenors' Motion to Intervene. ECF Nos. 98 and 99. In its Order denying the Motion to Intervene, the Court stated that the proposed intervenors "fail[ed] to identify a protectable interest that will be impaired if they are unable to intervene." ECF No. 99 at 3–4. The Court also noted that the proposed intervenors "already ha[d] been able to participate in the fairness hearings" and that intervention was unnecessary. *Id* at 5.

### 5. Notice to Class

Notice was successfully disseminated to the Class Settlement by Court-approved Settlement Administrator, Epiq Class Action and Mass Tort Solutions, LLC ("Epiq"). Declaration of Settlement Administrator ("Azari Decl.") ¶¶ 9-11. The Settlement Administrator completed distribution of the notices to the members of Settlement Class, in compliance with the Preliminary Approval Order. The multipart notice program was designed to, and did, provide the "best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B).

The notice program succeeded: 4,786,343 class notices were emailed to potential Class Members, and 1,675,422 postcard notices were mailed to potential Class Members. Azari Decl. ¶ 11. As of January 7, 2022, there have been over 341,131 pages viewed on the case website, and 20,348 calls to the toll-free information line, further demonstrating the success of the notice program. *Id*. ¶ 27-

28. In addition, at least 27 million targeted impressions will be delivered in the form of social media advertisements. *Id.* ¶¶ 22-23.

### 6.      Class Response

The Settlement Class' response to the Settlement has been overwhelmingly positive. The deadline to submit claims, opt outs, and any objections to the Settlement is March 5, 2022, which provides substantially more time for Class Members to respond to the settlement than the Court's recommended guideline of 35 days. As of January 7, 2022, 38,823 claims have been submitted, and the Parties expect the number of claims submitted to increase through the remainder of the claims period. Azari Decl. ¶ 31. To date, no objections to the Settlement have been filed and only eleven (11) Class Members have requested to opt out of the Settlement. *Id.* ¶ 31.

## III.      ARGUMENT

### A.      Legal Standards for Final Approval

Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement class; second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and third, it must assess whether notice has been provided in a manner consistent with Rule 23 and due process. Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). These procedures safeguard class members' due process rights and enable the Court to fulfill its role as the guardian of class interests. The Settlement satisfies each of these requirements.

### B.      The Court Should Certify the Class

Class certification under Rule 23 is a two-step process. First, the plaintiff must demonstrate that numerosity, commonality, typicality, and adequacy are met. Fed. R. Civ P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). A plaintiff must then establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs must demonstrate that "questions of law or fact common to Class Members predominate over any questions affecting only individual members,

and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

On November 5, 2021, the Court preliminarily approved the following Class definition:

> [A]ll residents of the United States who were notified by The Kroger Co. that their PII was compromised as a result of the FTA Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendant Kroger, their subsidiaries, parent companies, successors, predecessors, any entity in which the Defendant Kroger or their parents have a controlling interest, and their current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period, i.e., within 75 days of the Notice Date; and (4) the successors or assigns of any such excluded Persons.

Preliminary Approval Order ¶ 3.

Nothing has occurred that would change the Court's previous determination that Plaintiffs have satisfied the requirements under Rule 23. First, pursuant to Rule 23(a)(1), there can be no doubt that numerosity is satisfied as it is undisputed that the class consists of approximately 3.82 million Class Members. Pursuant to Rule 23(a)(2), there are questions of law or fact common to the class, including: the nature of Kroger's data security practices, whether Kroger knew or should have known that Accellion's FTA was unsecure, whether Kroger owed duties of care to Class Members to safeguard their PII, and whether Kroger breached those duties, among others. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, the claims of the named Plaintiffs are typical of the claims of the Settlement Class. Jaramey Stobbe is a Kroger employee, and Ricky Cochran and Alain Berrebi are customers; the Class Members are Kroger employees and customers. Plaintiffs' and Class Members' claims arise from the same nucleus of facts relating to the FTA Data Breach, pertain to a common defendant Kroger, and are based on the same legal theories. Finally, under Rule 23(a)(4), Plaintiffs and their counsel do not have any conflicts of interest with other Class Members and have demonstrated their commitment to prosecute the action vigorously on behalf of the class.

The requirements under Rule 23(b) are also satisfied. Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2)

- 9 -

1   the class action mechanism is superior to the other available methods for the fair and efficient

2   adjudication of the controversy. *Noll v. eBay*, 309 F.R.D. 593, 604 (N.D. Cal. 2015). Here, Plaintiffs'

3   claims depend on whether Kroger had reasonable data security measures in place to protect Plaintiffs'

4   and Class Members' PII, and whether Kroger could have prevented unauthorized exposure of Plaintiffs'

5   PII or mitigated its effects with more adequate third-party risk management practices. These questions

6   can be resolved by resort to common evidence for all Class Members, including Kroger's internal

7   documents, testimony of its employees, and expert analysis. In addition, the class action mechanism is

8   superior for resolving this matter given the very large size of the proposed class weighed against the

9   expense and burden of individual actions. Because Plaintiffs satisfy the Rule 23 requirements, the Court

10  should grant final certification of the Class.

**C.      The Court Should Grant Final Approval of the Settlement**

12          Rule 23(e) requires the district court to determine whether a proposed settlement is "fair,

13  reasonable, and adequate*." In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

14  To assess the fairness of a class settlement, Ninth Circuit courts consider a number of factors, including:

15  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future

16  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in

17  settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

18  and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class

19  members to the proposed settlement. *Id*. at 944 (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

20  575 (9th Cir. 2004)).

**1.      The Proposed Settlement Provides A Substantial Recovery, Taking Into Account the Costs and Benefits of Continued Litigation**

23          While Plaintiffs believe their case is a strong one, there would be substantial risk in litigating

24  the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately

25  complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL

26  256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data

1   breach class actions). This case is no exception to that rule. It involves nearly four million Class

2   Members, complicated and technical facts, and a well-funded and motivated defendant.

3          There are numerous substantial hurdles that Plaintiffs would have to overcome before the Court

4   might find a trial appropriate. First, given the early stage of the litigation, the legal sufficiency of

5   Plaintiffs' pleading was not tested by a motion to dismiss. Kroger likely would argue that certification

6   is not appropriate as different information regarding each class member was accessed by the hacking

7   entity—i.e., the compromised Settlement Class Member PII is not uniform. Establishing a cognizable

8   injury tied to Kroger's conduct (as opposed to, for instance, another data breach or some other cause)

9   can present challenges. *See, e.g.*, *Krottner v. Starbucks Corp.*, 406 F.App'x 129 (9th Cir. 2010) (holding

10  that, although plaintiffs established injury-in-fact for standing purposes, they failed to allege cognizable

11  damages in a data breach case); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th

12  Cir. 2021) (affirming dismissal of data breach class action for failure to allege cognizable damages).

13  This is especially true where, as here, a ransom was paid by the breached entity to protect the PII of the

14  Settlement Class.

15         Data breach cases, particularly, face substantial hurdles in surviving even past the pleading

16  stage and are among the most risky and uncertain of all class action litigation.

17         The $5 million non-reversionary Settlement Fund is an excellent result for the Settlement Class.

18  With this fund, all Class Members will be eligible for a Settlement Payment in the form of distribution

19  for the CMIS, Documented Loss Payment, or a Cash Fund Payment. SA ¶ 71. The Settlement Fund will

20  be applied to pay all Administrative Expenses, Notice Expenses, the taxes to the Settlement Fund, any

21  Service Awards, and any payment of a Fee Award and Costs. *Id.* ¶¶ 63, 97, 99. Any funds remaining in

22  the Net Settlement Fund after distribution(s) to Class Members will be distributed in a subsequent

23  Settlement Payment to Class Members. *Id.* ¶ 78.

24         Based on the size of the breach and per-capita figures, the Settlement presents a robust relief

25  package and valuable outcome for the Settlement Class compared to other recent data breach class

26  action settlements. *See, e.g., In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-

27  MD-02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13

28  million settlement for approximately 40 million class members); *In re Target Corp. Customer Data*

1   *Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1-2 (D. Minn. May 17, 2017) ($10

2   million dollar settlement for nearly 100 million class members); *In re Linkedin User Priv. Litig.*, 309

3   F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately

4   6.4 million LinkedIn users' stolen account passwords). Furthermore, Plaintiffs successfully obtained

5   substantive and meaningful injunctive relief as part of this Settlement. *See e.g., Campbell v. Facebook*,

6   *Inc.*, 951 F.3d 1106, 1114 (9th Cir. 2020) (inclusion of "enhanced disclosures and practices changes"

7   in settlement agreement).

8         The Settlement is a prudent course in view of these high risks. Given that all Class Members

9   will be eligible to elect CMIS or a cash payment, the Settlement provides benefits that address all

10  potential harms of a data breach without the substantial risk of continued litigation, which includes the

11  risk of dismissal or judgement against Plaintiffs.

12        **2.**    **The Extent of Discovery Completed and the Stage of the Proceedings**

13        While this matter is still in its early stages, Plaintiffs have vigorously developed the facts and

14  legal claims in this case. Plaintiffs conducted confirmatory discovery to establish, *inter alia*, facts

15  relevant to the breach and Kroger's liability, Kroger's reaction and actions after the breach, and into the

16  number of individuals impacted by the breach. Wolfson Decl. ¶¶ 28–38. Plaintiffs' counsel has stayed

17  abreast of all material developments involving the FTA Data Breach, including those impacting Kroger.

18  *Id.* ¶ 13. Counsel gathered the press releases and statements concerning the FTA Data Breach, reviewed

19  the information Kroger has provided on its website about the breach, reviewed Kroger's data breach

20  notification letters, reviewed the Mandiant forensics report compiled and publicly released in response

21  to the FTA Data Breach, and kept abreast with news stories and other publicly-available sources of

22  information relating to the FTA Data Breach, including its impact on Kroger and other FTA Customers.

23  *Id.* ¶ 13.

24        The Parties engaged in informal discovery. As part of the negotiations and Settlement, the

25  Parties engaged in confirmatory discovery to verify not only the details about the impact of the FTA

26  Data Breach and information about the Class Members, but also the fairness of the Settlement. *Id.* ¶¶

27  28–38.

28

1    Class Counsel's knowledge of facts of this case and of the practice area more broadly informed

2    Plaintiffs' clear view of the strengths and weaknesses of the case, the decision to go to mediation with

3    Kroger, and the decision to recommend that the Court grant preliminary approval to the Settlement.

4    Wolfson Decl. ¶ 43; Barnow Decl. ¶ 34.

5                    **3.    The Proposed Settlement is the Product of a Arm's-Length Negotiations
                            and is Supported by Experienced Counsel**
6

7        The Court must also be satisfied that "the settlement is not the product of collusion among the

8    negotiating parties." *In re Bluetooth Headset*, 654 F.3d 935, 946-47 (9th Cir. 2011).

9        Plaintiffs achieved the Settlement in contested litigation and through many weeks of arm's-

10   length negotiations. In this case Plaintiffs undertook substantial investigation of the underlying facts,

11   causes of action, and potential defenses to those claims. Wolfson Decl. ¶ 13.

12       When settlement negotiations began, Plaintiffs and their counsel had a clear view of the

13   strengths and weaknesses of their case and were in a strong position to make an informed decision

14   regarding the reasonableness of a potential settlement. The Parties engaged in extensive arm's length

15   negotiations, including a full-day mediation session before a mutually agreed upon mediator, the Hon.

16   Jay C. Gandhi (Ret.) on May 13, 2021. *Id*. ¶ 19.

17       Judge Gandhi, a highly respected and experienced mediator, has extensive experience with and

18   is well-versed in class action litigation, both from his time as a magistrate judge in the Central District

19   of California and as a result of mediating many class actions, including multiple data breach cases where

20   a settlement was reached and subsequently approved.[2] Judge Gandhi's assistance in the settlement

21   process here further confirms the absence of collusion. *See G. F. v. Contra Costa Cty.*, No. 13-cv-

22   03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced

23   mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation

24   marks and citation omitted).

25

26   _____

     [2] *See, e.g., In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL
27   3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litigation*, No. 2:16-cv-
     02696-PHX-SRB (D. Ariz. Dec. 5, 2019), ECF No. 170, at 6 (parties engaged in private mediation
28   with Judge Gandhi).

1    *Bluetooth* identified three "signs" of possible collusion: (1) "when counsel receive[s] a

2    disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing

3    arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon

4    attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns

5    unawarded fees to the defendant, rather than the class. *Bluetooth,* 654 F.3d at 947.

6    None of the *Bluetooth* signs are present here. There is no "clear sailing provision" and Class

7    Counsel is not seeking fees in excess of the 25% of the Settlement Fund benchmark set by *Bluetooth*.

8    *Id.* at 942; SA ¶ 101; *see, infra,* Section III.B.5. There is no reversion of the Settlement Fund (SA ¶ 80),

9    but rather the Settlement makes every effort to distribute any Residual to the Class. *See, e.g.,* SA ¶ 78.

10   Any Fee Award and Costs awarded will be paid from this non-reversionary Settlement Fund, such that

11   there was every incentive to secure the largest Settlement Fund possible.

12   There is no indication of collusion or fraud in the settlement negotiations and the Settlement

13   that is being presented to the Court and none exists.

14   Class Counsel include attorneys who have substantial experience in complex class action

15   litigation, including in data breach and data privacy cases. Wolfson Decl. ¶¶ 48–62 & Ex. 1; Barnow

16   Decl. ¶¶ 38–49 & Ex 1. For example, Ms. Wolfson has decades of experience in privacy litigation,

17   serves as co-lead counsel in the ongoing Zoom and Ring privacy cases, and served as co-lead counsel

18   both in the *Premera* and *Experian* data breach class actions, among others. Wolfson Decl. ¶¶ 50–53,

19   59. Ben Barnow is nationally recognized for his experience in leading some of the nation's largest

20   consumer class actions and has been recognized as a *Titan of the Plaintiffs Bar*.[3] As a court-appointed

21   lead counsel or equivalent designation, he has successfully led over forty major class actions (including

22   MDLs) where class-wide recoveries were achieved, resulting in benefits valued in excess of five billion

23   dollars being made available to class members. This includes leading eight noteworthy privacy class

24   actions where class settlements were achieved, including, *inter alia*, *In Re: Sony Gaming Networks and*

25   *Customer Data Security Breach Litigation,* MDL 2258, *In Re: TJX Retail Security Breach Litigation,*

26

27   _____
     [3]*See* Sindhu Sundar, *Titan of the Plaintiffs Bar: Ben Barnow*, LAW360 (Oct. 8, 2014, 7:40 P.M.),

28   www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow.

1   MDL No. 1838, *In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation,* MDL No.

2   1998, *Lockwood v. Certegy Check Services*, *Inc*., 07-cv-01434 (M.D. Fla.)**,** *Rowe v. Unicare Life and*

3   *Health Insurance Co.*, 2009cv2286 (N.D. Ill.)**,** *Orr v. InterContinental Hotels Group, PLC*., 17-cv-1622

4   (N.D. Ga.), *In re: Zappos.com Inc. Customer Data Security Breach Litigation*, 12-cv-325 (D. Nev.) and

5   *Winstead v. ComplyRight,* No. 1:18-cv-4990 (N.D. Ill.). Barnow Decl. ¶¶ 40–46. Class Counsel fully

6   endorse the Settlement as fair, reasonable, and adequate to the Settlement Class, and do so without

7   reservation. Wolfson Decl. ¶ 63; Barnow Decl. ¶ 50.

8                   **4.      The Proposed Method of Distribution Is Highly Effective**

9          Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of

10   distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ.

11   P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure

12   that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified

13   claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory

14   Comm. Note to 2018 amendment.

15          To file a claim, Class Members need only complete a Claim Form and submit it along with

16   documents supporting their claimed losses. SA ¶ 81(a). Claim Forms may be submitted electronically

17   or in hard copy. *Id*. All Claim Forms are being processed by Epiq, an experienced and nationally

18   recognized class action administration firm. *Id.* ¶ 81(b). Epiq has assigned specific case numbers to

19   Class Members. Azari Decl. ¶ 82(c). The methods of distributing relief to Class Members – both

20   through digital and physical check avenues – are reasonable. *Id.* ¶ 72.

21                   **5.      The Proposed Attorney Fee Award is Reasonable**

22          The terms of any proposed attorneys' fees award, including the timing of payment, is a factor

23   requiring analysis under Fed. R. Civ. P. 23(e)(2)(C). As set forth in Plaintiffs' Motion for Attorney

24   Fees, Expenses, and Service Payments, filed concurrently, Class Counsel is seeking attorneys' fees and

25   expenses in the total amount of $1,250,000, which is equal to the 25% of the Settlement Fund. Plaintiffs

26   incorporate by reference all arguments in the Motion for Attorneys' Fees, Expenses, and Service

27   Payments filed concurrently herewith.

28

### 6. The Presence of a Governmental Participant

Although Kroger reports having cooperated with law enforcement in the wake of the FTA Data Breach, no governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State were notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections. Azari Decl. ¶ 8.

### 7. The Reaction of Class Members to the Proposed Settlement

The Court should consider the reaction of class members to the proposed settlement when determining the Settlement's fairness. *Churchill Vill.*, 361 F.3d at 575. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

While the notice program reached millions of Kroger customers and employees, and almost 40,000 Class Members have already responded, as of January 7, 2022, only 11 requests for exclusion were received and no objections to the Settlement have been filed. Azari Decl. ¶ 31.

### 8. The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Class Members

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule provides, "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Epiq has carried out a thorough individual notice campaign. Epiq provided individual notice to Class Members via email and physical postcards. *Id*. ¶ 11. Epiq located 4,786,343 potentially valid email addresses for 2,107,166 unique Settlement Class Member records. *Id*. ¶ 12. Email notices were sent to all of these email addresses. *Id*. After the initial Email Notice effort, 2,786,735 Email Notices

1    remained undeliverable (for 728,266 unique Class Members. *Id*. ¶ 13. Epiq then sent 1,675,422 Postcard

2    Notices via USPS first class mail to all identified Class Members with an associated physical address

3    for whom a facially valid email address could not be located. *Id*. ¶ 14. Class Members were given the

4    option to have a Long Form Notice and Claim Form mailed to them by requesting them via toll-free

5    telephone number or by mail. *Id*. ¶ 16. As of January 7, 2022, Epiq had mailed 5,982 Long Form Notices

6    and Claim Forms as a result of those requests. *Id*. For Postcard Notices that were returned undeliverable,

7    Epiq re-mails the Postcard Notices to any new address available through USPS information and to

8    addresses Epiq obtains from a third-party address lookup service. *Id*. ¶ 17. As of January 7, 2022, Epiq

9    had re-mailed 3,660 Postcard Notices. *Id*. Epiq is now in the process of sending an Email Reminder

10   Notice to all Class Members who have not submitted a valid Claim Form. *Id*. ¶ 18.

11        In addition to individual notice, Epiq also carried out a robust Internet Notice Campaign. The

12   program includes targeted banner advertising on a selected advertising network and social media, which

13   are targeted to Class Members. *Id*. ¶ 19. The Banner Notice links directly to the Settlement Website and

14   has a graphic of a shopping cart to draw in Class Members' attention. *Id*. The Banner Notices will

15   generate at least 27,000,000 impressions through the Google Display Network and Facebook. *Id*. ¶¶

16   22–23. The Banner Notice Program will continue to run through March 5, 2022. *Id*. ¶ 23. The Summary

17   Notice was also posted on the internal Kroger intranet "The Feed," which is available to all Kroger

18   associates. *Id*. at 24.

19        As of January 7, 2022, Epiq has received 38,823 Claim Forms. *Id*. ¶ 32. This means that claims

20   have been submitted by just over 1% of the Class Members, with well over a month remaining in the

21   Claims Period. This outcome is comports with the 1%-3% range that Plaintiffs' counsel anticipated and

22   is similar to the claims rates in other data breach settlements. *See* Memo ISO of Mot. for Prelim.

23   Approval, ECF No. 31 at 27–28. In addition, Class Members still have until March 5, 2022 to submit

24   claims and Epiq expects additional claims will be filed during that time. Azari Decl. ¶ 33. The claims

25   rate to date is evidence that the notice program is effective and successful.

26        Kroger also directly provided notice through "The Feed", "Fresh News", "the Daily Juice", and

27   "the Scoop", all of which constitute Kroger's intranet, email, or newsletter communications to Kroger

28   associates. Declaration of Colleen T. Brown ("Brown Decl.") ¶ 3. Through these mediums, Kroger

- 17 -

1  associates have access to and frequently view important company updates. *Id*. ¶ 4. On December 20-

2  22, 2021, Kroger informed Kroger associates through "The Feed", "Fresh News", "the Daily Juice",

3  and "the Scoop" of the Settlement and provided notice of the Settlement. *Id*. ¶¶ 5-11.

4      The proposed Notice Plan represents the best notice practicable. It was reviewed and analyzed

5  to ensure it meets the requisite due process requirements. Azari Decl. ¶ 37. Copies of all the notice

6  documents are attached as exhibits to the Azari Declaration; they are clear and concise, and directly

7  apprise Class Members of all the information they need to know to make a claim, opt out, or object.

8  Fed. R. Civ. P. 23(c)(2)(B); *see* Azari Decl. ¶ 34. The Notice Plan is consistent with, and exceeds, other

9  similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and the Federal

10 Judicial Center ("FJC") guidelines for adequate notice.

11      As there is no alternative method of notice that would be practicable here or more likely to notify

12 Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and

13 complies with the requirements of Due Process.

14 **IV.    CONCLUSION**

15      Plaintiffs, Ricky Cochran, Alain Berrebi, and Jaramey Stobbe request that this Motion be

16 granted and the Court enter an order: (1) granting final certification of the proposed Settlement Class

17 for settlement; (2) granting final approval of the proposed class action Settlement; (3) finding that

18 notice has been conducted in accordance with the Court-approved notice plan and due process; and

19 (4) dismissing with prejudice Plaintiffs' and Class Members' claims against Kroger only.

20

21  Dated: January 14, 2022              Respectfully submitted,

22

23                                       */s/ Tina Wolfson*
                                         TINA WOLFSON (SBN 174806)
24                                       *twolfson@ahdootwolfson.com*
                                         ROBERT AHDOOT (SBN 172098)
25                                       *rahdoot@ahdootwolfson.com*
                                         **AHDOOT & WOLFSON, PC**
26                                       2600 W. Olive Avenue, Suite 500
                                         Burbank, CA 91505-4521
27                                       Tel:  310.474.9111; Fax: 310.474.8585

28                                       ANDREW W. FERICH (admitted *pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel:  310.474.9111; Fax: 310.474.8585

BEN BARNOW (admitted *pro hac vice* )
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL (admitted *pro hac vice* )
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000; Fax: 312-641-5504

*Class Counsel for Plaintiffs and the Class*


## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2022, I caused to be filed the foregoing document. This document is being filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.


Dated: January 14, 2022                              */s/ Tina Wolfson*
                                                             Tina Wolfson

- 19 -