TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:    310.474.9111
Facsimile:     310.474.8585

ANDREW W. FERICH*
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone:    310.474.9111
Facsimile:     310.474.8585

BEN BARNOW*
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL*
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone:    312.621.2000

*Class Counsel for Plaintiffs and the Proposed
Class (*admitted pro hac vice)*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.,<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>Hon. Edward J. Davila<br><br>**DECLARATION OF CAMERON R. AZARI ON IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM** |

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.     I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. Hilsoft is a business unit of Epiq Class Action and Claims Solutions, Inc. ("Epiq").

2.     I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.     I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

4.     Hilsoft and Epiq were retained to provide notice and administration services in this matter. This declaration will describe the implementation of the Notice Plan developed for the Settlement in the class action *Cochran, et al. v. Accellion, Inc., et al.*, Case No. 5:21-cv-01887-EJD (N.D. Cal.). I previously executed my *Declaration of Cameron Azari In Support of Preliminary Approval*, on June 30, 2021, in which I detailed Hilsoft's class action notice experience relevant to data breach settlements and attached Hilsoft's *curriculum vitae*. I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs.

## OVERVIEW

5.     On November 5, 2021, the Court approved the Notice Plan as designed by Hilsoft and appointed Epiq as the Settlement Administrator in the *Order Granting Preliminary Approval of Class Action Settlement* ("Preliminary Approval Order"). In the Preliminary Approval Order, the Court certified for settlement purposes only the following "Settlement Class":

> [A]ll residents of the United States who were notified by The Kroger Co. that their PII was compromised as a result of the FTA Data Breach.
>
> Excluded from the Settlement Class are: (1) the Judges presiding over the Action, and members of their families; (2) the Defendant Kroger, their subsidiaries, parent companies, successors, predecessors, any entity in which the Defendant Kroger or their parents have a controlling interest, and their current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the

expiration of the Opt-Out Period, i.e., within 75 days of the Notice Date; and (4) the successors or assigns of any such excluded Persons.

6.     After the Court's Preliminary Approval Order was entered, we began to implement the Notice Program. This declaration will detail the notice activities undertaken and explain how and why the Notice Program was comprehensive and well-suited to the Settlement Class. This declaration will also discuss the administration activity to date. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Hilsoft and Epiq.

### NOTICE PLAN SUMMARY

7.     Federal Rules of Civil Procedure, Rule 23 directs that notice must be "the best practicable under the circumstances," and must include "individual notice to all members who can be identified through reasonable effort."[1]  The Notice Program here satisfied this requirement with individual notice mailed via United States Postal Service ("USPS") first class mail or sent via email, and supplemental media provided with nationally distributed digital and social media. The nationally distributed digital and social media notice efforts are ongoing and will continue through March 5, 2022. I will provide the Court with a supplemental declaration prior to the Final Approval Hearing that, among other things, includes a final report on the media notice efforts. In my experience, the reach of the Notice Program is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case and was designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[2]

---

[1] Fed. R. Civ. P. 23(c)(2)(B).
[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ."); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("To satisfy Rule 23(e)(1), settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably.' 'Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

DECLARATION OF CAMERON R. AZARI ON
IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

## CAFA NOTICE

8.    On July 9, 2021, Epiq sent 57 CAFA Notice Packages ("CAFA Notice") on behalf of Defendant The Kroger Co., as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715. The CAFA Notice was mailed via USPS certified mail to 56 officials (Attorneys General of each of the 50 states, the District of Columbia, and the United States Territories) and the CAFA Notice was sent via United Parcel Service ("UPS") to the Attorney General of the United States. Details regarding the CAFA Notice mailing are provided in the *Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice*, dated July 9, 2021, which is included as **Attachment 1**.

## NOTICE PROGRAM

### *Individual Notice*

9.    On November 12, 2021, Epiq received six data files from the Defendant, which contained 3,825,224 records with name and physical address information ("Settlement Class List"). Epiq combined, de-duplicated, and standardized the records, which resulted in 3,788,622 unique records (with facially valid email addresses and/or physical mailing addresses).

10.    Epiq then sent the Settlement Class Members' contact information to a third-party lookup service to locate potentially valid email addresses. The email lookup process that was used returns up to five email addresses per record (many people have multiple email addresses that they use consecutively or concurrently). These efforts resulted in 4,786,343 potentially valid email addresses (for 2,107,166 unique Settlement Class Member records). To the extent the lookup process resulted in multiple email addresses for a unique Settlement Class Member record, the results were "rolled up" so that Epiq could track notice deliverability for each unique email address and for each unique Settlement Class Member. For example, if an Email Notice was delivered to at least one of the up to five email addresses located through the lookup process, Notice was considered "delivered" to Settlement Class Member. If none of the up to five email addresses for

---

heard.'") (citations omitted); N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval (3) (articulating best practices and procedures for class notice).

a Settlement Class Member were delivered, Notice was considered undeliverable.

11.     Following these efforts, for the 3,788,622 unique Settlement Class Member records, 4,786,343 facially valid email addresses were identified to receive an Email Notice and 1,675,422 physical mailing addresses were identified to receive a mailed Postcard Notice. Subsequently, individual notice was sent via email ("Email Notice") and a Postcard Notice was mailed to all records with no deliverable Email Notice and to all records that did not have a facially valid email address, but had a physical mailing address. All Email and Postcard Notices included a unique identifying number for each identified Settlement Class Member to allow for more secure online claim processing and efficient processing of returned paper Claim Forms.

### *Individual Notice – Email Notice*

12.     Between December 3, 2021, and December 6, 2021, Epiq sent 4,786,343 Email Notices, which were sent to all identified Settlement Class Members for whom one or more facially valid email addresses were available (for 2,107,166 unique Settlement Class Member records). Industry standard best practices were followed for the email notice efforts. The Email Notice was drafted in such a way that the subject line, the sender, and the body of the message overcame SPAM filters and ensured readership to the fullest extent reasonably practicable. For instance, the Email Notice used an embedded html text format. This format provided easy to read text without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices was sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from our authorized mail servers. Each Email Notice was also transmitted with a unique message identifier. The Email Notice included an embedded link to the settlement website. By clicking the link, recipients were able to easily file an online claim, access the Long Form Notice (English and Spanish), Claim Form, Settlement Agreement, and other important information. The Email Notice linked directly to the claim filing portal on the Settlement Website,

1   where Settlement Class Members can file an online claim. The Email Notice is included as

2   **Attachment 2**.

3          13.    If the receiving email server could not deliver the message, a "bounce code" was

4   returned along with the unique message identifier. For any Email Notice for which a bounce code

5   was received indicating that the message was undeliverable for reasons such as an inactive or

6   disabled account, the recipient's mailbox was full, technical auto-replies, etc., at least two

7   additional attempts were made to deliver the Notice by email. After completion of the initial Email

8   Notice effort, 2,786,735 Email Notices remained undeliverable (for 728,266 unique Settlement

9   Class Member records).

10                                *Individual Notice – Direct Mail*

11         14.    On December 5, 2021, Epiq sent 1,675,422 Postcard Notices via USPS first class

12  mail to all identified Settlement Class Members with an associated physical address for whom a

13  facially valid email address could not be located. Subsequently, on December 23, 2021, Epiq also

14  sent 727,240 Postcard Notices via USPS first class mail to those records with no deliverable Email

15  Notice after several attempts for whom a physical address was available. The Postcard Notice

16  clearly and concisely summarized the Settlement and the legal rights of the Settlement Class

17  Members. The Postcard Notice also directed the recipients to the Settlement Website to access

18  additional information. The Postcard Notice is included as **Attachment 3.**

19         15.    Prior to mailing the Postcard Notices, all mailing addresses provided were checked

20  against the National Change of Address ("NCOA") database maintained by the USPS.[3]   In

21  addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to

22  ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify

23  the accuracy of the addresses. This address updating process is standard for the industry and for

24  the majority of promotional mailings that occur today.

25  _____

26  [3] The NCOA database contains records of all permanent change of address submissions received

27  by the USPS for the last four years. The USPS makes this data available to mailing firms and lists
    submitted to it are automatically updated with any reported move based on a comparison with the
28  person's name and known address.

DECLARATION OF CAMERON R. AZARI ON
IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

16.     Additionally, a Long Form Notice and Claim Form have been mailed to all persons who requested one via the toll-free telephone number or by mail. As of January 7, 2022, Epiq has mailed 5,982 Long Form Notices and Claim Forms as a result of such requests. The Long Form Notice and Claim Form are included as **Attachment 4**.

17.     The return address on the Postcard Notices is a post office box that Epiq maintains for this case. The USPS automatically forwards Postcard Notices with an available forwarding address order that has not expired ("Postal Forwards"). For Postcard Notices returned as undeliverable, Epiq re-mails the Postcard Notices to any new address available through USPS information (for example, to an address provided by the USPS on the returned mail piece if the forwarding order has expired, but is still within the time period in which the USPS returns the piece with a forwarding address indicated), and to addresses Epiq obtains from a third-party address lookup service. As of January 7, 2022, Epiq has re-mailed 3,660 Postcard Notices to Settlement Class Members where a forwarding address was provided or address research identified a new address.

### *Email Reminder Notice*

18.     Epiq is in the process of sending an Email Reminder Notice to Settlement Class Members who have not submitted a valid Claim Form. The Reminder Notice will contain a link to the Settlement Website to encourage Settlement Class Members to file a Claim Form before the claim filing deadline.

### *Internet Notice Campaign*

19.     The internet advertisement portion of the Notice Program, which was approved by the Parties and the Court, is in currently running, and is scheduled to continue through March 5, 2022. The Notice Program includes targeted banner advertising on a selected advertising network and social media, which are targeted to Settlement Class Members. The Banner Notices link directly to the Settlement Website, thereby allowing visitors easy access to relevant information and documents. As an additional way to draw the interest of Settlement Class Members, and to be consistent with FJC recommendations that a picture or graphic may help class members self-

identify, the Banner Notices prominently feature a high-resolution image of a shopping cart filed with groceries.

20.    The Notice Program includes Banner Notices in various sizes, which are placed on the advertising network *Google Display Network*. All Banner Notices run on desktop, mobile, and tablet devices and are distributed to the selected targeted audiences nationwide as described below. Banner Notices are also targeted (remarketed) to people who visit the Settlement Website

21.    The Notice Program also includes advertising on social media, which consists of Banner Notices on *Facebook* in various sizes. *Facebook* is the leading social networking site in the United States and covers over 193 million users in the United States.

22.    More details regarding the target audiences, distribution, and specific ad sizes of the Banner Notices, are included in the following table.

| Network/Property | Target | Distribution | Ad Sizes | Impressions |
|---|---|---|---|---|
| *Google Display Network* | Adults 18+ | National | 728x90, 300x250, 300x600, 970x250 | 15,000,000 |
| *Facebook* | Adults 18+ | National | Newsfeed & Right Hand Column | 12,000,000 |
| **Total** | | | | **27,000,000** |

23.    Combined, at least 27 million targeted impressions will be generated by the Banner Notices, which are running from December 5, 2021, through March 5, 2022, nationwide.[4] Clicking on the Banner Notices links the reader to the Settlement Website, where they can easily obtain detailed information about the case and file a Claim Form. Examples of the Banner Notices are included as **Attachment 5**.

24.    Additionally, it is my understanding that the Summary Notice was posted on the internal Kroger intranet "The Feed."  "The Feed" is available to all Kroger associates, who view

---

[4] The third-party ad management platform, ClickCease is being used to audit the digital Banner Notice ad placements. This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

DECLARATION OF CAMERON R. AZARI ON
IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

it frequently for important company updates and shift schedules for in-store associates.

*Settlement Website*

25.     On December 2, 2021, Epiq established a dedicated Settlement Website with an easy to remember domain name (www.KrogerFTADataBreachSettlement.com). The Settlement Website address is included in the Notices and all Banner Notices link directly to the Settlement Website. Relevant documents, including the Long Form Notice (in English and Spanish), the Claim Form, the Settlement Agreement, the Motion for Preliminary Approval, the Preliminary Approval Order entered by the Court, and the operative Amended Complaint are posted on the Settlement Website to allow Settlement Class Members to review and download the documents. The Settlement Website also includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement Agreement, contact information for the Settlement Administrator, and other case-related information. The Long Form Notice (in Spanish) is included as **Attachment 6**.

26.     In addition, the Settlement Website provides the ability for Settlement Class Members to file an online Claim Form. Settlement Class Members can file an online claim for any one of the three benefits offered under the Settlement. Under any method of filing a Claim, Settlement Class Members are given the option of receiving a digital payment (such as Venmo, Paypal, Digital Mastercard or other options). Settlement Class Members can also elect to receive a traditional paper check.

27.     As of January 7, 2022, there have been 75,236 visitors to the Settlement Website and 341,131 website pages presented.

*Toll-Free Telephone Number*

28.     On December 2, 2021, a toll-free number (1-866-790-4318) was established for the Settlement. Callers are able to hear an introductory message. Callers also have the option to learn more about the Settlement in the form of answers to FAQs. This automated telephone phone system is available 24 hours per day, 7 days per week.

29.     As of January 7, 2022, there have been 20,348 calls to the toll-free telephone

number representing 58,596 minutes of use.

*Postal Mailing Address*

30.     A post office box for correspondence about the Settlement was also established and is maintained, allowing Settlement Class Members to contact the Settlement Administrator by mail with any specific requests or questions.

*Requests for Exclusion and Objections*

31.     The deadline to request exclusion from the Settlement or to object to the Settlement is February 18, 2022. As of January 7, 2022, Epiq has received 11 requests for exclusion. As of January 7, 2022, I am aware of no objections to the Settlement. I will provide a supplemental declaration to the Court prior to the Final Approval Hearing to provide updated information regarding any requests for exclusions and/or objections to the Settlement.

*Status of Claims Process*

32.     The deadline for Settlement Class Members to file a claim is March 5, 2022. As of January 7, 2022, Epiq has received 38,823 Claim Forms (38,515 online and 308 paper).

33.     Since there is still more than 45 days for Settlement Class Members to file a claim before the claim filing deadline, these numbers are preliminary. As the deadline approaches, I expect additional claims will be filed by Settlement Class Members. As standard practice, Epiq is in the process of conducting a complete review and audit of all claims received. There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms.

*Notice Content*

34.     The Notices and Claim Form were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. Many courts, and the FJC itself, have approved notices that we have written and designed in a similar fashion. The Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Settlement Class Members' rights and

DECLARATION OF CAMERON R. AZARI ON
IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

1  options. Consistent with our normal practice, all notice documents underwent a final edit prior to

2  actual mailing and publication for grammatical errors and accuracy.

3       35.     The Long Form Notice (in English and Spanish) provided substantial information

4  to Settlement Class Members. The Long Form Notice included (i) details regarding the Settlement

5  Class Members' ability to request exclusion from, object to, or otherwise comment on the

6  Settlement Agreement, (ii) instructions on how to submit a Claim Form, (iii) the deadline to request

7  exclusion, objection, or submit a Claim Form, and (iv) the date, time, and location of the Final

8  Fairness Hearing, among other information.

9                                    **CONCLUSION**

10      36.     In class action notice planning, execution, and analysis, we are guided by due

11 process considerations under the United States Constitution, and by case law pertaining to the

12 recognized notice standards under Fed. R. Civ. P. 23. This framework directs that the notice plan

13 be optimized to reach the class and, in a settlement notice situation such as this, that the notice or

14 notice plan itself not limit knowledge of legal rights—nor the ability to exercise other options—to

15 class members in any way. All of these requirements were met in this case.

16      37.     The Notice Program followed the guidance for how to satisfy due process

17 obligations that a notice expert gleans from the United States Supreme Court's seminal decisions,

18 which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is

19 reasonably calculated to do so:

20          A.   "But when notice is a person's due, process which is a mere gesture
                 is not due process. The means employed must be such as one desirous
21               of actually informing the absentee might reasonably adopt to
                 accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315
22               (1950).

23          B.   "[N]otice must be reasonably calculated, under all the circumstances,
                 to apprise interested parties of the pendency of the action and afford
24               them an opportunity to present their objections," *Eisen v. Carlisle &
                 Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.
25

26      38.     In my opinion, the above-described Notice Program was consistent with other

27 effective class action notice programs.

28
                                        11

39.     It is my opinion, based on my expertise and experience and that of my team, that this method of focused notice dissemination provided effective notice in this Action, provided the best notice that is practicable, adhered to Fed. R. Civ. P. 23, followed the guidance set forth in the Manual for Complex Litigation 4th Ed. and FJC guidance, and exceeded the requirements of due process, including its "desire to actually inform" requirement.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of January, 2022.

Cameron R. Azari, Esq.

DECLARATION OF CAMERON R. AZARI ON
IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

# Attachment 1

1
2
3
4
5
6
7
8

9            **UNITED STATES DISTRICT COURT**

10           **NORTHERN DISTRICT OF CALIFORNIA**

11  RICKY COCHRAN, ALAIN BERREBI, and        Case No. 2:21-cv-01887-EJD
    JARAMEY STOBBE, individually and on
12  behalf of all others similarly situated,      Hon. Edward J. Davila

13                   Plaintiffs,
14
15              v.
16  THE KROGER CO. and ACCELLION, INC.
17                   Defendants.
18

19  **DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF**
20                          **CAFA NOTICE**

21       I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

22       1.      My name is Stephanie J. Fiereck, Esq.  I am over the age of 21 and I have personal

23  knowledge of the matters set forth herein, and I believe them to be true and correct.

24       2.      I am the Legal Notice Manager for Epiq Class Action & Claims Solutions, Inc.

25  ("Epiq"), a firm that specializes in designing, developing, analyzing and implementing large-scale,

26  un-biased, legal notification plans.

27       3.      Epiq is a firm with more than 20 years of experience in claims processing and

28

---

DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE

settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service, claims database management, claim adjudication, funds management and distribution services.

4.     The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

## CAFA NOTICE IMPLEMENTATION

5.     At the direction of counsel for the Defendant The Kroger Company, 57 officials, which included the Attorney General of the United States and the Attorneys General of each of the 50 states, the District of Columbia and the United States Territories were identified to receive the CAFA notice.

6.     Epiq maintains a list of these federal and state officials with contact information for the purpose of providing CAFA notice.  Prior to mailing, the names and addresses selected from Epiq's list were verified, then run through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").[1]

7.     On July 9, 2021, Epiq sent 57 CAFA Notice Packages ("Notice").  The Notice was mailed via USPS Certified Mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the United States Territories.  The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The CAFA Notice Service List (USPS Certified Mail and UPS) is included as **Attachment 1**.

8.     The materials sent to the federal and state officials included a cover letter, which provided notice of the proposed settlement of the above-captioned case.  The cover letter is included as **Attachment 2**.

9.     The cover letter was accompanied by a CD, which included the following:

---

[1] CASS improves the accuracy of carrier route, 5-digit ZIP®, ZIP + 4® and delivery point codes that appear on mail pieces.  The USPS makes this system available to mailing firms who want to improve the accuracy of postal codes, i.e., 5-digit ZIP®, ZIP + 4®, delivery point (DPCs), and carrier route codes that appear on mail pieces.

DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE

A.   Class Action Complaint and First Amended Class Action Amended Complaint;

B.   Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof;

C.   [Proposed] Order Granting Preliminary Approval of Class Action Settlement;

D.   Declaration of Ben Barnow in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

E.   Declaration of Robert Siciliano in Support of Motion for Preliminary Approval of Class Action Settlement;

F.   Declaration of Tina Wolfson in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

G.   Class Action Settlement Agreement and Release;

H.   Exhibit A – Claim Form;

I.   Exhibit B – [Proposed] Final Order and Judgment;

J.   Exhibit C – Long Form Notice;

K.   Exhibit D – [Proposed] Order Granting Preliminary Approval of Class Action Settlement;

L.   Exhibit E – Email Notice;

M.   Stipulation and Amendment to Class Action Settlement Agreement and Release;

N.   Notice of Errata with Exhibit 1 – [Proposed] Order Granting Preliminary Approval of Class Action Settlement; and

O.   Geographic Distribution of Class Members and Proportionate Share of Claims.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 9, 2021.

Stephanie J. Fiereck, Esq.

---

3

DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE

# **Attachment 1**

**CAFA Notice Service List**

**USPS Certified Mail**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Office of the Attorney General | Treg Taylor | PO Box 110300 | | Juneau | AK | 99811 |
| Office of the Attorney General | Steve Marshall | 501 Washington Ave | | Montgomery | AL | 36130 |
| Office of the Attorney General | Leslie Carol Rutledge | 323 Center St | Suite 200 | Little Rock | AR | 72201 |
| Office of the Attorney General | Mark Brnovich | 2005 N Central Ave | | Phoenix | AZ | 85004 |
| Office of the Attorney General | CAFA Coordinator | Consumer Law Section | 455 Golden Gate Ave Ste 11000 | San Francisco | CA | 94102 |
| Office of the Attorney General | Phil Weiser | Ralph L Carr Colorado Judicial Center | 1300 Broadway 10th Fl | Denver | CO | 80203 |
| Office of the Attorney General | William Tong | 165 Capitol Ave | | Hartford | CT | 06106 |
| Office of the Attorney General | Karl A. Racine | 400 6th St NW | | Washington | DC | 20001 |
| Office of the Attorney General | Kathy Jennings | Carvel State Office Bldg | 820 N French St | Wilmington | DE | 19801 |
| Office of the Attorney General | Ashley Moody | State of Florida | The Capitol PL-01 | Tallahassee | FL | 32399 |
| Office of the Attorney General | Chris Carr | 40 Capitol Square SW | | Atlanta | GA | 30334 |
| Department of the Attorney General | Clare E. Connors | 425 Queen St | | Honolulu | HI | 96813 |
| Iowa Attorney General | Thomas J Miller | 1305 E Walnut St | | Des Moines | IA | 50319 |
| Office of the Attorney General | Lawrence G Wasden | 700 W Jefferson St Ste 210 | PO Box 83720 | Boise | ID | 83720 |
| Office of the Attorney General | Kwame Raoul | 100 W Randolph St | | Chicago | IL | 60601 |
| Indiana Attorney General's Office | Todd Rokita | Indiana Government Center South | 302 W Washington St 5th Fl | Indianapolis | IN | 46204 |
| Office of the Attorney General | Derek Schmidt | 120 SW 10th Ave 2nd Fl | | Topeka | KS | 66612 |
| Office of the Attorney General | Daniel Cameron | 700 Capitol Avenue | Suite 118 | Frankfort | KY | 40601 |
| Office of the Attorney General | Jeff Landry | PO Box 94005 | | Baton Rouge | LA | 70804 |
| Office of the Attorney General | Maura Healey | 1 Ashburton Pl | | Boston | MA | 02108 |
| Office of the Attorney General | Brian E. Frosh | 200 St Paul Pl | | Baltimore | MD | 21202 |
| Office of the Attorney General | Aaron Frey | 6 State House Station | | Augusta | ME | 04333 |
| Department of Attorney General | Dana Nessel | PO Box 30212 | | Lansing | MI | 48909 |
| Office of the Attorney General | Keith Ellison | 445 Minnesota St | Suite 1400 | St Paul | MN | 55101 |
| Missouri Attorney General's Office | Eric Schmitt | 207 West High Street | PO Box 899 | Jefferson City | MO | 65102 |
| MS Attorney General's Office | Lynn Fitch | Walter Sillers Bldg | 550 High St Ste 1200 | Jackson | MS | 39201 |
| Office of the Attorney General | Austin Knudsen | Department of Justice | PO Box 201401 | Helena | MT | 59620 |
| Attorney General's Office | Josh Stein | 9001 Mail Service Ctr | | Raleigh | NC | 27699 |
| Office of the Attorney General | Wayne Stenehjem | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505 |
| Nebraska Attorney General | Doug Peterson | 2115 State Capitol | PO Box 98920 | Lincoln | NE | 68509 |
| Office of the Attorney General | John Formella | NH Department of Justice | 33 Capitol St | Concord | NH | 03301 |
| Office of the Attorney General | Gurbir S Grewal | 25 Market Street | 8th Fl West Wing | Trenton | NJ | 08625 |
| Office of the Attorney General | Hector Balderas | 408 Galisteo St | Villagra Bldg | Santa Fe | NM | 87501 |
| Office of the Attorney General | Aaron Ford | 100 N Carson St | | Carson City | NV | 89701 |
| Office of the Attorney General | Letitia James | The Capitol | | Albany | NY | 12224 |
| Office of the Attorney General | Dave Yost | 30 East Broad Street | 14th Floor | Columbus | OH | 43215 |
| Office of the Attorney General | Oklahoma Attorney General | 313 NE 21st St | | Oklahoma City | OK | 73105 |
| Office of the Attorney General | Ellen F Rosenblum | Oregon Department of Justice | 1162 Court St NE | Salem | OR | 97301 |
| Office of the Attorney General | Josh Shapiro | 16th Fl Strawberry Square | | Harrisburg | PA | 17120 |
| Office of the Attorney General | Peter F Neronha | 150 S Main St | | Providence | RI | 02903 |
| Office of the Attorney General | Alan Wilson | PO Box 11549 | | Columbia | SC | 29211 |
| Office of the Attorney General | Jason Ravnsborg | 1302 E Hwy 14 Ste 1 | | Pierre | SD | 57501 |
| Office of the Attorney General | Herbert H. Slatery III | PO Box 20207 | | Nashville | TN | 37202 |
| Office of the Attorney General | Ken Paxton | 300 W 15th St | | Austin | TX | 78701 |
| Office of the Attorney General | Sean D. Reyes | PO Box 142320 | | Salt Lake City | UT | 84114 |
| Office of the Attorney General | Mark R. Herring | 202 North Ninth Street | | Richmond | VA | 23219 |
| Office of the Attorney General | TJ Donovan | 109 State St | | Montpelier | VT | 05609 |
| Office of the Attorney General | Bob Ferguson | 800 Fifth Avenue | Suite 2000 | Seattle | WA | 98104 |
| Office of the Attorney General | Josh Kaul | PO Box 7857 | | Madison | WI | 53707 |
| Office of the Attorney General | Patrick Morrisey | State Capitol Complex | Bldg 1 Room E 26 | Charleston | WV | 25305 |
| Office of the Attorney General | Bridget Hill | 2320 Capitol Avenue | | Cheyenne | WY | 82002 |
| Department of Legal Affairs | Fainu'ulei Falefatu Ala'ilima-Utu | Executive Office Building 3rd Floor | PO Box 7 | Utulei | AS | 96799 |
| Attorney General Office of Guam | Leevin T Camacho | Administration Division | 590 S Marine Corps Dr Ste 901 | Tamuning | GU | 96913 |
| Office of the Attorney General | Edward Manibusan | Administration Bldg | PO Box 10007 | Saipan | MP | 96950 |
| PR Department of Justice | Domingo Emanuelli Hernández | PO Box 9020192 | | San Juan | PR | 00902 |
| Department of Justice | Denise N. George | 34-38 Kronprindsens Gade | GERS Bldg 2nd Fl | St Thomas | VI | 00802 |

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---------|----------|----------|----------|------|-------|-----|
| US Department of Justice | Merrick B. Garland | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

# **Attachment 2**

**NOTICE ADMINISTRATOR**
HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

July 9, 2021

**VIA UPS OR USPS CERTIFIED MAIL**

| Class Action Fairness Act – Notice to Federal and State Officials |
| --- |

Dear Sir or Madam:

Pursuant to the "Class Action Fairness Act," ("CAFA"), 28 U.S.C. §1715, please find enclosed information from Defendant The Kroger Co. relating to the proposed settlement of a class action lawsuit.

- **Case:** *Cochran et al. v. The Kroger Co. et al.*, Case No. 5:21-cv-01887-EJD.

- **Court:** United States District Court for the Northern District of California.

- **Defendant:** The Kroger Co.

- **Judicial Hearing Scheduled:** At this time, a Preliminary Approval Hearing has been scheduled for September 16, 2021 by the Court. Kroger has filed an unopposed motion to advance that hearing date to August 5, 2021, upon which the Court has not yet acted. A Final Approval Hearing has not been scheduled by the Court. At the time of the hearings, these matters may be continued without further notice.

- **Documents Enclosed:** Copies of the following documents are contained on the enclosed CD:

  1. Class Action Complaint and First Amended Class Action Amended Complaint;

  2. Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof;

  3. [Proposed] Order Granting Preliminary Approval of Class Action Settlement;

  4. Declaration of Ben Barnow in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

  5. Declaration of Robert Siciliano in Support of Motion for Preliminary Approval of Class Action Settlement;

  6. Declaration of Tina Wolfson in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement;

  7. Class Action Settlement Agreement and Release;

  8. Exhibit A – Claim Form;

  9. Exhibit B – [Proposed] Final Order and Judgment;

**NOTICE ADMINISTRATOR**
HILSOFT NOTIFICATIONS
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

10. Exhibit C – Long Form Notice;

11. Exhibit D – [Proposed] Order Granting Preliminary Approval of Class Action Settlement;

12. Exhibit E – Email Notice;

13. Stipulation and Amendment to Class Action Settlement Agreement and Release;

14. Notice of Errata with Exhibit 1 – [Proposed] Order Granting Preliminary Approval of Class Action Settlement; and

15. Geographic Distribution of Class Members and Proportionate Share of Claims. (It is not feasible to provide herewith the names of settlement class members who reside in your state in a secure manner; should you wish to receive such names, please contact counsel for Kroger Amy Lally (alally@sidley.com), Colleen Brown (ctbrown@sidley.com), or Eamon Joyce (ejoyce@sidley.com) to arrange a secure transmission.

Very truly yours,

Notice Administrator

Enclosures

Attachment 2

| | |
|---|---|
| **From:** | Cochran v Kroger Settlement Administrator<br><donotreply@krogerftadatabreachsettlement.com> |
| **Sent:** | Wednesday, December 1, 2021 4:34 PM |
| **To:** | ███████ |
| **Subject:** | Court Authorized Notice of Settlement |

**You Can Get a Cash Payment or Credit Monitoring and Insurance Services to Protect Your Information That May Have Been Taken in the KROGER FTA DATA BREACH.**

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

*Para una notificación en Español, llamar 1-866-790-4318 o visitar nuestro sitio web*
www.KrogerFTADataBreachSettlement.com.

**Your Unique Id is:**
**Name:** ███████
**UniqueId:** ███████

**Name:** ███████
**UniqueId:** ███████

**Name:** ███████
**UniqueId:** ███████

**Name:** ███████
**UniqueId:** ███████

**Name:** ███████
**UniqueId:** ███████

**Name:** ███████
**UniqueId:** ███████

A proposed Settlement has been reached with The Kroger Co. ("Kroger" or "Defendant") relating to the data breach Kroger announced on February 19, 2021, whereby on or about January 23, 2021, Kroger learned that an unauthorized person(s) breached Accellion's File Transfer Appliance ("FTA") and accessed certain Kroger customer and employee information, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information, medical history, certain clinical services, and/or salary-related information (the "FTA Data Breach"). Credit card or other payment information was not compromised or accessed during the FTA Data Breach. This was the result of a data breach involving Kroger's file transfer vendor, Accellion. Plaintiffs claim that Kroger did not adequately protect their personal information. Kroger denies any wrongdoing. No judgment or determination of wrongdoing has been made.

**Who is Included?** Records indicate you are included in this Settlement as one of Kroger customers and employees who were notified that their personal information was compromised as a result of the FTA Data Breach.

**What does the Settlement Provide?** The Settlement establishes a $5 Million Settlement Fund to be used to pay for costs of notice and administration; attorneys' fees and expenses; service awards to the Class Representatives; and to provide Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses, or Cash Fund Payments to valid claimants. Also, Kroger has agreed to undertake certain remedial measures and enhanced data security measures. Payments to valid claimants will be made from the Fund in the following order:

<u>**Credit Monitoring**</u> - two years of Credit Monitoring and Identity Theft Insurance Service for protection from future harm.

<u>**Documented Loss Payment**</u> - reimbursement for certain Documented Losses, i.e., money spent or lost, as a result of the Data Breach (up to $5,000), not otherwise reimbursable by insurance.

<u>**Cash Fund Payment**</u> – you may submit a Cash Fund Payment claim for a cash payment, in an amount to be determined consistent with the Settlement, if you do not make a claim for a Documented Loss Payment or Credit Monitoring.

All payments may be increased or reduced *pro rata* depending on the number of Class Members that participate in the Settlement.

**How To Get Benefits:** You must complete and submit a Claim Form by **March 5, 2022**, including required documentation. You can file your Claim online here. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **February 18, 2022**. If you do not exclude yourself, you will release any claims you may have against Kroger or related parties about the Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **February 18, 2022**.

**The Fairness Hearing.** The Court has scheduled a hearing in this case (*Cochran vs. The Kroger Co.*, U.S.D.C. Case No. 5:21-cv-01887) for **March 10, 2022, at 9:00 a.m.**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information.** Complete information about your rights and options, as well as Claim Forms, the Long Form Notice, and Settlement Agreement are available here, or by calling toll free 1-866-790-4318.

AF171 v.03

To unsubscribe from this list, please click on the following link: Unsubscribe

Attachment 3

*Kroger FTA Data Breach*
Settlement Administrator
P.O. Box 4079
Portland, OR 97208-4079

PRESORTED
FIRST-CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

**Unique ID:** ▮▮▮▮▮▮▮

<u>Court Approved Legal Notice</u>
Case No. 5:21-CV-01887 (N.D. Cal.)

**You Can Get a Cash Payment or Credit Monitoring and Insurance Services to Protect Your Information That May Have Been Taken in the KROGER FTA DATA BREACH.**

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**Complete and Return the Claim Form by March 5, 2022**

www.KrogerFTADataBreachSettlement.com
1-866-790-4318

*Para una notificación en Español, llamar 1-866-790-4318 o visitar nuestro sitio web www.KrogerFTADataBreachSettlement.com.*



1
1

A proposed settlement has been reached with The Kroger Co. ("Kroger" or "Defendant") relating to the data breach Kroger announced on February 19, 2021, whereby on or about January 23, 2021, Kroger learned that an unauthorized person(s) breached Accellion's File Transfer Appliance ("FTA") and accessed certain Kroger customer and employee information, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information, medical history, certain clinical services, and/or salary-related information (the "FTA Data Breach"). Credit card or other payment information was not compromised or accessed during the FTA Data Breach. This was the result of a data breach involving Kroger's file transfer vendor, Accellion. Plaintiffs claim that Kroger did not adequately protect their personal information. Kroger denies any wrongdoing. No judgment or determination of wrongdoing has been made.

**Who is Included?** Records indicate you are included in this Settlement as one of Kroger customers and employees who were notified that their personal information was compromised as a result of the FTA Data Breach.

**What does the Settlement Provide?** The Settlement establishes a $5 Million Settlement Fund to be used to pay for costs of notice and administration; attorneys' fees and expenses; service awards to the Class Representatives; and to provide Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses or Cash Fund Payments to valid claimants. Also, Kroger has agreed to undertake certain remedial measures and enhanced data security measures. Payments to valid claimants will be made from the Fund in the following order:

**Credit Monitoring** - two years of Credit Monitoring and Identity Theft Insurance Service for protection from future harm.

**Documented Loss Payment** - reimbursement for certain documented Losses, i.e., money spent or lost, as a result of the Data Breach (up to $5,000), not otherwise reimbursable by insurance.

**Cash Fund Payment** – you may submit a Cash Fund Payment claim for a cash payment, in an amount to be determined consistent with the Settlement, if you do not make a claim for a Documented Loss Payment or Credit Monitoring.

All payments may be increased or reduced *pro rata* depending on the number of Class Members that participate in the Settlement.

**How To Get Benefits:** You must complete and submit a Claim Form by **March 5, 2022**, including required documentation. You can file your Claim online at www.KrogerFTADataBreachSettlement.com. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **February 18, 2022**. If you do not exclude yourself, you will release any claims you may have against Kroger or related parties about the Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **February 18, 2022**.

**The Fairness Hearing.** The Court has scheduled a hearing in this case (*Cochran vs. The Kroger Co.*, U.S.D.C. Case No. 5:21-cv-01887) for **March 10, 2022, at 9:00 a.m.**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information.** Complete information about your rights and options, as well as Claim Forms, the Long Form Notice, and Settlement Agreement are available at www.KrogerFTADataBreachSettlement.com, or by calling toll free 1-866-790-4318.   AF1152 v.01

Attachment 4

Cochran, et al. v. The Kroger Co. Settlement Administrator
P.O. Box 4079
Portland, OR 97208-4079



# This Page Intentionally Left Blank

## CLAIM FORM FOR KROGER FTA DATA BREACH BENEFITS

### *Cochran, et al. v. The Kroger Co.*, Case No. 5:21-cv-01887

### USE THIS FORM TO MAKE A CLAIM FOR CREDIT MONITORING AND INSURANCE SERVICES, A CASH PAYMENT, OR A DOCUMENTED LOSS PAYMENT

*Para una notificación en Español, llamar 1-866-790-4318 o visitar nuestro sitio web www.KrogerFTADataBreachSettlement.com.*

### The DEADLINE to submit this Claim Form is: March 5, 2022

### I.   GENERAL INSTRUCTIONS

If you are an individual who was notified that certain personal information was compromised as a result of a Data Breach impacting Kroger customers and current and former employees (the "FTA Data Breach"), you are a Class Member.

As a Class Member, you are eligible to make a claim for **one of the following options**: (1) two years of Credit Monitoring and Identity Theft Insurance Services; or (2) up to a $5,000 cash payment for reimbursement of Documented Losses that are more likely than not a result of the FTA Data Breach ("Documented Loss Payment") and not otherwise recoverable through insurance; or (3) a Cash Fund Payment, the amount of which will depend on the number of Class Members who participate in the Settlement and who utilized Credit Monitoring or Documented Losses.

The Credit Monitoring and Insurance Services has an estimated retail value of $360. If you already subscribed to the credit monitoring services through Experian, two additional years will be added to your current plan. If you already subscribed to credit monitoring services through another provider, you will have the option to postpone the commencement of the Credit Monitoring and Insurance Services by up to 12 months.

Cash payments amounts may be reduced pro rata (proportionately) or increased pro rata depending on how many Class Members submit claims. Complete information about the Settlement and its benefits are available at www.KrogerFTADataBreachSettlement.com.

This Claim Form may be submitted online at www.KrogerFTADataBreachSettlement.com or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*Cochran, et al. v. The Kroger Co.*
Settlement Administrator
P.O. Box 4079
Portland, OR 97208-4079

01-CA40051223
AF1221 v.08

## II. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments and Credit Monitoring and Insurance Services, you must notify the Settlement Administrator in writing at the address above.

First Name                                                   M.I.   Last Name

Alternative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                              State:   Zip Code:

Telephone Numbers (Home)                    Telephone Numbers (Work)

Email Address

Date of Birth (mm/dd/yyyy)                   Unique ID

### You may only select one of the following options:

## III. CREDIT MONITORING AND INSURANCE SERVICES

☐  If you wish to receive Credit Monitoring and Insurance Services, you must check off the box for this section, provide your email address in the space provided in Section II, above, and return this Claim Form. Submitting this Claim Form will not automatically enroll you into Credit Monitoring and Insurance Services. To enroll, you must follow the instructions sent to your email address after the Settlement is approved and becomes final (the "Effective Date").

## IV. REIMBURSEMENT FOR DOCUMENTED LOSSES

☐  Please check off the box for this section if you are electing to seek reimbursement for up to $5,000 of Documented Losses you incurred that are more likely than not traceable to the FTA Data Breach and are not otherwise reimbursable from insurance. Documented Losses include unreimbursed losses and consequential expenses that are believed to be related to the FTA Data Breach and incurred on or after December 16, 2020. For clarity, consistent with the breach notification letter that Kroger previously sent to you, no credit card or payment information was compromised as part of the FTA Data Breach. Accordingly, it is highly unlikely there are fraudulent charges traceable to the FTA Data Breach. Additionally, Kroger secured a return of the information that was accessed.  In light of these circumstances, examples of documented losses that might be fairly traceable to the FTA Data Breach are provided below.

In order to make a claim for a Documented Loss Payment, **you must** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (section VI); and (iii) include Reasonable Documentation supporting each claimed cost along with this Claim Form. Documented Losses need to be deemed more likely than not due to the FTA Data Breach by the Settlement Administrator based on the documentation you provide and the facts of the FTA Data Breach. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

02-CA40051223
AF1222 v.08

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Professional fees incurred in connection with identity theft or falsified tax returns | MM – DD – YY | $ _____ • __ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* |
| ☐ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | MM – DD – YY | $ _____ • __ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive your tax refund and the amount* |
| ☐ Credit freeze | MM – DD – YY | $ _____ • __ | *Examples: Notices or account statements reflecting payment for a credit freeze:* |
| ☐ Credit monitoring that was ordered after December 16, 2020 through the date on which the Credit Monitoring and Insurance Services become available through this Settlement | MM – DD – YY | $ _____ • __ | *Example: Receipts or account statements reflecting purchases made for Credit Monitoring and Insurance Services* |
| ☐ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges | MM – DD – YY | $ _____ • __ | *Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the FTA Data Breach* |
| ☐ Unreimbursed fraud losses or charges | MM – DD – YY | $ _____ • __ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ☐ Other (provide detailed description) | MM – DD – YY | $ _____ • __ | *Please provide detailed description below or in a separate document submitted with this Claim Form:* |

If you do not submit Reasonable Documentation supporting a Documented Loss Payment claim, or your claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, your claim will be considered for a Cash Fund Payment.

## V. CASH FUND PAYMENT

☐ If you wish to receive a Cash Fund Payment, you must check off the box for this section, and then simply return this Claim Form. A check will be mailed to the address you provided in Section II, above, as long as the Net Settlement Fund is not depleted by the claims for Credit Monitoring and Insurance Services and Documented Loss Payments.

If you would prefer to receive your Settlement Payment via Paypal or Venmo, or via a digital gift card, please provide the email address associated with your PayPal or Venmo account or the email address to which you would like your digital gift card Settlement Payment sent, below [OPTIONAL]:

**Questions? Go to www.KrogerFTADataBreachSettlement.com or call 1-866-790-4318.**

03-CA40051223
AF1223 v.08

# VI. ATTESTATION
## (REQUIRED FOR DOCUMENTED LOSS PAYMENT CLAIMS)

I, _____ , declare that I suffered the Documented Losses claimed above.

[Name]

I also attest that the Documented Losses claimed above are accurate and were not otherwise reimbursable by insurance.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct. Executed on _____ , in _____ , _____ .

[Date]                                    [City]                          [State]

```
+--------------------------------------------------+
|                                                  |
|                                                  |
+--------------------------------------------------+
        Signature
```

Date: [ MM ] – [ DD ] – [ YYYY ]


# VII. ATTESTATION
## SUBSTITUTE IRS FORM W-9

Social Security Number

[ ][ ][ ] – [ ][ ] – [ ][ ][ ][ ]

Under penalties of perjury, I certify that:

1.  The Claimant is a U.S. Citizen and the taxpayer identification number shown on this form is the taxpayer identification number of named Claimant; and

2.  Claimant is not subject to backup withholding because: (a) Claimant is exempt from backup withholding, or (b) Claimant has not been notified by the Internal Revenue Service (IRS) that Claimant is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified Claimant that Claimant is no longer subject to backup withholding.

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

**The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.**

**If you do not submit a complete Substitute IRS Form W-9, your payment could be subject to 24% U.S. Federal Income Tax withholding.**

# VIII. CERTIFICATION

I certify under penalty of perjury, that all the information that I supplied in this Claim Form is true and correct to the best of my knowledge and belief. If I am not the Claimant identified and completed this form on the Claimant's behalf, I further certify that I have the legal authority to do so.

```
+--------------------------------------------------+
|                                                  |
|                                                  |
+--------------------------------------------------+
        Signature
```

Date: [ MM ] – [ DD ] – [ YYYY ]


**Questions? Go to www.KrogerFTADataBreachSettlement.com or call 1-866-790-4318.**

04-CA40051223
AF1224 v.08

*Cochran, et al. v. The Kroger Co.*
**Case No. 5:21-cv-01887 (U.S. District Court for the Northern District of California)**

# Notice of The Kroger Co. FTA Data Breach Class Action Settlement

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*
*Please read this Notice carefully and completely.*

**THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.**

*Para una notificación en Español, llamar 1-866-790-4318 o visitar nuestro sitio web*
*www.KrogerFTADataBreachSettlement.com.*

- A Settlement has been proposed in a class action lawsuit against The Kroger Co. ("Kroger" or "Defendant"), relating to a data breach that Kroger announced on February 19, 2021, whereby on or around January 23, 2021, Kroger learned that an unauthorized user(s) gained access to certain Kroger customer and current and former employee information, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information (such as prescription number, prescribing doctor, medication names, and dates), medical history, certain clinical services, and/or salary-related information (the "FTA Data Breach"). The FTA Data Breach was part of the breach involving Accellion, Inc.'s ("Accellion") file transfer product called the File Transfer Appliance (FTA).

- If you received a notice from Kroger that your personal information was compromised as a result of the FTA Data Breach, you are included in this Settlement as a "Class Member."

- Under the Settlement, Kroger has agreed to establish a $5 million Settlement Fund to: (1) pay for two years of credit monitoring services and identity theft insurance ("Credit Monitoring and Insurance Services"); or (2) provide cash payments of up to $5,000 per Class Member for reimbursement of certain Documented Losses ("Documented Loss Payment"); or (3) provide cash payments to Class Members ("Cash Fund Payment"). The Settlement Fund will also be used to pay for the costs of the settlement administration, court-approved attorneys' fees and expenses and Service Awards for named Plaintiffs. In addition, Kroger has agreed to undertake certain remedial measures and enhanced security measures that it will continue to implement.

- Your legal rights will be affected whether you act or do not act. <u>You should read this entire Notice carefully.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **File a Claim Form**<br><br>**Deadline: March 5, 2022** | Submitting a Claim Form is the only way that you can receive any of the benefits provided by this Settlement, including Credit Monitoring and Insurance Services, a Documented Loss Payment, or a Cash Fund Payment.<br><br>If you submit a Claim Form, you will give up the right to sue the Defendant and certain related parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **Exclude Yourself From This Settlement**<br><br>**Deadline: February 18, 2022** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against the Defendant, or certain related parties, for the claims this Settlement resolves.<br><br>If you exclude yourself, you will give up the right to receive any benefits from this Settlement. |

**Questions? Go to www.KrogerFTADataBreachSettlement.com or call 1-866-790-4318.**
**This Settlement affects your legal rights even if you do nothing.**

| Object to or Comment on the Settlement

Deadline: February 18, 2022 | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. You can also write the Court to provide comments or reasons why you support the Settlement.

If you object, you may also file a Claim Form to receive Settlement benefits, but you will give up the right to sue the Defendant in a separate lawsuit about the legal claims this Settlement resolves. |
|---|---|
| Go to the "Final Fairness" Hearing

Date: March 10, 2022 | You may attend the Final Fairness Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Fairness Hearing, you must make a request to do so in your written objection or comment. You are not required to attend the Final Fairness Hearing. |
| Do Nothing | If you do nothing, you will not receive any of the monetary Settlement benefits and you will give up your rights to sue Kroger and certain related parties for the claims this Settlement resolves. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

### 1. Why did I get this Notice?

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Honorable Edward J. Davila of the United States District Court for the Northern District of California is overseeing this class action. The case is known as *Cochran vs. The Kroger Co.*, U.S.D.C. Case No. 5:21-cv-01887 (the "Action"). The people who filed this lawsuit are called the "Plaintiffs" and one of the companies they sued, The Kroger Co., is called the "Defendant."

### 2. What is this lawsuit about?

On or about February 19, 2021, Kroger announced that in December 2020, an unauthorized user had accessed information relating to certain Kroger pharmacy and money services customers and current and former employees, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information (such as prescription number, prescribing doctor, medication names, and dates), medical history, certain clinical services, and/or salary-related information in a data breach involving Kroger's file transfer software vendor, Accellion. Specifically, the breach exploited vulnerabilities in Accellion's file transfer product called the FTA, which allowed third parties to then access information about Kroger's customers and current and former employees.

The Plaintiffs claim that Kroger failed to adequately protect their personal information and that they were injured as a result. Kroger denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that the law has been violated. Kroger denies

AF1212 v.03

these and all other claims made in the Action. By entering into the Settlement, Kroger is not admitting that it did anything wrong.

### 3.  Why is this a class action?

In a class action, one or more people called the Class Representatives sue on behalf of all people who have similar claims. Together all of these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.

The Class Representatives in this case are Ricky Cochran, Alain Berrebi, and Jaramey Stobbe.

### 4.  Why is there a Settlement?

The Class Representatives and Kroger do not agree about the claims made in this Action. The Action has not gone to trial and the Court has not decided in favor of the Class Representatives or Kroger. Instead, the Class Representatives and Kroger have agreed to settle the Action. The Class Representatives and the attorneys for the Class ("Class Counsel") believe the Settlement is best for all Class Members because of the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Kroger.

## WHO IS INCLUDED IN THE SETTLEMENT

### 5.  How do I know if I am part of the Settlement?

If you received Notice of this Settlement, you have been identified by the Settlement Administrator as a Class Member. More specifically, you are a Class Member, and you are affected by this Settlement, if: you received a notice from Kroger that your personal information was compromised as a result of the FTA Data Breach.

### 6.  Are there exceptions to individuals who are included in the Settlement?

Yes, the Settlement does not include: (1) the Judges presiding over the Action, and members of their families; (2) Kroger, their subsidiaries, parent companies, successors, predecessors, and any entity in which Kroger or their parents have a controlling interest and their current or former officers, directors, and employees; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

### 7.  What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Class Member, you may go to the Settlement website at www.KrogerFTADataBreachSettlement.com, or call the Settlement Administrator's toll-free number at 1-866-790-4318.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 8.  What does the Settlement provide?

The Settlement will provide Class Members with the opportunity to select and make a claim for one of the following benefits:

**Questions? Go to www.KrogerFTADataBreachSettlement.com or call 1-866-790-4318.**
**This Settlement affects your legal rights even if you do nothing.**

AF1213 v.03

- Cash Fund Payments in amounts to be determined in accordance with the terms of the Settlement; or

- Two years of Credit Monitoring and Insurance Services; or

- Cash Payments of up to $5,000 per Class Member for reimbursement of certain Documented Losses ("Documented Loss Payment").

In addition, Kroger has agreed to take certain remedial measures and enhanced security measures as a result of this Action.

Please review Question 12 carefully for additional information regarding the order in which Benefits are paid from the Settlement Fund. This additional information may impact your decision as to which of the three benefit options is the best option for you.

## 9.  Credit Monitoring and Insurance Services.

In the alternative to a Cash Fund Payment, you may elect Credit Monitoring and Insurance Services. Credit Monitoring and Insurance Services provides a way to protect yourself from unauthorized use of your personal information. If you already have credit monitoring services, you may still sign up for this additional protection. The Credit Monitoring and Insurance Services provided by this Settlement are separate from, and in addition to, the two years of credit monitoring and identity resolution services offered by Kroger in response to the FTA Data Breach to individuals who received a notice letter from Kroger. You are eligible to make a claim for the Credit Monitoring and Insurance Services being offered through this Settlement even if you did not sign up for the previous services.

Credit Monitoring and Insurance Services will include the following features: (i) up to $1 million dollars of identity theft insurance coverage; (ii) three bureau credit monitoring providing notice of changes to the Participating Settlement Class Member's credit profile; (iii) customer care and dedicated fraud resolution agent; (iv) comprehensive educational resources; (v) extended fraud resolution. The estimated retail value of the Credit Monitoring and Insurance Services is $360.

More information about the Credit Monitoring and Insurance Services being provided through this Settlement is available at www.identityguard.com/KrogerFTADataBreachSettlement.

## 10.  The Documented Loss Payment.

In the alternative to a Cash Fund Payment or Credit Monitoring and Insurance Services, you may elect to submit a Claim Form for reimbursement of Documented Losses. If you spent money remedying or addressing identity theft and fraud that was more likely than not related to the FTA Data Breach, and was not reimbursable by insurance, or you spent money to protect yourself from future harm because of the FTA Data Breach, you may make a claim for a Documented Loss Payment for reimbursement of up to $5,000 in Documented Losses.

Documented Losses consist of unreimbursed losses incurred on or after December 16, 2020, that were related to identity theft and fraud and are more likely than not a result of the FTA Data Breach, as well as any expenses related to the FTA Data Breach. For example, credit card or debit card cancellation or replacement fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, credit-related costs associated with purchasing credit reports, credit monitoring or identity theft protection, costs to place a freeze or alert on credit reports, costs to replace a driver's license, state identification card, Social Security number, professional services, and out-of-pocket expenses for notary, fax, postage, delivery, copying, mileage, and long-distance telephone charges. Other losses or costs related to the FTA Data Breach that are not insurance reimbursable, may also

AF1214 v.03

be eligible for reimbursement. Please note, as Kroger stated in the data breach notification letter previously sent to you, no credit card or debit card data was affected by the breach insofar as it relates to Kroger, so there should not be any documented losses related to fraudulent charges on your credit card or debit card. To protect the Settlement Fund and valid claims, all Claim Forms submitted that seek payment related to credit or debit card fraudulent transactions will be carefully reviewed by the Settlement Administrator.

Claims for Documented Loss Payments must be supported by Reasonable Documentation. Reasonable Documentation means written documents supporting your claim, such as credit card statements, bank statements, invoices, telephone records, and receipts.

Individual cash payments may be reduced or increased pro rata depending on the number of Class Members that participate in the Settlement.

If you file a Claim Form for a Documented Loss Payment and it is rejected by the Settlement Administrator and you do not correct it, your Claim Form will be considered for a Cash Fund Payment.

## 11.  The Cash Fund Payment.

You may file a claim to receive a cash payment. This is the "Cash Fund Payment." The amount of the Cash Fund Payment will vary depending on the number of valid claims that are submitted. An estimated range for the Cash Fund Payment is $36-$182 for California Class Members who submit valid Claims, and $18-$91 for all other Class Members who submit valid claims, but this is just an estimate, not a guarantee. To receive a Cash Fund Payment, you must submit a completed Claim Form electing to receive a Cash Fund Payment.

You are <u>not</u> required to provide Reasonable Documentation with your Claim Form to receive a Cash Fund Payment. Individual Cash Fund Payments may be reduced or increased pro rata depending on the number of Class Members that participate in the Settlement and the amount of money that remains in the Cash Fund after payments of other Benefits and charges with priority for payment under the Settlement. *See* Number 12 below.

## 12.  How will Settlement Benefits be paid?

Before determining which Benefit option from the Settlement is best for you (selecting a Cash Fund Payment, Credit Monitoring and Insurance Services, or Documented Loss Payment), it is important for you to understand how Settlement payments will be made. Court awarded attorneys' fees, up to a maximum of 25% of the $5 million Settlement Fund (i.e., $1,250,000), reasonable costs and expenses incurred by attorneys for the Class, and service awards of $1,500 to each of the three Class Representatives will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts. The remainder of the Settlement Fund will be distributed in the following order:

1. Credit Monitoring and Insurance Services claims will be paid first.

2. If money remains in the Settlement Funds after paying for the Credit Monitoring and Insurance Services, Documented Loss Payment claims will be paid second.

3. If money remains in the Settlement Funds after paying Credit Monitoring and Insurance Services claims and Documents Loss Payment claims, the amount of the Settlement Fund remaining will be used to create a "Post DC Net Settlement Fund," which will be used to pay all Cash Funds Payment claims. As stated in paragraph 11 above, those are an estimated range of $36-$182 for California Class Members who submit valid Claims, and $18-$91 for all other

AF1215 v.03

Class Members who submit valid claims. This is just an estimate, not a guarantee, based on Class counsel's experience and belief.

### 13.  Tell me more about Kroger's remedial measures and enhanced security measures.

Defendant has completed an investigation into the cause and scope of the FTA Data Breach and completed remediation of the vulnerabilities that allowed the FTA Data Breach to occur. Kroger has confirmed that it has ceased using the Accellion FTA and migrated to a new secure file transfer solution, and that it has secured the sensitive information that was accessed during the FTA Data Breach. Furthermore, as a result of the Action, for a period of five (5) years, Kroger has agreed to institute policies, procedures, and additional security-related remedial measures. These measures include enhancements to Kroger's third-party vendor risk management program and performing dark web monitoring for fraud, among other measures.

### 14.  What is the total value of the Settlement?

The Settlement provides a $5,000,000 Settlement Fund and remedial actions taken by Kroger for the benefit of the Class. Any court-approved attorneys' fees, costs, and expenses, Service Awards to the named Plaintiffs, taxes due on any interest earned by the Settlement Fund, if necessary, and any notice and settlement administration expenses will be paid out of the Settlement Fund, and the balance ("Net Settlement Fund") will be used to pay for the above Benefits.

### 15.  What am I giving up to get a Settlement payment or stay in the Class?

Unless you exclude yourself, you are choosing to remain in the Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Kroger and related parties about the legal issues in this Action, resolved by this Settlement and released by the Class Action Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (see next question).

### 16.  What are the Released Claims?

In exchange for the Settlement, Class Members agree to release Kroger and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees, and assigns of any of the above, as well as Plaintiffs and Class Counsel ("Released Parties") from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any law (including federal law, state law, common law, contract, rule, or regulation) or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen actual or contingent, liquidated or unliquidated, punitive or compensatory, monetary or nonmonetary, that have been pled in the Action, or that could have been pled in the action, that arise out of or relate to the causes of action, allegations, practices, or conduct at issue in the Complaint related to Kroger, with respect to the FTA Data Breach ("Released Claims").

The Released Claims do not include claims relating to the enforcement of the settlement. Released Claims do not include rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, against Accellion, Inc. and its predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all past, present, and future officers,

AF1216 v.03

directors, employees, stockholders, partners, servants, agents, attorneys, representatives, insurers, reinsurers, subrogees, and assigns of any the foregoing entities listed in this sentence. No claims against Accellion are released and the litigation continues as to it.

More information is provided in the Class Action Settlement Agreement and Release which is available at www.KrogerFTADataBreachSettlement.com.

## HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

### 17.  How do I make a claim for Settlement Benefits?

You must complete and submit a Claim Form by **March 5, 2022**. Claim Forms may be submitted online at www.KrogerFTADataBreachSettlement.com, or printed from the website and mailed to the Settlement Administrator at the address on the form. Claim Forms are also available by calling 1-866-790-4318 or by writing to *Kroger FTA Data Breach Settlement*, Settlement Administrator, P.O. Box 4079, Portland, OR 97208-4079. The quickest way to file a claim is online.

If you received a Notice by mail, use your Claim Number to file your Claim Form. If you lost or do not know your Claim Number, please call 1-866-790-4318 to obtain it.

You may submit a claim for a Cash Fund Payment, or Credit Monitoring and Insurance Services, or a Documented Loss Payment by submitting a Claim Form on the Settlement Website, or by downloading, printing, and completing a Claim Form, and mailing it to the Settlement Administrator.

You may file a claim for only one of the benefits provided under the Settlement: 1) a Cash Fund Payment, or 2) Credit Monitoring and Insurance Services, or 3) a Documented Loss Payment.

### 18.  How do I make a claim for a Cash Fund Payment?

To file a claim for a Cash Fund Payment, you must submit a valid Claim Form electing to receive the Cash Fund Payment. To submit a claim for a Cash Fund Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, on or before **March 5, 2022**.

If you wish to receive your payment via PayPal, Venmo, or digital card instead of a check, simply provide your email address (optional). Anyone who submits a valid claim for Cash Fund Payment and does not elect to receive payment via PayPal, Venmo, or digital card, will receive their payment via regular check sent through U.S. Mail.

Instructions for filling out a claim for a Cash Fund Payment are included on the Claim Form. You may access the Claim Form at www.KrogerFTADataBreachSettlement.com.

The deadline to file a claim for a Cash Fund Payment is **March 5, 2022**.

### 19.  How do I make a claim for Credit Monitoring and Insurance Services?

To file a claim for Credit Monitoring and Insurance Services, you must submit a valid Claim Form electing to receive Credit Monitoring and Insurance Services. To submit a claim for Credit Monitoring and Insurance Services, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, on or before **March 5, 2022**.

Instructions for filling out a claim for Credit Monitoring and Insurance Services are included on the Claim Form. You may access the Claim Form at www.KrogerFTADataBreachSettlement.com.

The deadline to file a claim for Credit Monitoring and Insurance Services is **March 5, 2022**.

AF1217 v.03

## 20.  How do I make a claim for a Documented Loss Payment for reimbursement?

To file a claim for a Documented Loss Payment of up to $5,000 for reimbursement of Documented Losses, you must submit a valid Claim Form electing to receive a Documented Loss Payment. To submit a claim for a Documented Loss Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, on or before **March 5, 2022**.

The Claim Form requires that you sign the attestation regarding the information you provided and that you include Reasonable Documentation, such as credit card statements, bank statements, invoices, telephone records, and receipts.

If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not correct it, your claim for a Documented Loss Payment will instead be considered a claim for a Cash Fund Payment.

Instructions for filling out a claim for a Documented Loss Payment are included on the Claim Form. You may access the Claim Form at www.KrogerFTADataBreachSettlement.com.

The deadline to file a claim for a Documented Loss Payment is **March 5, 2022**.

## 21.  What happens if my contact information changes after I submit a claim?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-866-790-4318 or by writing to:

*Cochran, et al. v. The Kroger Co.*
Settlement Administrator
P.O. Box 4079
Portland, OR 97208-4079

## 22.  When and how will I receive the benefits I claim from the Settlement?

If you make a valid claim for Credit Monitoring and Insurance Services, the Settlement Administrator will send you information on how to activate your credit monitoring after the Settlement becomes final. If you received a notice in the mail, keep it in a safe place as you will need the unique Claim Number provided on the Notice to activate your Credit Monitoring and Insurance Services.

Payment for valid claims for a Cash Fund Payment or a Documented Loss Payment will be provided by the Settlement Administrator after the Settlement is approved and becomes final. You may elect to receive payment for valid claims for a Cash Fund Payment or a Documented Loss Payment via PayPal, Venmo, or digital payment card instead of a check, by submitting your e-mail address with your Claim Form. Anyone who does not elect to receive payment via PayPal, Venmo, or digital payment card, will receive their payment via regular check sent through U.S. Mail.

The approval process may take longer than one year. Please be patient and check www.KrogerFTADataBreachSettlement.com for updates.

## 23.  What happens if money remains after all of the Settlement Claims are paid?

None of the money in the $5 million Settlement Fund will be paid back to Defendant. Any money left in the Settlement Fund after 150 days after the distribution of payments to Class Members will be

**Questions? Go to www.KrogerFTADataBreachSettlement.com or call 1-866-790-4318.**
**This Settlement affects your legal rights even if you do nothing.**
**8**

AF1218 v.03

distributed pro rata among all Class Members with approved claims, who cashed or deposited their initial check or received the Settlement proceeds through digital means, as long as the average payment amount is $3 or more. If there is not enough money to provide qualifying Class Members with an additional $3 payment, the remaining funds will be distributed to a non-profit organization, or "Non-Profit Residual Recipient." The Non-Profit Residual Recipient is, subject to final court approval, Rose Foundation's Consumer Rights Privacy Fund, a 26 U.S.C. 501(c)(3) non-profit organization.

## THE LAWYERS REPRESENTING YOU

| **24.  Do I have a lawyer in this case?** |
| --- |

Yes, the Court has appointed Tina Wolfson, Robert Ahdoot, and Andrew Ferich of Ahdoot & Wolfson, PC, and Ben Barnow and Anthony Parkhill of Barnow and Associates, P.C., as Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Action.

| **25.  How will Class Counsel be paid?** |
| --- |

Class Counsel will file a motion asking the Court to award them attorneys' fees of up to a maximum of 25% of the $5 million Settlement Fund (i.e., $1,250,000) and reasonable costs and expenses. They will also ask the Court to approve $1,500 service awards to each of the three Class Representatives for participating in this Action and for their efforts in achieving the Settlement. If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees and expenses, and service awards will be made available on the Settlement website at www.KrogerFTADataBreachSettlement.com before the deadline for you to comment or object to the Settlement. You can request a copy of the application by contacting the Settlement Administrator, at 1-866-790-4318.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Kroger on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

| **26.  How do I get out of the Settlement?** |
| --- |

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case name *Cochran vs. The Kroger Co.,* U.S.D.C. Case No. 5:21-cv-01887 (N.D. Cal.); state the name, address and telephone number of the Settlement Class Members seeking exclusion; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Cochran vs. The Kroger Co.,* U.S.D.C. Case No. 5:21-cv-01887 (N.D. Cal.)." A valid Request for Exclusion requires you to state your full name, current mailing address, and telephone number; be physically signed by you; and contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in *Cochran vs. The Kroger Co.,* U.S.D.C. Case No. 5:21-cv-01887 (N.D. Cal.)." The Request for Exclusion must be

AF1219 v.03

submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator at the address below no later than **February 18, 2022**:

*Cochran, et al. v. The Kroger Co.*
Exclusions
P.O. Box 4079
Portland, OR 97208-4079

You cannot exclude yourself by telephone or by e-mail.

### 27. If I exclude myself, can I still get Credit Monitoring and Insurance Services or a Settlement payment?

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You can only get Credit Monitoring and Insurance Services or a cash payment if you stay in the Settlement and submit a valid Claim Form.

### 28. If I do not exclude myself, can I sue Kroger for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Kroger and Released Parties for the claims that this Settlement resolves. You must exclude yourself from this Action to start or continue with your own lawsuit or be part of any other lawsuit against Kroger or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECT TO OR COMMENT ON THE SETTLEMENT

### 29. How do I tell the Court that I do not like the Settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Fairness Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Cochran et al. v. The Kroger Co.*, Case No. 5:21-cv-01887-EJD (N.D. Cal.)); (b) state your full name, current mailing address, and telephone number; (c) contain a signed statement that you believe you are a member of the Settlement Class; (d) identify the specific grounds for the objection; (e) include all documents or writings that you desire the Court to consider; (f) contain a statement regarding whether you (or counsel of your choosing) intend to appear at the Fairness Hearing; (g) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, or by filing them in person at any location of the United States District Court for the Northern District of California; and (h) be filed or postmarked on or before **February 18, 2022**.

AF12110 v.03

## 30. What is the difference between objecting and requesting exclusion?

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

# THE FINAL FAIRNESS HEARING

## 31. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Fairness Hearing on **March 10, 2022, at 9:00 a.m.** before the Honorable Edward J. Davila, United States District Court for the District of the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, California 95113.

The date and time of the Final Fairness Hearing is subject to change without further notice to the Settlement Class. Class members should monitor the Settlement website or the Court's PACER site (see Question 35) to confirm whether the date for the Final Fairness Hearing is changed.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve: the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; and the service awards to the Class Representatives. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

## 32. Do I have to come to the Final Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time the Court will consider it.

## 33. May I speak at the Final Fairness Hearing?

Yes. If you wish to attend and speak at the Final Fairness Hearing, you must indicate this in your written objection (see Question 29). Your objection must state that it is your intention to appear at the Final Fairness Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Fairness Hearing. If you plan to have your attorney speak for you at the Fairness Hearing, your objection must also include your attorney's name, address, and phone number.

# IF YOU DO NOTHING

## 34. What happens if I do nothing at all?

If you are a Class Member and you do nothing, you will not receive any Settlement benefits. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Kroger or any of the Released Parties about the legal issues in this Action and released by the Settlement Agreement.

# GETTING MORE INFORMATION

| **35. How do I get more information?** |
|---|

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement available at www.KrogerFTADataBreachSettlement.com, or by contacting class counsel (see below), by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

If you have questions about the proposed settlement or anything in this Notice, you may contact Class Counsel at:

| Ahdoot & Wolfson, P.C.<br>c/o Kroger FTA Data Breach Settlement<br>2600 W. Olive Avenue \| Suite 500<br>Burbank, CA 91505-4521<br>info@KrogerFTADataBreachSettlement.com | Barnow and Associates, P.C.<br>c/o Kroger FTA Data Breach Settlement<br>205 W. Randolph St., Suite 1630<br>Chicago, IL 60606<br>info@KrogerFTADataBreachSettlement.com |
|---|---|

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

AF12112 v.03

Attachment 5

If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and 



LIVE NOW FIXER UPPER

TRENDING    SHOWS    DESIGN    OUTDOORS    LIVING    HOW TO    SWEEPSTAKES    SHOP    PHOTO INSPIRATION



DECK YOUR HALLS

## 110 Farmhouse Christmas Decorating Ideas

# On TV



FIXER TO FABULOUS

Our Favorite Rooms From Dave and Jenny Marrs

All New Tuesdays at 9|8c



FLIPPING SHOWDOWN

Ken and Anita Corsini Give Renovators the Chance to Win $100K

All New Wednesdays at 9|8c



TABLE WARS

How to Create a Tablescape Inspired by HGTV's New Competition Series

Stream Now on discovery+

**ON TONIGHT**

Fixer Upper

9pm | 8c

**UP NEXT**

Fixer to Fabulous

10pm | 9c

WATCH LIVE TV


Insurance Services to protect your information that may have been taken.



TRENDING    SHOWS    DESIGN    OUTDOORS    LIVING    HOW TO    SWEEPSTAKES    SHOP    PHOTO INSPIRATION    🔍



DECK YOUR HALLS

## 110 Farmhouse Christmas Decorating Ideas

# On TV



**FIXER TO FABULOUS**

Our Favorite Rooms From Dave and Jenny Marrs

All New Tuesdays at 9|8c



**FLIPPING SHOWDOWN**

Ken and Anita Corsini Give Renovators the Chance to Win $100K

All New Wednesdays at 9|8c



**TABLE WARS**

How to Create a Tablescape Inspired by HGTV's New Competition Series

Stream Now on discovery+

BY: KERI SANDERS

**ON TONIGHT**

Fixer Upper

9pm | 8c

**UP NEXT**

Fixer to Fabulous

10pm | 9c

WATCH LIVE TV

See Full Schedule


Click here for more information.
www.KrogerFTADataBreachSettlement.com





 **LIVE NOW** FIXER UPPER

TRENDING    SHOWS    DESIGN    OUTDOORS    LIVING    HOW TO    SWEEPSTAKES    SHOP    PHOTO INSPIRATION



**DECK YOUR HALLS**

110 Farmhouse Christmas Decorating Ideas

## On TV



**FIXER TO FABULOUS**

Our Favorite Rooms From Dave and Jenny Marrs

All New Tuesdays at 9|8c



**FLIPPING SHOWDOWN**

Ken and Anita Corsini Give Renovators the Chance to Win $100K

All New Wednesdays at 9|8c



**TABLE WARS**

How to Create a Tablescape Inspired by HGTV's New Competition Series

Stream Now on discovery+

BY: KERI SANDERS

**ON TONIGHT**

Fixer Upper
9pm | 8c

**UP NEXT**

Fixer to Fabulous
10pm | 9c

**WATCH LIVE TV**

See Full Schedule

## Editors' Picks


If you were affected by the Kroger FTA Data Breach,
you can get a Cash Payment or Credit Monitoring and

 health    Life, But Better    Fitness    **Food**    Sleep    Mindfulness    Relationships        • LIVE TV    Edition ⌄



# Food

Food and diet tips, science and tools from Life, But Better, CNN's essential source for information that inspires and challenges us to lead better lives.



## This roast chicken recipe is your foolproof comfort meal any night of the week

How to take the bland out of a low-sodium diet

Confetti Salad: Radish and Beet Salad With Feta

You cooked for 20 and fed 6 people. What to do with all of those leftovers

Think turkey tryptophan makes you sleepy? Think again

Got turkey troubles? A hotline expert shares tips for a better turkey


ALL OUR LATEST HIV RESOURCES.

GILEAD | HIV    WHAT WE LIVE FOR, GILEAD, and the GILEAD
Logo are trademarks of Gilead Sciences, Inc.
© 2021 Gilead Sciences, Inc. All rights reserved.
US-UNBC-0166 10/21

Advertisement



3 easy recipes with ingredients you already have at home




Insurance Services to protect your information that may have been taken.

 health    Life, But Better    Fitness    **Food**    Sleep    Mindfulness    Relationships

● LIVE TV    Edition ⌄        



# Food

Food and diet tips, science and tools from Life, But Better, CNN's essential source for information that inspires and challenges us to lead better lives.



## This roast chicken recipe is your foolproof comfort meal any night of the week

How to take the bland out of a low-sodium diet

Confetti Salad: Radish and Beet Salad With Feta

You cooked for 20 and fed 6 people. What to do with all of those leftovers

Think turkey tryptophan makes you sleepy? Think again

Got turkey troubles? A hotline expert shares tips for a better turkey and common mistakes to avoid

Fasting 2 days a week can help obese people keep off the weight with modest results, study finds


Advertisement



3 easy recipes with ingredients you already have at home




Click here for more information.
www.KrogerFTADataBreachSettlement.com








CNN health | Life, But Better    Fitness    **Food**    Sleep    Mindfulness    Relationships                                   • LIVE TV    Edition ⌄    🔍    👤    ☰



# Food

Food and diet tips, science and tools from Life, But Better, CNN's essential source for information that inspires and challenges us to lead better lives.



## This roast chicken recipe is your foolproof comfort meal any night of the week

How to take the bland out of a low-sodium diet

Confetti Salad: Radish and Beet Salad With Feta

You cooked for 20 and fed 6 people. What to do with all of those leftovers

Think turkey tryptophan makes you sleepy? Think again

Got turkey troubles? A hotline expert shares tips for a better turkey and common mistakes to avoid

Fasting 2 days a week can help obese people keep off the weight with modest results, study finds


Advertisement



▶ 3 easy recipes with ingredients you already have at home





UPDATING NOW

## LIVE: Broncos, Chiefs in AFC West showdown

| | 3 | 10 | |
| HALFTIME | | | NBC |

**CFP, every bowl matchup now set**

BREAKING NEWS
**NFL grades: Report cards for every team**

**Oklahoma hires Venables as coach**

**Hodges, Miñoso, O'Neil among six voted in to HOF**
MLB

**Lions stun Vikings for first win of season in walk-off**
NFL

**Report: Diaz still employed as Miami chases Cristobal**
COLLEGE FOOTBALL

**Steelers' frustration with Devin Bush mounting**
NFL

**LIVE updates: Davis vs. Cruz complete fight card**
BOXING



## Fantasy: Early Week 14 waiver wire targets

Kenneth Gainwell could be a stash with Miles Sanders' ankle issues, and remember the Titans.



## NFL playoff picture begins to come into focus

Both conferences feature feisty battles for the 14 postseason spots, and this is how it all looks.


**Big Ben rallies Steelers to win when Ravens go for 2-point try and fail**
NFL


**Brady-Gronk connection now second all-time with 90 TDs**
NFL


**LOOK: Watch from where Steph Curry hits this pregame warmup shot**
NBA


**Sirianni updates Eagles' QB situation after Minshew's impressive debut**

If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and




JASON LA CANFORA
## Insider notes: Chargers now finding ways to win
L.A. is learning how to overcome its demons, plus

## Grading the pre-lockout


**CFP, every bowl matchup now set**


**LIVE: Broncos, Chiefs in AFC West showdown**


**NFL grades: Report cards for every team**


BREAKING NEWS
**Oklahoma hires Venables as coach**

**Hodges, Miñoso, O'Neil among six voted in to HOF**
MLB

**Lions stun Vikings for first win of season in walk-off**
NFL

**Report: Diaz still employed as Miami chases Cristobal**
COLLEGE FOOTBALL

**Steelers' frustration with Devin Bush mounting**
NFL

**LIVE updates: Davis vs. Cruz complete fight card**
BOXING


**Fantasy: Early Week 14 waiver wire targets**
Kenneth Gainwell could be a stash with Miles Sanders' ankle issues, and remember the Titans.


**NFL playoff picture begins to come into focus**
Both conferences feature feisty battles for the 14 postseason spots, and this is how it all looks.


**Big Ben rallies Steelers to win when Ravens go for 2-point try and fail**
NFL


**Brady-Gronk connection now second all-time with 90 TDs**
NFL

Insurance Services to protect your information that may have been taken.





LOOK: Watch from where Steph Curry

Filed 01/14/22

# CBS SPORTS




**(•)) UPDATING NOW**

## LIVE: Broncos, Chiefs in AFC West showdown

🐴 3 | 10 🔴

HALFTIME                          NBC

**CFP, every bowl matchup now set**

**NFL grades: Report cards for every team**

**BREAKING NEWS**
**Oklahoma hires Venables as coach**

**Hodges, Miñoso, O'Neil among six voted in to HOF**
MLB

**Lions stun Vikings for first win of season in walk-off**
NFL

**Report: Diaz still employed as Miami chases Cristobal**
COLLEGE FOOTBALL

**Steelers' frustration with Devin Bush mounting**
NFL

**LIVE updates: Davis vs. Cruz complete fight card**
BOXING



## Fantasy: Early Week 14 waiver wire targets
Kenneth Gainwell could be a stash with Miles Sanders' ankle issues, and remember the Titans.



## NFL playoff picture begins to come into focus
Both conferences feature feisty battles for the 14 postseason spots, and this is how it all looks.


**Big Ben rallies Steelers to win when Ravens go for 2-point try and fail**
NFL


**Brady-Gronk connection now second all-time with 90 TDs**
NFL


**LOOK: Watch from where Steph Curry hits this pregame warmup shot**
NBA


**Sirianni updates Eagles' QB situation**

**Grading the pre-lockout**

Click here for more information.
www.KrogerFTAData
BreachSettlement.com



**JASON LA CANFORA**
## Insider notes: Chargers now finding ways to win

# Netflix: Every Christmas movie and TV series to watch in 2021

Ho, ho, holy crap! It's nearly Christmas?

**Richard Trenholm** ↗
Dec. 5, 2021 5:38 p.m. PT

▶ LISTEN - 02:01



1000 Miles (2021)
Netflix


If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and

You may not want to hear this, but the holidays are coming up fast. To help you get ahead of your festive planning, Netflix has confirmed dates for its Christmas film and TV lineup.

It wouldn't be Xmas without a right royal mix-up, so Vanessa Hudgens plays three roles in sequel The Princess Switch 3: Romancing the Star. In Love Hard, a hopeless romantic, played by Nina Dobrev, is catfished by Jimmy O. Yang. And in Single All the Way, Ugly Betty star Michael Urie persuades his best friend to pretend to be his

# Netflix: Every Christmas movie and TV series to watch in 2021

Ho, ho, holy crap! It's nearly Christmas?

**Richard Trenholm** ↗
Dec. 5, 2021 5:38 p.m. PT

▶ LISTEN - 02:01



1000 Miles (2021)

Netflix



Insurance Services to protect your information that may have been taken.

You may not want to hear this, but the holidays are coming up fast. To help you get ahead of your festive planning, Netflix has confirmed dates for its Christmas film and TV lineup.

It wouldn't be Xmas without a right royal mix-up, so Vanessa Hudgens plays three roles in sequel The Princess Switch 3: Romancing the Star. In Love Hard, a hopeless romantic, played by Nina Dobrev, is catfished by Jimmy O. Yang. And in Single All the Way, Ugly Betty star Michael Urie persuades his best friend to pretend to be his




**c|net**

REVIEWS ⌄    NEWS ⌄    TECH ⌄    MONEY ⌄    WELLNESS ⌄    HOME ⌄    CARS ⌄    DEALS ⌄

JOIN / SIGN IN

# Netflix: Every Christmas movie and TV series to watch in 2021

Ho, ho, holy crap! It's nearly Christmas?

**Richard Trenholm** ✐
Dec. 5, 2021 5:38 p.m. PT

▶ LISTEN - 02:01



1000 Miles (2021)
Netflix


Click here for more information.
www.KrogerFTAData
BreachSettlement.com

You may not want to hear this, but the holidays are coming up fast. To help you get ahead of your festive planning, Netflix has confirmed dates for its Christmas film and TV lineup.

It wouldn't be Xmas without a right royal mix-up, so Vanessa Hudgens plays three roles in sequel The Princess Switch 3: Romancing the Star. In Love Hard, a hopeless romantic, played by Nina Dobrev, is catfished by Jimmy O. Yang. And in Single All the Way, Ugly Betty star Michael Urie persuades his best friend to pretend to be his boyfriend at his family Christmas, only for his mother to set him up with her handsome

Subscribe Now
$1 for 6 months

Sections    LOG IN



**On Now**

**Alternative meat taste test**

16:25



**Alice Waters: How to Start a Food Revolution**

31:24



**The pastrami taco from Mexican-inspired Jewish pop-up Malli**

5:38



**When is a nugget not a nugget? (And which one is best?)**

13:14

This is the Austin breakfast taco that can win over Angelenos



ADVERTISEMENT



If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and Insurance Services to protect your information that may have been taken.

Click here for more information.

www.KrogerFTAData BreachSettlement.com

## STADIUM EATS



**The best (and worst) food at Staples Center** ◉



**The best (and worst) food at SoFi Stadium** ◉

## COOKING ›









cooking

  
 NFL Home Scores Schedule Standings Stats ∨ Teams ∨ Fantasy Football NFL Daily Lines Pigskin Playoff Pick'em Depth Charts More ∨

# NFL Scoreboard

| WEEK 10 NOV 10 - 16 | WEEK 11 NOV 17 - 23 | WEEK 12 NOV 24 - 30 | **WEEK 13 DEC 1 - 7** | WEEK 14 DEC 8 - 14 | WEEK 15 DEC 15 - 21 | WEEK 16 DEC 22 - 28 |

Sunday, December 5, 2021

Odds by CAESARS SPORTSBOOK

### NFL Videos



INTRODUCING DIRECTV stream
AD Learn More :05

**Ben Roethlisberger evades questions about his NFL future**
*Now Playing*

**Campbell dedicates win to Oxford community**

**49ers can't capitalize on 4th-and-goal to extend the game**

**Halftime**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Broncos (6-5, 3-2 Away) | 0 | 3 |  |  | **3** |
| Chiefs (7-4, 4-2 Home) | 10 | 0 |  |  | **10** |

NBC

DEN 20 50 20 KC
Last Play: END QUARTER 2

PASS T. Bridgewater QB - DEN 8-18, 111 YDS — GAMECAST
RUSH J. Williams RB - DEN 14 CAR, 59 YDS — BOX SCORE
REC J. Williams RB - DEN 3 REC, 47 YDS — PLAY-BY-PLAY

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Buccaneers (9-3, 4-3 Away) | 13 | 7 | 7 | 3 | **30** |
| Falcons (5-7, 1-5 Home) | 7 | 10 | 0 | 0 | 17 |

 Brady's 4 TDs lead Buccaneers to win over Falcons

PASS T. Brady QB - TB 38-51, 368 YDS, 4 TD — GAMECAST
RUSH K. Patterson RB - ATL 13 CAR, 78 YDS — BOX SCORE
REC C. Godwin WR - TB 15 REC, 143 YDS — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Cardinals (10-2, 7-0 Away) | 14 | 7 | 3 | 9 | **33** |
| Bears (4-8, 2-4 Home) | 0 | 7 | 7 | 8 | 22 |

 James Conner takes jaw-dropping 1-handed grab in for a TD

PASS A. Dalton QB - CHI 26-41, 229 YDS, 2 TD — GAMECAST
RUSH D. Montgomery RB - CHI 21 CAR, 90 YDS, 1 TD — BOX SCORE
REC J. Grant Sr. WR - CHI 5 REC, 62 YDS, 1 TD — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Chargers (7-5, 4-2 Away) | 16 | 8 | 0 | 17 | **41** |
| Bengals (7-5, 3-3 Home) | 0 | 13 | 9 | 0 | 22 |

 Tevaughn Campbell returns fumble 61 yards for Chargers TD

PASS J. Herbert QB - LAC 26-35, 317 YDS, 3 TD — GAMECAST
RUSH A. Ekeler RB - LAC 14 CAR, 59 YDS, 1 TD — BOX SCORE
REC T. Higgins WR - CIN 9 REC, 138 YDS, 1 TD — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Vikings (5-7, 2-5 Away) | 6 | 0 | 9 | 12 | 27 |
| Lions (1-10-1, 1-5 Home) | 0 | 20 | 3 | 6 | **29** |

 Lions stun Vikings on final play to win first game of season

PASS K. Cousins QB - MIN 30-40, 340 YDS, 1 TD — GAMECAST
RUSH A. Mattison RB - MIN 22 CAR, 90 YDS, 1 TD — BOX SCORE
REC J. Jefferson WR - MIN 11 REC, 182 YDS, 1 TD — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Giants (4-8, 1-5 Away) | 0 | 3 | 3 | 3 | 9 |
| Dolphins (6-7, 4-3 Home) | 0 | 10 | 0 | 10 | **20** |

 Mack Hollins makes nifty juggling TD catch

PASS T. Tagovailoa QB - MIA 30-41, 244 YDS, 2 TD — GAMECAST
RUSH S. Barkley RB - NYG 11 CAR, 55 YDS — BOX SCORE
REC J. Waddle WR - MIA 9 REC, 90 YDS — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Eagles (6-7, 5-3 Away) | 7 | 17 | 3 | 6 | **33** |
| Jets (3-9, 2-4 Home) | 12 | 6 | 0 | 0 | 18 |

 Minshew throws 2 TD passes to Goedert in Eagles win over Jets

PASS G. Minshew II QB - PHI 20-25, 242 YDS, 2 TD — GAMECAST
RUSH M. Sanders RB - PHI 24 CAR, 120 YDS — BOX SCORE
REC D. Goedert TE - PHI 6 REC, 105 YDS, 2 TD — HIGHLIGHTS

---

**FINAL**

|  | 1 | 2 | 3 | 4 | T |
|---|---|---|---|---|---|
| Colts (7-6, 4-2 Away) | 7 | 7 | 7 | 10 | **31** |

PASS C. Wentz QB - IND 16-22, 158 YDS, 1 TD — GAMECAST



If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and Insurance Services to protect your information that may have been taken.

**Click here for more information.**

**www.KrogerFTAData BreachSettlement.com**

DRAFTKINGS DAILY FANTASY SPORTS — FEATURED CONTEST

**$1,200,000 TOTAL PRIZES**

DEN Broncos 7-4-0  @  KC Chiefs 7-4-0

SINGLE-GAME SHOWDOWN SUN @ 8:20 PM

Build Your Lineup

USA TODAY

NEWS TO YOUR INBOX
Start the day smarter ⚙

OMICRON VARIANT
What to know

DOWNPOUR
The sound of rain

TEST YOUR KNOWLEDGE 📝
Take our news quiz

SUBSCRIBE NOW
$1 per Week

News   Sports   Entertainment   Life   Money   Tech   Travel   Opinion   ⌄   🔍   47°F ☁   **Subscribe**   Sign In ⌄

Advertisement - scroll for more content



If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and Insurance Services to protect your information that may have been taken.

Click here for more information.

www.KrogerFTADataBreachSettlement.com



**■ FOR SUBSCRIBERS**

**In 5 minutes, a gunman turned a normal day at Oxford High into a nightmare**

Nov. 30, 2021 began as a cold Tuesday morning, with people in and around Oxford High School unaware of the calamity to come.

NATION 10:13 a.m. ET Dec. 5



**Bob Dole, former GOP presidential candidate and senator, dies at 98**

POLITICS 8:31 p.m. ET Dec. 5



**■ FOR SUBSCRIBERS**

**Snubbed again, Big 12, Pac-12, ACC desperately need playoff expansion**

DAN WOLKEN 7:01 p.m. ET Dec. 5



**Omicron in at least 15 states, but delta remains biggest COVID challenge: Updates**

The omicron variant may be more transmissible but less severe than other COVID strains, but more study is needed, U.S. health officials said.

HEALTH 9:18 p.m. ET Dec. 5



**Chris Cuomo accused of sexual harassment days before CNN firing**

Before Chris Cuomo was suspended then fired from CNN over aiding his brother, Andrew Cuomo, a new allegation of harassment against the anchor emerged.

TV 7:10 p.m. ET Dec. 5



**4 dead after single-engine plane crashes in central California, authorities say**

At least four people are dead after a plane crashed near an airport in central California on Saturday, authorities said.

## Top Headlines

**Lions finally get first win of season with TD on final play**

**■ FOR SUBSCRIBERS**
**Is the future unending COVID-19 variants, each more dangerous than the last?**

**Alabama nabs top seed in College Football Playoff, edging Michigan**

**Finger lickin' gone? Supply chain issues may mean chicken tender shortage**

**■ FOR SUBSCRIBERS**
**Vanessa Bryant lawsuit becomes a 'no-win' situation for LA County**

**■ FOR SUBSCRIBERS**
**How is your state affected by rainfall caused by a warming climate?**

**■ FOR SUBSCRIBERS**
**Susan Page on Bob Dole, her father and how Kansas shaped all three**

**■ FOR SUBSCRIBERS**
**College Football Playoff rankings: Winners and losers**

✉ **Get the Daily Briefing in your inbox**

Advertisement




TODAY | HOURLY | DAILY | RADAR | MINUTECAST | MONTHLY | AIR QUALITY

If you were affected by the Kroger FTA Data Breach, you can get a Cash Payment or Credit Monitoring and Insurance Services to protect your information that may have been taken.

Click here for more information.

www.KrogerFTADataBreachSettlement.com

## CURRENT WEATHER

6:43 PM

**57°** F

RealFeel® 60°

Partly cloudy

| Air Quality | Poor |
| Wind | 0 mph |
| Wind Gusts | 4 mph |

MORE DETAILS →

## CURRENT AIR QUALITY

**65** AQI

**Poor**

The air has reached a high level of pollution and is unhealthy for sensitive groups. Reduce time spent outside if you are feeling symptoms such as difficulty breathing or throat irritation.

Based on Current Pollutants

More Details →

Learn more at

plume labs

## ALLERGY OUTLOOK

| Tree Pollen | Low |
| Grass Pollen | Low |
| Ragweed Pollen | Low |


BEST BUY

Get Shark floorcare for the holidays.

Shop Now

© 2021 Best Buy

## Top Stories



**WINTER WEATHER**

Record-shattering cold has gripped Alaska and refuses to let go

14 hours ago



**Class Action**
Sponsored · 🌐

If you were affected by the Kroger FTA Data Breach, you can get Cash Payment or Credit Monitoring and Insurance Services.



KROGERFTADATABREACHSETTLEMENT.COM
**Kroger FTA Data Breach Settlement**

Learn more

👍 Like     💬 Comment     ↗ Share

Sponsored



**collectorvision.com**
collectorvision.com



**Class Action**
Sponsored · 🌐

If you were affected by the Kroger FTA Data Breach, you can get Cash Payment or Credit Monitoring and Insurance Services.



KROGERFTADATABREACHSETTLEMENT.COM
**Kroger FTA Data Breach Settlement**

Learn more

👍 Like          💬 Comment          ↪ Share

Sponsored

What products do you need fulfilled?
disk.com

**Razar**
Sponsored · 🌐

Stay sharp in the kitchen...
The right type of knife can make all the difference.
✔ Ruthlessly sharp... **See more**



Sponsored

**Kroger FTA Data Breach Settlement**
krogerftadatabreachsettlement.com

Friends

Pages
9+ new

Marketplace

Saved

News

See more

Netgear
Sponsored · 

Why a Nighthawk WiFi 6E Router? Get the fastest speeds, lowest latency, highest quality, and overall best WiFi available today.



Sponsored

Kroger FTA Data Breach Settlement
krogerftadatabreachsettlement.com

Attachment 6

*Cochran, et al. v. The Kroger Co.*
**Caso n.º 5:21-cv-01887 (U.S. District Court for the Northern District of California)**

# Aviso de conciliación de demanda colectiva de The Kroger Co. por violación de datos del FTA

*Un tribunal federal ha autorizado este Aviso. <u>No</u> es a solicitud de un abogado.*
*Lea este Aviso detenidamente y de forma completa.*

<u>**ESTE AVISO PUEDE AFECTAR SUS DERECHOS. LÉALO DETENIDAMENTE.**</u>

*Para un aviso en español, llame al 1-866-790-4318 o visite nuestro sitio web*
*www.KrogerFTADataBreachSettlement.com.*

- Se ha propuesto una Conciliación en una demanda colectiva contra The Kroger Co. ("Kroger" o "Demandada"), en relación con una violación de datos que Kroger anunció el 19 de febrero de 2021, por la cual, el 23 de enero de 2021, Kroger descubrió que un usuario no autorizado obtuvo acceso a cierta información de clientes y empleados actuales y anteriores de Kroger, incluidos los nombres, direcciones de correo electrónico, números de teléfono, domicilios particulares, fechas de nacimiento, números de seguro social, información para procesar reclamaciones de seguro, información de recetas (como el número de receta, el médico que receta, los nombres de medicamentos y las fechas), antecedentes médicos, ciertos servicios clínicos e información relacionada con el salario (la "Violación de datos del FTA"). La Violación de datos del FTA fue parte de la violación que involucra al producto de transferencia de archivos de Accellion, Inc. ("Accellion") denominado Dispositivo de transferencia de archivos (File Transfer Appliance, FTA).

- Si recibió un aviso de Kroger de que su información personal se vio comprometida como resultado de la Violación de datos del FTA, usted está incluido en esta Conciliación como "Miembro de la demanda colectiva".

- En virtud de la Conciliación, Kroger ha acordado establecer un Fondo de la conciliación de $5 millones para: (1) pagar dos años de servicios de supervisión crediticia y seguro contra robo de identidad ("Servicios de supervisión crediticia y seguro"); o (2) proporcionar pagos en efectivo de hasta $5,000 por Miembro de la demanda colectiva a modo de reembolso de ciertas Pérdidas documentadas ("Pago por pérdida documentada"); o (3) proporcionar pagos en efectivo a Miembros de la demanda colectiva ("Pago de fondos en efectivo"). El Fondo de la conciliación también se utilizará para pagar los costos de la administración de la conciliación, los honorarios y gastos de los abogados aprobados por el tribunal y las Adjudicaciones de servicios a los Demandantes mencionados. Además, Kroger ha acordado tomar determinadas medidas correctivas y reforzar las medidas de seguridad que continuará implementando.

- Sus derechos legales se verán afectados ya sea que usted actúe o no. <u>Debe leer todo este Aviso detenidamente.</u>

| SUS DERECHOS LEGALES Y OPCIONES EN ESTA CONCILIACIÓN: | |
|---|---|
| **Presentar un Formulario de reclamación**<br><br>**Fecha límite: 5 de marzo de 2022** | Presentar un Formulario de reclamación es la única manera en la que puede recibir cualquiera de los beneficios proporcionados por esta Conciliación, incluidos los Servicios de supervisión crediticia y seguro, un Pago por pérdida documentada o un Pago de fondos en efectivo.<br><br>Si presenta un Formulario de reclamación, usted renunciará al derecho de demandar a la Demandada y a determinadas partes relacionadas en una demanda por separado por las reclamaciones legales que la presente Conciliación resuelve. |

| Cómo excluirse de esta Conciliación<br><br>**Fecha límite: 18 de febrero de 2022** | Esta es la única opción que le permite iniciar la demanda, continuar la demanda o ser parte de otra demanda contra la Demandada, o determinadas partes relacionadas, por las reclamaciones que la presente Conciliación resuelve.<br><br>Si usted se excluye, renunciará al derecho de recibir cualquier beneficio de la presente Conciliación. |
|---|---|
| **Objetar o formular comentarios sobre la Conciliación**<br><br>**Fecha límite: 18 de febrero de 2022** | Usted podrá objetar la Conciliación por escrito ante el Tribunal e informarle el motivo por el cual usted no considera que la Conciliación debería aprobarse. También puede escribir al Tribunal para formular comentarios o motivos por los cuales usted apoya la Conciliación.<br><br>Si usted la objeta, también podrá presentar un Formulario de reclamación para recibir los beneficios de la Conciliación, pero renunciará al derecho de iniciar la demanda contra la Demandada en una demanda por separado por las reclamaciones legales que la presente Conciliación resuelve. |
| **Asistir a la Audiencia "imparcial final"**<br><br>**Fecha: 10 de marzo de 2022** | Usted podrá asistir a la Audiencia imparcial final en la cual el Tribunal podrá dar lugar a sus argumentos sobre la aprobación de la Conciliación. Si desea hablar en la Audiencia imparcial final, debe hacer una solicitud para ello en su objeción o comentario por escrito. Usted <u>no</u> está obligado a asistir a la Audiencia imparcial final. |
| **No hacer nada** | Si no hace nada, no recibirá ninguno de los beneficios monetarios de la Conciliación y renunciará a sus derechos de iniciar la demanda a Kroger y a determinadas partes relacionadas por las reclamaciones que la presente Conciliación resuelve. |

- Estos derechos y estas opciones, **y las fechas límite para ejercerlos**, se explican en este Aviso.
- El Tribunal a cargo de este caso todavía no se ha pronunciado respecto de la aprobación de la Conciliación. No se brindará ningún beneficio ni pago de la Conciliación hasta que el Tribunal apruebe dicha Conciliación y esta se considere definitiva.

## INFORMACIÓN BÁSICA

### 1.   ¿Por qué recibí este Aviso?

Un tribunal federal autorizó este Aviso porque usted tiene el derecho de conocer acerca de la Conciliación propuesta en esta demanda colectiva y sobre todos sus derechos y opciones antes de que el Tribunal decida si dará la aprobación final de la Conciliación. En este Aviso, se explican la demanda, la Conciliación, sus derechos legales, los beneficios disponibles, quiénes reúnen los requisitos para recibirlos y cómo obtenerlos.

El honorable juez Edward J. Davila del Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California se encuentra a cargo de esta demanda colectiva. El caso se conoce como *Cochran vs. The Kroger Co.,* U.S.D.C. Caso n.º 5:21-cv-01887 (la "Demanda"). Las personas que presentaron esta demanda se denominan "Demandantes" y una de las compañías a las que demandaron, The Kroger Co., se denomina "Demandada".

### 2.   ¿De qué trata esta demanda?

El 19 de febrero, 2021, o en torno a esa fecha, Kroger anunció que en diciembre de 2020, un usuario no autorizado había accedido a información relacionada con ciertos clientes de servicios monetarios y de farmacia de Kroger y empleados actuales y anteriores, incluidos los nombres, direcciones de

correo electrónico, números de teléfono, domicilios particulares, fechas de nacimiento, números de seguro social, información para procesar reclamaciones de seguro, información de receta (como número de receta, médico que receta, nombres de medicamentos y fechas), antecedentes médicos, ciertos servicios clínicos e información relacionada con el salario en una violación de datos que involucre al proveedor de software de transferencia de archivos de Kroger, Accellion. Específicamente, la violación aprovechó las vulnerabilidades del producto de transferencia de archivos de Accellion denominado FTA, lo que permitió a terceros acceder a la información sobre los clientes y los empleados actuales y anteriores de Kroger.

Los Demandantes reclaman que Kroger no protegió su información personal y que fueron perjudicados como consecuencia de esto. Kroger niega cualquier infracción y ningún tribunal ni ninguna otra entidad ha emitido un juicio ni otra determinación de ninguna infracción o de que se haya violado la ley. Kroger niega estas y todas las demás reclamaciones realizadas en la Demanda. Al celebrar la Conciliación, Kroger no admite que haya actuado de manera indebida.

## 3.  ¿Por qué es esta una demanda colectiva?

En una demanda colectiva, una o más personas llamadas Representantes de la demanda colectiva inician la demanda en nombre de las personas que tienen reclamaciones similares. Todas estas personas conforman una Demanda colectiva o son Miembros de la demanda colectiva. Un tribunal resuelve los asuntos para todos los Miembros de la demanda colectiva, excepto los Miembros de la demanda colectiva que se excluyeron de dicha Demanda colectiva.

Los Representantes de la demanda colectiva en este caso son Ricky Cochran, Alain Berrebi y Jaramey Stobbe.

## 4.  ¿Por qué existe una Conciliación?

Los Representantes de la demanda colectiva y Kroger no se ponen de acuerdo sobre las reclamaciones realizadas en esta Demanda. La Demanda no se elevó a juicio y el Tribunal no ha tomado ninguna decisión a favor de los Representantes de la demanda colectiva ni Kroger. En cambio, los Representantes de la demanda colectiva y Kroger han acordado conciliar la Demanda. Los Representantes de la demanda colectiva y los abogados de la Demanda colectiva ("Abogados de la demanda colectiva") consideran que la Conciliación es lo mejor para todos los Miembros de la demanda colectiva debido a los riesgos y la incertidumbre asociados con la continuación del litigio y la naturaleza de las defensas emitidas por Kroger.

# QUIÉNES ESTÁN INCLUIDOS EN LA CONCILIACIÓN

## 5.  ¿Cómo sé si formo parte de la Conciliación?

Si usted recibió un Aviso de esta Conciliación, usted ha sido identificado por el Administrador de la conciliación como Miembro de la demanda colectiva. Más específicamente, usted es un Miembro de la demanda colectiva y está afectado por esta Conciliación si recibió un aviso de Kroger de que su información personal se vio comprometida como resultado de la Violación de datos del FTA.

## 6.  ¿Existen excepciones para los que están incluidos en la Conciliación?

Sí, la Conciliación no incluye: (1) los Jueces que presiden la Demanda y los miembros de sus familias; (2) Kroger, sus subsidiarias, compañías matrices, sucesores, antecesores, y cualquier entidad en la que Kroger o sus compañías matrices tengan una participación mayoritaria y sus funcionarios, directores y empleados actuales o anteriores; (3) las Personas que firmen y presenten adecuadamente

una Solicitud de exclusión antes del vencimiento del Período de exclusión y (4) los sucesores o cesionarios de cualquiera de dichas Personas excluidas.

## 7.  ¿Qué ocurre si no estoy seguro de estar incluido en la Conciliación?

Si no está seguro de si es Miembro de la demanda colectiva, puede visitar el sitio web de la Conciliación en www.KrogerFTADataBreachSettlement.com o llamar al número gratuito del Administrador de la conciliación al 1-866-790-4318.

# LOS BENEFICIOS DE LA CONCILIACIÓN: LO QUE OBTENDRÁ SI REÚNE LOS REQUISITOS

## 8.  ¿Qué establece la Conciliación?

La Conciliación brindará a los Miembros de la demanda colectiva la oportunidad de seleccionar y presentar una reclamación por uno de los siguientes beneficios:

- Pagos de fondos en efectivo por montos que se determinarán de acuerdo con los términos de la Conciliación; o

- Dos años de Servicios de supervisión crediticia y seguro; o

- Pagos en efectivo de hasta $5,000 por Miembro de la demanda colectiva a modo de reembolso de determinadas Pérdidas documentadas ("Pago por pérdida documentada").

Además, Kroger ha acordado tomar ciertas medidas correctivas y reforzar las medidas de seguridad como resultado de esta Demanda.

Revise cuidadosamente la Pregunta 12 para obtener información adicional sobre el orden en que se pagan los Beneficios del Fondo de la conciliación. Esta información adicional puede afectar su decisión sobre cuál de las tres opciones de beneficios es la mejor opción para usted.

## 9.  Servicios de supervisión crediticia y seguro.

Como alternativa a un Pago de fondos en efectivo, puede elegir Servicios de supervisión crediticia y seguro. Servicios de supervisión crediticia y seguro proporciona una forma de protegerse contra el uso no autorizado de su información personal. Si ya cuenta con servicios de supervisión crediticia, aún podrá solicitar esta protección adicional. Los Servicios de supervisión crediticia y seguro que se brindan en virtud de la presente Conciliación son separados de los dos años de servicios de supervisión crediticia y resolución de identidad ofrecidos por Kroger en respuesta a la violación de datos del FTA a las personas que recibieron una carta de aviso de Kroger. Usted es elegible para hacer una reclamación de los Servicios de supervisión crediticia y seguro que se ofrecen a través de esta Conciliación aunque no haya solicitado los servicios anteriores.

Los Servicios de supervisión crediticia y seguro incluirán las siguientes características: (i) cobertura de seguro contra robo de identidad de hasta $1 millón de dólares; (ii) supervisión crediticia por parte de tres agencias que notifican los cambios en el perfil de crédito del Miembro de la demanda colectiva de la Conciliación participante; (iii) atención al cliente y agente dedicado a la resolución de fraudes; (iv) recursos educativos integrales; (v) resolución extendida de fraude. El valor minorista estimado de los Servicios de supervisión crediticia y seguro es de $360.

Puede obtener más información sobre los Servicios de supervisión crediticia y seguro que se proporcionan a través de esta Conciliación en www.identityguard.com/KrogerFTADataBreachSettlement.

**¿Tiene alguna pregunta? Visite www.KrogerFTADataBreachSettlement.com o llame al 1-866-790-4318. La Conciliación afecta sus derechos legales incluso si no toma ninguna medida.**

4

## 10.  El Pago por pérdida documentada.

Como alternativa al Pago de fondos en efectivo o a los Servicios de supervisión crediticia y seguro, puede optar por presentar un Formulario de reclamación a modo de reembolso de las Pérdidas documentadas. Si ha gastado dinero para remediar o abordar el robo de identidad y el fraude que probablemente esté relacionado con la Violación de datos del FTA, y que no sea reembolsable por el seguro, o si ha gastado dinero para protegerse de futuros daños debido a la Violación de datos del FTA, puede presentar una reclamación de Pago por pérdida documentada a modo de reembolso de hasta $5,000 en Pérdidas documentadas.

Las Pérdidas documentadas consisten en pérdidas no reembolsadas incurridas el 16 de diciembre de 2020 o después de esa fecha, que se relacionaron con el robo de identidad y el fraude y que es más probable que sean el resultado de la Violación de datos del FTA, así como cualquier gasto relacionado con la Violación de datos del FTA. Por ejemplo, cargos por cancelación o reemplazo de tarjetas de crédito o débito, cargos por pagos atrasados, cargos por pago rechazado, cargos por sobregiro, cargos por cheques devueltos, cargos por servicio al cliente, costos relacionados con el crédito asociados con la compra de informes de crédito, supervisión crediticia o protección contra robo de identidad, costos de realización de un bloqueo o colocación de una alerta en los informes de crédito, costos para reemplazar la licencia de conducir, tarjeta de identificación del estado, número de seguro social, servicios profesionales y gastos de bolsillo por notario, fax, franqueo postal, entrega, fotocopiado, kilometraje y cargos telefónicos a distancia. Otras pérdidas o costos relacionados con la Violación de datos del FTA que no sean reembolsables por el seguro también pueden ser elegibles a modo de reembolso. Tenga en cuenta que, como Kroger indicó en la carta de notificación de violación de datos que se le envió anteriormente, ningún dato de tarjeta de crédito o débito se vio afectado por la violación en la medida en lo que respecta a Kroger, por lo que no debería haber pérdidas documentadas relacionadas con cargos fraudulentos en su tarjeta de crédito o débito. Para proteger el Fondo de la conciliación y las reclamaciones válidas, el Administrador de la conciliación revisará cuidadosamente todos los Formularios de reclamación presentados que soliciten pagos relacionados con transacciones fraudulentas con tarjetas de crédito o débito.

Las reclamaciones por Pagos por pérdida documentada deben estar respaldadas por Documentación razonable. La Documentación razonable hace referencia a los documentos por escrito que respaldan su reclamación, como estados de cuenta de tarjeta de crédito, estados de cuenta bancarios, facturas, registros telefónicos y recibos.

Los pagos en efectivo individuales se pueden reducir o aumentar de forma prorrateada según la cantidad de Miembros de la demanda colectiva que participen de la Conciliación.

Si usted presenta un Formulario de reclamación para un Pago por pérdida documentada y el Administrador de la conciliación lo rechaza y usted no lo corrige, su Formulario de reclamación se considerará para un Pago de fondos en efectivo.

## 11.  El Pago de fondos en efectivo.

Puede presentar un Formulario de reclamación para recibir un pago en efectivo. Este es el "Pago de fondos en efectivo". El monto del Pago de fondos en efectivo variará según la cantidad de reclamaciones válidas que se presenten. Un rango estimado para el Pago de fondos en efectivo es de $36 a $182 para los Miembros de la demanda colectiva de California que presenten reclamaciones válidas y de $18 a $91 para todos los demás Miembros de la demanda colectiva que presenten reclamaciones válidas, pero esto es solo una estimación, no una garantía. Para recibir un Pago de fondos en efectivo, debe presentar un Formulario de reclamación completo en el que elija recibir un Pago de fondos en efectivo.

Usted <u>no</u> tiene la obligación de proporcionar la Documentación razonable junto con su Formulario de reclamación para recibir el Pago de fondos en efectivo. Los Pagos de fondos en efectivo individuales se pueden reducir o aumentar de forma prorrateada según la cantidad de Miembros de la demanda colectiva que participen en la Conciliación y el monto de dinero que permanezca en el Fondo de dinero en efectivo después de los pagos de otros Beneficios y cargos con prioridad para el pago en virtud de la Conciliación. *Consulte* el Número 12 a continuación.

## 12. ¿Cómo se pagarán los Beneficios de la conciliación?

Antes de determinar qué opción de Beneficio de la Conciliación es la más adecuada para usted (seleccionar un Pago de fondos en efectivo, Servicios de supervisión crediticia y seguro o Pago por pérdida documentada), es importante que comprenda cómo se realizarán los pagos de la Conciliación. Los honorarios de abogados concedidos por el Tribunal, hasta un máximo del 25% del Fondo de la conciliación de $5 millones (es decir, $1,250,000), los costos y gastos razonables en los que incurran los abogados de la Demanda colectiva y las adjudicaciones de servicios de $1,500 a cada uno de los tres Representantes de la demanda colectiva se deducirán del Fondo de la conciliación antes de realizar pagos a los Miembros de la demanda colectiva. El Tribunal puede otorgar montos menores. El resto del Fondo de la conciliación se distribuirá en el siguiente orden:

1. Las reclamaciones de los Servicios de supervisión crediticia y seguro se pagarán en primer lugar.

2. Si queda dinero en los Fondos de la conciliación después de pagar los Servicios de supervisión crediticia y seguro, las reclamaciones de Pago por pérdida documentada se pagarán en segundo lugar.

3. Si queda dinero en los Fondos de la conciliación después de pagar las reclamaciones de los Servicios de supervisión crediticia y seguro y las reclamaciones de Pagos por pérdida de documentos, el monto restante del Fondo de la conciliación se utilizará para crear un "Fondo neto de la conciliación posterior a DC", que se utilizará para pagar todas las reclamaciones de Pagos de fondos en efectivo. Como se indica en el párrafo 11 anterior, es un rango estimado de $36 a $182 para los Miembros de la demanda colectiva de California que presenten reclamaciones válidas, y $18 a $91 para todos los demás Miembros de la demanda colectiva que presenten reclamaciones válidas. Esto es solo una estimación, no una garantía, basada en la experiencia y la creencia del abogado de la Demanda colectiva.

## 13. Deseo obtener más información sobre las medidas correctivas y el refuerzo de las medidas de seguridad de Kroger.

La Demandada ha completado una investigación sobre la causa y el alcance de la Violación de datos del FTA y ha completado la corrección de las vulnerabilidades que permitieron que ocurriera la Violación de datos del FTA. Kroger ha confirmado que ha dejado de usar el FTA de Accellion y ha migrado a una nueva solución de transferencia segura de archivos, y que ha asegurado la información confidencial a la que se accedió durante la Violación de datos del FTA. Además, como resultado de la Demanda, por un período de cinco (5) años, Kroger ha acordado instituir políticas, procedimientos y medidas correctivas adicionales relacionadas con la seguridad. Estas medidas incluyen mejoras al programa de gestión de riesgos de proveedores externos de Kroger y la realización de monitoreo de fraude en la web oscura, entre otras medidas.

## 14. ¿Cuál es el valor total de la Conciliación?

La Conciliación proporciona un Fondo de la conciliación de $5,000,000 y medidas correctivas tomadas por Kroger en beneficio de la Demanda colectiva. Los honorarios de abogados, costos y

gastos aprobados por el tribunal, las Adjudicaciones de servicios a los Demandantes mencionados, los impuestos adeudados sobre cualquier interés devengado por el Fondo de la conciliación, si es necesario, y cualquier aviso y gastos de administración de la conciliación se pagarán del Fondo de la conciliación, y el saldo ("Fondo neto de la conciliación") se utilizará para pagar los Beneficios anteriores.

## 15. ¿A qué renuncio para recibir un pago de la Conciliación o permanecer en la Demanda colectiva?

A menos que se excluya, usted elige permanecer en la Demanda colectiva. Si la Conciliación se aprueba y pasa a ser definitiva, todas las órdenes del Tribunal le afectarán y estará legalmente obligado. No podrá iniciar una demanda, continuar una demanda ni ser parte de ninguna otra demanda contra Kroger y las partes relacionadas por los problemas legales de esta Demanda, resueltos mediante la presente Conciliación, y eximidos por el Acuerdo y resolución de la conciliación de la demanda colectiva. Los derechos específicos a los que renuncia se denominan "Reclamaciones exentas" (consulte la siguiente pregunta).

## 16. ¿Cuáles son las Reclamaciones exentas?

A cambio de la Conciliación, los Miembros de la demanda colectiva acuerdan eximir a Kroger y sus respectivos antecesores, sucesores, cesionarios, compañías matrices, subsidiarias, divisiones, filiales, departamentos, y todos y cada uno de sus funcionarios, directores, empleados, accionistas, socios, servidores, agentes, sucesores, abogados, representantes, aseguradores, reaseguradores, subrogatarios y cesionarios pasados, presentes y futuros de cualquiera de los anteriores, así como los Demandantes y los Abogados de la demanda colectiva ("Partes exentas") de todas y cada una de las reclamaciones, acciones legales, juicios, obligaciones, deudas, demandas, acuerdos, promesas, pasivos, daños y perjuicios, pérdidas, controversias, costos, gastos y honorarios de abogados de cualquier naturaleza, si se basan en alguna ley (incluida la ley federal, ley estatal, derecho consuetudinario, contrato, regla, o regulación) o en equidad, ya sea que se conozcan o se desconozcan, sospechados o no, afirmados o no, previstos o imprevistos reales o contingentes, liquidados o no, punitivos o compensatorios, monetarios o no, que se han declarado en la Demanda, o que podrían haberse declarado en la demanda, que surjan o se relacionen con las acciones legales, acusaciones, prácticas, o conducta en cuestión en la Demanda relacionada con Kroger, con respecto a la Violación de datos del FTA ("Reclamaciones exentas").

Las Reclamaciones exentas no incluyen reclamaciones relacionadas con la ejecución de la conciliación. Las Reclamaciones exentas no incluyen derechos, acciones legales, responsabilidades, acciones, juicios, daños y perjuicios o demandas de cualquier tipo, conocidos o desconocidos, vencidos o no, en derecho o equidad, existentes en virtud de la ley federal o estatal, contra Accellion, Inc. y sus antecesores, sucesores, cesionarios, compañías matrices, subsidiarias, divisiones, filiales, departamentos, y todos y cada uno de los funcionarios, directores, empleados, accionistas, socios, servidores, agentes, abogados, representantes, aseguradores, reaseguradores, subrogatarios y cesionarios pasados, presentes y futuros de cualquiera de las entidades mencionadas en esta frase. No se eximen reclamaciones contra Accellion y el litigio continúa en cuanto a ello.

Se brinda más información en el Acuerdo y resolución de la conciliación de la demanda colectiva, que se encuentra disponible en www.KrogerFTADataBreachSettlement.com.

# CÓMO OBTENER LOS BENEFICIOS DE LA CONCILIACIÓN: PRESENTACIÓN DE UN FORMULARIO DE RECLAMACIÓN

## 17. ¿Cómo realizo una reclamación de los Beneficios de la conciliación?

Debe completar y presentar un Formulario de reclamación a más tardar el **5 de marzo de 2022**. Los Formularios de reclamación podrán presentarse en línea en www.KrogerFTADataBreachSettlement.com o bien, imprimirse del sitio web y enviarse por correo postal al Administrador de la conciliación a la dirección indicada en el formulario. Los Formularios de reclamación también están disponibles si llama al 1-866-790-4318 o escribe a *Kroger FTA Data Breach Settlement*, Settlement Administrator, P.O. Box 4079, Portland, OR 97208-4079. La forma más rápida de presentar una reclamación es en línea.

Si recibió un Aviso por correo, utilice su Número de reclamación para presentar su Formulario de reclamación. Si perdió o no conoce su Número de reclamación, llame al 1-866-790-4318 para obtenerlo.

Puede presentar una reclamación por un Pago de fondos en efectivo o Servicios de supervisión crediticia y seguro o un Pago por pérdida documentada presentando un Formulario de reclamación en el Sitio web de la Conciliación, o descargando, imprimiendo y completando un Formulario de reclamación, y enviándolo por correo al Administrador de la conciliación.

Puede presentar una reclamación por solo uno de los beneficios proporcionados en virtud de la Conciliación: 1) un Pago de fondos en efectivo, o 2) Servicios de supervisión crediticia y seguro o 3) un Pago por pérdida documentada.

## 18. ¿Cómo puedo realizar una reclamación de un Pago de fondos en efectivo?

Para presentar una reclamación de un Pago de fondos en efectivo, debe presentar un Formulario de reclamación válida en el que elija recibir el Pago de fondos en efectivo. Para presentar una reclamación por un Pago de fondos en efectivo, puede completar un Formulario de reclamación en el Sitio web de la conciliación o imprimir y enviar por correo un Formulario de reclamación completo al Administrador de la conciliación, el **5 de marzo de 2022** o antes.

Si desea recibir su pago a través de PayPal, Venmo o tarjeta digital en lugar de un cheque, simplemente proporcione su dirección de correo electrónico (opcional). Cualquier persona que presente una reclamación válida para el Pago de fondos en efectivo y no elija recibir el pago a través de PayPal, Venmo o tarjeta digital, recibirá su pago a través de un cheque regular enviado a través del correo postal de los EE. UU.

Las instrucciones para presentar una reclamación por el Pago de fondos en efectivo se incluyen en el Formulario de reclamación. Puede acceder al Formulario de reclamación en www.KrogerFTADataBreachSettlement.com.

La fecha límite para presentar una reclamación de Pago de fondos en efectivo es el **5 de marzo de 2022**.

## 19. ¿Cómo realizo una reclamación de Servicios de supervisión crediticia y seguro?

Para presentar una reclamación de Servicios de supervisión crediticia y seguro, debe presentar un Formulario de reclamación válida y elegir recibir Servicios de supervisión crediticia y seguro. Para presentar una reclamación por Servicios de supervisión crediticia y seguro, puede completar un Formulario de reclamación en el Sitio web de la conciliación o imprimir y enviar por correo un Formulario de reclamación completo al Administrador de la conciliación, el **5 de marzo de 2022** o antes.

Las instrucciones para llenar una reclamación por Servicios de supervisión crediticia y seguro se incluyen en el Formulario de reclamación. Puede acceder al Formulario de reclamación en www.KrogerFTADataBreachSettlement.com.

La fecha límite para presentar una reclamación por Servicios de supervisión crediticia y seguro es hasta el **5 de marzo de 2022**.

| **20.  ¿Cómo realizo una reclamación de un Pago por pérdida documentada a modo de reembolso?** |
|---|

Para presentar una reclamación de un Pago por pérdida documentada de hasta $5,000 a modo de reembolso de Pérdidas documentadas, debe presentar un Formulario de reclamación válida mediante el cual opte por recibir un Pago por pérdida documentada. Para presentar una reclamación por un Pago por pérdida documentada, puede completar un Formulario de reclamación en el Sitio web de la conciliación o imprimir y enviar por correo un Formulario de reclamación completo al Administrador de la conciliación, el **5 de marzo de 2022** o antes.

El Formulario de reclamación exige que usted firme la certificación sobre la información que brindó y que incluya Documentación razonable, como estados de cuenta de tarjeta de crédito, estados de cuenta bancarios, facturas, registros telefónicos y recibos.

Si el Administrador de la conciliación rechaza su reclamación por un Pago por pérdida documentada y usted no lo corrige, su reclamación por un Pago por pérdida documentada se considerará en cambio una reclamación por un Pago de fondos en efectivo.

Las instrucciones para presentar una reclamación por el Pago por pérdida documentada se incluyen en el Formulario de reclamación. Puede acceder al Formulario de reclamación en www.KrogerFTADataBreachSettlement.com.

La fecha límite para presentar una reclamación por Pago por pérdida documentada es el **5 de marzo de 2022**.

| **21.  ¿Qué sucede si mi información de contacto cambia después de que presento una reclamación?** |
|---|

Si usted cambia su dirección postal o dirección de correo electrónico después de presentar un Formulario de reclamación, es su responsabilidad comunicarle al Administrador de la conciliación su información actualizada. Deberá notificar al Administrador de la conciliación cualquier cambio llamando al 1-866-790-4318 o por escrito a la siguiente dirección:

*Cochran, et al. v. The Kroger Co.*
Settlement Administrator
P.O. Box 4079
Portland, OR 97208-4079

| **22.  ¿Cuándo y cómo recibiré los beneficios que reclamo de la Conciliación?** |
|---|

Si presenta una reclamación válida por los Servicios de supervisión crediticia y seguro, el Administrador de la conciliación le enviará información sobre cómo activar la supervisión crediticia una vez que la Conciliación sea definitiva. Si recibió un aviso por correo, guárdelo en un lugar seguro ya que necesitará el Número de reclamación único proporcionado en el Aviso para activar sus Servicios de supervisión crediticia y seguro.

El pago de reclamaciones válidas por un Pago de fondos en efectivo o un Pago por pérdida documentada será proporcionado por el Administrador de la conciliación después de que la

Conciliación sea aprobada y pase a ser definitiva. Puede optar por recibir el pago de las reclamaciones válidas por un Pago de fondos en efectivo o un Pago por pérdida documentada a través de PayPal, Venmo o una tarjeta de pago digital en lugar de un cheque, enviando su dirección de correo electrónico con su Formulario de reclamación. Cualquier persona que no elija recibir el pago a través de PayPal, Venmo o una tarjeta de pago digital recibirá su pago a través de un cheque normal enviado a través del correo de los EE. UU.

El proceso de aprobación puede llevar más de un año. Tenga paciencia y consulte las actualizaciones en www.KrogerFTADataBreachSettlement.com.

| 23. ¿Qué ocurre si queda un remanente de dinero una vez que se paguen todas las Reclamaciones de la conciliación? |
|---|

Ninguna parte del dinero del Fondo de la conciliación de $5 millones será reintegrada a la Demandada. Todo dinero que quede en el Fondo de la conciliación después de 150 días de la distribución de los pagos a los Miembros de la demanda colectiva se distribuirá de forma prorrateada entre todos los Miembros de la demanda colectiva con reclamaciones aprobadas, que cobraron o depositaron su cheque inicial o recibieron los fondos de la Conciliación a través de medios digitales, siempre y cuando el monto de pago promedio sea de $3 o más. Si no hay dinero suficiente para proporcionar a los Miembros de la demanda colectiva que reúnen los requisitos un pago adicional de $3, los fondos restantes se distribuirán a una organización sin fines de lucro o a un "Destinatario residual sin fines de lucro". El Destinatario residual sin fines de lucro está sujeto a la aprobación final del tribunal, el Fondo de Privacidad de los Derechos del Consumidor de la Fundación Rose, una organización sin fines de lucro conforme al Título 26 del Código de los Estados Unidos (United States Code, U.S.C.) 501(c)(3).

# LOS ABOGADOS QUE LO REPRESENTAN

| 24. ¿Tengo un abogado en este caso? |
|---|

Sí, el Tribunal ha designado a Tina Wolfson, Robert Ahdoot y Andrew Ferich de Ahdoot & Wolfson, PC, y a Ben Barnow y Anthony Parkhill de Barnow and Associates, P.C., como Abogados de la Demanda colectiva para representarlo a usted y a la Demanda colectiva a los fines de la presente Conciliación. Usted puede contratar a su propio abogado a su costa si desea que otra persona que no sean los Abogados de la demanda colectiva lo representen en esta Demanda.

| 25. ¿Cómo se les pagará a los Abogados de la demanda colectiva? |
|---|

Los Abogados de la demanda colectiva presentarán una moción en la que le solicitarán al Tribunal que les otorguen honorarios de abogados de hasta un máximo del 25 % del Fondo de la conciliación de $5 millones (es decir, $1,250,000) y costos y gastos razonables. También le solicitarán al Tribunal que apruebe un monto de $1,500 en concepto de adjudicaciones de servicios para cada uno de los tres Representantes de la demanda colectiva por su participación en esta Demanda y por sus esfuerzos por lograr la Conciliación. Si se aprueban, estos montos se deducirán del Fondo de la conciliación antes de efectuar los pagos a los Miembros de la demanda colectiva. El Tribunal puede otorgar montos menores.

La solicitud de los honorarios de abogados, los gastos y las adjudicaciones de servicios por parte de los Abogados de la demanda colectiva estará a disposición en el sitio web de la Conciliación en www.KrogerFTADataBreachSettlement.com antes de la fecha límite a fin de que usted comente u objete la Conciliación. Puede pedir una copia de la solicitud y comunicarse con el Administrador de la conciliación al 1-866-790-4318.

# EXCLUIRSE DE LA CONCILIACIÓN

Si es un Miembro de la demanda colectiva y desea conservar cualquier derecho que pueda tener de iniciar la demanda o continuar la demanda a Kroger por su cuenta según las reclamaciones resultantes de esta Demanda o resueltos por las Reclamaciones exentas, debe seguir los pasos para ser excluido de la Conciliación. Esto se conoce cómo excluirse u "optar por no formar parte" de la Conciliación.

## 26.  ¿Cómo me excluyo de la Conciliación?

Para excluirse de la Conciliación, debe completar y firmar una Solicitud de exclusión. La Solicitud de exclusión debe realizarse por escrito e identificar el nombre del caso *Cochran vs. The Kroger Co.,* U.S.D.C. Caso n.º 5:21-cv-01887 (N.D. Cal.); indicar el nombre, la dirección y el número de teléfono de los Miembros de la demanda colectiva de la Conciliación que solicitan la exclusión; ser firmada físicamente por las Personas que solicitan la exclusión; y también debe contener una declaración a los efectos de que "yo/nosotros por la presente solicitamos ser excluidos de la Demanda colectiva de la conciliación propuesta en *Cochran vs. The Kroger Co.,* U.S.D.C. Caso n.º 5:21-cv-01887 (N.D. Cal.)". Una Solicitud de exclusión válida exige que usted indique su nombre completo, dirección postal actual y número de teléfono; usted firme la solicitud de manera física; y que incluya una declaración de modo tal que "Yo, por la presente, solicito la exclusión de la Demanda colectiva de la Conciliación propuesta de *Cochran vs. The Kroger Co.,* U.S.D.C. Caso n.º 5:21-cv-01887 (N.D. Cal.)". La Solicitud de exclusión debe enviarse electrónicamente a través del Sitio web de la conciliación o (ii) con franqueo postal o ser recibida por el Administrador de la conciliación en la dirección a continuación a más tardar el **18 de febrero de 2022**:

*Cochran, et al. v. The Kroger Co.*
Exclusions
P.O. Box 4079
Portland, OR 97208-4079

No puede excluirse por teléfono o por correo electrónico.

## 27.  Si me excluyo, ¿aún puedo recibir los Servicios de supervisión crediticia y seguro o un pago de la Conciliación?

No. Al excluirse, usted le indica al Tribunal que no quiere formar parte de la Conciliación. Solo puede recibir los Servicios de supervisión crediticia y seguro o un pago en efectivo si permanece en la Conciliación y presenta un Formulario de reclamación válida.

## 28.  Si no me excluyo, ¿puedo entablar una demanda contra Kroger por los mismos motivos en el futuro?

No. A menos que solicite ser excluido, renuncia al derecho de demandar a Kroger y a las Partes exentas por las reclamaciones que la presente Conciliación resuelve. Debe solicitar ser excluido de esta Demanda para poder iniciar su propia demanda o continuar la demanda o ser parte de cualquier otra demanda contra Kroger o cualquiera de las Partes exentas. Si tiene una demanda en trámite, hable de inmediato con el abogado que lo representa en ese caso.

# OBJETAR O FORMULAR COMENTARIOS SOBRE LA CONCILIACIÓN

## 29.  ¿Cómo le informo al Tribunal que no estoy conforme con la Conciliación?

Puede solicitarle al Tribunal que no haga lugar a la aprobación al presentar una objeción. No puede pedirle al Tribunal que ordene una conciliación diferente; el Tribunal solo puede aprobar o rechazar

la conciliación. Si el Tribunal rechaza la aprobación, no se repartirán los pagos de conciliación y la demanda continuará. Si eso es lo que usted desea que pase, debe objetar.

Toda objeción a la conciliación propuesta debe estar por escrito. Si presenta una objeción por escrito dentro del plazo establecido, puede presentarse, pero no está obligado a hacerlo en la Audiencia imparcial final, en persona o representado por su propio abogado. Si comparece a través de su propio abogado, usted es responsable del pago de los honorarios y la contratación de ese abogado. Todas las objeciones escritas y los documentos de respaldo deben (a) identificar claramente el nombre y número del caso (*Cochran et al. v. The Kroger Co.*, Caso n.º 5:21-cv-01887-EJD (N.D. Cal.)); (b) indicar su nombre completo, dirección postal actual y número de teléfono; (c) contener una declaración firmada que indique que usted cree que es miembro de la Demanda colectiva de la conciliación; (d) identificar los fundamentos específicos de la objeción; (e) incluir todos los documentos o escritos que desee que el Tribunal considere; (f) contener una declaración con respecto a si usted (o el abogado de su elección) tiene la intención de comparecer en la Audiencia imparcial; (g) presentarse ante el Tribunal, ya sea por correo al Secretario de la demanda colectiva, Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California (División de San José), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, o presentándolos en persona en cualquier lugar del Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California; y (h) deben presentarse o tener fecha de franqueo postal a más tardar el **18 de febrero de 2022**.

## 30.  ¿Cuál es la diferencia entre presentar una objeción y solicitar la exclusión?

Objetar es decirle al Tribunal que no le gusta algo sobre la Conciliación. Puede presentar una objeción solo si permanece en la Demanda colectiva (es decir, si no se excluye). Solicitar la exclusión es informarle al Tribunal que no desea ser parte de la Demanda colectiva ni de la Conciliación. Si se excluye, no puede objetar la Conciliación, porque la misma ya no le afectaría.

# LA AUDIENCIA IMPARCIAL FINAL

## 31.  ¿Cuándo y dónde decidirá el Tribunal si aprueba la Conciliación?

El Tribunal celebrará una Audiencia imparcial final el **10 de marzo de 2022, a las 9:00 a. m.** ante el honorable juez Edward J. Davila, Tribunal de Distrito de los Estados Unidos para el Distrito del Distrito Norte de California (División de San José), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, California 95113.

La fecha y la hora de la Audiencia imparcial final están sujetas a cambios sin previo aviso a la Demanda colectiva de la conciliación. Los Miembros de la demanda colectiva deben consultar el sitio web de la Conciliación o el sitio de PACER del Tribunal (consulte la Pregunta 35) para confirmar si la fecha de la Audiencia imparcial final ha cambiado.

En esta audiencia, el Tribunal evaluará si la Conciliación es justa, razonable y adecuada, y decidirá si aprobar: la Conciliación; la solicitud de los honorarios de abogados, costos y gastos por parte de los Abogados de la demanda colectiva; y las adjudicaciones de servicios a los Representantes de la demanda colectiva. Si existen objeciones, el Tribunal las evaluará. El Tribunal también escuchará a las personas que hayan solicitado hablar en la audiencia.

## 32.  ¿Tengo que asistir a la Audiencia imparcial final?

No. Los Abogados de la demanda colectiva responderán todas las preguntas que el Tribunal pueda tener. Sin embargo, puede asistir por su cuenta si lo desea. Si envía una objeción, no es necesario que

asista al Tribunal para hablar al respecto. Siempre y cuando envíe por correo su objeción por escrito y oportunamente, el Tribunal la considerará.

## 33. ¿Puedo hablar en la Audiencia imparcial final?

Sí. Si desea asistir y hablar en la Audiencia imparcial final, debe indicar esto en su objeción por escrito (consulte la Pregunta 29). Su objeción debe indicar que es su intención comparecer ante la Audiencia imparcial final y debe identificar a todos los testigos que pueda llamar a atestiguar o los anexos que desea adjuntar a las pruebas en dicha Audiencia imparcial final. Si tiene planeado que su abogado hable por usted en la Audiencia imparcial, su objeción también debe incluir el nombre, la dirección y el número de teléfono de su abogado.

# SI DECIDE NO HACER NADA

## 34. ¿Qué sucede si no hago nada?

Si es Miembro de la demanda colectiva y no hace nada, no obtendrá ningún beneficio de la Conciliación. También relevará determinados derechos, incluido su derecho a iniciar una demanda, continuar una demanda o ser parte de cualquier otra demanda contra Kroger o cualquiera de las Partes exentas respecto de problemas legales en esta Demanda y resueltos por el Acuerdo de la conciliación.

# CÓMO OBTENER MÁS INFORMACIÓN

## 35. ¿Cómo puedo obtener más información?

Este Aviso resume la Conciliación propuesta. Para conocer los términos y las condiciones precisos de la conciliación, consulte el Acuerdo de conciliación disponible en www.KrogerFTADataBreachSettlement.com, comunicándose con los abogados de la demanda colectiva (consulte a continuación) o accediendo al expediente del Tribunal en este caso, por un cargo, mediante el sistema de Acceso público a los registros electrónicos judiciales del tribunal (Court's Public Access to Court Electronic Records, PACER) en https://ecf.cand.uscourts.gov o visitando la oficina del Secretario del Tribunal del Distrito de los Estados Unidos para el Distrito Norte de California (División de San José), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, entre las 9:00 a. m. y las 4:00 p. m., de lunes a viernes, excluidos los feriados del Tribunal.

Si tiene alguna pregunta sobre la Conciliación propuesta o sobre cualquier aspecto de este Aviso, puede comunicarse con los Abogados de la demanda colectiva en:

| | |
|---|---|
| Ahdoot & Wolfson, P.C.<br>c/o Kroger FTA Data Breach Settlement<br>2600 W. Olive Avenue \| Suite 500<br>Burbank, CA 91505-4521<br>info@KrogerFTADataBreachSettlement.com | Barnow and Associates, P.C.<br>c/o Kroger FTA Data Breach Settlement<br>205 W. Randolph St., Suite 1630<br>Chicago, IL 60606<br>info@KrogerFTADataBreachSettlement.com |

**NO SE COMUNIQUE CON EL TRIBUNAL O LA OFICINA DEL SECRETARIO DEL TRIBUNAL PARA CONSULTAR SOBRE ESTA CONCILIACIÓN O EL PROCESO DE RECLAMACIÓN.**