1  TINA WOLFSON (SBN 174806)
   *twolfson@ahdootwolfson.com*
2  ROBERT AHDOOT (SBN 172098)
   *rahdoot@ahdootwolfson.com*
3  **AHDOOT & WOLFSON, PC**
   2600 W. Olive Avenue, Suite 500
4  Burbank, CA 91505-4521
   Tel: 310.474.911; Fax: 310.474.8585
5
   ANDREW W. FERICH (admitted *pro hac vice*)
6  *aferich@ahdootwolfson.com*
   **AHDOOT & WOLFSON, PC**
7  201 King of Prussia Road, Suite 650
   Radnor, PA 19087
8  Tel: 310.474.9111; Fax: 310.474.8585

9  BEN BARNOW (admitted *pro hac vice*)
   *b.barnow@barnowlaw.com*
10 ANTHONY PARKHILL (admitted *pro hac vice*)
   *aparkhill@barnowlaw.com*
11 **BARNOW AND ASSOCIATES, P.C.**
   205 West Randolph Street, Suite 1630
12 Chicago, IL 60606
   Tel: 312-621-2000; Fax: 312-641-5504
13
   *Class Counsel for Plaintiffs and the Class*
14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated, | Case No. 5:21-cv-01887-EJD |
| Plaintiffs, | **DECLARATION OF BEN BARNOW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENT** |
| v. | |
| THE KROGER CO. and ACCELLION, INC., | |
| Defendants. | |

I, Ben Barnow, declare and state as follows:

1. I am President of Barnow and Associates, P.C. ("Barnow and Associates") and counsel for Plaintiffs in the above-captioned action. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses and for Award of Class Representative Service Payments.

### MY FIRM'S EFFORTS ON BEHALF OF THE CLASS

3. Barnow and Associates has diligently worked to advance the interests of the Class in this litigation and settlement since March 2021, when the action was filed.

4. Before initiating the Action, my firm investigated the facts of the FTA Data Breach, the impact of the breach on FTA Customers, and the potential legal claims and defenses that could be raised in the case.

5. The information gleaned from investigation and research into the facts of the case and potential legal claims enabled Class Counsel to assess the strengths and weaknesses of this case, analyze potential damages models that could be utilized at trial, and informed the decision to engage in negotiation with Defendant's Counsel about attending mediation and later settling the matter. Our diligence in preparing for mediation, including obtaining information necessary to analyze all claims and defenses, allowed us to negotiate a robust relief package and valuable outcome for the Settlement Class, and to determine a fair and efficient structure and distribution plan.

6. After filing the action, my firm has analyzed the applicable law, reviewed and analyzed relevant documents and data, and stayed abreast of all material developments involving the FTA Data Breach. This includes, *inter alia*, reviewing the press releases and statements concerning the FTA Data Breach; reviewing the information Kroger has provided on its website about the breach (*see* https://www.kroger.com/i/accellion-incident (last visited Jan. 14, 2022)); reviewing Kroger's data breach notification letters; reviewing and analyzing the detailed FTA Data Breach forensic report issued by Accellion's investigator, Mandiant; reviewing numerous news stories and other publicly-available sources of information relating to the breach, including its impact on Kroger; and keeping

- 1 -

abreast of developments as they occurred, including news of additional FTA Customers being impacted by the FTA Data Breach.

7. My firm has performed various other litigation related work during the pendency of this matter, including meetings, emails, and phone calls between co-counsel and with counsel for Kroger, communicating with the Plaintiffs regarding case developments and litigation strategy, attempting to meet and confer with objecting plaintiffs' and/or counsel, and calls with numerous consumers who reached out to Class Counsel about this litigation. My firm will continue to diligently and efficiently litigate this matter through the Final Approval Hearing and further if and as needed.

8. Following commencement of this action, Barnow and Associates took all necessary steps to efficiently prosecute the claims of Plaintiffs and Class Members. Immediately after filing this case, counsel for the Parties began a dialogue about case management issues and engaged in multiple meet-and-confer discussions. Plaintiffs' counsel already had been engaging in efforts to coordinate all of the cases filed in this District relating to the FTA Data Breach, including drafting a stipulation to consolidate all of those cases and set deadlines for submitting leadership applications. Plaintiffs' counsel also coordinated with Kroger's counsel to facilitate Kroger's inclusion in the stipulation. Counsel for Plaintiffs also met and conferred with attorneys who filed cases relating to the FTA Data Breach, including cases against Kroger in other jurisdictions (*i.e.,* in the Southern District of Ohio and the Eastern District of Michigan), to attempt to coordinate all FTA Data Breach actions before one court, but those efforts were unsuccessful. Dialogue between Class Counsel and Kroger continued through Class Counsel's attempts at consolidation.

9. My firm's zealous advocacy of the Class continued through the Settlement negotiation process. My firm attended the day-long mediation with the Honorable Judge Jay C. Gandhi (Ret.) on May 13, 2021. Class Counsel and counsel for Kroger aggressively advocated for their side's position during the mediation. The Parties reached an agreement in principle following the mediation, but finalization of many terms and other details of the Settlement was still needed.

10. Prior to the mediation session with Judge Gandhi, the Parties exchanged information to prepare for and facilitate a productive mediation session, communicating their respective positions

regarding this litigation with each other and with the mediator. Plaintiffs' counsel received and analyzed data relating to the impact of the FTA Data Breach on Kroger, including specific information concerning the categories of individuals who received breach notification letters from Kroger (*e.g.,* customers, employees), the nature of the PII impacted, Kroger's actions after it was notified of the breach, and the nature and number of Settlement Class Members impacted. With Judge Gandhi's guidance, the Parties had a productive mediation session.

11. My firm worked diligently after the mediation to work out the terms that were not decided at the mediation. The Parties went through many more rounds of negotiations to finalize the details of each aspect of the Settlement Agreement and exchanged numerous drafts of the Settlement Agreement. This includes negotiations regarding the final notice program on which my firm, along with our colleagues, worked hard to ensure that the notice is clear and concise.

12. Following mediation, the Parties continued to engage in extensive settlement discussions and negotiations, both directly and through the mediator, regarding a myriad of settlement points. This process included substantial confirmatory discovery.

13. As a result of the confirmatory discovery conducted by the Parties, Class Counsel was not only able to verify the details about the impact of the FTA Data Breach and information about the Class Members, but also to ensure that the terms of and relief provided under the Settlement were fair, reasonable, and adequate and based on correct assumptions and facts.

14. Class Counsel solicited competing bids from separate third-party administrators for settlement notice and administration. With each of the potential settlement administrators, proposed Class Counsel discussed the notice and distribution plans agreed to in the Settlement. Class Counsel ultimately negotiated an agreement with Epiq Class Action and Mass Tort Solutions, LLC ("Epiq").

15. My firm worked with the Settlement Administrator to implement the robust Notice Plan, including the suggestions made by the Court and to supervise the dissemination of the Notice. My firm stays in close touch with the Settlement Administrator to ensure the smooth implementation of the Notice Plan. This included reviewing and drafting of the Settlement Website's language and format, the script for the automated response of the toll-free number, and the language and format of

the Notice forms, monitoring exclusion requests, and ensuring prompt responses to each and every Settlement Class Member inquiry regarding the Settlement.

16.     After the Settlement and Preliminary Approval Motion were filed, competing plaintiffs' counsel attempted to intervene in the lawsuit and filed an objection to the settlement. This attempt at intervention required Class Counsel to act quickly and efficiently. The motion to intervene was filed only six (6) days prior to the first preliminary approval hearing, giving us little time to react to the motion. Class Counsel filed an opposition to the motion to intervene.

17.     At all times during the settlement process, the negotiations were at arm's length. Class Counsel's primary goal through the settlement negotiations was to achieve the maximum substantive relief possible for the Settlement Class Members.

18.     The settlement terms are fair, reasonable and adequate and provides for prompt cash benefits to the Class while also providing significant Non-Monetary Relief.

### BARNOW AND ASSOCIATES, P.C. FIRM EXPERIENCE

19.     At all times, Barnow and Associates had the experience, expertise, and resources to effectively litigate any and all issues related to this litigation.

20.     I am nationally recognized for my experience in leading some of the nation's largest consumer class actions and have been recognized as a Titan of the Plaintiffs Bar.[1] As a court-appointed lead counsel or equivalent designation, I have successfully led over forty major class actions (including MDLs) where class-wide recoveries were achieved, resulting in benefits valued in excess of five billion dollars being made available to class members. This includes leading eight noteworthy privacy class actions where class settlements were achieved. Below is a brief description of some of the cases in which I served as a lead or co-lead counsel.

21.     *In Re: Sony Gaming Networks and Customer Data Security Breach Litigation*, No. 11-md-2258 (N.D. Cal.). I was appointed to the Plaintiffs' Steering Committee—a committee of

---

[1] *See* Sindhu Sundar, *Titan of the Plaintiffs Bar: Ben Barnow*, LAW360, (Oct. 8, 2014, 7:40 P.M.), https://www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow.

seven firms established to lead the litigation—in this MDL proceeding involving over 60 cases relating to a data security breach that affected approximately 50 million consumers. A settlement agreement was entered into and was granted final approval. At the final fairness hearing, the Honorable Judge Anthony J. Battaglia remarked: "Just in the final analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled. It's been a real pleasure dealing with you."

22.     *In Re: TJX Retail Security Breach Litigation,* No. 1:07-cv-10162 (D.Mass). I served as one of Co-Lead Settlement Class Counsel for the Consumer Track in this MDL proceeding relating to the theft of approximately 45 million credit and debit card numbers used at TJX stores and the personal information of over 454,000 TJX customers. I took the lead in negotiating a settlement with TJX's attorneys that made available benefits valued at over $200 million to the Class. The Honorable Judge Young granted final approval to the settlement, which he referred to as "excellent," and as containing "innovative" and "groundbreaking" elements.

23.     *In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation,* No. 08-md-01998 (W.D. Ky.). I served as one of Co-Lead Settlement Class Counsel in this forty-case MDL proceeding relating to a former Countrywide employee's theft and sale of millions of Countrywide customers' private and confidential information. I negotiated a settlement that was granted final approval, making benefits valued at over $650 million available to approximately 17 million Settlement Class Members. In the opinion granting final approval to the settlement, the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process."

24.     *Lockwood v. Certegy Check Services, Inc.*, No. 8:07-cv-01434 (M.D. Fla.). I served as one of Co-Lead Settlement Class Counsel in this consolidated proceeding relating to the theft of approximately 37 million individuals' private and confidential information from Certegy Check Services, Inc.'s computer databases. I negotiated a settlement that was granted final approval,

making benefits valued at over $500 million available to Settlement Class Members. At the final fairness hearing, the Honorable Judge Merryday described the settlement as a "good deal," providing "a real benefit to a large class of persons" as "the result of the focused attention of skilled counsel for a protracted time."

25.     *Rowe v. Unicare Life and Health Insurance Co.*, No. 1:09-cv-02286 (N.D. Ill.). I was Lead Counsel in this proceeding relating to the defendants' alleged failure to secure the private health information of approximately 220,000 individuals enrolled in the defendants' health insurance plans, resulting in such information being accessible to the public via the Internet. I negotiated a settlement that was granted final approval, making benefits valued at over $20 million available to Settlement Class Members. At the preliminary approval hearing, the Honorable Judge Hibbler described the efforts of the parties as "exemplary."

26.     *Orr v. InterContinental Hotels Group, PLC.*, No. 1:17-cv-01622 (N.D. Ga.). I was appointed as one of Lead Class Counsel in this payment card data breach litigation. I successfully negotiated a class settlement providing a claim process for Class Members to seek reimbursement for certain expenses or fraudulent and unauthorized charges resulting from the data breach, subject to an aggregate cap of $1.55 million. The settlement was granted final approval.

27.     *In re: Zappos.com Inc. Customer Data Security Breach Litigation*, No. 12-cv-00325 (D. Nev.). I was one of Co-Lead Class Counsel and settlement class counsel in this litigation, which resulted in a landmark Ninth Circuit ruling recognizing the Article III standing of consumers harmed by data breaches. I also successfully opposed Zappos' petition for writ of certiorari to the Supreme Court of the United States, where I served as counsel of record for plaintiffs. After many years of litigation, I negotiated a settlement that was granted final approval. The Settlement provided Class Members with CAFA-compliant coupons that were redeemed for over $7 million.

28.     A copy of my firm's resume is submitted herewith, Exhibit 1.

### TIME AND EXPENSES

29.     My firm has dedicated a significant amount of time and labor to this case.

30.     All of the services performed by our firm were undertaken on a contingent fee basis,

- 6 -

and we have not been compensated for any of this work to date. While our firm is a contingency fee firm and does not bill plaintiffs on an hourly basis, Barnow and Associates, P.C.'s rates are reasonable and have been approved by many courts. The hourly rates shown below are the current usual and customary rates set by my firm for each individual and used in all current litigation matters, as periodically adjusted according to market rates. *See e.g.*, *Yamagata v. Reckitt-Benckiser, LLC*, 17-cv-03529, ECF No. 238 (N.D. Cal. Oct. 28, 2021) (awarding $12,500,000 of reasonable attorneys' fees, costs, and expenses on the basis of evidence submitted, including time records for Ben Barnow ($950/hr), Erich P. Schork ($725/hr), and Anthony L. Parkhill ($650/hr)); *Brown-Davis v. Walgreen Co.*, 19-cv-05392, ECF No. 107 (N.D. Ill. Jan. 4, 2022) (approving a reasonable attorneys' fee award of $4,583,333.33, which included Barnow and Associates, P.C.'s fees at rates of $950/hr for Ben Barnow, $725/hr for Erich P. Schork, and $650/hr for Anthony L. Parkhill). *See also*, *Lozano v. Codemetro Inc.*, No. 37-2020-00022701-CU-MC-CTL (Superior Court of County of San Diego, California Sep. 8, 2021) (approving attorneys' fees of $283,333, including Barnow and Associates, P.C.'s fees, which included rates of $950/hr for Ben Barnow, $725/hr for Erich P. Schork, and $625/hr for Anthony L. Parkhill). The rates reflect what would be charged to a fee-paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

31.     The work performed thus far required the efforts of various attorneys at Barnow and Associates, P.C. As of January 14, 2022, my firm has expended over 288.6 hours pursuing this matter on behalf of the Settlement Class, excluding time spent in connection with the present motion.

32.     Below is a table summarizing the reported time spent by attorneys at my firm related to this action.

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Ben Barnow (President) | 120.0 | 950 | $114,000 |
| Erich P. Schork (former Associate) | 1.2 | 725 | $870 |
| Anthony L. Parkhill (Associate) | 122.4 | 650 | $79,560 |

| | | | |
|---|---|---|---|
| Riley Prince (Associate) | 45.0 | 150/250/425[2] | $11,612.15 |
| **Total** | **288.6** | | **$206,042.50** |

33. Below is a table separating the time into categories of work.

| Category | Hours |
|---|---|
| Case Investigation and Factual Research | 5.2 |
| Pleadings | 11.5 |
| Discovery and Document Review | 14.4 |
| Pretrial Motions and Hearings | 40.8 |
| Settlement Negotiations and Motions | 216.7 |

34. All of this time was reasonable and necessary for the prosecution of this action and my firm took meaningful steps to ensure the efficiency of our work.

35. In connection with the action, Barnow and Associates also advanced costs and expenses.

36. Because our firm handled this action on a contingent basis, we have not yet received reimbursement for any of these costs and expenses.

37. As of the date of this Declaration, Barnow and Associates has incurred $7,849.00 in costs and expenses in connection with this action. Below is a table categorizing these expenses.

| Category | Amount |
|---|---|
| Electronic Research & PACER Fees | $354.34 |

---

[2] Mr. Prince served as a law clerk with my firm while in law school, as reflected by his rate at the time of $150. In August of 2021, he began working full time with the firm while his admission to the Illinois State Bar was pending and his rate increased to $250. He was admitted to practice law in Illinois on November 10, 2021 and his rate was increased to $425.

| | |
|---|---|
| Expert Fees | $0 |
| Filing & Attorney Service Fees | $634.00 |
| Mailing and Postage | $0 |
| Meals | $0 |
| Mediation Fees | $6,825.00 |
| Conference Calls | $35.66 |
| Printing/Copying | $0 |
| Travel/Lodging | $0 |
| **Total** | **$7,849.00** |

38.    The amount of expenses stated above does not include internal and other additional costs that my firm incurred in this litigation but, in an exercise of discretion, do not seek to recover.

39.    Based on my experience prosecuting this action and overseeing the conduct of the litigation, all of these expenses were reasonable and necessarily incurred in connection with the action.

## SERVICE AWARDS

40.    Plaintiffs have been actively engaged in this Action, and were essential to the success achieved. Among other things, they provided information to Class Counsel, gathered documents, reviewed pleadings, stayed updated about the litigation, and reviewed and approved the Settlement.

41.    The Settlement would not have been possible without the effort and commitment of the Plaintiffs, who sacrificed their time and put their name on the line for the sake of the Class. I believe Plaintiffs are deserving of Service Awards in the amount of $1,500.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 14th day of January 2022 in Chicago, Illinois.


Ben Barnow

**EXHIBIT 1**

# Ben Barnow

## Barnow and Associates
*a professional corporation*
### Attorneys at Law

Ben Barnow is nationally recognized for his experience in leading some of the nation's largest class actions. In that capacity, he has successfully led the prosecution of a number of large-scale class actions relating to consumer data security breaches, consumer protection issues, and antitrust violations. He has been appointed to and served in leadership positions in cases throughout the nation, in both state and federal courts, including MDL proceedings. His efforts have delivered resolutions in numerous significant cases, including cases against America Online, DaimlerChrysler, McDonald's, Microsoft, Nissan, Shell Oil, Sony, TJX, and Toyota.

Ben Barnow graduated from the University of Wisconsin in 1966 with a Bachelor's degree in Business Administration. He received his Juris Doctor from the University of Michigan Law School in 1969. He is licensed to practice in the State of Illinois and the State of New York. Mr. Barnow is also admitted to practice before the Supreme Court of the United States, the United States Court of Appeals for the First, Third, Sixth, Seventh, Eighth, and Ninth Circuits, the United States District Court for the Northern District of Illinois, the Central District of Illinois, the District of Colorado, the Eastern District of Wisconsin, and the Western District of Wisconsin. He is a member of the American Bar Association, the American Association for Justice, the Illinois State Bar Association, and the Chicago Bar Association. He has also served as a member of the Panel of Arbitrators of the American Arbitration Association. He is listed in Martindale-Hubbell with an AV rating.

During his over forty-year legal career, Ben Barnow has represented both plaintiffs and defendants in many types of litigation and has engaged in significant transactional work. He was General Counsel to one of the world's largest public relations agencies and presided as chairman of certain of its retirement trusts. Ben Barnow was an Associate Professor at Northern Michigan University from 1969-1971, where he taught business law and unfair competition. Mr. Barnow joined the law firm of Herrick, McNeill, McElroy & Peregrine in July 1971, where he became a partner in 1977.

As part of a series of articles by Law360 featuring notable plaintiff attorneys, Ben Barnow was recognized as a Titan of the Plaintiffs Bar, and Barnow and Associates, P.C. "a plaintiffs' class action outfit known for winning big-time antitrust and data breach settlements." Sindhu Sundar, Titan of the Plaintiffs Bar:

Ben Barnow, Law360 (Oct. 8, 2014), https://www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow (last visited June 3, 2019).

## Selected Cases

### Data Security Breach Cases

*Orr v. InterContinental Hotels Group, PLC.* Ben Barnow was appointed as one of Lead Class Counsel in this payment card data breach litigation. He successfully negotiated a class settlement providing a claim process for Class Members to seek reimbursement for certain expenses or fraudulent and unauthorized charges resulting from the data breach, subject to an aggregate cap of $1.55 million. The settlement was granted final approval.

*In re: Zappos.com Inc. Customer Data Security Breach Litigation.* Ben Barnow was one of Co-Lead Class Counsel and settlement class counsel in this litigation, which resulted in a landmark Ninth Circuit ruling recognizing the Article III standing of consumers harmed by data breaches. He also successfully opposed Zappos' petition for writ of certiorari to the Supreme Court of the United States, where he served as counsel of record for plaintiffs. After many years of litigation, he negotiated a settlement that was granted final approval. The Settlement provided Class Members with CAFA-compliant coupons that were redeemed for over $7 million.

*In Re: Sony Gaming Networks and Customer Data Security Breach Litigation,* **MDL 2258.** The Honorable Anthony J. Battaglia appointed Ben Barnow to the Plaintiffs' Steering Committee—a committee of seven firms established to lead the litigation—in this MDL proceeding involving over 60 cases relating to a data security breach that affected approximately 50 million consumers in the United States and Canada. A settlement agreement was entered into and was granted final approval. At the final fairness hearing, Judge Battaglia remarked: "Just in the final analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled. It's been a real pleasure dealing with you."

*In Re: TJX Retail Security Breach Litigation,* **MDL No. 1838.** Ben Barnow served as one of Co-Lead Settlement Class Counsel for the Consumer Track in this MDL proceeding relating to the theft of approximately 45 million credit and debit card numbers used at TJX stores and the personal information of over 454,000 TJX customers. Mr. Barnow took the lead in negotiating a settlement with TJX's attorneys that made available benefits valued at over $200 million to the Class. The Honorable Judge Young granted final approval to the settlement, which he referred to as "excellent," and as containing "innovative" and "groundbreaking" elements.

*In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation,* MDL No. 1998. Ben Barnow served as one of Co-Lead Settlement Class Counsel in this forty-case MDL proceeding relating to a former Countrywide employee's theft and sale of millions of Countrywide customers' private and confidential information. Mr. Barnow negotiated a settlement that was granted final approval, making benefits valued at over $650 million available to approximately 17 million Settlement Class Members. In the opinion granting final approval to the settlement, the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process."

*In Re: Heartland Payment Systems Inc., Data Security Breach Litigation,* MDL No. 2046. Ben Barnow served as one of Co-Lead Counsel for the Consumer Track in this MDL proceeding relating to what, at the time, was reported as one of the largest data security breaches in history. Mr. Barnow negotiated a settlement on behalf of a Settlement Class that is estimated to include more than 120 million members. Notice of the settlement was completed and only one objection was received. Final approval of the settlement was granted.

*Winstead v. ComplyRight, Inc.,* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this proceeding relating to the theft of approximately 665,000 individuals' private and confidential information (including Social Security numbers) from ComplyRight, Inc.'s web portal. Mr. Barnow and his Co-Lead Settlement Class Counsel negotiated a settlement that included the creation of a $3,025,000 settlement fund and which allowed Settlement Class members to claim, at their selection, a cash payment, a protection plan option, or reimbursement of up $200 in documented and unreimbursed out-of-pocket expenses incurred as a result of the Data Breach. Final approval of the settlement was granted.

*Lockwood v. Certegy Check Services, Inc.* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this consolidated proceeding relating to the theft of approximately 37 million individuals' private and confidential information from Certegy Check Services, Inc.'s computer databases. Mr. Barnow organized all plaintiffs' counsel and pending cases without the benefit of an MDL and negotiated a settlement that was granted final approval, making benefits valued at over $500 million available to Settlement Class Members. At the final fairness hearing, the Honorable Judge Merryday described the settlement as a "good deal," providing "a real benefit to a large class of persons" as "the result of the focused attention of skilled counsel for a protracted time."

*McGann v. Schnuck Markets, Inc.,* Ben Barnow served as one of Co-Lead Settlement Class Counsel in this proceeding relating to the theft of the credit and

debit card information of an estimated 777,000 individuals from point-of-sale terminals at affected Schnucks stores. Mr. Barnow negotiated a settlement that has been granted final approval, making significant benefits available to the Settlement Class.

**Rowe v. Unicare Life and Health Insurance Co.** Ben Barnow was Lead Counsel in this proceeding relating to the defendants' alleged failure to secure the private health information of approximately 220,000 individuals enrolled in the defendants' health insurance plans, resulting in such information being accessible to the public via the Internet. Mr. Barnow negotiated a settlement that was granted final approval, making benefits valued at over $20 million available to Settlement Class Members. At the preliminary approval hearing, the Honorable Judge Hibbler described the efforts of the parties as "exemplary."

## Deceptive Trade Practices and Other Consumer Protection Cases

**Gann v. Nissan North America, Inc.** Ben Barnow served as one of Class Counsel in this case regarding defective continuously variable transmissions on 1.4 million 2013–2016 Nissan Altima vehicles. After successfully defeating Nissan's motions to dismiss the litigation in two separate courts, he negotiated a settlement providing reimbursement for out-of-pocket costs for prior transmission replacements and a warranty extension, collectively valued at over $444 million.

**Warner v. Toyota Motor Sales, U.S.A., Inc.** Ben Barnow served as one of Co-Lead Counsel in this litigation regarding claims of excessive frame rust to certain Toyota vehicles, yielding a recent landmark settlement estimated at $3.4 billion. Under the settlement, owners of 2005–2010 Toyota Tacoma, 2007–2008 Toyota Tundra, and 2005–2008 Toyota Sequoia vehicles are eligible for free frame inspections for a period of twelve years from the date the vehicle was originally sold or leased, or one year from the date of the Final Order and Judgment, whichever is longer. Vehicles that exhibit excessive frame rust are eligible for a free frame replacement.

**Rafofsky v. Nissan North America, Inc.** Ben Barnow served as Class Counsel in this litigation regarding the failure to timely deliver certain advertised infotainment apps on 2014 Infiniti Q50s. Class Counsel achieved a settlement in which class members could file claims for cash worth up to $85 or for vouchers to purchase of a new Infiniti vehicle worth up to $1,250.

**Palace v. DaimlerChrysler Corp.** Ben Barnow was one of Co-Lead Class Counsel in this litigation relating to the defendant's sale of Neons containing allegedly defective head gaskets. After several years of litigation, a settlement was granted final approval, making up to $8.25 million available to Class members for reimbursement of repair costs and other expenses.

***Schulte v. Fifth Third Bank.*** Ben Barnow served as one of Co-Lead Settlement Class Counsel in this action relating to allegations that the defendant unlawfully re-sequenced debit card transactions in order to maximize overdraft fees. In this capacity, he negotiated a settlement with Defendant's counsel providing for the establishment of a $9.5 million settlement fund and including substantial injunctive relief, the present value of which Plaintiffs' expert estimated to be approximately $58.8 million over five years and $108.3 million over ten years. The settlement has been granted final approval.

***Schwab v. America Online, Inc.* (America Online Access Litigation).** Ben Barnow served as Class Counsel and Co-Chair in this highly publicized litigation relating to AOL's representation that users would have unlimited access to AOL for $19.95/month and the connectivity problems that ensued in conjunction therewith. In the face of what was ultimately over one hundred class actions filed nationwide, Mr. Barnow organized over 50 law firms and set up the co-chairmanship and the Executive Committee, which brought order and resolution to this litigation. A settlement was reached and was granted final approval, resulting in a multi-million-dollar benefit to a Class estimated to include over 8 million people.

***Miner v. Philip Morris USA, Inc.,*** Ben Barnow served as one of Class Counsel in this litigation concerning Philip Morris USA, Inc.'s practice of marketing and selling its Marlboro Lights and Marlboro Ultra-Lights cigarettes as less harmful to smoke than regular cigarettes when, in fact, they were not. A settlement was reached and granted final approval, providing for Philip Morris's payment of $45 million into an escrow account for the benefit of Class members.

***Boland v. McDonald's Corp.* (McDonald's Sweepstakes Litigation).** As Co-Lead Class Counsel in this litigation, Ben Barnow coordinated the efforts of approximately 25 plaintiffs' firms. The litigation concerned certain McDonald's promotional games and arose from the fraudulent removal of winning game pieces from random public distribution. Mr. Barnow developed and accomplished the settlement concept; to wit, for a chance lost, a chance would be given. The settlement, valued at approximately $20 million, included fifteen $1 million prizes given away by random selection. The settlement included the United States and nine other countries.

***Campos v. Calumet Transload R.R., LLC,*** Ben Barnow served as one of Co-Lead Settlement Class Counsel in this litigation relating to the defendants' alleged negligent storage and handling of petroleum coke and coal at certain industrial storage facilities in Chicago, Illinois. Two settlements were reached which collectively provided for the payment of $1,455,000 for the benefit of Settlement Class members. The settlements were granted final approval.

***Fernandez v. Vitamin Shoppe Industries, Inc.*** Ben Barnow served as Co-Lead Counsel in this national class action that settled, resulting in injunctive relief

regarding labeling practices, and additional relief by way of discount coupons and *cy pres* relief to appropriate charities.

***Gianopolous v. Interstate Brand Corp. and Interstate Bakeries Corp.*** Ben Barnow was appointed one of Class Counsel in this litigation concerning allegedly adulterated bakery goods. A settlement was reached and granted final approval, making valuable relief available to consumers.

***Glenz v. RCI, LLC.*** Ben Barnow served as one of three Class Counsel in this litigation involving the RCI Points program and allegations of improper use of points by RCI. The settlement made available cash benefits of approximately $19 million to members of the Settlement Class and included substantial injunctive relief. Final approval of the settlement has been granted.

***Heilman v. Perfection Corp.*** Ben Barnow served as Co-Lead Class Counsel in this national class action concerning allegedly defective dip tubes in over 14.2 million hot water tanks sold throughout the United States. In this capacity, Mr. Barnow organized twenty-three law firms and oversaw numerous filings in bringing about a national unified settlement that provided for a 100% recovery of out-of-pocket expenses and requisite repairs, including preventive replacement of all concerned dip tubes, whether or not the dip tubes had actually failed.

***In Re: Chicago Flood Litigation.*** As Co-Lead Class Counsel and a member of the Executive Committee, Ben Barnow was responsible for several major aspects of this class action, which included years of litigation, appellate practice, trial, and a multi-million-dollar settlement. Mr. Barnow argued a related portion of the matter before the Supreme Court of the United States, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), and was responsible for preparing the petition for a writ of certiorari and all related filings. At the Supreme Court level, opposing counsel was John Roberts, who now sits as Chief Justice of the Supreme Court of the United States.

***In Re: High Sulfur Content Gasoline Products Liability Litigation,*** MDL No. 1632 (**"Shell Oil"**). Ben Barnow served as Co-Lead Settlement Class Counsel in this 26-case MDL proceeding relating to the defendant's alleged sale of defective gasoline. A settlement was reached and was granted final approval, resulting in approximately $100 million being made available towards the satisfaction of consumers' claims.

***In Re: Mercury Class Action Litigation.*** Ben Barnow served as Co-Lead Class Counsel in this case relating to the location of mercury-containing gas regulators in and on real estate. A settlement was reached and granted final approval that provided for medical monitoring, removal of the regulators, and cash compensation to certain class members.

***In Re: M3Power Marketing Practices Litigation,*** **MDL No. 1704.** Ben Barnow was appointed Co-Lead Class Counsel in this MDL proceeding relating to the defendant's allegedly deceptive marketing and sale of M3Power shaving razors. A settlement was reached and granted final approval, making available benefits of more than $7 million to Class members.

***In Re: Pilot Flying J Fuel Rebate Contract Litigation.*** Ben Barnow served as one of Settlement Class Counsel in this litigation involving allegations that the defendants withheld portions of fuel discounts and rebates that Class members were contractually entitled to receive in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), and various state laws. The $84.9 million settlement was granted final approval.

***In Re: Starlink Corn Products Liability Litigation,*** **MDL No. 1403.** Ben Barnow served as Co-Lead Class Counsel in this MDL proceeding relating to the alleged inclusion of genetically engineered corn in the defendants' food products. A settlement was reached, valued at $9 million, including the return of up to $6 million to consumers on a fluid recovery/*cy pres* basis through price reduction on future purchases coupled with a cash payment to approved charities based on shortfall in the redemption.

***In Re: United Parcel Service, Inc., Shipper Excess Value Insurance Coverage Litigation.*** Ben Barnow was one of Settlement Class Counsel in this litigation. A settlement was reached and granted final approval, providing relief to UPS shippers who had paid premiums for excess value insurance coverage.

***Ori v. Fifth Third Bank.*** Ben Barnow served as one of Co-Lead Settlement Class Counsel in this action relating to inactive mortgage loans that were erroneously reported as active to Consumer Credit Reporting Agencies. The Settlement Class included approximately 55,000 individuals, and the settlement made available cash benefits of approximately $3,000,000 to members of the Settlement Class. Final approval of the settlement has been granted.

***Orrick v. Sonic Communications.*** Ben Barnow was one of Lead Class Counsel in this matter relating to the practice known as "slamming." The private actions and actions filed on behalf of various Attorneys General were consolidated. A settlement covering all of the pending cases and providing benefits of approximately $8.3 million was achieved and granted final approval. This litigation is believed to be the first class certification and settlement relating to the practice known as "slamming."

***Rosen v. Ingersoll-Rand Co., Kryptonite Corp.*** Ben Barnow was Co-Lead Class Counsel in this matter relating to allegedly defective bicycle locks. Mr. Barnow organized 18 U.S. and Canadian law firms and negotiated a settlement on behalf of Class members in the U.S. and Canada. The settlement was granted final approval,

providing valuable relief to purchasers of the allegedly defective U-shaped tubular cylinder bicycle locks in the U. S. and Canada.

***Schneider v. Dominick's Finer Foods, Inc.*** Ben Barnow was Co-Class Counsel in this matter relating to the defendant's alleged failure to deliver on representations of 100% ground beef. A settlement was reached and granted final approval, which included significant remedial relief in the form of shop signage regarding cleanliness and meat grinding practices, and fluid recovery mechanisms to compensate the class members by way of in-store sales and published coupons.

***Schwab v. Binney & Smith.*** Ben Barnow served as Co-Lead Class Counsel in this case relating to crayons that were produced for decades with talc, which allegedly contained, or was subject to containing, asbestos. Mr. Barnow negotiated a national class settlement that contributed to the reformulation of most crayons produced in this country, so as to eliminate the inclusion of talc and, thus, the alleged asbestos inclusion, and the settlement was granted final approval. This represented one of the largest classes ever certified, if not the largest.

***Siegel v. Syncronys.*** Ben Barnow was Co-Class Counsel in this nationwide class action concerning an allegedly defective computer product. The matter was settled, resulting in a remedy for the Class that provided for a 100% reimbursement on moneys spent for the product; the value of the settlement was estimated at $22 million.

***Smith v. J.M. Smucker Co.*** Ben Barnow was Class Counsel in this litigation relating to allegedly deceptive advertising practices. Mr. Barnow negotiated a national settlement and organized a group of plaintiffs' counsel from over 25 firms throughout the country who supported the settlement. The settlement was granted final approval, making available valuable relief to consumers of spreadable fruit products labeled "Simply 100% Fruit," including a change of labeling practices by the defendant, which added and maintained the following language, in prominent fashion, on the front label of its Simply 100% Fruit products: "Sweetened with fruit syrup from apple, pineapple or pear juice concentrate," thus fairly and fully advising consumers of the product they were purchasing.

***Stelk v. BeMusic, Inc.*** Ben Barnow served as Co-Lead Class Counsel in this litigation relating to charges for shipping and handling in the context of a "free" offer. The Class included an estimated 16 million members. A settlement was reached and granted final approval providing substantial relief to Class members, including a guaranteed minimum of $8 million.

## Antitrust Cases

***Wisconsin Civil Microsoft Antitrust Litigation.*** Ben Barnow served as one of Co-Lead Class Counsel in this indirect purchaser antitrust lawsuit. Mr. Barnow and his co-counsel successfully petitioned the Wisconsin Supreme Court to recognize the rights of indirect purchasers to recover under Wisconsin's antitrust laws. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis. 2005). Subsequently thereto, Mr. Barnow negotiated a settlement valued at approximately $224 million that was granted final approval.

***Arkansas, Kansas, South Dakota Civil Microsoft Antitrust Litigations.*** Ben Barnow served as a Co-Lead Class Counsel in the Arkansas, Kansas, and South Dakota Microsoft civil antitrust cases. Each of these cases settled, and the settlements were granted final approval.

***Microsoft Civil Antitrust Litigation,*** **MDL No. 1332.** Ben Barnow served as a member of the nine-member Plaintiffs' Lead Counsel Committee in this MDL antitrust proceeding before Judge Motz in the United States District Court for the District of Maryland.

***Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.,*** Ben Barnow served as a Co-Lead Counsel for third-party payor plaintiffs in this antitrust action where settlements were reached and finally approved collectively providing for the payment of $9,850,000 for the benefit of the Settlement Class.

***Loeb Industries, Inc. v. Sumitomo Corp.*** Ben Barnow served as Co-Lead Counsel in this nationwide antitrust class action, which sought recovery on behalf of scrap copper purchasers who were allegedly harmed by activities designed to manipulate the copper market. A $20 million cash settlement with one of the defendants (Merrill Lynch) was reached.

***Vichreva v. Cabot Corp.*** Ben Barnow served as Co-Lead Counsel in this Florida antitrust litigation. An $825,500 common fund, which is believed to be the largest per-consumer Carbon Black state court antitrust class action settlement in the country at that time, was obtained.

## Public Speaking Engagements

1. HarrisMartin's Equifax Data Breach Litigation Conference (Atlanta, GA, Nov. 10, 2017), topic: "Settlements" (Program Co-Chair)

2. Bridgeport Continuing Education's 2016 Class Action Litigation & Management Conference (Los Angeles, CA, Apr. 15, 2016) (Program Co-Chair)

3. HarrisMartin's Data Breach Litigation Conference: The Coming of Age (San Diego, CA, Mar. 25, 2015), topic: "Creative Approaches to Settling Data Breach Cases."

4. Bridgeport Continuing Education's 2014 National Consumer Class Action Conference (Chicago, IL, Jun. 12-13, 2014); topic: "Privacy/TCPA Class Actions: State of the Law, Claims and Defenses, What Does the Future Hold?"

5. HarrisMartin's MDL Conference: Target Data Security Breach Litigation (San Diego, CA, Mar. 26, 2014); topic: "Settlement of a Data Breach Case."

6. NetDiligence Cyber Risk & Privacy Liability Forum (Marina del Rey, CA, Oct. 11–12, 2012).

7. 25th Annual Producer Conference (Stowe, VT, Sept. 10–12, 2012); topic: "Cyber 2.0—The Evolution of Cyber in the Boardroom."

8. NetDiligence 2012 Cyber Risk & Privacy Liability Forum (Philadelphia, PA, June 4–5, 2012); topic: "State of the Cyber Nation—Cases, Theories, and Damages."

9. Tulane University Law School's symposium on *The Problem of Multidistrict Litigation* (February 15–16, 2008); topic: "The Practicalities of Multidistrict Litigation."

# Anthony L. Parkhill

## Barnow and Associates

*a professional corporation*
Attorneys at Law

Anthony L. Parkhill has more than five years of litigation experience and has spent the last four years prosecuting some of the nation's largest complex consumer fraud, automotive defect, and privacy class action matters.

Mr. Parkhill graduated from DePaul University with a Bachelor's degree in Political Science in 2010. He received his Juris Doctor from the University of Chicago Law School in 2014. He is licensed to practice in the State of Illinois. He is also admitted to practice before the United States Courts of Appeals for the Seventh Circuit, the United States District Court for the Northern District of Illinois, the United States District Court for the Central District of Illinois, and the United States District Court for the District of Colorado. He is a member of the American Bar Association, the Illinois State Bar Association, and the Chicago Bar Association.

Mr. Parkhill has played an active role in litigating the following class action matters that successfully settled: *Gann v. Nissan North America, Inc.* (M.D. Tenn.) (settlement reached in case regarding defective transmissions providing reimbursement for out-of-pocket costs for prior transmission replacements and a warranty extension, collectively valued at over $444 million); *Warner v. Toyota Motor Sales, U.S.A., Inc.* (C.D. Cal.) (settlement reached regarding allegations of excessive frame rust to certain vehicles providing benefits valued at in excess of $3.4 billion to Settlement Class members); *Orr v. InterContinental Hotels Group, PLC* (N.D. Ga.) (settlement reached in payment card breach case providing reimbursement for certain expenses subject to an aggregate cap of $1.55 million); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.,* (E.D. Wis.) (settlements reached with four of six defendants in this ongoing international antitrust action providing for the payment of $9,850,000); *Campos v. Calumet Transload R.R., LLC* (N.D. Ill.) (settlements reached providing for payment of $1,455,000 for the benefit of the Settlement Class in action relating to the alleged negligent storage and handling of petroleum coke and coal at certain industrial storage facilities); *Rafofsky v. Nissan North America, Inc.,* (settlement providing class members with up to $85 cash or vouchers worth up to $1,250; and *In re Zappos Security Breach Litigation,* (D. Nev.) (settlement providing class with benefits in excess of $7 million); and *Cullan and Cullan LLC v. m-Qube, Inc.,* (D. Neb.), (making over $1 million available to victims of cell phone cramming).

Mr. Parkhill was appointed as one of Class Counsel in *Rafofsky v. Nissan North America, Inc.,* where a class settlement was granted final approval.