Courtland L. Reichman (CA Bar No. 268873)
Jennifer Estremera (CA Bar No. 251076)
Ariel C. Green (CA Bar No. 304780)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Phone: (650) 623-1401
creichman@reichmanjorgensen.com
jestremera@reichmanjorgensen.com
agreen@reichmanjorgensen.com

David A. King Jr. (*Pro Hac Vice*)
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1710 Rhode Island Avenue, NW
12th Floor
Washington, DC 20036
Phone: (202) 894-7310
dking@reichmanjorgensen.com

Jeffrey S. Goldenberg (*Pro Hac Vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
jgoldenberg@gs-legal.com

Terence R. Coates (*Pro Hac Vice*)
MARKOVITS, STOCK & DEMARCO,
LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
tcoates@msdlegal.com

*Counsel for Objectors*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICKY COCHRAN, ALAIN BERREBI, and JARAMEY STOBBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. and ACCELLION, INC.<br><br>Defendants. | Case No. 5:21-cv-01887-EJD<br><br>**OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO CLASS ACTION SETTLEMENT**<br><br>Hon. Edward J. Davila |

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

1

| | | |
|---|---|---|
| Objector: | Ann Marie Strohm | |
| Address: | c/o Markovits Stock & DeMarco, LLC, 3825 Edwards Road, Suite 650 | |
| | Cincinnati, OH 45209 | |
| Email Address: | tcoates@msdlegal.com | |

I, Ann Marie Strohm, am a member of the Class in the above-captioned case. I do not intend to appear at the Final Approval Hearing.

*/s/ Ann Marie Strohm*

| | | |
|---|---|---|
| Objector: | Martin Pinales | |
| Address: | c/o Strauss Troy Co., LPA, Fed. Res. Bldg., 150 E. 4th Street, | |
| | Cincinnati, OH 45202 | |
| Email Address: | rrsparks@strausstroy.com | |

I, Martin Pinales, am a member of the Class in the above-captioned case. I do not intend to appear at the Final Approval Hearing.

*/s/ Martin Pinales*

| | | |
|---|---|---|
| Objector: | Caren Butler-Alexander | |
| Address: | c/o Federman & Sherwood, 10205 N. Pennsylvania Avenue | |
| | Oklahoma City, OK  73120 | |
| Email Address: | WBF@federmanlaw.com | |

I, Caren Butler-Alexander, am a member of the Class in the above-captioned case. I do not intend to appear at the Final Approval Hearing.

*/s/ Caren Butler-Alexander*

| | | |
|---|---|---|
| Objectors: | Karen and Michael Godovchik | |
| Address: | c/o Federman & Sherwood, 10205 N. Pennsylvania Avenue | |
| | Oklahoma City, OK  73120 | |
| Email Address: | WBF@federmanlaw.com | |

---

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

We, Karen and Michael Godovchik are members of the Class in the above-captioned case. We do not intend to appear at the Final Approval Hearing.

                 */s/ Karen Godovchik*

                 */s/ Michael Godovchik*

| | |
|---|---|
| Objector: | Alexander Buck |
| Address: | c/o Federman & Sherwood, 10205 N. Pennsylvania Avenue |
| | Oklahoma City, OK  73120 |
| Email Address: | WBF@federmanlaw.com |

I, Alexander Buck, am a member of the Class in the above-captioned case.  I do not intend to appear at the Final Approval Hearing.

                 */s/ Alexander Buck*

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

3

GROUNDS FOR OBJECTIONS

## I. INTRODUCTION AND BACKGROUND

According to the website created to implement this proposed Settlement, on or around January 23, 2021 "Kroger learned that an unauthorized user(s) gained access to certain Kroger customer and current and former employee information, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information (such as prescription number, prescribing doctor, medication names, and dates), medical history, certain clinical services, and/or salary-related information." *See* https://www.krogerftadatabreachsettlement.com/. The information stolen in this breach is the most sensitive, personal, and valuable a person has. Accordingly, for almost four million class members, the damage that can result from this breach is massive.

Plaintiffs tout the establishment of a non-reversionary $5,000,000 common fund. However, the actual benefit provided to most class members is small—if not completely illusory. From this fund, Class Counsel seeks attorneys' fees of $1,231,628; reimbursement of litigation costs of $18,372; Service Awards of $1,500 for each Plaintiff (i.e., $4,500); and settlement administration expenses of $740,948 to $827,299. Motion for Attorneys' Fees (ECF No. 105) at 29; Declaration of Tina Wolfson (ECF No. 31-5) at ¶ 23. This leaves between $2,918,201 and $3,004,552 for the cascading class member benefits.

Importantly, the remaining $2.9 to $3 million in the common fund will be paid in a manner that prioritizes certain benefits over others: "[The] Settlement Administrator will first … pay for Credit Monitoring and Insurance Services claimed by Participating Settlement Class Members." Settlement Agreement (ECF No. 32) at ¶ 76. According to Plaintiffs, the minimum total value of each Credit Monitoring and Insurance Services ("CMIS") subscription is three hundred sixty dollars ($360). Declaration of Robert Siciliano (ECF No. 31-4) at ¶8.

If funds remain after paying for the CMIS benefits claimed, the Settlement Administrator will next pay all valid documented loss claims up to $5,000 per class member. Settlement

Agreement (ECF No. 32) at ¶¶ 76, 108. If any money remains after the payment of all valid CMIS claims and documented loss claims, then the remaining funds will be split amongst the class members who submitted a claim for the Cash Fund Payment benefit (but not a claim for CMIS or documented loss benefits).  Assuming there are funds remaining after the payment of CMIS and documented loss claims, then California residents who filed claims for Cash Fund Payments will receive twice as much for a valid Cash Fund Payment claim as non-California residents. *Id*.

Remarkably, however, neither the class notices nor the written content drafted for the website (e.g., Home Page, the long form notice, and the FAQs) provide class members with any information about the number of class members covered by the Settlement. https://www.krogerftadatabreachsettlement.com/Content/Documents/Long%20Form%20Notice.pdf; https://www.krogerftadatabreachsettlement.com/.[1]  As a result, it is difficult for class members to adequately assess the likelihood that they will actually receive a Cash Fund Payment – given that the class is comprised of nearly four million individuals.  This means that the terms of this settlement require class members to release all their claims against Kroger in exchange for the possibility of receiving a Cash Fund Payment – a benefit they cannot reasonably assess the likelihood of actually receiving.

**II. ARGUMENT**

Under Rule 23, a district court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate …." Fed. R. Civ. P. 23(e)(2); see *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests [are] represented adequately.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (quotation omitted). The

---

[1]   Under the "Documents" tab of the website is a link to certain case documents such as the Settlement Agreement and the Motion for Preliminary Approval that do mention the 3.82 million class members.

purpose of this requirement is "the protection of those class members … whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

The proposed settlement here requires a higher level of scrutiny because it was reached prior to class certification. See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "With less information about the class, the judge cannot as effectively monitor for collusion, individual settlements, buy-offs (where some individuals use the class action device to benefit themselves at the expense of absentees), and other abuses." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3d Cir. 1995); accord *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007). Extra scrutiny is also required because the parties are no longer in an adversarial posture, and in light of the inherent tension attributable to class counsel's self-interest in achieving a settlement that, like this one, involves a substantial proposed attorneys' fee award in an unlitigated case. See *Staton*, 327 F.3d at 959-60; see also *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). This concern is especially relevant where, as here, a settlement offers relatively low amounts of compensation to the class, if any. See *Mars Steel Corp. v. Cont'l Ill. Nat'l Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1984).

**A. The Settlement Value is Too Low Compared to Similar Cases and Was Hastily Negotiated in Less than Sixty Days**

Plaintiffs state in their Motion for Final Approval that, "[b]ased on the size of the breach and per-capita figures, the Settlement presents a robust relief package and valuable outcome for the Settlement Class compared to other recent data breach class action settlements." Motion for Final Approval (ECF No. 104) at 18-19 (citing *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1-2 (D. Minn. May 17, 2017); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015)).

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD
6

This is simply not true. The common fund is meager compared to the size of the class (3.82 million members) and the highly sensitive nature of the data involved (e.g., full names, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information (such as prescription number, prescribing doctor, and medication names), and medical records). The highly personal and sensitive information stolen in this breach sets it apart from the vast majority of data breaches.

Notably, the breaches in *Home Depot*, *Target*, and *LinkedIn* upon which Plaintiffs rely contained only passwords or personal payment information that could be easily changed. See *Home Depot*, No. 1:14-md-02583, ECF No. 93, ¶ 2 (N.D. Ga.) (payment card data breach); *Target*, MDL No. 14-2522, ECF No. 258 (D. Minn.) (same); *LinkedIn*, 309 F.R.D. at 581 (account password data breach). The cases upon which Plaintiffs rely actually demonstrate why the settlement here is inadequate.

For example, in *LinkedIn*, where the most sensitive data exposed was passwords, the 800,000 class members were able to submit claims for pro-rata cash compensation from a $1.25 million common fund. *LinkedIn*, 309 F.R.D. at 581-82.[2] In *Home Depot*, which only involved payment card information, the defendant paid for credit monitoring separate from the common fund so that these payments did not reduce the cash recovery by class members, which allowed reimbursement of documented losses up to $10,000. *Home Depot*, 2016 WL 6902351, at *4, 6. The settlement in *Target* similarly provided cash reimbursements of documented losses up to $10,000 per class member. *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL 14-2522 (PAM), 2017 WL 2178306, at *2 (D. Minn. May 17, 2017). Moreover, in *Target*, unlike here, the payment of attorneys' fees, costs, and settlement expenses was separate from the common fund so

---

2   In several filings, including sworn declarations, Plaintiffs incorrectly refer to the size of the class in *LinkedIn* as 6.4 million class members. *See*, *e.g.*, Motion for Preliminary Approval (ECF No. 31) at 33; Declaration of Tina Wolfson in Support of Preliminary Approval (ECF No. 31-5) at ¶ 40; Motion for Final Approval (ECF No. 104) at 19. In reality, the size of the class in *LinkedIn* was only 800,000. *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 581 (N.D. Cal. 2015) ("The size of the class amounts to approximately 800,000 individuals.").

that these payments did not reduce the class member recoveries. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 972 (8th Cir. 2018).

Here, however, the common fund may be extinguished by the payment of nothing more than attorneys' fees, costs, expenses, and claims for CMIS. Although Plaintiffs assign a $360 retail value to each CMIS subscription, "[C]ourts widely recognize that 'compensation in kind is worth less than cash of the same nominal value.'"  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390 (C.D. Cal. 2007)(citation omitted). Moreover, to the extent there is any money left over after the payment of fees, costs, expenses, and CMIS benefits, class members with documented losses will have their compensation capped at $5,000 (unlike the $10,000 cap in *Target* and *Home Depot*). Because the benefits provided by this settlement will be provided in a cascading manner, this settlement is inferior to other settlements typically afforded class members in data breach cases involving Social Security numbers and/or protected health information. See ECF No. 89-1.

The inadequacy of the settlement is further highlighted by the haste with which the settlement was negotiated. *See Acosta*, 243 F.R.D. at 396 ("In considering a proposed settlement, a court therefore bears an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement."). Here, the parties agreed to a settlement less than two months after the case was filed and without the benefit of formal discovery.

### B. The Notice Program Aims for a Paltry Claims Rate

Plaintiffs project a claims rate of between 1% and 3%. ECF No. 104 at 17.  However, when the names, mailing addresses, and email addresses for class members are readily available, as is the case here, a much higher claim rate should be anticipated and achieved.  See *In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (consumer class actions have a median claims rate of 9% and a weighted mean of 4%); *Culbertson et al v. Deloitte Consulting LLP,* No. 1:20-cv-03962-LJL (SDNY), ECF Nos. 151-152 (data exposure settlement with a 9.5% claims rate following U.S. mail, email, and reminder emails

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

8

notice campaign); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 581-582 (N.D. Cal. 2015)(5.9% claims rate). Plaintiffs' lack of enthusiasm to maximize class member claims is not surprising given that only $2.9 to $3 million is projected to be available to pay claims. As discussed below, even assuming a low 2% claims rate, there is a substantial likelihood that the cascade payment process will deplete the settlement funds before any Cash Fund Payments are made. This, of course, underscores the earlier objection that the $5 million settlement value is too low.

### C. Class Members Seeking the Cash Fund Payment Benefit Likely Will Receive Very Little Money, and Perhaps Nothing

According to Plaintiffs' Motion for Final Approval, "[a]s of January 7, 2022, 38,823 claims have been submitted, and the Parties expect the number of claims submitted to increase through the remainder of the claims period." Motion for Final Approval (ECF No. 104) at 15. With roughly two months from January 7, 2022 for class members to submit additional claims, and assuming multiple reminder emails have been or will be issued to the class as is required by the Settlement Agreement (ECF No.32), ¶88 ("For any Settlement Class Member for whom the Settlement Administrator has an email address, and who has not submitted a Valid Claim Form, the Settlement Administrator ***shall transmit periodic email reminders*** of the opportunity to file a Claim Form prior to the Claim Deadline.")(emphasis added), it is reasonable to assume that approximately 75,000 claims will be submitted by the March 5, 2022 claim deadline.

The cascading claim payment process adopted by Plaintiffs requires the payment of all valid CMIS claims first, then the payment of all valid documented loss payment claims, then the payment of all valid Cash Fund Payment claims. Settlement Agreement (ECF No. 32), ¶76. As mentioned previously, according to Plaintiffs, the minimum retail value of each CMIS subscription is three hundred sixty dollars ($360). Declaration of Robert Siciliano (ECF No.31-4) at ¶8. While Plaintiffs apparently have not disclosed the actual cost the Settlement Fund will pay for the Experian and Identity Works Credit 3-Bureau CMIS Plan, it is likely a flat rate based upon the 3.8

million class members eligible to claim this benefit.[3]  Based upon their prior experience in this type of litigation and other data breach class action settlements, Counsel for Objectors estimate that a flat rate charge to be paid for the CMIS benefit given that there are 3.8 million class members could be $1,500,000. This expense would reduce the Net Settlement Fund to approximately $1.4 million.

The second claims to be paid are valid Documented Loss Payment claims. Each valid Documented Loss Payment Claim is capped at $5,000 regardless of the injury suffered. *Cf.* ECF No. 27 ¶ 251, *In re Data Breach Security Litig. Against Kroger Co.*, No. 1:21-CV-00146 (S.D. Ohio Jul. 22, 2021) (alleging one class member suffered $10,000 in damages). If only 0.4% of the 75,000 estimated total claims include valid Documented Loss Payment claims, each capped at $5,000, those claims would equal $1.5 million and would deplete the remaining $1.4 million in the Net Settlement Fund.[4] Likewise, if only 6% of the 75,000 estimated total claims include valid Documented Loss Payment claims, each with an average value of $325, those claims would equal $1.46 million and would also deplete the remaining $1.4 million in the Net Settlement Fund.[5] Under both scenarios, $0 would be available to pay the tens-of-thousands of class members who filed valid claims for the Cash Fund Payment Benefit. And, in exchange for receiving nothing, these same claimants will provide Kroger with a complete release of their claims.

For these reasons, Class Members Ann Marie Strohm, Martin Pinales, Caren Butler-Alexander, Karen and Michael Godovchik, and Alexander Buck object to this settlement.

---

[3]  In the unlikely event that the Net Settlement Fund will be charged the retail price of $360 for each class member who validly claims this benefit, the $2.9 to $3 million Net Settlement Fund value would quickly become depleted after paying only 8,055 to 8,333 CMIS claims (which is only about 11% of the 75,000 claims Counsel for Objector estimate will be filed). Even if the Net Settlement Fund negotiated a substantial discount off the retail price for each CMIS claim selected and will pay $150 per claim, if 20% of the anticipated 75,000 claims select the CMIS benefit, the cost to the Net Settlement Fund would be $2,250,000 (.20 * 75,000 * $150).  This would leave only $150,000 to pay valid Documented Loss Payment claims and valid Cash Fund Payment claims.

[4]  0.004*75,000 claims*$5,000/claim = $1,500,000.

[5]  0.06*75,000 claims*$325/claim = $1,462,500.

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

| | | | |
|---|---|---|---|
| DATED: February 18, 2022 | | By: | /s/ *Courtland L. Reichman* |
| | | | Courtland L. Reichman |

Courtland L. Reichman (CA Bar No. 268873)
Jennifer Estremera (CA Bar No. 251076)
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
(650) 623-1401
creichman@reichmanjorgensen.com
jestremera@reichmanjorgensen.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates*
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
tcoates@msdlegal.com

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg*
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
jgoldenberg@gs-legal.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner*
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
bbleichner@chestnutcambronne.com

**LEVIN, SEDRAN & BERMAN, LLP**
Charles E. Schaffer *
David C. Magagna Jr.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (212) 592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

**STRAUSS TROY CO., LPA**
Robert R. Sparks*
Richard S. Wayne*
150 East Fourth Street, 4th Floor

OBJECTIONS BY ANN MARIE STROHM, MARTIN PINALES, CAREN BUTLER-ALEXANDER, KAREN AND MICHAEL GODOVCHIK, AND ALEXANDER BUCK TO SETTLEMENT
Case No. 5:21-CV-01887-EJD

11

Cincinnati, OH 45202
Phone: (513) 621-2120
rrsparks@strausstroy.com
rswayne@strausstroy.com

**DANNLAW**
Brian D. Flick*
15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
notices@dannlaw.com

**FEDERMAN & SHERWOOD**
William B. Federman*
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560
wbf@federmanlaw.com

*Counsel for Objector Ann Marie Strohm*

*Admitted *Pro Hac Vice*